1  WILLIAM L. ANTHONY, JR.  (State Bar No. 166026)
   wanthony@orrick.com
2  MATTHEW H. POPPE  (State Bar No. 177854)
   mpoppe@orrick.com
3  ZHENG LIU  (State Bar No. 229311)
   jenliu@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, California 94025
   Telephone:     +1-650-614-7400
6  Facsimile:     +1-650-614-7401

7  Attorneys for Defendant
   VARIAN MEDICAL SYSTEMS, INC.
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                      SAN FRANCISCO DIVISION
11

12

13  UNIVERSITY OF PITTSBURGH OF THE          Case No.  CV 08-02973 MMC
    COMMONWEALTH SYSTEM OF HIGHER
14  EDUCATION d/b/a UNIVERSITY OF            **VARIAN'S NOTICE OF MOTION
    PITTSBURGH, a Pennsylvania non-profit    AND MOTION TO TRANSFER
15  corporation (educational),               ACTION TO U.S. DISTRICT COURT
                                             FOR WESTERN DISTRICT OF
16              Plaintiff,                    PENNSYLVANIA; MEMORANDUM
                                             OF POINTS AND AUTHORITIES IN
17        v.                                 SUPPORT THEREOF**

18  VARIAN MEDICAL SYSTEMS, INC., a          **[28 U.S.C. § 1404(a)]**
    Delaware corporation,
19                                           Date:        August 1, 2008
               Defendant.                    Time:        9:00 a.m.
20                                           Courtroom:   7, 19th Floor

21

22

23

24

25

26

27

28

OHS West:260461788.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   STATEMENT OF FACTS .......................................................................................... 3

      A.   This Case Is a Duplicate of a Prior Case in the Pennsylvania Court ..................... 3

      B.   The Pennsylvania Case Was Heavily Litigated; Thus, the Pennsylvania
           Court Is Very Familiar With the Parties, the Patents-in-Suit, and the Issues ........ 3

           1.   Basic Pleadings and Case Schedule ........................................................... 3

           2.   Miscellaneous Motions ............................................................................... 4

           3.   Claim Construction ..................................................................................... 5

      C.   The Pennsylvania Court Dismissed the Prior Action With Prejudice and
           UPitt Has Appealed................................................................................................. 6

      D.   Pennsylvania Is the Location of Many of the Events Giving Rise to the
           Action; It Is the Residence of the Largest Number of Non-Party Witnesses;
           and It Is Otherwise a Convenient Venue for This Litigation ................................. 7

III.  ARGUMENT ............................................................................................................... 9

      A.   Transferring This Case to the Pennsylvania Court is Appropriate Pursuant
           to 28 U.S.C. § 1404(a) .......................................................................................... 9

      B.   This Action Could Have Been Filed in the Western District of
           Pennsylvania ........................................................................................................ 10

      C.   UPitt's Choice of Forum Is Entitled to Little Weight Here ................................. 10

      D.   Transferring This Case to the Western District of Pennsylvania Is in the
           "Interest of Justice" Because That Court Has Already Presided Over an
           Identical Case ....................................................................................................... 11

      E.   The Other Relevant Factors Also Favor Transfer to the Western District of
           Pennsylvania ........................................................................................................ 14

IV.   CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

Page

## CASES

*A.J. Indus., Inc. v. United States Dist. Court*,
503 F.2d 384 (9th Cir. 1974)................................................................................................. 10

*Ackert v. Ausman*,
198 F. Supp. 538 (S.D.N.Y. 1961) ......................................................................................... 11

*Advanced Semiconductor Materials America, Inc. v. Applied Materials, Inc.*,
1993 U.S. Dist. LEXIS 20045, 30 U.S.P.Q. 2d 1553 (D. Ariz. Sept. 15, 1993).................... 13

*Baird v. California Faculty Ass'n*,
2000 WL 516378 (N.D. Cal. Apr. 24, 2000) .......................................................................... 11

*Hoffman v. Blaski*,
363 U.S. 335, 80 S. Ct. 1084, 4 L. Ed. 2d 1254 (1960) ......................................................... 10

*Hyundai Space & Aircraft Co. v. Boeing Co.*,
1999 WL 910131 (N.D. Cal. 1999).......................................................................................... 11

*Impra Inc. v. Quinton Instruments Co.*,
1990 WL 284713, 17 U.S.P.Q.2d 1890 (D. Ariz. 1990).......................................................... 13

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000)............................................................................................... 9, 14

*Pacific Car & Foundry Co. v. Pence*,
403 F.2d 949 (9th Cir. 1968).................................................................................................. 11

*Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*,
149 F.3d 197 (3d Cir. 1998) ................................................................................................... 10

*Piper Aircraft v. Reyno*,
454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981) ......................................................... 11

*R.E.F. Golf Co. v. Roberts Metals, Inc.*,
1992 WL 161041, 24 U.S.P.Q. 2d 1070 (M.D. Fla. 1992) .................................................... 13

*Reiffin v. Microsoft*,
104 F. Supp. 2d 48 (D.D.C. 2000) .................................................................................. 11, 12

*Sykes v. Eckankar*,
1998 WL 296368 (N.D. Cal. 1998)......................................................................................... 13

*Stewart Org. v. Ricoh Corp.*,
487 U.S. 22, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988) ........................................................... 9

*VE Holding Corp. v. Johnson Gas Appliance Co.*,
917 F.2d 1574 (Fed. Cir. 1990) .............................................................................................. 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
## (continued)

Page

*Vencor Nursing Ctrs., L.P. v. Shalala*,
   63 F. Supp. 2d 1, 6 (D.D.C. 1999) ........................................................................... 11

## FEDERAL STATUTES AND RULES

28 U.S.C. § 1391(c) ...................................................................................................... 10

28 U.S.C. § 1400(b) ...................................................................................................... 10

28 U.S.C. § 1404(a) .......................................................................................... 1, 2, 9, 14

F.R.C.P. 19    ................................................................................................................... 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 1, 2008 at 9:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Maxine M. Chesney, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102, defendant Varian Medical Systems, Inc. will and hereby does move the Court for an order transferring this action to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the accompanying Declaration of Matthew H. Poppe, Sealed Declaration of Matthew H. Poppe, Declaration of William L. Anthony, Request for Judicial Notice, and [Proposed] Order, all pleadings on file in this action, oral argument of counsel, and any other matter that may be submitted at the hearing or thereafter in connection with this motion.

