1  DANIEL JOHNSON, JR. (SBN 574090)
   RITA E. TAUTKUS (SBN 162090)
2  MORGAN, LEWIS & BOCKIUS LLP
   One Market, Spear Street Tower
3  San Francisco CA 94105
   Telephone:  (415) 442-1000
4  Facsimile:  (415) 442-1001
   Email:  djjohnson@morganlewis.com
5  Email:  rtautkus@morganlewis.com

6  Attorneys for Plaintiff
   UNIVERSITY OF PITTSBURGH
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11 |                                      | Case No. CV 08-02973 MMC
   | UNIVERSITY OF PITTSBURGH OF THE      |
12 | COMMONWEALTH SYSTEM OF HIGHER        |
   | EDUCATION d/b/a UNIVERSITY OF        | **UNIVERSITY OF PITTSBURGH'S**
13 | PITTSBURGH                           | **OPPOSITION TO MOTION TO**
   |                                      | **TRANSFER BY VARIAN MEDICAL**
14 |           Plaintiff,                 | **SYSTEMS, INC.**
   |                                      |
15 |     vs.                              | Date:  August 29, 2008
   |                                      | Time:  9:00 a.m.
16 | VARIAN MEDICAL SYSTEMS, INC.         | Courtroom 7, 19th Floor
   |                                      |
17 |           Defendant.                 |

18

19

20

21

22

23

24

25

26

27

28

University of Pittsburgh's Opposition to Motion to Transfer by Varian Medical Systems, Inc.
(Case No. CV 08-02973 MMC)

1

## **TABLE OF CONTENTS**

2

I.     INTRODUCTION ..................................................................................................................1

3

II.    APPLICABLE LAW ............................................................................................................3

4

III.   RELEVANT FACTS ............................................................................................................3

5

A.   The Northern District Of California Is Varian's Home Forum ................................3

6

B.   The Prior Litigation Between The Parties Was Dismissed Based On Standing, Not On The Merits Of The Patent Infringement Claims .........................4

7

8

C.   The Purported Standing Issue Has Been Cured ........................................................5

9

D.   UPitt Refiled Its Claims In This District, Which Is The Most Reasonable Forum For This Matter ..............................................................................................5

10

11

IV.    ARGUMENT .......................................................................................................................5

12

A.   Controlling Precedent Dictates That This Case Be Allowed To Proceed In This District ...............................................................................................................5

13

B.   This Court Should Not Transfer This Case To A Forum That Has Said It Will Not Entertain The Claims ..................................................................................7

14

15

C.   UPitt Can Sue In This Court And Its Choice Should Be Respected .........................9

16

D.   Varian Exaggerates The Familiarity With And Involvement Of The Pennsylvania Court In The Prior Litigation ...........................................................11

17

E.   The Northern District Of California Is More Convenient Than The Western District Of Pennsylvania .........................................................................................12

18

19

1.   Relative Ease Of Access To Sources Of Proof ..........................................13

20

2.   Availability Of Compulsory Process For Attendance Of Unwilling Witnesses .....................................................................................................13

21

3.   Cost Of Obtaining Attendance Of Willing Witnesses ................................14

22

4.   Possibility Of View Of Premise .................................................................15

23

5.   California Has An Interest Due To Employment Of Its Citizens At Varian ..........................................................................................................15

24

6.   Other Factors Favor California As The Forum ...........................................15

25

V.     CONCLUSION ..................................................................................................................17

26

27

28

## **TABLE OF AUTHORITIES**

### **CASES**

*Accelinear Service Co. v. Varian Associates, Inc.*, No. 3:96 CV 01275 (WWE), 1996
  U.S. Dist. LEXIS 22675 (D. Conn. Oct. 16, 1996)......................................................... 16

*Advanced Semiconductor Materials America, Inc. v. Applied Materials, Inc.*
  No. CIV 93-0066-PHX-SMM, 1993 U.S. Dist. LEXIS 20045 (D. Ariz. Sept. 15,
  1993)........................................................................................................................ 10

*Baird v. California Faculty Association*, No. C-00-0628-VRW, 2000 WL 516378
  (N.D. Cal. Apr. 24, 2000) ........................................................................................ 10

*Boswell v. Baton*, No. 91-CV-1475, 1993 U.S. Dist. LEXIS 10898 (N.D.N.Y. Aug. 4,
  1993)......................................................................................................................... 8

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986)........... 3, 13

*Dredge Corp. v. Penny*, 338 F.2d 456 (9th Cir. 1964)..................................................... 7

*Flast v. Cohen*, 392 U.S. 83 (1968) ............................................................................... 7

*Hoffman v. Blaski*, 363 U.S. 335 (1960) .................................................................... 3, 8

*Media Techs. Licensing, LLC v. Upper Deck Co.*
  334 F.3d 1366 (Fed. Cir. 2003)...........................................................2, 6, 7, 11

*Meijer, Inc. v. Abbott Laboratories*, 544 F. Supp. 2d 995 (N.D. Cal. 2008)..................... 3

*Ray v. Bluehippo Funding, LLC,* No. C06-01807 JSW, 2007 U.S. Dist. LEXIS 91060
  (N.D. Cal. Dec. 4, 2007).......................................................................................... 10

*Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48 (D.D.C. 2000)......................................... 9

*Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001) ................. 1, 5

*Sinclair Oil Corp. v. Union Oil Co. of California*, 305 F. Supp. 903 (S.D.N.Y. 1969) ... 16

*SNK Corp. of Amer. v. Atlus Dream Entertainment Co.*, Case No. C98-21035 (N.D.
  Cal. Feb. 24, 1999) ........................................................................................... 10, 11

*Sykes v. Eckankar,* No. C98-0858 SI, 1998 U.S. Dist. LEXIS 8203 (N.D. Cal. May
  29, 1998).................................................................................................................. 10

*United States v. Leonard A. Pelullo Pintler Creek Range, Inc.*, No. 02-2249, 2003
  U.S. App. LEXIS 6863 (3rd Cir. Apr. 4, 2004)........................................................... 7

*Utley v. Varian Associates*, 625 F. Supp. 104 (N.D. Cal. 1985).................................... 15

*Van Dusen v. Barrack*, 376 U.S. 612 (1964)................................................................... 1

*Varian Med. Sys., Inc. v. Delfino*, 113 Cal. App. 4th 273 (2003).................................. 15

1

## FEDERAL STATUTES

2    28 U.S.C. § 1404...................................................................................................1, 8

3    28 U.S.C. § 1404(a)....................................................................................................3

4

## OTHER AUTHORITIES

5    RESTATEMENT (SECOND) OF JUDGMENTS § 20 ...................................................7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    The University of Pittsburgh ("UPitt") opposes the motion by Varian Medical Systems, Inc.

