1   WILLIAM L. ANTHONY, JR.  (State Bar No. 106908)
    wanthony@orrick.com
2   MATTHEW H. POPPE  (State Bar No. 177854)
    mpoppe@orrick.com
3   ZHENG LIU  (State Bar No. 229311)
    jenliu@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, California 94025
    Telephone:      +1-650-614-7400
6   Facsimile:      +1-650-614-7401

7   Attorneys for Defendant
    VARIAN MEDICAL SYSTEMS, INC.
8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12

13  UNIVERSITY OF PITTSBURGH OF THE          Case No.  CV 08-02973 MMC
    COMMONWEALTH SYSTEM OF HIGHER
14  EDUCATION d/b/a UNIVERSITY OF            **VARIAN'S REPLY MEMORANDUM
    PITTSBURGH, a Pennsylvania non-profit    OF POINTS AND AUTHORITIES IN
15  corporation (educational),               SUPPORT OF ITS MOTION TO
                                             TRANSFER ACTION TO U.S.
16                      Plaintiff,           DISTRICT COURT FOR WESTERN
                                             DISTRICT OF PENNSYLVANIA**
17           v.
                                             **[28 U.S.C. § 1404(a)]**
18  VARIAN MEDICAL SYSTEMS, INC., a
    Delaware corporation,                    Date:        August 29, 2008
19                                           Time:        9:00 a.m.
                        Defendant.           Courtroom:   7, 19th Floor
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 2

    A.   UPitt's Argument That It Could Not Have Brought This Case in the
        Western District of Pennsylvania Is Plainly Incorrect ........................................... 2

        1.   Whether a Case Could Have Been "Brought" in a Court Depends
             Solely on Subject Matter Jurisdiction, Venue, and Service of
             Process .................................................................................................... 2

        2.   This Action Could Have Been Brought in the Pennsylvania Court ........... 4

        3.   Varian's Res Judicata Defense Applies Equally in Both Courts ............... 5

    B.   The Relevant Factors Favor Transfer to the Pennsylvania Court ........................... 6

        1.   UPitt Does Not Dispute That Its Choice of Forum Gets No
             Deference ................................................................................................. 6

        2.   The Pennsylvania Court's Familiarity With the Case Favors
             Transfer ................................................................................................... 6

        3.   Varian Has More Than Merely a "Colorable" Res Judicata Defense ....... 10

        4.   Other Convenience Factors Favor Transfer to the Western District
             of Pennsylvania ....................................................................................... 14

III. CONCLUSION ............................................................................................................. 15

1

## TABLE OF AUTHORITIES

2

**Page**

3

### CASES

4

*Adolph Coors Co.* v. *Sickler*,
    608 F. Supp. 1417 (C.D. Cal. 1985)........................................................... 11

5

*Arete Power, Inc.* v. *Beacon Power Corp.*,
6    2008 WL. 508477 (N.D. Cal. Feb. 22, 2008) .............................................. 2

7

*Blonder-Tongue Labs., Inc.* v. *University of Ill. Found.*,
    402 U.S. 313, 91 S. Ct. 1434 (1971).......................................................... 4

8

*Boswell* v. *Baton*,
9    1993 U.S. Dist. LEXIS 10898 (N.D.N.Y. Aug. 4, 1993) .......................... 3

10

*Botkin* v. *Safeco Ins. Co. of America, Inc.*, ,
    2003 WL. 1888873 (N.D. Cal. Apr. 14, 2003) .......................................... 2

11

*Huron Holding Co.* v. *Lincoln Mine Operating Co.*,
12    312 U.S. 183, 61 S. Ct. 513 (1941) ........................................................... 11

13

*Intellectual Property Dev., Inc.* v. *TCI Cablevision of Cal., Inc.*,
    248 F.3d 1333 (Fed. Cir. 2001)................................................................. 12

14

*Itel FL., Inc.* v. *Container Land Assocs..*,
15    1997 WL. 229951 (N.D. Cal. Apr. 22, 1997) ........................................... 3

16

*Manildra Milling Corp.* v. *Ogilvie Mills, Inc.*,
    76 F.3d 1178 (Fed. Cir. 1996)................................................................... 6

17

*Marin* v. *Hew, Health Care Financing Agency*,
18    769 F.2d 590 (9th Cir. 1985)..................................................................... 11

19

*Media Techs. Licensing, LLC* v. *Upper Deck Co.*,
    334 F.3d 1366 (Fed. Cir. 2003).......................................................... 12, 13

20

*ProtoComm Corp.* v. *Novell, Inc.*,
21    1998 U.S. Dist. LEXIS 9636 (E.D. Pa. June 29, 1998) ........................... 12

22

*Ray* v. *Bluehippo Funding, LLC*,
    2007 U.S. Dist. LEXIS 91060 (N.D. Cal. Dec. 4, 2007) ...................... 7, 8

23

*Reiffin* v. *Microsoft Corp.*,
24    104 F. Supp. 2d 48 (D.D.C. 2000) ................................................. 1, 8, 9, 10

25

*SNK Corp. of Amer.* v. *Atlus Dream Entertainment Co.*,
    Case No. C98-21035 (N.D. Cal. Feb. 24, 1999) (Tautkus Decl. Ex. 16) ................ 7

26

*In re Schimmels*,
27    127 F.3d 875 (9th Cir. 1997)..................................................................... 12

28

1

### TABLE OF AUTHORITIES
### (continued)

2

Page

3

*Schreiber* v. *Allis-Chalmers Corp.*,
    448 F. Supp. 1079 (D. Kan. 1978) ..................................................................... 3, 4

4

*Semtek Int'l Inc.* v. *Lockheed Martin Corp.*,
    531 U.S. 497, 121 S. Ct. 1021 (2001) ............................................................ 5, 6, 12