**STATEMENT OF RELIEF THE MOVANT SEEKS**

Defendant Varian Medical Systems, Inc. seeks an order transferring this action to the United States District Court for the Western District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). A previous action between the same parties, based on the same patents, was recently dismissed with prejudice by that court after more than a year of intense litigation. Accordingly, that court is in the best position to judge whether this case should be dismissed on res judicata or other grounds or, if the case is to proceed, to preside over the case on its merits. Other relevant factors also support this motion to transfer.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

The present action represents forum shopping at its worst. It is an exact duplicate of another case recently dismissed with prejudice by the United States District Court for the Western District of Pennsylvania (the "Pennsylvania Court"). Plaintiff University of Pittsburgh ("UPitt"), having been defeated in its home district after a hard-fought year of litigation, now seeks to pursue the exact same patent infringement causes of action in a new court in hopes of achieving a better result. However, UPitt cannot justify fleeing the Pennsylvania Court. A party may not re-

- 1 -

1    file a case in a second court simply because it does not like the result it obtained in the first court.

2    Defendant and moving party Varian Medical Systems, Inc. ("Varian") will eventually rely on that

3    duplication in support of a motion to dismiss this action based on res judicata and other grounds.

4    In the meantime, principles of judicial efficiency, convenience, and basic fairness dictate that the

5    action be transferred to the Pennsylvania Court pursuant to 28 U.S.C. § 1404(a).

6         The Pennsylvania Court is extremely familiar with the parties, the patents-in-suit, and the

7    issues.  It presided over the prior action for more than a year, which included full discovery, a

8    day-long *Markman* hearing (including live expert testimony), summary judgment proceedings,

9    extensive other motion practice, case management conferences, and a settlement conference.  At

10   the conclusion of those proceedings, the Pennsylvania Court granted Varian's summary judgment

11   motion and dismissed the case with prejudice.  The Pennsylvania Court is in the best position to

12   determine whether the judgment dismissing the prior case with prejudice bars this duplicative

13   action.  Should the Pennsylvania Court decide that this case should proceed, it is best suited to

14   preside over the case because it already learned so much about the issues in connection with the

15   prior action.

16        Other factors also support a transfer to the Pennsylvania Court.  Perhaps most important,

17   there are many third party witnesses — including several of the named inventors — who can be

18   subpoenaed to testify in the Pennsylvania Court but not in California.  By contrast, only two non-

19   party witnesses who were deposed in the prior action are located in this district.  The location of

20   documents is irrelevant, because the parties already exchanged relevant documents in the prior

21   action and UPitt already conducted an extensive review of Varian's source code (most of which

22   had to be transported from Switzerland).  UPitt obviously cannot claim that the Western District

23   of Pennsylvania is inconvenient, given that UPitt is located in that district and chose to sue Varian

24   there last year.  Thus, when all factors are taken into account, they heavily favor transferring this

25   action to the Pennsylvania Court.

26        For these reasons, as explained in greater detail below, Varian respectfully requests that

27   this Court issue an order transferring the present action to the United States District Court for the

28   Western District of Pennsylvania for all further proceedings, pursuant to 28 U.S.C. § 1404(a).

## II.    STATEMENT OF FACTS

### A.    This Case Is a Duplicate of a Prior Case in the Pennsylvania Court

This is a patent infringement case.  UPitt is the only plaintiff and Varian is the only defendant.  The only causes of action are for alleged infringement of two patents:  U.S. Patent Nos. 5,727,554 and 5,784,431 (the "'554 patent" and "'431 patent," respectively).  *See* Docket No. 1 (Complaint).  UPitt's counsel has stated to the press that the accused products include Varian's "widely distributed Trilogy line," among others.  Poppe Decl., Ex. A.[1]

It can easily be seen that this action is nothing but a duplicate of the prior action in the Pennsylvania Court.  That too was a patent infringement case.  UPitt was the only plaintiff and Varian was the only defendant.  The only cause of action was for alleged infringement of the '554 patent and the '431 patent.  *See* RJN, Ex. A.[2]  The accused products included Varian's Trilogy™ systems.  *See* Poppe Decl., Ex. B.  Other similarities between the two cases include allegations of contributory infringement, inducement of infringement, and willful infringement; the allegation that each case is an "exceptional case"; and requests for a reasonable royalty, increased damages, attorney fees, interest, and costs.  *Compare* Docket No. 1 (Complaint), *with* RJN, Ex. A.

### B.    The Pennsylvania Case Was Heavily Litigated; Thus, the Pennsylvania Court Is Very Familiar With the Parties, the Patents-in-Suit, and the Issues

The Pennsylvania Court gained a significant degree of familiarity with the Pennsylvania case during the 14 months in which it was active.  The Pennsylvania Court enforces an aggressive case schedule.  As a result, the parties completed fact discovery and claim construction and had many other interactions with the Court during those 14 months.