2  ("Varian") to transfer this case to the Western District of Pennsylvania. This action was properly

3  filed in this Court and should remain here.

4  **I.    INTRODUCTION**

5    Despite having its corporate headquarters in Palo Alto, California, and other offices in

6  Milpitas and Mountain View, California, Varian moved to transfer this case across the country to

7  Pennsylvania, where Varian has no offices or employees. Varian's efforts are not guided by the

8  purpose of 28 U.S.C. § 1404, which is to "prevent the waste 'of time, energy and money' and 'to

9  protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . .'"

10  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (*quoting Continental Grain Co. v. Barge FLB-585*,

11  364 U.S. 19, 26, 27 (1960)). Litigation would doubtless be more convenient and less expensive for

12  Varian in its "home-court" than across the country. Rather, Varian's efforts are an attempt to get a

13  *substantive* advantage by transferring the case to a forum that has previously ruled that the claims

14  cannot proceed there due to a standing deficiency that does not exist in this case. Moreover, by

15  moving the case far from Varian's home, Varian seeks to manipulate the evidence so that the

16  testimony of interested, Varian employees, whom Varian controls, will be completely unchecked by

17  the testimony of unbiased, former employees (whose attendance could not be compelled at a

18  Pennsylvania trial, but who have more relevant knowledge than the Varian employees). These

19  efforts run afoul of controlling Supreme Court, Ninth Circuit, and Federal Circuit precedent.

20    *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 504, 509 (2001), held that

21  a district court's decision dismissing a claim based on some obstacle to the claim, other than the

22  merits of the claim itself, is not claim-preclusive to the underlying claims. In a prior case between

23  the parties, the Western District of Pennsylvania ("Pennsylvania Court"), ruling on a "standing"

24  motion, determined that UPitt did not have standing to sue Varian because it had only partial

25  ownership of the patents-in-suit, and that all patent owners must join the case for there to be standing

26  for the Court to adjudicate the infringement claim. This type of patent ownership issue has been

27  held to be a standing issue, not a merits issue, and not preclusive to a future suit where the plaintiff

28

1    has full ownership rights. *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366, 1368-

2    69, 1370 (Fed. Cir. 2003).

3         After the court dismissed UPitt's Western District of Pennsylvania lawsuit against Varian,

4    Carnegie-Mellon University ("CMU") took the precautionary step of assigning to UPitt whatever

5    rights CMU might have under the patents, thus foreclosing any argument that UPitt lacks standing to

6    sue those who infringe the patents. *See* Docket Entry 1 (Complaint Exs. 1, 2, 4). Having resolved

7    the alleged standing obstacle that led to the prior dismissal, UPitt determined to refile its claims, as

8    *Semtek* and *Media Techs.* allow. *See* 531 U.S. at 504; 334 F.3d at 1368-70. UPitt chose to refile its

9    claims here, which, as Varian's home-court, is a very reasonable forum for this dispute to be

10   resolved. The Pennsylvania Court dismissed the prior case with prejudice, thus signaling that the

11   Court might well refuse to permit any renewed claims from proceeding there. However, as

12   discussed above, as a matter of law, UPitt has the right to pursue its infringement claims against

13   Varian in this Court because standing is unquestionably no longer an issue. *Media Techs.*, 334 F.3d

14   at 1368-70.

15        According to the words of § 1404, an action may not be transferred to another forum unless

16   the action "might have been brought" there. However, the Court to which Varian would have the

17   case transferred has refused to permit UPitt to correct the alleged standing deficiency and has

18   dismissed UPitt's claims with prejudice. Varian has stated in its Motion to Transfer that it wants to

19   argue in the Western District of Pennsylvania that this case should not be permitted to proceed.

20   Although UPitt disagrees with the Pennsylvania Court's decision and with Varian, § 1404 does not

21   authorize a transfer to a forum that will not permit the case to be brought there. In any event, the

22   case should not be transferred because this District is UPitt's forum choice, relevant witnesses are

23   located here, infringing products are made and sold here, and as the location of Varian's

24   headquarters, it is a very convenient forum for Varian. In fact, as will be discussed herein, Varian

25   has frequently availed itself of the California Courts to resolve its disputes and even filed motions to

26   transfer cases from the East Coast to California because it was too inconvenient for Varian to litigate

27   on the East Coast. UPitt opposes Varian's Motion to Transfer this case to the Western District of

28   Pennsylvania, and Varian's Motion should be denied.

## II.    APPLICABLE LAW

28 U.S.C. § 1404(a) states "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The threshold question for a transfer is whether the transferee forum is a court where the case might have been brought.  *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).  Only after resolving this threshold question in the affirmative, may a court look at the convenience of the transferee forum.  *See id.*  Moreover, Ninth Circuit precedent requires that a party seeking a transfer "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  *Decker Coal* explained the convenience inquiry in terms of both "private" interest factors and "public" interest factors.  "Private factors include the 'relative ease of access to sources of proof; availability of compulsory process for obtaining attendance of unwilling, and the cost of attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* (*quoting Gulf Oil Corp. v Gilbert*, 330 U.S. 501, 508 (1947)).  Public interest factors include issues of court congestion, avoiding complexities flowing from application of foreign law, and the unfairness of burdening citizens with jury duty on matters having no local implications.  *Id.*  Importantly, as this Court has observed, "[n]o single factor is dispositive." *Meijer, Inc. v. Abbott Labs.*, 544 F. Supp. 2d 995, 999 (N.D. Cal. 2008).