5

6

*Shalaby* v. *Newell Rubbermaid, Inc.*,
    2007 WL 3144357 (N.D. Cal. Oct. 24, 2007) ........................................................ 2

7

*Stewart* v. *U.S. Bancorp*,
    297 F.3d 953 (9th Cir. 2002) ............................................................................. 11

8

9

*Sykes* v. *Eckankar*,
    1998 WL 296368 (N.D. Cal. May 29, 1998) ................................................. 1, 7, 8

10

*Tripati* v. *Henman*,
    857 F.2d 1366 (9th Cir. 1988) ............................................................................ 11

11

12

*United States* v. *Shanbaum*,
    10 F.3d 305 (5th Cir. 1994) ................................................................................. 4

13

*Van Dusen* v. *Barrack*,
    376 U.S. 612, 84 S. Ct. 805 (1964) ...................................................................... 3

14

15

*Williams* v. *Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) ................................................................ 2

16

*Wong* v. *Regents of University of California*,
    410 F.3d 1052 (9th Cir. 2005) ............................................................................ 13

17

18

*Yang* v. *Odom*,
    409 F. Supp. 2d 599 (D.N.J. 2006) .................................................................... 3, 4

19

### FEDERAL RULES AND STATUTES

20

21

35 U.S.C. § 285 ................................................................................................ 9, 10

22

28 U.S.C. §§ 1331, 1338 ......................................................................................... 4

23

28 U.S.C. § 1338 .................................................................................................... 1

24

28 U.S.C. § 1404(a)] ...................................................................................... 1, 2, 4

25

Fed. R. Civ. P. 8(c) ................................................................................................ 4

26

Fed. R. Civ. P. 16 ........................................................................................... 11, 13

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2
                                                                                                    **Page**

3

**OTHER AUTHORITIES**

4
15 Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 3845 (3d ed.
    2007) ..................................................................................................................................... 2

5

18B Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4466, at 9
    (2d ed. 2002) ......................................................................................................................... 5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **I.    INTRODUCTION**

2        Plaintiff University of Pittsburgh ("UPitt") has confirmed in its opposition brief that it is

3    engaging in pure forum shopping.  UPitt filed suit in this district because it believes the District

4    Court for the Western District of Pennsylvania (the "Pennsylvania Court") would dismiss the

5    case.  UPitt fails to explain, however, why this Court should decide the case differently than the

6    Pennsylvania Court.  If Varian has a valid res judicata defense based on the Pennsylvania Court's

7    dismissal with prejudice of the prior, identical action between the parties, that defense applies

8    equally in any court.  More importantly, the time is not ripe to rule on Varian's res judicata

9    defense.  That task is best tackled by the Pennsylvania Court, which knows the intended scope

10   and effect of the Judgment in which it dismissed the prior action "with prejudice."

11       UPitt argues that transfer to the Pennsylvania Court is not permitted because this action

12   supposedly could not have been "brought" there within the meaning of 28 U.S.C. § 1404(a).

13   However, that inquiry focuses solely on whether the transferee court would have had subject

14   matter jurisdiction over the case; whether venue would have been proper there; and whether

15   service of process could have been effected.  The merits of the action are irrelevant to the inquiry.

16   Under those standards, UPitt clearly could have brought this case in the Pennsylvania Court.

17   UPitt does not dispute that venue would have been proper there or that Varian could have been

18   served if the case had been filed there.  Nor would subject matter jurisdiction have presented an

19   obstacle to bringing the case in Pennsylvania, since this is a patent case over which all federal

20   district courts have subject matter jurisdiction under 28 U.S.C. § 1338.  UPitt claims to have

21   "cured" its lack of standing, so subject matter jurisdiction would not have been lacking on that

22   basis either.  Instead, the alleged impediment to UPitt's claims is Varian's res judicata defense.

23   Because that defense goes to the merits of UPitt's case, it does not affect whether the case could

24   have been "brought" in the Pennsyvania Court within the meaning of section 1404(a).  Moreover,

25   as mentioned above, Varian's res judicata defense applies equally in either court, so a transfer to

26   the Pennsylvania Court will not expose UPitt to a greater risk of dismissal.

27       Balancing the public and private interests clearly favors transfer to the Pennsylvania

28   Court.  Whereas Varian cited the *Reiffin* and *Sykes* cases to show that a res judicata defense

1   should be heard by the court that entered the judgment on which the defense is based, UPitt failed

2   to identify a single case with a contrary holding.  Instead, UPitt relies on cases that had materially

3   different facts and thus are inapposite and unpersuasive here.  Varian's res judicata defense is not

4   merely "colorable," it is almost certain to succeed because a final judgment on the merits was

5   rendered in the prior case and the present case involves exactly the same parties and claims.

6   Because the judgment in the prior case was based not merely on UPitt's lack of standing but also

7   on its dilatoriness and bad faith in failing to add the other patent co-owner as a party earlier and

8   the resulting prejudice to Varian, the Pennsylvania Court acted within its powers in dismissing the

9   prior case with prejudice.  The other factors relevant to a motion to transfer, such as convenience

10  of the parties and witnesses, all favor transfer or are neutral.  Consequently, Varian's motion to

11  transfer should be granted.

12  **II.     ARGUMENT**

13          **A.     UPitt's Argument That It Could Not Have Brought This Case in the Western
                     District of Pennsylvania Is Plainly Incorrect**

14

15                  **1.     Whether a Case Could Have Been "Brought" in a Court Depends
                             Solely on Subject Matter Jurisdiction, Venue, and Service of Process**

16          UPitt argues that this case may not be transferred to the Pennsylvania Court because it

17  could not have been "brought" there in the first instance.  It relies on 28 U.S.C. § 1404(a), which

18  states that a civil action may only be transferred to another district "where [the action] might have

19  been brought."  However, UPitt fundamentally misunderstands the meaning of the statute.