#### 1.    Basic Pleadings and Case Schedule

The Pennsylvania case was initiated with the filing of the Complaint on April 13, 2007. *See* RJN, Ex. A.  Varian answered on May 14, 2007, denying the infringement allegations and

---

[1] "Poppe Decl." refers to the Declaration of Matthew H. Poppe in Support of Defendant Varian Medical Systems, Inc.'s Motion to Transfer Action to U.S. District Court for Western District of Pennsylvania, filed herewith.

[2] "RJN" refers to the Request for Judicial Notice in Support of Defendant Varian Medical Systems, Inc.'s Motion to Transfer Action to U.S. District Court for Western District of Pennsylvania, filed herewith.

1    asserting counterclaims for a declaratory judgment of non-infringement and invalidity.  *See* RJN,

2    Ex. B.  On May 16, 2007, a Case Management Conference was held before the Honorable Arthur

3    J. Schwab, with lead trial counsel for each party present.  Anthony Decl. ¶ 2.[3]  A short time later,

4    Judge Schwab issued a Case Management Order setting an aggressive case schedule, including

5    close of fact discovery on October 5, 2007 and a claim construction hearing on November 29,

6    2007.  *See* RJN, Ex. C.  Those dates held firm, except for certain discrete items of discovery that

7    Judge Schwab allowed to proceed after the fact discovery deadline.  Poppe Decl. ¶ 2.  The Case

8    Management Order also resolved numerous disputes between the parties regarding details about

9    how the case should be managed.  *See* RJN, Ex. C.

10                    **2.    Miscellaneous Motions**

11           Over the next several months, **Judge Schwab ruled on 22 contested motions** filed in the

12    case.  Some of the most significant rulings were on the following contested motions:

13    1.    Varian's motion to compel UPitt to provide further infringement
         contentions.  *See* RJN, Ex. D.

14    2.    Varian's motion for summary judgment for lack of standing.  *See id.*, Ex. J.

15    3.    UPitt's motion pursuant to F.R.C.P. 19 to join Carnegie Mellon University
         as a party.  *See id.*, Ex. L.

16    4.    Varian's motion for leave to file an amended answer and counterclaim.
         *See id.*, Ex. Q.

17    5.    Varian's motion for Rule 11 sanctions.  *See id.*, Ex. Y, text entry dated
         04/30/2008.

18    6.    Varian's motion for contempt sanctions.  *See id.*, Ex. R.

19    7.    UPitt's motion for reconsideration of court's finding of contempt.  *See id.*[4]

20    8.    Varian's motion for entry of judgment.  *See id.*, Ex. S.

21    9.    UPitt's motion requesting entry of judgment.  *See id.*

---

[3] "Anthony Decl." refers to the Declaration of William L. Anthony in Support of Defendant Varian Medical Systems, Inc.'s Motion to Transfer Action to U.S. District Court for Western District of Pennsylvania, filed herewith.

[4] Judge Schwab held UPitt in contempt based on events related to a settlement conference held before Judge Schwab on March 28, 2008.  Anthony Decl. ¶ 3.  The settlement conference was attended by lead trial counsel and in-house legal/business representatives for both parties.  *Id.*  UPitt later accepted the judge's offer to purge the contempt by engaging in a mediation with Varian before a paid mediator in Pittsburgh.  Poppe Decl. ¶ 3; RJN, Ex. Y, Doc. Nos. 305-308.

10.    Varian's motion to dismiss counterclaims without prejudice.  *See id.*, Ex. T.

Other contested motions decided by Judge Schwab include:

11.    A third party's motion to quash a subpoena duces tecum.  *See id.*, Ex. E.

12.    Varian's motion for leave to exceed ten fact depositions.  *See id.*, Ex. Y, text entry dated 09/12/2007.

13.    UPitt's motion to compel Varian "to conduct depositions in compliance with court orders" and a related clarification motion.  *See id.*, Exs. G, H.

14.    Varian's motion to compel UPitt to cooperate in deposition scheduling. *See id.*, Ex. G.

15.    UPitt's motion to compel production of witnesses.  *See id.*, Ex. Y, text entry dated 10/10/2007.

16.    UPitt's motion for clarification regarding the briefing schedule for UPitt's motion to strike Varian's claim construction tutorial.  *See id.*, Ex. Y, text entry dated 11/26/2007.  The motion to strike itself was referred to a special master.

17.    UPitt's motion to identify additional extrinsic evidence in connection with the claim construction proceedings.  *See id.*, Ex. K.

18.    Varian's motion to compel further production of documents by UPitt and a subpoenaed third party.  *See id.*, Ex. Y, text entry dated 01/30/2008.

19.    Varian's motion to compel one of the inventors to re-produce his documents in an intelligible manner.  *See id.*, Ex. M.

20.    Varian's motion to compel additional deposition time from certain witnesses.  *See id.*, Ex. N.

21.    Varian's motion to compel UPitt to provide further discovery responses and produce documents.  *See id.*, Exs. O, P.

In addition to the motions decided by Judge Schwab, a special master ruled on UPitt's motion to strike Varian's claim construction tutorial and provided a Report & Recommendation on Varian's summary judgment motion.  *See id.*, Ex. U; Poppe Decl., Ex. C at 3:10-12..

**3.    Claim Construction**

While fact discovery was ongoing in the Pennsylvania case, the parties also engaged in claim construction proceedings.  On August 15, 2007, the parties filed a total of three expert reports on claim construction.  *See* RJN, Ex. Y, Doc. Nos. 50-57.  On the same day, the parties

/ / /

1   filed a Joint Disputed Claim Terms Chart, summarizing the parties' respective claim construction

2   positions, and a Joint Proposal for Claim Construction Hearing.  *See id.*, Ex. Y, Doc. Nos. 47-49.