## III.    RELEVANT FACTS

### A.    The Northern District Of California Is Varian's Home Forum

Varian's headquarters is at 3100 Hansen Way, Palo Alto, California.  Decl. of Rita Tautkus, Esq. in Opp'n to Varian's Mot. to Transfer Ex. 1 [hereinafter "Tautkus Decl."].  While it has multiple offices in Northern California, including Palo Alto, Milpitas, and Mountain View, it has no offices in Pennsylvania.  *Id*.

**B.     The Prior Litigation Between The Parties Was Dismissed Based On Standing, Not On The Merits Of The Patent Infringement Claims**

On April 13, 2007, UPitt filed suit against Varian in the Western District of Pennsylvania, alleging infringement of U.S. Patent Nos. 5,727,554 and 5,784,431 ("Pennsylvania Litigation"). *See* Varian's Request for Judicial Notice in Supp. of Varian's Mot. to Transfer Action to U.S. District Court for the Western District of Pennsylvania Ex. A [hereinafter "Request for Judicial Notice"].

Every employee that Varian identified in its Initial Disclosures, save one, was a resident of California. Tautkus Decl. Ex. 2. The only identified Varian employee not resident in California was a resident of Switzerland. *Id.* During discovery, UPitt took the depositions of relevant Varian employees; those depositions were almost all taken in this District, as the employees are almost all California residents. *Id.* at Ex. 3 at 2:16-21, 6:10-14, 9:6-23 (Sam Castellino); Ex. 4 at 2:15-21, 11:6-24 (Michael Chen); Ex. 5 at 2:12-17, 6:12-16, 12:8-18, 163:4-6 (Martin Kandes); Ex. 6 at 2:13-17, 21:16-21 (Stanley Mansfield); Ex. 7 at 7:6-7 (Richard Morse); Ex. 8 at 2:14-18, 13:9-11 (Hassan Mostafavi); Ex. 9 at 2:11-17, 5:2-8, 8:17-9:6 (George Zdasiuk). UPitt also deposed former Varian employee, Majid Riaziat, in Palo Alto. *Id.* at Ex. 10 at 2:11-17, 15:2-22.

On November 21, 2007, Varian moved for summary judgment based on lack of standing. Varian asserted that CMU had an ownership interest in the patents-in-suit. UPitt opposed Varian's Motion. In the case of each patent, UPitt had secured a written assignment from each inventor to UPitt. *See* Docket Entry 1 (Complaint Ex. 2 (each inventor assigning his rights in the '554 Patent to UPitt), Ex. 4 (each inventor assigning his rights in the '431 Patent to UPitt)). The United States Patent & Trademark Office issued each patent listing the owner as UPitt. *Id.* at Ex. 3 ('554 Patent listing UPitt as the "assignee"), Ex. 5 ('431 patent listing UPitt as the "assignee").

A Special Master prepared a Report and Recommendation wherein he agreed with Varian that CMU had an inchoate ownership interest in the patents. Request for Judicial Notice Ex. U at 10. Recognizing standing is a jurisdictional issue, not a merits issue, he recommended that UPitt's claims be dismissed without prejudice, with leave to amend to add CMU, thus curing the standing issue. *Id.* The District Court agreed with the Special Master that a standing issue existed, but believed an amendment to add CMU was prohibited by the Scheduling Order in the case. *Id.* at Ex. J

1   at 6.  Therefore, Judge Schwab dismissed UPitt's claims with prejudice on April 30, 2008, and

2   refused UPitt's request to add CMU as a party (even though CMU was willing to join as a co-

3   plaintiff).  *Id.*

4          On May 15, UPitt confirmed its understanding that the "entire action had been dismissed

5   with prejudice."  *Id.* at Ex. V at 2.  UPitt asked the Court to reconsider and make the dismissal

6   "without prejudice" because a decision on standing is not a decision on the merits.  *Id.* at 4.

7   Nonetheless, the Court entered final judgment with prejudice.  *Id.* at Ex. S.  UPitt has appealed that

8   judgment.

9          **C.    The Purported Standing Issue Has Been Cured**

10         On June 16, 2008, out of abundance of caution, UPitt secured an assignment from CMU

11  giving UPitt all the rights in the patents-in-suit that CMU had, if any.  *See* Docket Entry 1

12  (Complaint Ex. 1).  This assignment unquestionably gave UPitt full ownership of the patents-in-suit

13  and standing to sue Varian.

14         **D.    UPitt Refiled Its Claims In This District, Which Is The Most Reasonable
                   Forum For This Matter**

15
        UPitt refiled its claims against Varian in this Court on the same day it obtained the
16
    assignment from CMU.  *See* Docket Entry 1 (Complaint).  Given the Western District of
17
    Pennsylvania had dismissed UPitt's claims with prejudice, clearly indicating its view that the claims
18
    could not proceed in that forum, UPitt refiled its claims in Varian's home forum, the most reasonable
19
    choice under the circumstances.
20

21  **IV.    ARGUMENT**

22         **A.    Controlling Precedent Dictates That This Case Be Allowed To Proceed In
                   This District**

23         When a court decides a case on a basis *other than the substance of the underlying claims*,

24  *e.g.*, on personal jurisdiction, standing, or statute of limitations, that decision does not preclude

25  refiling of the claims in another court where that obstacle does not exist.  *See Semtek*, 531 U.S. at

26  504.  Semtek's case in the Central District of California had been dismissed based on the statute of

27  limitations.  *Id.* at 499.  The Central District's ruling provided that the dismissal was "with

28  prejudice."  *See id.*  Semtek filed the same claims in Maryland, where the statute of limitations had

1   not run. *Id.* Nonetheless, the Maryland Court dismissed the case on *res judicata* grounds, relying on

2   the prior "with prejudice" ruling in the Central District. *Id.* at 500. The Supreme Court reversed,

3   noting that "expiration of the applicable statute of limitations merely bars the remedy and does not

4   extinguish the substantive right, so that dismissal on that ground does not have claim-preclusive

5   effect in other jurisdictions with longer, unexpired limitations periods." *Id.* at 504.