20          The cited language from section 1404(a) only prohibits transfer to courts in which venue

21  would have been improper in the first instance, or which would lack subject matter jurisdiction, or

22  in which the defendant is not subject to service of process.  *See, e.g.,* 15 Wright, Miller & Cooper,

23  *Federal Practice & Procedure: Jurisdiction* § 3845 (3d ed. 2007); *Arete Power, Inc. v. Beacon*

24  *Power Corp.*, 2008 WL 508477, at *2 (N.D. Cal. Feb. 22, 2008) (Brazil, M.J.) ("The proposed

25  transferee court must have subject matter jurisdiction and proper venue, and the defendant must

26  be amenable to service of process issued by that court."); *Shalaby v. Newell Rubbermaid, Inc.*,

27  2007 WL 3144357, at *4 (N.D. Cal. Oct. 24, 2007) (Jenkins, J.); *Williams v. Bowman*, 157

28  F.Supp.2d 1103, 1105 (N.D. Cal. 2001) (Walker, J.); *Botkin v. Safeco Ins. Co. of America, Inc.*,

1  2003 WL 1888873, at *2 (N.D. Cal. Apr. 14, 2003) (Alsup, J.); *Itel FL., Inc. v. Container Land*

2  *Assocs..*, 1997 WL 229951, at *6 (N.D. Cal. Apr. 22, 1997) (Jensen, J.).  In other words, the

3  "might have been brought" requirement of section 1404(a) "concerns a plaintiff's right to institute

4  the action originally, and not possible defense[s] which may be interposed by a defendant, such as

5  a statute of limitations."  *Schreiber v. Allis-Chalmers Corp.*, 448 F. Supp. 1079, 1084 (D. Kan.

6  1978), *rev'd on other grounds*, 611 F.2d 790 (10th Cir. 1979).  Varian's res judicata defense is

7  merely a "possible defense" like the statute-of-limitations defense in *Schreiber*.  Thus, the fact

8  that Varian may have a res judicata defense does not bar transfer to the Pennsylvania Court.

9          To support its argument that this case could not have been brought in the Pennsylvania

10  Court, UPitt cites *Boswell v. Baton*, 1993 U.S. Dist. LEXIS 10898 (N.D.N.Y. Aug. 4, 1993).

11  *Boswell* reached the opposite conclusion of *Schreiber*.  In other words, it held that for transfer to

12  be permitted, "plaintiffs at bar must show that their lawsuit would have been brought within the

13  relevant statute of limitations period" in the transferee court.  *Id*. at *10-11.  UPitt cites this case

14  for the proposition that "courts refuse to transfer cases to another jurisdiction when it appears the

15  asserted claim might be barred in that jurisdiction."  *See* UPitt Opp. Brf. at 8.  Notably, UPitt did

16  not cite a single other case for that proposition, and *Boswell* is simply wrong.  The *Boswell* court

17  cited no authority in support of its statement that the statute of limitations must be satisfied in the

18  transferee court, nor did it explain how it reached that conclusion.  Its holding conflicts with *Van*

19  *Dusen v. Barrack*, 376 U.S. 612, 84 S. Ct. 805 (1964), in which the U.S. Supreme Court held that

20  the "might have been brought" language of section 1404(a) "was [not] intended to restrict the

21  availability of convenient federal forums by referring to state-law rules, such as those concerning

22  capacity to sue, which would have applied if the action had originally been instituted in the

23  transferee federal court."  *Id*. at 621, 84 S. Ct. at 812.  A statute of limitations is another state law

24  rule that, like capacity to sue, should not be considered as a bar to transfer.  At least one other

25  district court has agreed with *Schreiber* that the existence of a statute-of-limitations defense in the

26  transferee court does not bar transfer.  *Yang v. Odom*, 409 F. Supp. 2d 599, 606 (D.N.J. 2006).

27  Regardless, there is no issue of differing law here anyway, as both the Pennsylvania Court and

28  this Court would apply the same law, as discussed *infra*.

1        **2.        This Action Could Have Been Brought in the Pennsylvania Court**

2        Because venue, subject matter jurisdiction, and personal jurisdiction all could have been

3   established in the Pennsylvania Court had this case been filed there originally, this case "might

4   have been brought" there and it may be transferred there under 28 U.S.C. § 1404(a).

5        Varian explained in its opening brief that venue would have been proper in Pennsylvania

6   and that Varian is subject to personal jurisdiction there.  *See* Varian Opening Brf. at 10.  UPitt

7   does not argue otherwise.  In addition, the Pennsylvania Court would have had subject matter

8   jurisdiction over this patent case under 28 U.S.C. §§ 1331, 1338.  Although the prior action

9   between the parties was dismissed for lack of standing, UPitt claims to have resolved its lack of

10  standing by acquiring the patent ownership rights formerly held by Carnegie Mellon University

11  ("CMU").  *See* UPitt Opp. Brf. at 2.  Thus, if UPitt is correct, subject matter jurisdiction would

12  not be defeated by a lack of standing on UPitt's part.[1]

13       The only basis for UPitt's argument that transfer is prohibited is that the Pennsylvania

14  Court supposedly "would refuse to permit refiling in that Court" because it previously dismissed

15  UPitt's claims "with prejudice" — in other words, UPitt's claims would be barred by the doctrine

16  of res judicata.  *See* UPitt Opp. Brf. at 7-8.  However, a res judicata defense goes to the merits of

17  a claim, not to venue, subject matter jurisdiction, or personal jurisdiction.  Thus, it does not affect

18  whether the claim "might have been brought" in the transferee court under section 1404(a).  Res

19  judicata is an affirmative defense, just like the statute of limitations defense that the *Schreiber* and

20  *Yang* cases discussed above held did not prevent transfer.  *See supra* at 3; *see also* Fed. R. Civ. P.