3       Claim construction briefing started two months later.  On October 19, 2007, UPitt filed a

4   40-page opening brief and 28 exhibits.  *See id.*, Ex. Y, Doc. Nos. 95-100, 102; Poppe Decl. ¶ 4.

5   On November 2, 2007, Varian filed a 55-page opening brief and 20 exhibits.  *See* RJN, Ex. Y,

6   Doc. Nos. 107-108; Poppe Decl. ¶ 4.  On November 9, 2007, UPitt filed a 16-page reply brief.

7   *See* RJN, Ex. Y, Doc. No. 113; Poppe Decl. ¶ 4.  The parties also exchanged tutorials in the form

8   of animated videos and slides containing text and graphics.  Poppe Decl. ¶ 4.

9       On November 29, 2007, the parties appeared before the special master for an all-day claim

10   construction hearing.  Each side was represented at the hearing by three attorneys, plus in-house

11   counsel.  Opening statements and live tutorials were presented.  The parties then each put on live

12   expert testimony, including cross-examination.  Finally, the special master heard extensive oral

13   argument by counsel.  Poppe Decl. ¶ 5 & Ex. C.  The special master and his assistant were paid

14   an hourly rate for their time reviewing the parties' papers and attending the hearing.  *Id.* ¶ 5.  The

15   case was dismissed before a claim construction ruling issued.  *Id.*

16       **C.      The Pennsylvania Court Dismissed the Prior Action With Prejudice and UPitt
17               Has Appealed**

18       In the course of discovery, Varian learned that UPitt was not the sole owner of the patents-

19   in-suit.  Accordingly, on November 23, 2007, Varian filed a motion for summary judgment for

20   lack of standing.  *See* RJN, Ex. Y, Doc. Nos. 127-130.  Judge Schwab referred the motion to the

21   special master for an initial ruling.  *See id.*, Ex. Y, text entry dated 11/26/2007.  After full

22   briefing, the special master issued a Report & Recommendation finding that Carnegie Mellon

23   University ("CMU") was a co-owner of the patents-in-suit and recommending that (1) Varian's

24   motion for summary judgment be granted but (2) UPitt be permitted to cure the standing issue by

25   amending its complaint to add CMU as a party.  *See* RJN, Ex. U.

26       Varian objected to the special master's recommended remedy.  *See id.*, Ex. Y, Doc. Nos.

27   256-257.  After another full round of briefing, Judge Schwab adopted the special master's Report

28   & Recommendation in part and denied it in part.  *See id.*, Ex. J.  He adopted the finding that CMU

1  was a co-owner of the patents-in-suit and the recommendation that Varian's summary judgment

2  motion be granted, but he rejected the recommended remedy and decided instead that the action

3  would be dismissed with prejudice.  *Id.*  Judge Schwab found that UPitt's attempt to add CMU as

4  a party "was untimely and unfair to defendant . . . ."  *Id.* at 4-5.  "Plaintiff obviously knew of

5  CMU's existence and its residual rights in the patents-in-suit, and chose not to join CMU, at the

6  inception of this case.  Whether plaintiff's very sophisticated patent counsel made this tactical

7  decision not to join CMU in order to make discovery of CMU as a non-party more difficult for

8  defendant, or for some other tactical reason, the Court does not know."  *Id.*

9       UPitt later asked Judge Schwab to change the dismissal to be without prejudice.  *See* RJN,

10  Ex. V at 4.  However, Judge Schwab rejected that request and entered Judgment in Varian's favor

11  on June 16, 2008.  *See id.*, Ex. S.  UPitt has filed a notice of appeal.  *See id.*, Ex. W.

12       **D.    Pennsylvania Is the Location of Many of the Events Giving Rise to the Action;
            It Is the Residence of the Largest Number of Non-Party Witnesses; and It Is**
13       **Otherwise a Convenient Venue for This Litigation**

14       UPitt is located in Pittsburgh, at the heart of the Western District of Pennsylvania.  *See*

15  RJN, Ex. A at ¶¶ 1, 4.  It filed the prior action against Varian in that District, thus demonstrating

16  that the Western District of Pennsylvania is a convenient forum for UPitt.  Varian did not object

17  to litigating in that District.  Poppe Decl. ¶ 6; RJN, Ex. Y, *passim.*

18       A substantial part of the events giving rise to both actions took place within the Western

19  District of Pennsylvania.  The five inventors were all in Pittsburgh when the alleged inventions

20  were developed, two at UPitt and three at CMU.  Sealed Poppe Decl., Ex. A at 40:11-41:24,

21  48:15-49:19, 65:11-67:16, 68:21-69:10, 168:4-17; *id.*, Ex. B at 40:11-13, 41:8-25; *id.*, Ex. C at

22  12:6-8; *id.*, Ex. D at 21:2-23, 86:21-87:3; *id.*, Ex. E at 6:18-7:23, 36:24-37:16, 43:22-46:21, 54:2-

23  17.[5]  Most of the allegedly inventive activities, as well as related research conducted by the

24  inventors after the patent applications were filed, took place in Pittsburgh.  *See, e.g., id.*, Ex. A at

25  96:10-99:9, 138:17-143:16; *id.*, Ex. B at 35:14-38:25, 61:15-64:14, 71:5-20, 171:22-172:22,

26

27  ─────────────────────
   [5] "Sealed Poppe Decl." refers to the Sealed Declaration of Matthew H. Poppe in Support of
28  Defendant Varian Medical Systems, Inc.'s Motion to Transfer Action to U.S. District Court for
   Western District of Pennsylvania, filed herewith.