6           Consistent with the Supreme Court, the Federal Circuit has held that a first suit dismissed due

7   to a lack of complete ownership, *i.e.*, standing, is not preclusive to a later suit where full ownership

8   is held by the plaintiff. *Media Technologies Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366 (Fed.

9   Cir. 2003), squarely addressed this issue. Like this case, *Media Technologies* involved two lawsuits,

10  the first one having been dismissed on standing grounds. *Id.* at 1368. More particularly, the first

11  suit was dismissed because the assignment to the plaintiff was ineffective, so that, just like this case,

12  the plaintiff was alleged not to have full ownership of the patents. *Id.* The ownership was

13  subsequently corrected by a proper transfer to Media Technologies, and suit was refiled. *Id.* at 1368-

14  69. The district court dismissed the second suit based on claim preclusion. *Id.* at 1369. The district

15  court relied on the fact that the prior case "was dismissed with prejudice for lack of Article III

16  standing." *Id.* The Federal Circuit reversed, stating unambiguously that dismissals based on

17  standing are not preclusive:

18          To be given preclusive effect, a judgment must be a final adjudication of the rights of
            the parties and must dispose of the litigation on the merits. . . . The Ninth Circuit, in
19          common with other federal courts, recognizes that standing is a threshold question
            that must be resolved *before proceeding to the merits* of a case. . . .
20
            Because standing is jurisdictional, *lack of standing precludes a ruling on the merits*.
21          Thus, the district court erred in giving preclusive effect to the Telepresence judgment
            because its dismissal of Telepresence's complaint for lack of standing was not a final
22          adjudication of the merits.

23  *Id.* at 1369-70 (emphasis added).

24          Turning to the facts of this case, because the dismissal in the Pennsylvania Litigation was

25  unquestionably based on standing (*see* Request for Judicial Notice Ex. J at 6: "the Court grants the

26  Motion for Summary Judgment for Lack of Standing"), it was not preclusive in nature and,

27  therefore, filing this suit after any standing issue was unquestionably cured is not precluded. *See*

28  *Media Techs.*, 334 F.3d at 1369-70. UPitt's position is black-letter law. As the Restatement notes,

1   "[a] personal judgment for the defendant, although valid and final, does not bar another action by the

2   plaintiff on the same claim . . . [w]hen the judgment is one of dismissal for lack of jurisdiction, for

3   improper venue, or for nonjoinder or misjoinder of parties . . . ."  RESTATEMENT (SECOND) OF

4   JUDGMENTS § 20.  The fault the Pennsylvania Court found with the original suit was that an alleged

5   co-owner of the patents, CMU, was not joined.  Request for Judicial Notice Ex. J at 2 ("CMU thus is

6   a necessary party to this action").  It was a case of a standing decision based on nonjoinder of an

7   indispensable party, a classic non-preclusive decision.  *See also Dredge Corp. v. Penny,* 338 F.2d

8   456, 463 (9th Cir. 1964) ("The charge that an indispensable party has not been joined . . . does not

9   go to the merits of the law suit, nor does it bar an action on the subject matter, but *only operates to*

10  *abate that particular action*.") (emphasis added).  These holdings are completely consistent with

11  Supreme Court precedent that "[t]he fundamental aspect of standing is that it focuses on the party

12  seeking to get his complaint before a federal court and not on the issues he wishes to have

13  adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968).  *See also United States v. Leonard A. Pelullo*

14  *Pintler Creek Range, Inc.,* No. 02-2249, 2003 U.S. App. LEXIS 6863, at *5 (3rd Cir. Apr. 4, 2004)

15  (noting that since the appeal "was dismissed for lack of standing, we cannot reach the merits of this

16  claim") (Tautkus Decl. Ex. 11).

17          Based on this overwhelming case authority, it is evident that UPitt has the right to pursue the

18  claims it filed in this Court.  As will be discussed below, the law simply does not allow Varian to use

19  a forum convenience motion to convert a prior, jurisdictional standing dismissal into a permanent

20  bar of underlying, substantive patent rights.  *See Media Techs.*, 334 F.3d at 1370.

21          **B.    This Court Should Not Transfer This Case To A Forum That Has Said It
                    Will Not Entertain The Claims**

22

23          The words of § 1404 are unambiguous:  a case can only be transferred to another court

24  "where it might have been brought."  In the Pennsylvania Litigation, and over UPitt's objections, the

25  Western District of Pennsylvania dismissed UPitt's case "with prejudice."  The District Court in

26  Pennsylvania thus has, at a minimum, suggested that it would refuse to permit refiling in that Court.

27  Request for Judicial Notice Exs. J, S.  As discussed above, the basis for that Court's dismissal was

28  that UPitt allegedly did not own all the rights to the patents-in-suit, and that it was too late under that

Court's procedural rules to add the other owner (CMU). *Id.* at Ex. J at 6. Even though UPitt has

now cured any possible standing problem by acquiring all the ownership rights that CMU may have

had in the patents, Varian still argues that the "with prejudice" designation bars the new claims. *See*

Varian's Mem. of P. & A. in Supp. 13 n. 6 [hereinafter "Varian's Mem. in Supp."].    Given the

District Court's "with prejudice" dismissal and Varian's arguments on its meaning,[1] this case should

not be transferred to Pennsylvania under § 1404. Before an action can be transferred, as a threshold

matter, the Court must find that the case could have been brought in the proposed transferee forum.