21  8(c) (res judicata and statute of limitations are affirmative defenses that must be included in a

22  responsive pleading); *Blonder-Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 350,

23  91 S. Ct. 1434, 1453 (1971) ("*Res judicata* and collateral estoppel are affirmative defenses that

24  must be pleaded."); *United States v. Shanbaum*, 10 F.3d 305, 312 (5th Cir. 1994) (failure to plead

25  res judicata may constitute waiver of the defense).  As a result, courts have held that the existence

26  of a possible res judicata defense in the transferee court does not bar transfer but actually *supports*

27

28

---

[1] Varian has not had the opportunity to test the factual contentions underlying UPitt's standing argument and it reserves the right to do so.

1   a motion to transfer.  *See* Varian Opening Brf. at 11-13 (discussing *Reiffin* and *Sykes*).  UPitt does

2   not cite a single case in which a court *denied* a motion to transfer based on the existence of a res

3   judicata defense in the transferee court.

### 3.    Varian's Res Judicata Defense Applies Equally in Both Courts

5           UPitt's argument that this case may not be transferred to the Pennsylvania Court is based

6   in part on the premise that Varian's res judicata defense may be valid in that court but not in this

7   Court, such that transfer would doom an otherwise valid claim.  *See* UPitt Opp. Brf. at 5-8.  There

8   is no basis for that assertion.  The dismissal of the prior patent action between the parties "with

9   prejudice" bars the refiling of that action in *any* court, not just the Pennsylvania Court.  Another

10  rule would conflict with the federal goal of uniformity in the application of claim preclusion rules

11  in federal question cases.  *See* 18B Wright, Miller & Cooper, *Federal Practice and Procedure:*

12  *Jurisdiction* § 4466, at 9 (2d ed. 2002) ("reliance on state law [for rules of claim preclusion]

13  would prevent uniformity and might threaten effective protection of federal rights.").

14          UPitt bases its argument largely on the U.S. Supreme Court case of *Semtek Int'l Inc. v.*

15  *Lockheed Martin Corp.*, 531 U.S. 497, 121 S. Ct. 1021 (2001).  UPitt incorrectly describes the

16  holding of that case as follows:  "[w]hen a court decides a case on a basis other than the substance

17  of the underlying claims, *e.g.*, on personal jurisdiction, standing, or statute of limitations, that

18  decision does not preclude refiling of the claims in another court where that obstacle does not

19  exist."  *See* UPitt Opp. Brf. at 5 (emphasis omitted).  In fact, *Semtek* contains no such holding.

20  *Semtek* stands only for the narrow proposition that state law determines whether the dismissal of a

21  federal diversity case based on a state law statute of limitations has claim preclusive effect.  *See*

22  *Semtek*, 531 U.S. at 508-09, 121 S. Ct. at 1028-29.  *Semtek* did not decide whether the plaintiff's

23  re-filed claim was actually precluded (it remanded for that determination to be made), and it did

24  not address the claim preclusive effect of dismissals based on personal jurisdiction, standing, or

25  other grounds "other than the substance of the underlying claims."  *See id*.

26          Because *Semtek* was a diversity case, its holding was guided by the principles underlying

27  the *Erie* doctrine.  *See id.* at 508, 121 S. Ct. at 1028.  In other words, "[s]ince state, rather than

28  federal, substantive law is at issue there is no need for a uniform federal rule."  *Id*.  Instead, to

1   discourage forum shopping, it was deemed more important that federal courts in diversity cases

2   apply the same claim preclusion rules as the states in which they are located. *Id*. The present

3   case and the Pennsylvania case, by contrast, are patent cases governed exclusively by federal law.

4   As in other federal question cases, "the res judicata effects of a federal judgment in patent-

5   infringement litigation are measured by federal law in a subsequent federal-court action for patent

6   infringement." 18B Wright, Miller & Cooper, *supra*, § 4466 at 6 n. 7. Unlike in diversity cases,

7   federal courts in federal question cases aspire to achieve uniformity among all federal courts

8   rather than between federal courts and their state counterparts. *See, e.g., id*. § 4466, at 9. Indeed,

9   the interest in national uniformity is so strong in patent cases that a special appeals court (the

10  Federal Circuit) was created for patent cases to further that goal. *See, e.g., Manildra Milling*

11  *Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1181 (Fed. Cir. 1996). Thus, unlike in *Semtek*, the

12  uniformity policies applicable here dictate that a final judgment in a patent case should be given

13  the same claim preclusive effect in all federal courts nationwide. There is no reason why the

14  result should be different in this court than in the Pennsylvania Court.

**B.    The Relevant Factors Favor Transfer to the Pennsylvania Court**

**1.    UPitt Does Not Dispute That Its Choice of Forum Gets No Deference**

17      UPitt claims that its choice of forum should be respected, but it does not challenge the

18  case law cited by Varian in its opening brief showing that "substantially less deference [to the

19  plaintiff's choice of forum] is warranted when the forum preferred by the plaintiff is not his home

20  forum." *See* Varian Opening Brf. at 11.

**2.    The Pennsylvania Court's Familiarity With the Case Favors Transfer**

22      In its opening brief, Varian explained that the Pennsylvania Court's familiarity with this

23  case strongly supports transfer to that court. It cited cases holding that a res judicata defense is

24  better decided by the court that issued the prior judgment on which the defense is based. It also

25  showed that the Pennsylvania Court has extensive experience with the parties, patents, and issues

26  in this case such that it can manage the case more efficiently. *See* Varian Opening Brf. at 11-14.