176:22-178:11, 193:8-196:17.  The attorney who prosecuted the patent applications was located in Pittsburgh at that time.  *See id.*, Ex. F at 5:23-6:5, 8:1-15, 14:10-15:14, 19:18-20:19, 22:14-23:5; Poppe Decl., Exs. D, E.  Activities related to the ownership and licensing of the patents-in-suit have taken place in Pittsburgh.  *See* Docket No. 1 (Complaint), Exs. 1, 2, 4; Sealed Poppe Decl., Ex. E at 6:18-7:23, 36:25-37:16, 43:22-46:21, 71:4-77:5, 78:10-79:14, 80:4-81:21, 88:18-92:4, 93:2-94:4, 189:23-190:17, 191:8-193:15, 194:3-197:20, 200:16-201:20; *id.*, Ex. G at 7:12-8:3, 11:7-16, 12:9-13:18, 20:22-22:3, 59:8-60:6, 61:14-62:3, 93:10-94:21; *id.*, Ex. R at 5:14-6:1, 22:13-25:7, 48:3-53:10; *id.*, Exs. H-Q, S.  Varian even had meetings with UPitt personnel in Pittsburgh to discuss (1) possible joint research that UPitt claims would have been related to the patented inventions and (2) sales of accused products by Varian to the University of Pittsburgh Medical Center.  *See* Sealed Poppe Decl., Ex. T at 257:24-258:9, 282:14-289:20, 306:11-307:7.

The Western District of Pennsylvania is a much more convenient forum than the Northern District of California for potential witnesses in this action.  During the first action between the parties, Varian deposed 15 witnesses.  Poppe Decl. ¶ 7.  Of those, 12 witnesses were deposed in Pittsburgh.  *Id.*  Two others were deposed in locations even further eastward.  *Id.*  Indeed, even one of Varian's witnesses was deposed in Pittsburgh because he had to fly from Switzerland, where he lives and works at a Varian facility, and it was easier for him to fly to Pittsburgh than to California.  *See id.*, Ex. F at 3:18-4:6, 20:8-21:2.  A second Varian witness also flew to the United States from Switzerland for a deposition.  Poppe Decl. ¶ 7.  Two other Varian witnesses deposed by UPitt reside on the east coast.  *Id.*  In addition, one of Varian's experts resides in Ann Arbor, Michigan, and therefore can reach Pittsburgh more easily than California.  *Id.*

Many witnesses are not affiliated with any party and could only be subpoenaed to testify at trial in the Western District of Pennsylvania.  That is true of six witnesses Varian deposed in this action, including two inventors.  *See* Sealed Poppe Decl., Ex. C at 7:16-25; Ex. D at 21:2-25; *id.*, Ex. E at 6:6-22; Ex. U at 5:7-7:17; Ex. V at 4:24-5:25; Ex. W at 7:6-9, 12:21-25.  It is also true of two former UPitt licensing employees whom Varian was denied the opportunity to depose but who Varian might want to call at trial.  *See* RJN, Ex. X at 4-5; *id.*, Ex. Y, text entry dated 09/12/2007; Sealed Poppe Decl., Ex. B at 142:3-18; *id.*, Ex. E at 67:23-68:2, 94:5-14; *id.*, Ex. U

1   at 29:2-31:5.  By contrast, only two non-parties who were deposed in this action reside in

2   California.  Poppe Decl. ¶ 7.

3          The law firm retained by UPitt as its litigation counsel (Morgan, Lewis & Bockius LLP)

4   has an office in Pittsburgh, which makes the Western District of Pennsylvania a particularly

5   convenient forum for them and meant UPitt did not need to retain separate local counsel.  *Id*. ¶ 8.

6   Indeed, the Pittsburgh office of Morgan Lewis served as the site for the *Markman* hearing and at

7   least two depositions in the prior action.  *Id*.  Varian retained local counsel in Pittsburgh at the

8   start of the prior action and they were actively involved in the case, taking several depositions and

9   appearing at hearings.  *Id*.  Varian's local counsel maintains copies of produced documents and

10  deposition transcripts from the prior action in their office.  *Id*.

## III.    ARGUMENT

### A.    Transferring This Case to the Pennsylvania Court is Appropriate Pursuant to 28 U.S.C. § 1404(a)

14         "For the convenience of parties and witnesses, in the interest of justice, a district court

15  may transfer any civil action to any other district or division where it might have been brought."

16  28 U.S.C. § 1404(a).  A district court has discretion "to adjudicate motions for transfer according

17  to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Jones v. GNC*

18  *Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487

19  U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).  A motion under Section 1404(a) requires

20  that the Court "weigh multiple factors in its determination whether transfer is appropriate in a

21  particular case."  *Id*.  The plaintiff's choice of forum is but one factor in the analysis; the Court

22  may also consider such things as:  (1) the ease of access to sources of proof; (2) the availability of

23  compulsory process to compel attendance of unwilling non-party witnesses; (3) "those public-

24  interest factors of systemic integrity and fairness that . . . come under the heading of 'the interest

25  of justice'"; (4) the differences in the costs of litigation in the two forums; (5) the respective

26  parties' contacts with the forum; and (6) the contacts relating to the plaintiff's cause of action in

27  the chosen forum.  *Id*. at 498-99 & n.21 (quoting *Stewart Org.*, 487 U.S. at 30).

28  / / /

As explained below, the relevant factors weigh overwhelmingly in favor of transferring this case to the Western District of Pennsylvania. Most importantly, the Pennsylvania Court just finished presiding over an identical case involving the same parties, the same patents, and the same accused products. That court is familiar with the issues in this case, having ruled on many motions and presided over a *Markman* hearing in the prior duplicative case, and it is therefore in the best position to determine the impact on this case of the Judgment it entered in the prior case in which it dismissed UPitt's infringement claims "with prejudice." *See* RJN, Ex. S. In addition, the Western District of Pennsylvania is the more convenient forum for most witnesses in the case, and is the only forum in which many non-party witnesses can be compelled to testify. To the extent any witnesses would be inconvenienced by the transfer, they are Varian's witnesses and UPitt is not in a position to complain. The other relevant factors also weigh in favor of transfer.