28 U.S.C. § 1404. This requirement is unyielding, and cannot be waived. *Hoffman*, 363 U.S. at

343-44 ("[T]he power of a District Court under § 1404(a) to transfer an action to another district is

made to depend not upon the wish or waiver of the defendant but, rather, upon whether the

transferee district was one in which the action 'might have been brought' by the plaintiff."). Given

the specific requirement stated in the statute, it is unsurprising that courts refuse to transfer cases to

another jurisdiction when it appears the asserted claim might be barred in that jurisdiction. *See*

*Boswell v. Baton*, No. 91-CV-1475, 1993 U.S. Dist. LEXIS 10898 (N.D.N.Y. Aug. 4, 1993)

(Tautkus Decl. Ex. 12). In *Boswell*, the Court refused a § 1404 transfer to a forum where the

applicable statute of limitations would have already run because it could not have been brought

there. *Id.* at *10-11. The Court recognized that § 1404 is about preventing unnecessary

inconvenience and expense. *Id.* at *9-10. Section 1404 is not about deciding a case on the merits by

transferring it to a forum where the Court has said it may not proceed, especially when there is no

bar to proceeding in the current forum. It would be particularly inappropriate to transfer this case to

the Western District of Pennsylvania when Varian is specifically arguing that the Pennsylvania

Court's "with prejudice" dismissal bars the suit. Varian's argument is particularly disingenuous

because it essentially asks this Court to rule that the case "could have been brought" in Pennsylvania

for transfer purposes, but will then ask the Pennsylvania Court to dismiss the claims, arguing that

they could not be brought there.

---

[1] UPitt has appealed the final judgment from the Western District of Pennsylvania as legal error at
least because the Court's "with prejudice" was erroneous as contrary to the case law on standing
dismissals, including *Media Technologies*.

### C.     UPitt Decided To Sue In This Court And Its Choice Should Be Respected

UPitt now has the unquestionable right to file its claims.  It selected this forum.  Given Varian is located in this forum, it can hardly complain about UPitt's forum choice.  Varian asserts that *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48 (D.D.C. 2000), is very similar to this case.  Varian's Mem. in Supp. 11.  While that case and the instant controversy both concern transfer motions, that is where the similarity begins and ends.  In *Reiffin*, defendant Microsoft was a West Coast company that had been sued in the District of Columbia.  104 F. Supp. 2d at 49.  Microsoft had only tangential contacts with the District of Columbia.  *See id.*  The D.C. Court transferred the case to the West Coast, namely this Court.  *Id.* at 51, 58.  In this case, UPitt did not select a far-flung forum.  It selected a courthouse only a few miles from Varian's headquarters.  Varian is not in the same position as was Microsoft, *vis-à-vis* convenience of the forum.  In *Reiffin*, the prior lawsuit between the parties reached the merits of the patent infringement claim, namely, declaring the patents invalid.  *Id.* at 50.  In this case, the merits were not reached in the prior suit.  Instead, the prior suit only held that UPitt did not, at that time, have sufficient ownership rights to litigate the merits.  Finally, *Reiffin* was an antitrust and libel lawsuit based on how Microsoft and its lawyer were characterizing, outside the courthouse, what happened in the prior case, something with which the California Court was very familiar.  In this case, the pending litigation will deal with the infringement and validity of the patents; the Pennsylvania Litigation addressed the standing issue based on ownership as it then existed.  The Pennsylvania Court never reached the infringement and validity issues.  Varian quotes *Reiffin* on page 12 of its Memorandum in Support that "'[The presiding judge] in the Northern District has already expended substantial time and effort to become familiar with the technology underlying the disputed patents, the prosecution of the patents, the record considered by the Patent Office in issuing the patents, and the legal issues related to the patents' alleged validity and infringement'" (*quoting* 104 F. Supp. 2d at 55).  While that was undoubtedly true in *Reiffin*, as the Court had granted summary judgment of *invalidity*, it is not true here.  There were no motions related to infringement or validity filed in the Prior Litigation, and the Court made no decisions in respect of those topics.

1    *Baird v. California Faculty Association*, No. C-00-0628-VRW, 2000 WL 516378, at *1

2    (N.D. Cal. Apr. 24, 2000) (Tautkus Decl. Ex. 13), cited by Varian, involved "pending" litigation in

3    the transferee forum.  The same is true of *Advanced Semiconductor Materials America, Inc. v.*

4    *Applied Materials, Inc.*, No. CIV 93-0066-PHX-SMM, 1993 U.S. Dist. LEXIS 20045, at *3 (D.

5    Ariz. Sept. 15, 1993) (Tautkus Decl. Ex. 14).  There is no pending litigation pending in the Western

6    District of Pennsylvania between UPitt and Varian, as the Pennsylvania Litigation was dismissed

7    before this one was filed.

8         As this Court has previously held, when a prior case is over, the case for transfer is

9    substantially diminished.  *See Ray v. Bluehippo Funding, LLC*, No. C06-01807 JSW, 2007 U.S. Dist.

10   LEXIS 91060, at *5-6 (N.D. Cal. Dec. 4, 2007) (Tautkus Decl. Ex. 15).[2]  A similar result was

11   reached in *SNK Corp. of Amer. v. Atlus Dream Entertainment Co.*, Case No. C98-21035 (N.D. Cal.

12   Feb. 24, 1999) (Tautkus Decl. Ex. 16).  *SNK* involved a situation where, like here, there had been

13   prior litigation between the parties, but no other litigation was pending at the time of the motion to

14   transfer.  The Court first noted that "[t]he merits of SNK's claims in this action must be judged by

15   the Court or jury based on evidence introduced in this action."  Slip op. at 4.  Thus, even if

16   transferred, the district judge "would not be free to base any ruling in this action upon any such

17   independent knowledge [received in the prior case]."  *Id.*  Instead, "he would be limited to making

18   evaluations based on evidence actually introduced in this action."  *Id.*  While the Court noted that

19   "[t]ransfers are often made 'in the interest of justice' where related litigation is still pending in the

20   transferee district," "[n]o similar interests weigh in favor of transfer here."  *Id.* at 5.

21        Varian argues that it will assert a claim preclusion defense in this case and cites *Sykes v.*

22   *Eckankar*, No. C98-0858 SI, 1998 U.S. Dist. LEXIS 8203 (N.D. Cal. May 29, 1998) (Tautkus Decl.