27      UPitt argues that because the prior action between the parties is "over" (despite the fact

28  that an appeal is pending), "the case for transfer is substantially diminished." It relies primarily

- 6 -

1   on *SNK Corp. of Amer. v. Atlus Dream Entertainment Co.*, Case No. C98-21035 (N.D. Cal. Feb.

2   24, 1999) (Tautkus Decl. Ex. 16).[2]  That unpublished case states on its face that "This disposition

3   is not appropriate for publication *and may not be cited*." *Id.* at 1 n.1 (emphasis added).  The local

4   rules of this Court prohibit citing such cases. Civil LR 3-4(e).  UPitt's disregard of the local rules

5   is typical of the conduct that got the Pennsylvania case dismissed in the first place.

6       *SNK* is weak authority in any case.  There, an initial action was filed in the Central District

7   of California alleging patent infringement.  After only five months, the plaintiff *voluntarily*

8   dismissed its claims. *SNK* at 3.  There is no indication in the order that the court had any other

9   involvement with the action prior to dismissal.[3]  After dismissal, the defendants filed a new action

10  in the Northern District of California alleging among other things that the prior action was

11  wrongful.  *Id.*  The court denied a motion to transfer the case to the Central District, holding that

12  any saving of judicial resources would be minimal.  *Id.* at 4.  As can be seen, however, the claims

13  in that case were merely *related* (patent infringement in one case, malicious prosecution and

14  antitrust in the other).  They were not *identical* as in this case.  There was no indication that the

15  court would have to address issues of claim preclusion.  There was no likelihood that the first

16  case would be reversed and remanded by an appellate court, such that two identical cases would

17  be pending in different courts.  Thus, the case for transfer was much weaker than here or in the

18  *Sykes* case, where Judge Illston ruled that the "interests of justice" favored "having defendants'

19  claim of res judicata decided by a judge with knowledge of the previous litigation between the

20  parties . . . ." *Sykes v. Eckankar*, 1998 WL 296368, *1 (N.D. Cal. May 29, 1998).

21      The only other case that UPitt cites for the proposition that transfer is less favored when a

22  prior related case is "over" is *Ray v. Bluehippo Funding, LLC*, 2007 U.S. Dist. LEXIS 91060

23  (N.D. Cal. Dec. 4, 2007).  Like *SNK*, *Ray* involved a very weak case for transfer.  The prior cases

24

25  [2] "Tautkus Decl." refers to the Declaration of Rita Tautkus, Esq. in Opposition to Varian's Motion to Transfer, filed on July 11, 2008.

26  [3] There is a statement in *SNK* that the judge who presided over the first case in the Central District may have had "independent knowledge going to the merits of SNK's claims in this action, based

27  on his personal observations during the underlying actions." *SNK* at 4.  The opinion does not explain what the basis for any such independent knowledge was or what the judge allegedly

28  observed during the first action between the parties.

1    that allegedly supported the motion to transfer in *Ray* had been completely dismissed or sent to

2    arbitration when the later case was filed, and an appeal had also been dismissed. *See id*. at *5-6.

3    Thus, unlike here, "there is no danger of having duplicative causes of action." *Id*. at *6 (quoting

4    another case in which a different court had denied a motion to transfer by the same defendant).

5    The dismissals were voluntary, and there is no other indication that the court in the prior case had

6    any involvement with the parties or issues.  There is no mention of any possibility that claim

7    preclusion might apply.  Thus, the basis for transfer found in such cases as *Sykes* was lacking.

8         An even stronger case than *Sykes* in support of Varian's transfer motion is *Reiffin v.*

9    *Microsoft*, which Varian discussed at length in its opening brief.  *See Varian Opening Brf. at 11-*

10   13.  UPitt argues, absurdly, that the only similarity between *Reiffin* and the present case is that

11   both involved motions to transfer.  *See UPitt Opp. Brf. at 9.  Apparently UPitt does not consider

12   the following to be similarities:  both cases involve an initial patent infringement suit that was

13   dismissed with prejudice; both cases involve a pending appeal from the first case that creates a

14   substantial risk of future duplicative actions pending in different courts; and both cases involve

15   res judicata defenses, which the court that dismissed the prior action is "better suited" to decide.

16   *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 57 (D.D.C. 2000).  UPitt argues that in *Reiffin* the

17   transferor court was a "far-flung forum" as to which the defendant had no contacts.  However,

18   there is no mention in the case that the defendant had better contacts with the transferee forum.

19   The transferee court was in California, whereas Microsoft is a Washington corporation.  The basis

20   for the transfer in *Reiffin* was the transferee court's involvement in the prior case, not the court's

21   proximity to the defendant's principal place of business.  *See id*. at 55-58.  The *Reiffin* court

22   devoted little attention to so-called "private-interest factors" and found that they were mostly

23   neutral in the transfer analysis.  *Id*. at 53.  UPitt also points out that the dismissal in *Reiffin* was

24   based on invalidity of the patents-in-suit whereas the dismissal in the Pennsylvania case was

25   based on UPitt's lack of standing.  *See UPitt Opp. Brf. at 9.  If anything, however, that heightens

26   the importance of transfer here.  The Pennsylvania Court will know better than any other court

27   why UPitt's lack of standing justified dismissal "with prejudice" and what the claim preclusive

28   effects of that dismissal should be.  Another reason why the present case is an even better

VARIAN'S REPLY ISO MOTION TO TRANSFER
ACTION TO WESTERN DIST. OF PENNSYLVANIA
(Case No. CV 08-02973 MMC)

candidate for transfer than *Reiffin* is that the causes of action here are 100% identical to those in the Pennsylvania case, whereas in *Reiffin* the claims were based on antitrust law and thus were related to but not the same as the patent infringement claims in the prior case. *See Reiffin*, 104 F. Supp. 2d at 49-50.