**B.      This Action Could Have Been Filed in the Western District of Pennsylvania**

The proposed transferee district must be one in which the plaintiff could have filed the action initially. *Hoffman v. Blaski*, 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); *A.J. Indus., Inc. v. United States Dist. Court*, 503 F.2d 384, 386-89 (9th Cir. 1974). Obviously that requirement is met here, given that UPitt already filed the identical action against Varian once in the Pennsylvania Court and it was actively litigated there to Judgment. Venue could have been based on the patent venue statute, which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides . . . ." 28 U.S.C. § 1400(b). "For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c); *VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed. Cir. 1990) (holding that § 1391(c) defines "reside" for purposes of § 1400(b)). Varian is subject to personal jurisdiction in the Western District of Pennsylvania in a case such as this because it sells accused products to customers located in that district, such as the University of Pittsburgh Medical Center. *See* Sealed Poppe Decl., Ex. U at 34:4-36:2; *id.*, Ex. X; *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 206-07 (3d Cir. 1998) (exercise of personal jurisdiction in Pennsylvania may be based on defendant's sales in state).

1

## C.    UPitt's Choice of Forum Is Entitled to Little Weight Here

2          Although the plaintiff's choice of forum is usually accorded "substantial deference,"

3   "substantially less deference is warranted when the forum preferred by the plaintiff is not his

4   home forum." *Reiffin v. Microsoft*, 104 F. Supp. 2d 48, 52 (D.D.C. 2000) (citing *Piper Aircraft v.*

5   *Reyno*, 454 U.S. 235, 255-56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Pacific Car & Foundry Co.*

6   *v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968); *Hyundai Space & Aircraft Co. v. Boeing Co.*, 1999

7   WL 910131, 4 (N.D. Cal. 1999); *Ackert v. Ausman*, 198 F. Supp. 538, 542 (S.D.N.Y. 1961)).

8   Here, UPitt has not filed the action in its home forum but rather has specifically avoided its home

9   forum in a blatant forum shopping move after losing an identical case in that court.  Accordingly,

10  its choice of forum is entitled to little or no deference.

11

## D.    Transferring This Case to the Western District of Pennsylvania Is in the "Interest of Justice" Because That Court Has Already Presided Over an Identical Case

12

13          District courts regularly transfer cases to other districts that have already handled related

14  cases.  Doing so is in the "interest of justice" because it avoids duplicative proceedings, serves

15  judicial efficiency, and reduces the likelihood of inconsistent judgments.

16          A case that is very similar to the present case is *Reiffin v. Microsoft Corp.*, 104 F. Supp.

17  2d 48 (D.D.C. 2000).  There, the plaintiff had filed a previous action in the Northern District of

18  California alleging patent infringement by Microsoft.  The Northern District found that plaintiff's

19  patents were invalid.  In the second case, the plaintiff challenged the prior court's validity ruling

20  and argued that improper litigation conduct by Microsoft, together with other alleged conduct,

21  constituted antitrust violations.  *Id*. at 53-55.  The D.C. District held that the plaintiff had several

22  avenues available to him to raise those allegations, but "none of them involve filing a largely

23  duplicative action in this district."  *Id*. at 55.  "'The interest-of-justice factor encompasses the

24  desire to avoid multiple litigation from a single transaction [and] to try related litigation together

25  . . . .'"  *Id*. (quoting *Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F. Supp. 2d 1, 6 (D.D.C. 1999)); *see*

26  *also id*. at 58 n.19 ("The fact that another court has been the site of a related action is so strong a

27  public interest factor that this court has transferred venue *sua sponte*."); *Baird v. California*

28  / / /

1    *Faculty Ass'n*, 2000 WL 516378, *1 (N.D. Cal. Apr. 24, 2000) ("Related litigation pending in the

2    proposed transferee forum is a factor that weighs heavily in favor of transfer").

3         As in the present case, the plaintiff in *Reiffin* had appealed from the adverse ruling in the

4    first action.  The D.C. District found that this factor further supported the motion to transfer.

5    "Should the Federal Circuit vacate the Northern District's decision and remand to the Northern

6    District, and this court declined to transfer the instant action to that court, [the plaintiff] would

7    have closely related claims pending in two different districts at once."  *Id*.  The same is true here.

8    UPitt has appealed to the Federal Circuit from the Judgment against it in the Pennsylvania Court.

9    *See* RJN, Ex. W.  If the Federal Circuit reverses and remands for further proceedings, then two

10   identical lawsuits against Varian for infringing the same two patents would be pending in two

11   different courts.  The D.C. District added, "[t]his does not imply that it would be sensible or

12   convenient to litigate this complaint here if the Federal Circuit affirms (and so does not remand to

13   the Northern District of California).  No matter what the Federal Circuit decides, litigating this

14   matter here would squander judicial resources and run the risk of inconsistent judgments on the

15   validity and infringement of [the plaintiff's] patents.  [The presiding judge in] the Northern

16   District has already expended substantial time and effort to become familiar with the technology

17   underlying the disputed patents, the prosecution of the patents, the record considered by the

18   Patent Office in issuing the patents, and the legal issues related to the patents' alleged validity and

19   infringement."  *Reiffin*, 104 F. Supp. 2d at 55.  All of these observations also apply in the present

20   case due to the Pennsylvania Court's extensive involvement with the patents-in-suit and other

21   common issues in the prior action.  *See supra* at 3-7.  The *Reiffin* court cited many other cases in

22   which transfers were granted to districts where related actions were pending, and it observed that

23   "[p]iecemeal litigation in the complex and technical area of patent . . . law is especially

24   undesireable."  *Reiffin*, 104 F. Supp. 2d at 55-56 & n.14.