23   Ex. 17), for the proposition that a transfer to the original forum is appropriate in that circumstance.

24   ─────────────────

25   [2] Varian argues that, on remand from the Federal Circuit, there might be two cases pending on the same subject.  That is pure speculation on Varian's part, depending on how the Federal Circuit

26   resolves the dismissal with prejudice by the Pennsylvania Court.  For example, the Federal Circuit may resolve the appeal by holding that the "with prejudice" dismissal should have been "without

27   prejudice" to a future case, which would not leave a pending case in Pennsylvania.  What is clear and not speculation, however, is that there are no claims pending between the parties in the

28   Pennsylvania Court, and UPitt's claims in this Court are ripe for adjudication here.

1  *See* Varian's Mem in Supp. 13.  The one-page decision in *Sykes* has no details about the prior

2  litigation in that case, stating only that there was a "colorable claim" of *res judicata*.  Varian does

3  not have colorable claim of *res judicata* because (1) the prior standing decision based on ownership

4  was not a decision on the merits (*Media Techs.*, 334 F.3d at 1370 ("lack of standing [is] not a final

5  adjudication on the merits")), and (2) "[t]o be given preclusive effect, a judgment must be a final

6  adjudication of the rights of the parties and must dispose of the litigation of the merits" (*id.* at 1369).

7  Importantly, *SNK* distinguished *Sykes* as a case where "virtually every other factor also supported

8  transfer." *SNK*, Slip op. at 5 n. 5.  Here, the relevant factors almost universally support California as

9  the most appropriate forum. *See infra* at 12-16.

10        Finally, none of the cases cited by Varian involves a proposed transfer initiated by a

11  defendant out of its own home forum.  Rather, they almost always involve efforts by defendants to

12  litigate in their home forum, something Varian already has achieved in this case.

### D.    Varian Exaggerates The Familiarity With And Involvement Of The Pennsylvania Court In The Prior Litigation

        Turning a blind eye to the facts, Varian greatly overstates the substantive involvement of the

District Court in the Pennsylvania Litigation.  On page 2 of its Memorandum in Support, Varian says

that, "[a]t the conclusion of those proceedings [the Pennsylvania Litigation], the Pennsylvania Court

granted Varian's summary judgment and dismissed the case with prejudice."  That statement

erroneously suggests that the Court reached the merits, which did not occur. The only summary

judgment was the dismissal on standing based on non-joinder of CMU.  Varian also describes the

"Pennsylvania Court's extensive involvement with the patents-in-suit and other common issues in

the prior action." Varian's Mem. in Supp. 12.  To the contrary, the Pennsylvania Court issued no

substantive ruling concerning the patents-in-suit.  It issued only a jurisdictional, standing ruling.

        Varian proffers a list of motions from the Pennsylvania Litigation to buttress its cause. *See*

*id.* at 4-5.  However, none of the motions cited by Varian have any relevance to the issues to be tried

in this Court.  Of the ten "most significant rulings" cited by Varian, five of them (*id.* at 4-5, items 2,

3, 8, 9, and 10) relate to the standing issue.  Because UPitt has now unquestionably secured all the

ownership interest in the patents-in-suit, that issue is irrelevant to this case, and the Pennsylvania

1   Court's experience on that topic would be of no assistance in deciding the current case.  The other

2   motions relate to a failed settlement conference, and amendments to the pleadings/contentions,

3   which will be similarly unhelpful to deciding this case.  Next, Varian lists eleven other "contested

4   motions" as decided in Pennsylvania but, by inspection, one can see that they were non-substantive,

5   discovery motions that would not assist the Court in deciding this case.  *See id.* at 5.  Of course,

6   UPitt has no interest in duplicating the discovery taken in Pennsylvania, and will consent that all

7   discovery taken in that case can be treated as if taken in this case.

8          Varian shamelessly exaggerates the role that the Pennsylvania Court played in claim

9   construction prior to the Pennsylvania Litigation being dismissed.  Judge Schwab did not rule on any

10  substantive issues related to claim construction. The Court appointed a Special Master who

11  considered the claim construction briefs and had a hearing on claim construction. The Special

12  Master received the technology tutorial from the respective parties and heard the arguments over the

13  disputed claim terms.  More importantly at the time the case was dismissed with prejudice, the

14  Special Master had not issued any report on the claim construction hearing and had not made any

15  recommendations to Judge Schwab regarding how any of the disputed terms should be construed.  In

16  short, this court is in the identical position that Judge Schwab was in at the time the case was

17  dismissed, it has not had a technology tutorial or heard any arguments on claim construction.  If the

18  Court desires to benefit from the work of the Special Master, UPitt does not object to the Special

19  Master from the Pennsylvania Litigation completing his report for this Court's consideration.

20  Alternatively, UPitt is prepared to proceed with a new claim construction hearing on an expedited

21  briefing schedule as the issues were already briefed.

22
    **E.     The Northern District Of California Is More Convenient Than The
23          Western District Of Pennsylvania**

24         Varian is certainly in an unusual position in that it is complaining about having to litigate

25  where it and its witnesses are located.  That is a clue that something other than "convenience" and

26  "justice" (*see* § 1404) are being sought by Varian.  Varian's witnesses are almost all located in the

27  Northern District of California, were deposed in the Northern District of California, and would

28  obviously find a trial in San Francisco more convenient than one in Pennsylvania.  *See supra* at 3-4.

Since UPitt filed this suit in the Northern District, it can be assumed that UPitt finds San Francisco as convenient as any forum it could have chosen for this dispute.  Looking specifically at the public and private factors articulated in *Decker Coal*, 805 F.2d at 843, they favor California.

### 1.    Relative Ease Of Access To Sources Of Proof

Since Varian's corporate headquarters is in this district, as are most of the witnesses and the documents concerning the manufacturing, sale, and development of the accused products, access to proof of infringement is better in this District than in Pennsylvania.  *See supra* at 3-4.