UPitt tries to minimize the Pennsylvania Court's involvement with the prior case and its knowledge of the parties and issues, repeatedly focusing on the fact that the dismissal in the prior action was based on standing rather than non-infringement or invalidity. *See* UPitt Opp. Brf. at 9, 11-12. However, it is not true that "[t]here were no motions related to infringement or validity filed in the Prior Litigation, and the Court made no decisions in respect of those topics." *See id.* at 9. To the contrary, the Pennsylvania Court decided the following motions that discussed and required the court's consideration of the merits:

1.   On June 25, 2007, Varian filed a Motion to Compel Plaintiff to Provide Further Infringement Contentions. *See* Reply RJN, Ex. A.[4]  The motion contained a lengthy discussion of the patents, UPitt's infringement theories, and related claim construction principles. *See id.*; *see also* RJN, Ex. D (related order).[5]

2.   On September 5, 2007, Varian filed a Motion for Leave to Take More Than Ten (10) Fact Depositions. *See* RJN, Ex. X.  The motion discussed case theories and identified and discussed the relevance of numerous fact witnesses. *See id.*; *see also* RJN, Ex. E (related order).

3.   On January 16, 2008, Varian filed a Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure and/or 35 U.S.C. § 285. *See* Reply RJN, Ex. B.  One of the grounds for that motion was "UPitt's lack of a reasonable basis to allege infringement." *Id.* at 2.  Varian devoted six pages of its brief to address

---

[4] "Reply RJN" refers to Varian's Reply Request for Judicial Notice in Support of Motion to Transfer Action to U.S. District Court for Western District of Pennsylvania, filed herewith.

[5] "RJN" refers to the Request for Judicial Notice in Support of Defendant Varian Medical Systems, Inc.'s Motion to Transfer Action to U.S. District Court for Western District of Pennsylvania, filed with Varian's opening papers on June 27, 2008.

1    that issue in detail. *See id.* at 10-16; *see also* RJN, Ex. Y, text entry dated 4/30/08

2    (related order).

3    4.    On February 6, 2008, Varian filed a Motion for Leave to File Amended Answer

4    and Counterclaim. *See* Reply RJN, Ex. C. The motion presented a detailed

5    discussion of Varian's proposed inequitable conduct defense with respect to each

6    of the UPitt patents-in-suit. *See id.* at 8-12; *see also* RJN, Ex. Q.

7    Several other motions that were fully briefed and decided by the Pennsylvania Court likewise

8    contained discussion of the merits. In addition, in March 2008 the Pennsylvania Court requested

9    that each party submit a letter to the court addressing that party's views of the merits of the case

10    in preparation for a settlement conference to be conducted by the court. Poppe Reply Decl. ¶ 2.

11    In response, Varian submitted a nine-page, single-spaced letter. *Id.* The court reviewed and

12    considered the letter, as shown by its comment in a subsequent order that it was a "thoughtful

13    submission." *See* RJN, Ex. R at 5-6. Finally, as Varian noted in its opening brief, a special

14    master conducted claim proceedings that involved extensive briefing and a full day of tutorials,

15    live testimony, and oral argument. *See* Varian Opening Brf. at 5-6.

16    Thus, as shown, UPitt is wrong in stating that the motions decided by the Pennsylvania

17    Court do not "have any relevance to the issues to be tried in this Court." *See* UPitt Opp. Brf. at

18    11. Moreover, trial is not the only concern. The Pennsylvania Court's familiarity with the case

19    means that it should be able to handle case management responsibilities, discovery disputes, and

20    other proceedings more efficiently as well. *See Reiffin*, 104 F. Supp. 2d at 55. The experience

21    gained by the Pennsylvania Court in presiding over the case for 14 months, ruling on over 20

22    motions, and entering final judgment dismissing UPitt's claims with prejudice cannot be ignored.

23    **3.    Varian Has More Than Merely a "Colorable" Res Judicata Defense**

24    Another reason why UPitt argues Varian's motion should be denied is that Varian does

25    not have a "colorable" res judicata defense. *See* UPitt Opp. Brf. at 11. That should not be a

26    factor as it requires assessing the merits of the case, which Varian has explained should be left for

27    the Pennsylvania Court after transfer. Nevertheless, Varian will briefly discuss the basis for its

28    res judicata defense to show that the defense is much more than merely "colorable."

1   Res judicata has three elements.  Specifically, there must be a prior action that involved

2   (1) the same claims, (2) the same parties or their privies, and (3) a final judgment on the merits.

3   *E.g. Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).  "Final judgment on the merits"

4   is synonymous with "dismissal with prejudice."  *Id.*  UPitt does not deny that this case involves

5   the same claims and parties as the Pennsylvania case, or that a final judgment containing a

6   dismissal with prejudice was entered in the Pennsylvania case.  *See* Varian's Opening Brf. at 3, 6-

7   7.[6]  UPitt's only argument is that the Pennsylvania judgment was not "on the merits" because it

8   was based on UPitt's lack of standing rather than issues such as non-infringement or invalidity.

9   *See* UPitt Opp. Brf. at 6-7.  However, the Pennsylvania Court properly found that the prior case

10  could be dismissed with prejudice where (1) UPitt had the ability to cure the standing deficiency

11  by joining its co-owner; (2) UPitt failed to do so in a timely way; (3) UPitt had an improper

12  purpose in failing to join its co-owner previously; (4) UPitt's eventual motion to join its co-owner

13  violated the applicable scheduling order entered pursuant to Fed. R. Civ. P. 16; and (5) Varian

14  would have been prejudiced by untimely joinder.  *See* RJN, Ex. J at 4-5.