25        Yet another factor relied on by the *Reiffin* court that applies equally to the present case is

26   that the first court's "familiarity with the parties' dispute…renders it better suited to determining,

27   in the first instance, which issues and claims in the instant complaint are precluded by its decision

28   in Mr. Reiffin's closely-related first action against Microsoft."  *Id*. at 57 (noting that Microsoft

1    had raised a *res judicata* defense).  Varian similarly intends to argue that UPitt's claims in this

2    action are precluded by the Judgment in the Pennsylvania case.  UPitt will argue that it should be

3    allowed to file a new action because the facts that led the Pennsylvania Court to grant Varian's

4    summary judgment motion have changed.[6]  The Pennsylvania Court is in the best position to

5    evaluate UPitt's argument, which will necessarily involve interpreting the scope of, and intent

6    behind, the entry of judgment in the Pennsylvania case.  *See also Sykes v. Eckankar*, 1998 WL

7    296368, *1 (N.D. Cal. 1998) ("Defendants have made a colorable claim that the principles of *res

8    judicata* apply to plaintiff's present action, based on a recently-dismissed case, also filed by

9    plaintiff, with similar facts. . . . [I]n light of . . . the interests of justice in having defendants' claim

10   of *res judicata* decided by a judge with knowledge of the previous litigation between the parties,

11   the court grants defendants' motion to transfer.").

12          In another case, a transfer was granted based on the existence of a related case in another

13   district even though the similarity between the two cases was not as strong as it is here.  *See

14   Advanced Semiconductor Materials America, Inc. v. Applied Materials, Inc.*, 1993 U.S. Dist.

15   LEXIS 20045, 30 U.S.P.Q.2d 1553 (D. Ariz. Sept. 15, 1993).  The court first noted "the general

16   rule [that] cases should be transferred to districts where related actions are pending."  *Id*. at *3

17   (quoting *Impra Inc. v. Quinton Instruments Co.*, 1990 WL 284713, 17 U.S.P.Q.2d 1890, 1891 (D.

18   Ariz. 1990)).  It then ruled that the defendant's motion to transfer would be granted.  "While the

19   dispute in this case does involve different patents from those at issue in the two cases now

20   pending between the parties in California, all three lawsuits involve the same parties, the same

21   technology, and competing products in the same relevant markets."  *Id*. at *4.  As a result, "there

22   will likely be much overlap of issues, witnesses, prior art, and documents."  *Id*.  In addition, the

23   court in the earlier-filed actions "has greater experience with the parties' dispute."  *Id*. at *5.

---

24   [6] Summary judgment was granted in Varian's favor in the Pennsylvania case based on a finding

25   that UPitt was not the sole owner of the patents-in-suit and thus lacked standing to sue.  *See* RJN,
     Ex. J.  UPitt claims that it is now the sole owner of the patents by virtue of a recent assignment of

26   rights by the former co-owner, CMU.  *See* Docket No. 1 (Complaint) at ¶¶ 10, 15 & Ex. 1.
     Varian intends to argue that any recent acquisition of additional rights by UPitt is irrelevant; the

27   Pennsylvania Court dismissed the prior action "with prejudice" because UPitt unreasonably failed
     to join all co-owners as parties in a timely way in the prior action.  It cannot have another bite at

28   the apple now.

1   Many other courts have reached the same conclusion.  *See, e.g., R.E.F. Golf Co. v. Roberts*

2   *Metals, Inc.*, 1992 WL 161041, 24 USPQ2d 1070 (M.D. Fla. 1992) (granting transfer to District

3   of Ohio, where related litigation was pending).

4       **E.    The Other Relevant Factors Also Favor Transfer to the Western District of
            Pennsylvania**
5

6       The other relevant factors also support Varian's motion to transfer this action to the

7   Western District of Pennsylvania.  As noted above, these factors include such things as the

8   convenience of witnesses; the availability of compulsory process to compel attendance of

9   unwilling non-party witnesses; ease of access to sources of proof; the differences in the costs of

10  litigation in the two forums; the respective parties' contacts with the forum; and the contacts

11  relating to the plaintiff's cause of action in the chosen forum.  28 U.S.C. § 1404(a); *Jones v. GNC*

12  *Franchising, Inc.*, 211 F.3d 495, 498-99 & n.21 (9th Cir. 2000).

13      Here, the Western District of Pennsylvania is a more convenient forum than the Northern

14  District of California for most witnesses and for almost all of the witnesses not affiliated with

15  Varian (on whose behalf UPitt has no basis to complain).  *See supra* at 7-9.  The Western District

16  of Pennsylvania is more convenient even for certain witnesses associated with Varian, because

17  they live in Michigan, on the east coast, or in Europe.  *Id*.  For a substantial majority of non-party

18  witnesses with relevant information, the Western District of Pennsylvania is the only venue in

19  which compulsory process is available to compel their attendance at trial.  *Id*.

20      The parties—especially UPitt, of course—have substantial contacts with the Western

21  District of Pennsylvania, including many contacts relating to UPitt's causes of action against

22  Varian.  *See supra* at 7-9.  Among other things, the alleged inventions were developed in

23  Pittsburgh, the patents-in-suit were prosecuted from Pittsburgh, licensing activities were

24  conducted from Pittsburgh, and the inventors had meetings with Varian in Pittsburgh related to

25  their research activities.  *Id*.  Although Varian's headquarters are in this district and it makes

26  and/or assembles some of the accused products here, that fact should not be given much weight

27  given that Varian is the party requesting transfer here.  Moreover, Varian also makes and/or

28  assembles certain accused products or components thereof in Europe, as to which the Western

1  District of Pennsylvania is a more convenient forum, and it has made substantial sales of accused

2  products in the Western District of Pennsylvania. *See, e.g., supra* at 7-9; Poppe Decl., Ex. G at

3  16:19-17:6, 21:8-13.