### 2.    Availability Of Compulsory Process For Attendance Of Unwilling Witnesses

At least one highly relevant former employee of Varian, Dr. Majid Riaziat, is located in this district.  Based on Varian's representations, he cannot be compelled to attend a Pennsylvania trial. Dr. Riaziat has relevant information concerning Varian's work with Tau Corporation in developing the technology that would ultimately infringe UPitt's patents.  His importance is demonstrated by the concerted efforts Varian expended in an attempt to block continuing Dr. Riaziat's deposition in favor of current Varian employees.  Tautkus Decl. Ex. 18 (letter from Varian's counsel offering to produce employee Hassan Mostafavi, but only if UPitt would agree that former employee Majid Riaziat "not be deposed").  A subsequent letter still insisted that Dr. Riaziat not be deposed further because he "is a third party with no stake in this litigation."  *Id.* at Ex. 19.  Of course, third parties with no stake in the litigation often provide the most unbiased testimony.

During Dr. Riaziat's initial deposition, information was uncovered regarding Varian's work with Tau Corporation in the mid-late 1990s.  This work led to implementation of an infringing system.  *Id.* Ex. 10 at 185:4-193:8, Ex. 20 (Riaziat Dep. Ex. 12), Ex. 21 (Riaziat Dep. Ex. 13). Critically, Dr. Riaziat managed the Tau/Varian project, called Arrow, which implemented this system.  *Id.* Ex. 10 at 19:18-20:6.  Mr. Mostafavi, on the other hand, was neither at Tau nor Varian from sometime in 1995 to sometime in 1998.  *Id.* Ex. 8 at 12:16-13:11.  Accordingly, he could provide no relevant information from this period.

A jury would benefit from Dr. Riaziat's testimony in this case, yet, Varian's counsel, who also represented Dr. Riaziat in his deposition, has indicated that Dr. Riaziat would not consent to

1   being further questioned.  *See* Tautkus Decl. Ex. 22 (letter dated February 4, 2008, from Varian's

2   counsel stating "Majid Riaziat does not agree to be deposed [any further]").  Accordingly, it is

3   highly unlikely that Dr. Riaziat would attend the trial without a subpoena, much less voluntarily

4   travel over 2,500 miles to a trial in Pittsburgh.  At a trial in Pennsylvania, the jury will likely only

5   hear from Varian's self-interested witnesses.

6        Varian complains that the inventors cannot be compelled to testify at a California trial.  Of

7   course, one of the inventors, Dr. Shimoga, lives in San Jose, and was deposed in Menlo Park for the

8   Pennsylvania Litigation.  *Id.* Ex. 23 at 2:12-17, 7:13-17.  Moreover, the inventors all signed

9   assignments where they agreed to testify as needed.  *See* Docket Entry 1 (Complaint Exs. 2, 4).  In

10  any event, since their inventions are under attack by Varian, the inventors will likely be motivated to

11  attend the trial regardless of its location.  The same cannot be said of former employees of Varian.

12       This factor favors California as the forum.[3]

13                    **3.    Cost Of Obtaining Attendance Of Willing Witnesses**

14       Given Varian is located in this district, the cost of bringing its witnesses to trial will be less

15  here than in Pennsylvania.  Even Varian's experts are largely located in California.  Varian's

16  technical expert, Dr. Steve Jiang, is located in San Diego.  Tautkus Decl. Ex. 24 at 1.  Both parties'

17  damages experts are in Northern California.  *Id.* Ex. 25 (letter disclosing Varian expert, Bruce

18  McFarlane, along with CV and Protective Order undertaking signed in Mountain View), Ex. 26

19  (letter disclosing UPitt expert, Paul Meyer, and CV of Meyer listing office address as San

20  Francisco).  By filing this suit here, UPitt assumed the cost of bringing witnesses to a trial here.

21  Nonetheless, UPitt's software infringement expert, Barb Frederiksen, is located in Oregon, and thus

22  California is more convenient for her than Pennsylvania.  *Id.* Ex. 27 (protective order undertaking

23  signed in Portland, Oregon).

24       This factor favors California as the forum.

25

26  _____

    [3] Varian asserts that it "was denied the opportunity to depose" two witnesses that can only be
    compelled to testify in Pennsylvania.  Varian's Mem. in Supp. at 8.  To the contrary, Varian chose
    not to depose those witnesses.  Each side was allowed to take ten depositions, as provided by the
27  Federal Rules of Civil Procedure, and Varian chose not to include those two witnesses in the
    witnesses they deposed.

28

### 4.     Possibility Of View Of Premise

Varian has its headquarters and manufacturing facilities in this district, and in its Memorandum in Support at 14, Varian admits that it "makes and/or assembles some of the accused products here [*i.e.*, in this District]."  Therefore, the infringing products and their manufacture can be better viewed in this district than in Pennsylvania.  This factor favors California as the forum.

### 5.     California Has An Interest Due To Employment Of Its Citizens At Varian

Varian is a California company with many California employees.  Varian is facing substantial liability in this matter.  Therefore, California has an interest in this controversy.  This factor favors California as the forum.

### 6.     Other Factors Favor California As The Forum

#### a.     The Location Of Counsel Favors California To The Extent It Has Any Relevance At All

Varian says that another factor supporting transfer is that "UPitt's lead counsel has an office in Pittsburgh."  Varian's Mem. in Supp. 15.  UPitt's lead lawyer, Daniel Johnson, Jr., is a California lawyer, whose office is here in San Francisco.  Varian's lead counsel, William Anthony, is in Menlo Park.  While convenience of the lawyers is not normally a factor in deciding a motion to transfer, the presence of the defendant, and counsel for both parties, in this District strongly supports this District as a reasonable forum for this dispute to be resolved.[4]

#### b.     Varian Uses The California Courts When It Suits Varian's Interests – It Should Not Complain About Having To Defend This Case In California

Varian has not hesitated to initiate litigation in courts in California when Varian perceives litigation in this forum to be in its interest.  *See Varian Med. Sys., Inc. v. Delfino*, 113 Cal. App. 4th 273 (Cal. Ct. App. 2003) (suit filed by Varian); *Utley v. Varian Assocs.*, 625 F. Supp. 104 (N.D. Cal.