15      Many cases have held that a dismissal with prejudice may have claim preclusive effect

16  even where it was based on procedural grounds rather than the merits of the plaintiff's claims.

17  "Even without a determination which is literally on the merits, a denial with prejudice may be a

18  final judgment with a res judicata effect as long as the result is not unfair."  *Marin v. Hew, Health*

19  *Care Financing Agency*, 769 F.2d 590, 593 (9th Cir. 1985) (giving res judicata effect to denial of

20  leave to amend complaint to add claim based on untimeliness).  A court's "findings of prejudice

21  to the defendants and inexcusable delay" justify giving claim preclusive effect to a denial of leave

22  to amend the complaint in a prior case in order "to protect a party from the cost and vexation of

23  multiple lawsuits."  *Adolph Coors Co. v. Sickler*, 608 F. Supp. 1417, 1431-32 (C.D. Cal. 1985).

24  Untimeliness, failure to comply with court rules, discovery abuse, and other procedural failings

---

[6] The fact that the judgment in the Pennsylvania case is on appeal does not prevent it from being
deemed "final" for purposes of res judicata.  *See, e.g., Huron Holding Co. v. Lincoln Mine
Operating Co.*, 312 U.S. 183, 189, 61 S. Ct. 513 (1941); *Tripati v. Henman*, 857 F.2d 1366, 1367
(9th Cir. 1988) ("To deny preclusion in these circumstances would lead to absurd results:
Litigants would be able to refile identical cases while appeals are pending, enmeshing their
opponents and the court system in tangles of duplicative litigation.").

1    have all been found reasonable grounds for giving res judicata effect to dismissals with prejudice.

2    *See, e.g., In re Schimmels*, 127 F.3d 875, 884 (9th Cir. 1997) (summary judgment entered based

3    on party's failure to file opposition brief had res judicata effect; "An involuntary dismissal

4    generally acts as a judgment on the merits for the purposes of *res judicata*, regardless of whether

5    the dismissal results from procedural error or from the court's considered examination of the

6    plaintiff's substantive claims"); *Semtek*, 531 U.S. at 509, 121 S. Ct. at 1028-29 ("If, for example,

7    state law did not accord claim-preclusive effect to dismissals for willful violations of discovery

8    orders, federal courts' interest in the integrity of their own processes might justify a contrary

9    federal rule."); *ProtoComm Corp. v. Novell, Inc.*, 1998 U.S. Dist. LEXIS 9636, *28-31 (E.D. Pa.

10    June 29, 1998) (holding that res judicata barred assertion of claims that were subject of denial of

11    motion for leave to amend in prior case on grounds of untimeliness).

12        UPitt's argument that the judgment in the Pennsylvania case lacks res judicata effect is

13    based primarily on *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366 (Fed. Cir.

14    2003). In *Media Techs.*, the Federal Circuit reversed the district court's ruling that a dismissal

15    with prejudice for lack of standing in a prior patent infringement suit barred the present action.

16    The court found that the dismissal for lack of standing in the prior action did not constitute a

17    judgment "on the merits." *Id*. at 1369-70. However, the holding of *Media Techs.* does not apply

18    here because the facts of the present case are different in two key ways. First, the plaintiff in the

19    first action addressed in *Media Techs.* had no ownership interest in the patents-in-suit whatsoever.

20    *Id*. at 1368. "Therefore it lacked the cognizable injury necessary to assert standing under Article

21    III of the Constitution." *Id*. In other words, the lack of standing completely deprived the court of

22    subject matter jurisdiction. *Id*. at 1369-70. Here, by contrast, UPitt co-owned the patents-in-suit

23    throughout the proceedings. *See* RJN, Ex. S at 2-3; *id*., Ex. U. Thus, UPitt had an Article III

24    basis to assert standing, but it lacked what the Federal Circuit has termed "prudential" standing.

25    *See, e.g., Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348-49

26    (Fed. Cir. 2001). Courts have allowed parties to cure prudential standing defects by amending

27    their pleadings in appropriate cases. *See id*. The second significant difference between *Media*

28    *Techs.* and the present case is that in *Media Techs.*, there was no finding that the plaintiff's failure

1    to address the standing issue earlier was wrongful, dilatory, or prejudicial to the defendant. *See*

2    *Media Techs.*, 334 F.3d at 1368-69. Rather, upon learning that the plaintiff lacked ownership of

3    the patent-in-suit and thus lacked standing to sue, the patent owner promptly assigned the patent

4    to another entity and arranged for that entity to file suit. *Id*. Here, by contrast, the Pennsylvania

5    Court found that UPitt knew all along that CMU was a co-owner and should be joined as a party;

6    that UPitt failed to join CMU in order to obtain tactical advantages in that action; that in doing so,

7    UPitt ignored the scheduling order specifying a date by which all parties must be joined; and that

8    Varian would have been prejudiced by the addition of a new party after the close of discovery and

9    claim construction proceedings. *See* RJN, Ex. J at 2, 4-5.

10    Thus, the dismissal of the Pennsylvania case "with prejudice" was not based on UPitt's

11    lack of standing per se, but was based instead on UPitt's failure to take steps within its power to

12    correct the lack of standing in a timely way in accordance with extant court orders. That decision

13    was within the Pennsylvania Court's discretion. Rule 16(b) expressly directs district courts to

14    include in their scheduling orders a deadline to add parties. Fed. R. Civ. P. 16(b)(3)(A). "[T]he

15    district court needs the authority to manage the cases before it efficiently and effectively." *Wong*

16    *v. Regents of University of California*, 410 F.3d 1052, 1060 (9th Cir. 2005).