4          Other factors supporting transfer include the fact that UPitt's lead counsel has an office in

5  Pittsburgh; Varian's use of local counsel in the Western District of Pennsylvania in connection

6  with the Pennsylvania case; and the existence of a full set of relevant documents and deposition

7  transcripts in that locale. *See supra* at 9.

8  **IV.      CONCLUSION**

9          For the reasons set forth above, Varian respectfully requests that the Court grant its

10  Motion to Transfer Action to U.S. District Court for the Western District of Pennsylvania.

11          Dated:  June 27, 2008

12                                              WILLIAM L. ANTHONY
                                                MATTHEW H. POPPE
                                                ZHENG LIU
13                                              ORRICK, HERRINGTON & SUTCLIFFE LLP

14

15                                              By:_____/s/ *Matthew H. Poppe*_____
                                                        Matthew H. Poppe
16                                                  Attorneys for Defendant
                                                VARIAN MEDICAL SYSTEMS, INC.
17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

3

   I hereby certify that a true and correct copy of VARIAN'S NOTICE OF MOTION AND

MOTION TO TRANSFER ACTION TO U.S. DISTRICT COURT FOR WESTERN DISTRICT

4

OF PENNSYLVANIA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

5

THEREOF was served upon the University of Pittsburgh, through its counsel, via:

6

7

8                    _____    Hand-Delivery

9                    _____    Facsimile

10                   _____    First Class, US Mail, Postage Prepaid

                     _____    Certified Mail-Return Receipt Requested

11                   _____X_____    ECF Electronic Service

12                   _____    Overnight Delivery

13

14

   at the following addresses:

15

                         Rita E. Tautkus
16                    Morgan Lewis & Bockius, LLP
                      One Market – Spear Street Tower
17                      San Francisco, CA   94105
                      rtautkus@morganlewis.com
18

19

Dated:  June 27, 2008                    __/s/ Matthew H. Poppe_____
20                                             Matthew H. Poppe

21

22

23

24

25

26

27

28

1  WILLIAM L. ANTHONY, JR.  (State Bar No. 166026)
   wanthony@orrick.com
2  MATTHEW H. POPPE  (State Bar No. 177854)
   mpoppe@orrick.com
3  ZHENG LIU  (State Bar No. 229311)
   jenliu@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, California 94025
   Telephone:      +1-650-614-7400
6  Facsimile:      +1-650-614-7401

7  Attorneys for Defendant
   VARIAN MEDICAL SYSTEMS, INC.
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                     SAN FRANCISCO DIVISION

12

13  UNIVERSITY OF PITTSBURGH OF THE            Case No.  CV 08-02973 MMC
    COMMONWEALTH SYSTEM OF HIGHER
14  EDUCATION d/b/a UNIVERSITY OF              **[PROPOSED] ORDER GRANTING
    PITTSBURGH, a Pennsylvania non-profit      VARIAN'S MOTION TO TRANSFER
15  corporation (educational),                 ACTION TO U.S. DISTRICT COURT
                                               FOR WESTERN DISTRICT OF
16              Plaintiff,                      PENNSYLVANIA**

17         v.                                  **[28 U.S.C. § 1404(a)]**

18  VARIAN MEDICAL SYSTEMS, INC., a            Date:        August 1, 2008
    Delaware corporation,                      Time:        9:00 a.m.
19                                             Courtroom:   7, 19th Floor
                Defendant.
20

21

22

23

24

25

26

27

28

1      Having considered Defendant Varian Medical Systems, Inc.'s Motion to Transfer Action

2  to U.S. District Court for Western District of Pennsylvania, together with any opposition or reply

3  papers on file, the pleadings and papers on file, and arguments of counsel:

4      **IT IS HEREBY ORDERED THAT:**

5      1.     Defendant's requested transfer would serve the convenience of parties and

6  witnesses and be in the interest of justice, and therefore Defendant's motion to transfer pursuant

7  to 28 U.S.C. § 1404(a) is hereby **GRANTED.**

8      2.     This action shall be transferred to the United States District Court for the Western

9  District of Pennsylvania forthwith.

10      **IT IS SO ORDERED.**

11      Dated: _____, 2008

12

13      By:_____

14                  UNITED STATES DISTRICT JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3

    I hereby certify that a true and correct copy of [PROPOSED] ORDER GRANTING

VARIAN**'**S MOTION TO TRANSFER ACTION TO U.S. DISTRICT COURT FOR WESTERN

4

DISTRICT OF PENNSYLVANIA was served upon the University of Pittsburgh, through its

5

counsel, via:

6

7

8

_____    Hand-Delivery

9

_____    Facsimile

10

_____    First Class, US Mail, Postage Prepaid

_____    Certified Mail-Return Receipt Requested

11

_____X\_\_\_\_\_    ECF Electronic Service

12

_____    Overnight Delivery

13

14

    at the following addresses:

15

Rita E. Tautkus

16

Morgan Lewis & Bockius, LLP
One Market – Spear Street Tower

17

San Francisco, CA   94105
rtautkus@morganlewis.com

18

19

Dated:  June 27, 2008              \_\_\_/s/ *Matthew H. Poppe*_____

20

Matthew H. Poppe

21

22

23

24

25

26

27

28