---

[4] Varian makes reference to source code being transported from Switzerland.  Varian's Mem. in Supp. at 2.  Notably, the source code was made available for inspection at the offices of Varian's counsel, in Menlo Park, where, presumably, it remains today unless Varian has moved it.  Tautkus Decl. Ex. 28.

1  1985) (cased removed to this Court by Varian).[5]  These prior cases show that litigation in this Court

2  is not inconvenient to Varian.

3       *Accelinear Service Co. v. Varian Associates, Inc.*, No. 3:96 CV 01275 (WWE), 1996 U.S.

4  Dist. LEXIS 22675 (D. Conn. Oct. 16, 1996) (Tautkus Decl. Ex. 29), is informative of the

5  disingenuousness of Varian's positions in this case.  *Accelinear* concerned the terms under which

6  Varian would supply replacement parts for its products.  *Id.* at *3-4.  After being threatened with suit

7  about the revision of those terms, Varian filed a declaratory judgment action in this District, but did

8  not name Accelinear.  *Id.* at *4-5.  Accelinear later challenged the revised terms in a suit filed in

9  Connecticut.  *Id.* at *5.  Varian moved to transfer the Connecticut case *to the Northern District of*

10  *California*, even though the Connecticut case was the first-filed action.  *Id.* at *1.  The reasons

11  Varian gave are telling:

12        Varian argues that California is the locus of operative facts, relevant witnesses and
          documents, and, therefore the convenience of the parties and witnesses is best served
13        by a transfer. . . .  [T]he parts implicated by the new policy are invoiced and shipped
          from California; and any injunctive relief afforded Accelinear Service would have to
14        be enforced in California where Varian is located.  Moreover, Varian argues that all
          of its employee-witnesses are in California . . . .  Similarly, Varian's documents . . .
15        are in California.

16  *Id.* at *7-8.  The Court transferred the case to the Northern District of California where Varian's

17  declaratory judgment action was pending.[6]  *Id.* at *13.

18       Another example of Varian seeking out a California court by a transfer motion is *Sinclair Oil*

19  *Corp. v. Union Oil Co. of California*, 305 F. Supp. 903 (S.D.N.Y. 1969).  Varian was one of several

20  defendants to move to transfer the case to the Central District of California, or alternatively, to the

21  *Northern District of California.  Id.* at 903.  Again, Varian's arguments contradict the positions

22  taken herein:

23        These affidavits assert generally . . . (2) that all Varian Associates' records, drawings,
          and documents relating to the development and construction of the invention are
24        located in Palo Alto, California, (3) that Varian Associates' corporate facilities and
          technical personnel necessary to assist in the trial preparation of exhibits and

25  _____

26  [5] Varian Associates is the predecessor of the current Varian Medical Systems, Inc.  Tautkus Decl.
    Ex. 10 at 15:12-16:24.
27  [6] Varian was so motivated to obtain the California forum that it filed its declaratory judgment action
    before the revised terms were even final, something the Connecticut Court noted that the other forum
28  had termed "premature."  *Id.* at *12-13.

demonstrations, and all potential witnesses in this regard, are located in Palo Alto, and (4) that it would be more convenient for four named witnesses to testify in California.

*Id.* at 904.  However, the Court was unmoved, respected the plaintiff's choice of New York as the forum, and denied Varian's request.  *Id.*

Varian's seeking out of the California forum when it believes that forum gives it an advantage, or otherwise suits its purposes, weighs heavily against its claim of inconvenience to litigate this case in California.

## V.    CONCLUSION

UPitt filed this case in the District because it is the most reasonable forum to resolve this dispute in a timely and convenient manner.  California is a convenient forum for this case, as demonstrated by the *Decker Coal* factors discussed herein, and by Varian repeatedly choosing this forum to litigate other matters.  Varian's Motion to Transfer should be denied.

Respectfully submitted,

Dated:  July 11, 2008

DANIEL JOHNSON, JR.
RITA E. TAUTKUS
MORGAN LEWIS & BOCKIUS LLP

By: /s/ Daniel Johnson, Jr.
     Daniel Johnson, Jr.
     Attorneys for Plaintiff
     UNIVERSITY OF PITTSBURGH

1  DANIEL JOHNSON, JR. (SBN 574090)
   RITA E. TAUTKUS (SBN 162090)
2  MORGAN, LEWIS & BOCKIUS LLP
   One Market, Spear Street Tower
3  San Francisco CA 94105
   Telephone:  (415) 442-1000
4  Facsimile:  (415) 442-1001
   Email:  djjohnson@morganlewis.com
5  Email:  rtautkus@morganlewis.com

6  Attorneys for Plaintiff
   UNIVERSITY OF PITTSBURGH

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11  _____     Case No. CV 08-02973 MMC

12  UNIVERSITY OF PITTSBURGH OF THE
    COMMONWEALTH SYSTEM OF HIGHER
    EDUCATION d/b/a UNIVERSITY OF        **[PROPOSED] ORDER DENYING
13  PITTSBURGH                           MOTION TO TRANSFER BY VARIAN
                                         MEDICAL SYSTEMS, INC.**
14               Plaintiff,

15        v.

16  VARIAN MEDICAL SYSTEMS, INC.

17               Defendant.

18  _____

19

20        After full consideration, and good cause appearing, the Court hereby denies the motion by

21  Defendant Varian Medical Systems, Inc. to transfer this case to the Western District of

22  Pennsylvania.  This action was properly filed in this Court and should remain in the Northern

23  District of California.

24  IT IS SO ORDERED.

25  Dated: _____, 2008

26                                       _____
                                         The Honorable Maxine M. Chesney
27                                       United States District Court Judge

28

[PROPOSED] ORDER DENYING MOTION TO TRANSFER                                    1
 (Case No. CV 08-02973 MMC)
DB2/20757527.1