17    
18    
19    
20    
21    
22    
> In these days of heavy caseloads, trial courts in both the federal and state systems routinely set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines. Parties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence. The Federal Rules of Civil Procedure explicitly authorize the establishment of schedules and deadlines, in Rule 16(b), and the enforcement of those schedules by the imposition of sanctions, in Rule 16(f).

23    *Id*. UPitt's position would permit a plaintiff, without consequence, to file a case with a known

24    defect; fail to correct that defect despite having the ability to do so, with malicious intent; force a

25    defendant to defend itself on the merits through more than a year of expensive and burdensome

26    litigation; and seek to cure the defect only when forced to do so in violation of a scheduling order

27    and with prejudice to the other party. That unjust result is not mandated by any authority.

28    / / /

4.  **Other Convenience Factors Favor Transfer to the Western District of Pennsylvania**

UPitt argues that the Northern District of California provides easier access to sources of proof and is more convenient for the parties and witnesses.  One wonders, then, why UPitt did not choose to file its first action against Varian in this forum.  UPitt's argument focuses on only part of the case:  the manufacturing, sale, and development of the accused products.  *See* UPitt Opp. Brf. at 13.  With regard to many other issues, such as the development of the patented inventions and the prosecution of the patents, most of the evidence is located within the Western District of Pennsylvania.  *See* Varian Opening Brf. at 7-9, 14-15.  Indeed, even as to the accused products the Western District of Pennsylvania is a more convenient forum for some witnesses because a substantial portion of Varian's manufacturing, sales, and development activities with respect to those products occurs in Europe.  *See id.* at 8.

UPitt identifies only two relevant non-party witnesses who reside in the Northern District of California, both of whom were deposed in the Pennsylvania case.  *See* UPitt Opp. Brf. at 13-14.[7]  By contrast, Varian identified eight non-party witnesses who can only be subpoenaed to testify at trial in the Western District of Pennsylvania, including two of the inventors and two persons whom Varian was unable to depose in the Pennsylvania case.  *See* Varian Opening Brf. at 8-9, 14.  UPitt argues that some of those witnesses might be motivated to attend trial voluntarily, but UPitt cites no case law holding that Varian should be required to rely upon the good will of third party witnesses who are outside the court's subpoena power.  Two of the inventors did not cooperate with discovery in the Pennsylvania case, so there is no reason they would comply with a request by Varian to travel cross-country to appear at trial.  *See* Poppe Reply Decl. ¶ 3.

UPitt has never indicated a need to view Varian's premises, so that factor is neutral.  It is equally theoretically possible that a jury might want to view the premises in Pittsburgh where the

---

[7] UPitt also exaggerates the importance of one of the witnesses (Dr. Majid Riaziat), stating that he managed a project that implemented one of the allegedly infringing systems.  *See* UPitt Opp. Brf. at 13-14.  In fact, the "Arrow" project that Dr. Riaziat managed was merely a predecessor to the project that resulted in the accused RPM system.  The RPM project itself was managed by Hassan Mostafavi, who is still a Varian employee.

1  patented inventions were developed or where some of the accused products are currently being

2  used at the University of Pittsburgh Medical Center.

3      While California undoubtedly has some interest in this case, Pennsylvania's interest is the

4  same or greater since the patent owner and most inventors are located there.

5      The fact that Varian has litigated previously in California and has even moved to transfer

6  other cases to California is irrelevant, since the key factors discussed above that favor transfer to

7  the Pennsylvania Court were not present in those cases.

8  **III.    CONCLUSION**

9      For the reasons set forth above and in Varian's opening brief, Varian respectfully requests

10  that the Court grant its Motion to Transfer Action to U.S. District Court for the Western District

11  of Pennsylvania.

12      Dated:  July 18, 2008

         WILLIAM L. ANTHONY
13       MATTHEW H. POPPE
         ZHENG LIU
14       ORRICK, HERRINGTON & SUTCLIFFE LLP

15

16       By:                /s/ *Matthew H. Poppe*
                            Matthew H. Poppe
17                          Attorneys for Defendant
                         VARIAN MEDICAL SYSTEMS, INC.
18

19

20

21

22

23

24

25

26

27

28

OHS West:260473384.2                          - 15 -        VARIAN'S REPLY ISO MOTION TO TRANSFER
                                                            ACTION TO WESTERN DIST. OF PENNSYLVANIA
                                                            (Case No. CV 08-02973 MMC)

1

## **CERTIFICATE OF SERVICE**

2

3      I hereby certify that a true and correct copy of VARIAN'S REPLY MEMORANDUM OF

POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO TRANSFER ACTION TO

4

U.S. DISTRICT COURT FOR WESTERN DISTRICT OF PENNSYLVANIA was served upon

5

the University of Pittsburgh, through its counsel, via:

6

7

8      _____        Hand-Delivery

9      _____        Facsimile

_____        First Class, US Mail, Postage Prepaid

10

_____        Certified Mail-Return Receipt Requested

11

_____X_____        ECF Electronic Service

12

_____        Overnight Delivery

13

14

15      at the following addresses:

16                          Rita E. Tautkus
                          Morgan Lewis & Bockius, LLP
                          One Market – Spear Street Tower
17                          San Francisco, CA   94105
                          rtautkus@morganlewis.com

18

19

Dated:  July 18, 2008                    \_\_/s/ *Matthew H. Poppe*_____

20                                          Matthew H. Poppe

21

22

23

24

25

26

27

28

OHS West:260473384.2                    - 16 -        VARIAN'S REPLY ISO MOTION TO TRANSFER
                                                      ACTION TO WESTERN DIST. OF PENNSYLVANIA
                                                      (Case No. CV 08-02973 MMC)