1  WILLIAM L. ANTHONY, JR.  (State Bar No. 166026)
   wanthony@orrick.com
2  MATTHEW H. POPPE  (State Bar No. 177854)
   mpoppe@orrick.com
3  ZHENG LIU  (State Bar No. 229311)
   jenliu@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, California 94025
   Telephone:     +1-650-614-7400
6  Facsimile:     +1-650-614-7401

7  Attorneys for Defendant
   VARIAN MEDICAL SYSTEMS, INC.
8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13  UNIVERSITY OF PITTSBURGH OF THE           Case No.  CV 08 2973
    COMMONWEALTH SYSTEM OF HIGHER
14  EDUCATION d/b/a UNIVERSITY OF             **REQUEST FOR JUDICIAL NOTICE**
    PITTSBURGH, a Pennsylvania non-profit     **IN SUPPORT OF VARIAN'S REPLY**
15  corporation (educational),                **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES IN SUPPORT OF ITS**
16              Plaintiff,                     **MOTION TO TRANSFER ACTION**
                                              **TO U.S. DISTRICT COURT FOR**
17       v.                                    **THE WESTERN DISTRICT OF**
                                              **PENNSYLVANIA**
18  VARIAN MEDICAL SYSTEMS, INC., a
    Delaware corporation,                     Date:      August 29, 2008
19                                            Time:      9:00 a.m.
                Defendant.                    Courtroom: 7, 19th Floor
20

21

22

23

24

25

26

27

28

1    Defendant Varian Medical Systems, Inc. ("Varian") respectfully requests that this Court

2   take judicial notice of the following documents pursuant to Federal Rule of Evidence 201 in

3   support of Varian's Reply Memorandum of Points and Authorities in support of its Motion to

4   Transfer Action to the U.S. District Court for the Western District of Pennsylvania.

5
6       1.      Varian's Motion to Compel Plaintiff to Provide Further Infringement Contentions.

7   A true and correct copy of this document is attached hereto as Exhibit A.

8       2.      Varian's Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil

9   Procedure and/or 35 U.S.C. § 285 in the Penn. Case.  The complete copy of the motion was filed

10  under seal pursuant to Protective Order.  A true and correct copy of a redacted copy of this

11  document is attached hereto as Exhibit B.

12
13      3.      Varian's Motion for Leave to File Amended Answer and Counterclaim.  The

14  complete copy of the motion was filed under seal but a redacted copy was filed publicly. A true

15  and correct copy of the publicly filed redacted copy is attached hereto as Exhibit C.

16                              **DISCUSSION**

17      The documents attached hereto are properly subject to judicial notice under Federal Rule

18  of Evidence 201 and established precedent.  This Court Should Take Judicial Notice of Pleadings

19  in the Prior Patent Action Between the Parties in the Western District of Pennsylvania (Exhibits

20  A, B, C).

21
22      It is appropriate for the Court to take judicial notice of the filing of a court pleading, and

23  its entry in court records.  *Beazley v. Fujii*, No. 04-56237, 2007 U.S. App. LEXIS 526, at *2 &

24  n.1 (9th Cir. Aug. 18, 2006) (judicial notice of complaint); *Hunt v. Check Recovery Sys.*, 178 F.

25  Supp. 2d 1157, 1160 (N.D. Cal. 2007) ("Judicial notice may be taken of "adjudicative facts" such

26  as court records, pleadings and other facts not subject to reasonable dispute and either "generally

27  known" in the community or "capable of accurate and ready determination by reference to

28  sources whose accuracy cannot be reasonably questioned.")**;** *Shropshire v. Fred Rappoport Co.*,

REQUEST FOR JUDICIAL NOTICE ISO VARIAN'S
MOTION TO TRANSFER ACTION TO W.D. PENN.
(Case No. CV 08-02973 MMC)

294 F. Supp. 2d 1085, 1091 & n.1 (N.D. Cal. 2003) (taking judicial notice of the documents and

pleadings filed in a state court action); *Western Federal Sav. & Loan Ass'n v. Heflin Corp.*, 797 F.

Supp. 790, 792 (N.D. Cal. 1992) (taking judicial notice of an entire state court action file

involving a judicial foreclosure, including both complaint and answer); *Rayon-Terrell v. Contra*

*Costa County,* No. C-02-2759, 2004 U.S. Dist. LEXIS 22028, at *3 (N.D. Cal. 2004) (taking

judicial notice of defendant's answer); *Piper v. RGIS Inventory Specialists, Inc.*, No. C-07-00032**,**

2007 U.S. Dist. LEXIS 44486, at *3 & n.1 (N.D. Cal. 2007) (taking judicial notice of pleadings in

various actions).

Consequently, the Court may take judicial notice of Exhibits A, B, V, and X (for the fact

that these documents were filed and that the statements contained therein were made to the court

in the Penn. Case, if not for the truth of those statements).

## **CONCLUSION**

For the foregoing reasons, Varian respectfully requests that the Court take judicial notice

of each of the documents referenced herein and attached hereto.

Dated:  July 18, 2008.

WILLIAM L. ANTHONY
MATTHEW H. POPPE
ZHENG LIU
ORRICK, HERRINGTON & SUTCLIFFE LLP


By:_____*/s/ Matthew H. Poppe*_____
                    Matthew H. Poppe
                 Attorneys for Defendant
           VARIAN MEDICAL SYSTEMS, INC.

1

## CERTIFICATE OF SERVICE

2    I hereby certify that a true and correct copy of the REQUEST FOR JUDICIAL NOTICE

3  IN SUPPORT OF VARIAN'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES

4  IN SUPPORT OF ITS MOTION TO TRANSFER ACTION TO U.S. DISTRICT COURT FOR

5  THE WESTERN DISTRICT OF PENNSYLVANIA

6    was served upon the University of Pittsburgh, through its counsel, via:

7

8    _____    Hand-Delivery

9    _____    Facsimile

10   _____    First Class, US Mail, Postage Prepaid

11   _____    Certified Mail-Return Receipt Requested

12   _____X_____    ECF Electronic Service

13   _____    Overnight Delivery

14

15   at the following addresses:

16                    Rita E. Tautkus
                      Morgan Lewis & Bockius, LLP
17                    One Market – Spear Street Tower
                      San Francisco, CA   94105
18                    rtautkus@morganlewis.com

19

20   Dated:  July 18, 2008                    __/s/ Matthew H. Poppe_____
                                                  Matthew H. Poppe
21

22

23

24

25

26   OHS West:260477852.1
     3424-2015 ZL0/SH0
27

28

REQUEST FOR JUDICIAL NOTICE ISO VARIAN'S
                                                 MOTION TO TRANSFER ACTION TO W.D. PENN.
                                                       (Case No. CV 08-02973 MMC)

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNIVERSITY OF PITTSBURGH

      Plaintiff,

  v.

VARIAN MEDICAL SYSTEMS, INC.,

      Defendant.

Case 2:07-cv-00491-AJS

Judge Arthur J. Schwab

**Filed Electronically**

**DEFENDANT VARIAN MEDICAL SYSTEMS, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION**
**TO COMPEL PLAINTIFF TO PROVIDE FURTHER INFRINGEMENT**
**CONTENTIONS AND FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 3

      A.    LPR 3.2 Requires That Plaintiff Serve Infringement Contentions ........................ 3

      B.    Infringement Contentions Must Contain Substantial Detail About
            Plaintiff's Infringement Theories And May Not Simply Mimic The Patent
            Claims ........................................................................................................ 4

            1.    Infringement Contentions Generally .......................................................... 4

            2.    Infringement Contentions In Software Patent Cases ................................... 6

      C.    Plaintiff's Infringement Contentions Do Not Comply With LPR 3.2 ................... 9

            1.    Plaintiff's Infringement Charts Are Inadequate Because They
                  Merely Mimic Back The Language Of The Asserted Patent Claims ........ 9

            2.    The Infringement Contentions Are Inadequate Because They Fail
                  To Explain The Basis for Plaintiff's Claim Of Infringement Under
                  The Doctrine Of Equivalents ................................................................. 12

      D.    Varian Should Not Have To Serve Its Non-Infringement And Invalidity
            Contentions Until After Plaintiff Complies With Its Disclosure
            Obligations ................................................................................................ 12

III.  CONCLUSION ................................................................................................ 14

## I.    **INTRODUCTION**

This is a patent infringement action. Plaintiff University of Pittsburgh ("Plaintiff") alleges infringement of two patents by Defendant Varian Medical Systems, Inc. ("Varian"). The accused products are machines and associated software that deliver radiation therapy to cancer patients. Varian has filed an answer denying infringement, alleging that the patents-in-suit are invalid, and asserting various affirmative defenses.

The Local Patent Rules and the Case Management Order in this action provide for the exchange of disclosures setting forth the parties' contentions on various patent issues. The first such disclosure is Plaintiff's Disclosure of Asserted Claims and Infringement Contentions, one component of which is a series of charts comparing the asserted patent claims with the accused products on an element-by-element basis. This is an important disclosure because it frames the issues, establishes the scope of discovery, and enables the defendant to evaluate the Plaintiff's case and prepare its defense.

On June 15, 2007, Plaintiff served its Disclosure of Asserted Claims and Infringement Contentions (attached hereto as Exhibit A) (the "Infringement Contentions"). This document sets forth Plaintiff's infringement contentions in an extremely minimal and conclusory manner. Rather than "identifying specifically where each element of each asserted claim is found within each Accused Instrumentality," as required by LPR 3.2, the Infringement Contentions do little more than parrot back the language of the asserted claims. Accordingly, Plaintiff has violated both the language and spirit of LPR 3.2. Varian is left with no idea of the true basis for Plaintiff's infringement allegations.

Plaintiff also has failed to comply with the requirement of LPR 3.2 that a party claiming infringement under the doctrine of equivalents (DOE) "explain each function, way, and result that it contends are equivalent, and why it contends that any differences are not substantial." In

1

its Infringement Contentions, Plaintiff purports to "reserve the right" to establish infringement under the DOE. However, Plaintiff has not provided any of the information that LPR 3.2 requires a party claiming infringement under the DOE to provide. Plaintiff should not be permitted to "reserve the right" to argue infringement under the DOE at a later date while shielding its infringement theories from Varian today.

For these reasons, Varian moves to compel Plaintiff to supplement its infringement contentions. In its infringement charts, Plaintiff should be ordered to provide the information required by LPR 3.2 with the degree of specificity permitted by the information in its possession. At a minimum, the infringement contentions should show that Plaintiff's counsel performed an adequate investigation of the infringement claims prior to filing suit to satisfy their obligations under Fed. R. Civ. P. 11. In addition, Plaintiff should be ordered to provide the required DOE information or forego the right to argue infringement under the DOE in this action.

Varian also moves for a protective order to postpone the date by which it must serve its Non-Infringement and Invalidity Contentions.[1] Under the Local Patent Rules, it is the plaintiff's duty to disclose its infringement theories before the defendant discloses its non-infringement and invalidity theories. Plaintiff should not be permitted to effectively reverse the order of disclosure by neglecting its own disclosure duties.

## II.    **ARGUMENT**

### A.    **LPR 3.2 Requires That Plaintiff Serve Infringement Contentions**

This Court has adopted Local Patent Rules that took effect on April 1, 2005 and apply to all patent infringement cases filed in this District. LPR 3.2 imposes upon the plaintiff a duty to

---

[1] Varian has styled this an "Emergency Motion" because otherwise the motion will not be ruled upon until after the due date for Varian's Non-Infringement and Invalidity Contentions—which is currently July 2, 2007.

serve on all other parties a "Disclosure of Asserted Claims and Infringement Contentions." This disclosure must include, among other things:

1. "A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality . . . ." LPR 3.2.

2. For so-called "means-plus-function" claims governed by 35 U.S.C. § 112(6), the chart must also identify "the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." *Id.*

3. A plaintiff alleging infringement under the doctrine of equivalents "shall also explain each function, way, and result that it contends are equivalent, and why it contends that any differences are not substantial." *Id.*

Under the Case Management Order in this case (attached hereto as Exhibit B), Plaintiff's Infringement Contentions were due on June 15, 2007.

The above requirements are modeled on the local patent rules of the Northern District of California and other jurisdictions that have followed in its footsteps, such as the Eastern District of Texas. (*See* Exhibits C, D attached hereto.) In fact, with one exception, the relevant provisions of LPR 3.2 quoted above are word-for-word the same as Patent Local Rule 3-1 implemented in the Northern District of California and the Eastern District of Texas. The exception relates to the doctrine of equivalents. Whereas the other Districts require that a plaintiff state only whether its infringement claim is based on literal infringement or DOE infringement, this District chose to require the additional DOE disclosures mentioned above. (*Compare* LPR 3.2 *with* Exhibits C, D.) Because of the similarities in the local patent rules of these three Districts, related case law from the Northern District of California and the Eastern District of Texas should be persuasive here.

3

**B.    Infringement Contentions Must Contain Substantial Detail About Plaintiff's Infringement Theories And May Not Simply Mimic The Patent Claims.**

    **1.    Infringement Contentions Generally.**

"The Patent Rules require a high level of preparedness from plaintiffs by mandating disclosure of PICs [preliminary infringement contentions] before discovery has even begun." *Fenner Investments, Ltd. v. Juniper Networks Inc.*, 236 F.R.D. 309, 310 (E.D. Tex. 2006). "The party's theories of infringement must be sufficiently particular to provide notice of infringement beyond what is provided by the language of the patent claims themselves." *Id.* "[W]hen parties formulate, test, and crystallize their infringement theories before stating their preliminary infringement contentions, as the Patent Rules require, the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions and narrowing issues for *Markman*, summary judgment, trial, and beyond." *Connectel, LLC v. Cisco Systems, Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005); *see also Orion IP, LLC v. Staples, Inc.*, 407 F. Supp. 2d 815, 817-18 (E.D. Tex. 2006) ("[T]he Patent Rules place [a] heavy burden on plaintiffs to communicate their case to defendants so that both parties may adequately prepare for claim construction and trial . . . .").

Providing adequate infringement contentions requires performing a substantial infringement inquiry prior to filing suit. Infringement contentions must contain, at a minimum, "the relevant facts [that plaintiff] obtained in its prefiling inquiry." *Network Caching Technology, LLC v. Novell, Inc.*, 67 U.S.P.Q.2d 1034, 2002 WL 32126128, *4 (N.D. Cal. 2002). "Thus, the standard of FRCP 11 prefiling inquiry establishes a minimum level of detail that Patent LR 3-1 requires." *Id.* "FRCP 11 requires that a plaintiff compare an accused product to its patents on a claim by claim, element by element basis for at least one of each defendant's products." *Id.* at *5. To comply with this standard, "reverse engineering or its equivalent is

4

required." *Id.; see also Orion IP*, 407 F. Supp. 2d at 817 ("Before bringing suit, plaintiffs are expected to rigorously analyze all publicly available information, and early in the case plaintiffs must explain their infringement theories in detail."); *Connectel*, 391 F. Supp. 2d at 528 (same).

In addition, infringement contentions must be clear and detailed. *See, e.g., Connectel*, 391 F. Supp. 2d at 528 (stating that plaintiffs "must explain with great detail their theories of infringement" in their infringement contentions). "[V]ague disclosures . . . threaten the orderly progression of discovery . . . ." *Id.* ""PICs providing vague, conclusory language or simply mimicking the language of the claims when identifying infringement fail to comply with Patent Rule 3-1." *Id.* Other cases have held similarly that it is improper for infringement contentions to simply mimic claim language rather than providing additional detail about the plaintiff's infringement theories. *See Network Caching Technology*, 2002 WL 32126128 at *5-*6 (criticizing plaintiff for providing "no further information to defendants than the claim language itself. This is plainly insufficient.").

It does not appear that this Court has yet issued a published opinion concerning the sufficiency of infringement contentions under LPR 3.2. However, the Court provided instructive comments regarding a defendant's non-infringement contentions under LPR 3.4 in *Emcore Corp. v. Optium Corp.*, 2007 WL 852557 (W.D. Pa. Mar. 16, 2007) (Ambrose, C.J.). There, consistent with the principle discussed above that infringement contentions may not merely mimic claim language, the Court found non-infringement contentions to be insufficient where they merely "recite[d] back the portion of the claim that [the accused product] does not do." *Id.* at *2. The Court "agree[d] that [the defendant's] responses do not meet the requirements of LPR 3.4." *Id.* The defendant was ordered to provide an amended non-infringement chart "setting forth specific reasons and relevant distinctions as to why such element is not present literally or under the

5

doctrine of equivalents in each Accused Instrumentality as required by LPR 3.4 . . . ." *Id.* Plaintiff should be held to the same standard in this case. In other words, it should be ordered to set forth specific reasons why each claim element *is* present literally or under the doctrine of equivalents in each Accused Instrumentality.

## 2.    Infringement Contentions In Software Patent Cases.

Software patents have been at issue in several cases discussing the adequacy of infringement contentions. These cases are relevant here because the asserted claims of the patents-in-suit include software elements. These cases recognize that a plaintiff may not be able to provide the same level of detail in initial infringement contentions as in non-software cases, because source code generally is not publicly available and software therefore cannot be "reverse engineered" in the same way that a physical product can be. *See, e.g., Network Caching Technology,* 2002 WL 32126128 at *6. Nevertheless, such cases explicitly do *not* condone infringement contentions that merely parrot back claim language. The plaintiff must still provide details regarding its infringement theory to the extent permitted by available information.[2]

For example, in *Network Caching Technology,* the court said that the plaintiff did not have to identify the "specific routines" that performed the infringing functions until after reviewing the defendant's source code. *See id.* at *6-*7. However, the court stated further: "[w]hile determining that [plaintiff] need not specify the particular routine which performs a function, the court does not find that [plaintiff's] means plus function claims PICs are adequate. More specificity in the direct contention (rather than simply the structure) is required, as discussed above." *Id.* at *7. What the court had discussed above was that it is not enough for

---

[2] As one opinion states, "The Court does not read the Patent Local Rules to provide for an automatic exception for software infringement cases." *Informatica Corp. v. Business Objects Data Integration, Inc.,* 2006 WL 463549, *1 (N.D. Cal. Feb. 23, 2006) (denying plaintiff leave to amend its infringement contentions where plaintiff waited for years after production of source code to seek leave to amend).

infringement contentions to "simply mimic[] the language of the claim" or to set forth "vague discussions of the claim terms." *Id.* at *5, *6. Rather, the plaintiff must provide all of the detail that "reverse engineering or its equivalent" would permit. *Id.* at *5. Despite the fact that software was involved, the court determined that "[plaintiff] has not provided sufficient evidence to convince the court that reverse engineering would not provide more detail regarding any potential infringement; further detail is necessary in this case." *Id.*

Similarly, in *Connectel*, the court ordered the plaintiff to supplement its infringement contentions where "[t]he charts in [plaintiff's] PICs do not refer in their text to a single structure, process, algorithm, feature or function of any accused product." 391 F. Supp. 2d at 528. "Because of these deficiencies, [the defendant] is unable to crystallize its non-infringement and invalidity theories, and the parties are hindered in identifying what claim terms need construction." *Id.* The court rejected the plaintiff's argument that no supplementation was required because it had not yet reviewed the defendant's source code. Distinguishing another case that had denied a motion to compel further infringement contentions, the court explained:

> [T]he initially-served PICs in that case—which dealt with the infringement of graphic processes in video games—were replete with details and specific theories of infringement. The plaintiff in that case did not just allege infringement of hundreds of video games, submit those games' user manuals as evidence, and expect to narrow its claims upon the receipt of source code. Before serving PICs, and indeed even before bringing suit, the plaintiff's experts played hundreds of video games to identify infringing graphic processes, and more importantly, to rule out many non-infringing processes. Because the initially-served PICs were detailed, discovery was circumscribed, with plaintiff only wanting to view precise pieces of source code to build its case. The Court viewed plaintiff's pre-suit diligence with favor and when facing a motion to compel compliance with Patent Rule 3-1, ordered the plaintiff to submit supplemental PICs only after reviewing source code, reasoning that the source code was necessary to fill the gaps expected when one alleges infringement of software products without access to confidential information.

*Id.* (citing *American Video Graphics, L.P. v. Electronic Arts, Inc.*, 359 F. Supp. 2d 558, 560 (E.D. Tex. 2005)). The plaintiff in *Connectel* did not provide any detail in its infringement contentions and thus was ordered to supplement despite not having received source code. *See also Orion LP*, 407 F. Supp. 2d at 817 (ordering plaintiff, in connection with a patent alleged to read on the software used to implement an Internet web site, to "provide specific theories of infringement and representative examples of the alleged infringement so as to give defendants fair notice of infringement beyond that which is provided by the mere language of the patent claims themselves.").

### C.   Plaintiff's Infringement Contentions Do Not Comply With LPR 3.2.

#### 1.   Plaintiff's Infringement Charts Are Inadequate Because They Merely Mimic Back The Language Of The Asserted Patent Claims.

Plaintiff's infringement charts are inadequate under the standards set forth above because they merely parrot back the language of the asserted claims. Following is an example from one of the asserted patents, U.S. Patent No. 5,727,554 (the "'554 patent"):

| Claim Language | Plaintiff's Infringement Contention |
|---|---|
| means determining movement of said patient from said digital image signals, including movement associated with breathing by said patient | As currently understood, the PC Workstation of Varian's RPM Respiratory Gating system determines movement of the patient from digital image signals, including movement associated with patient breathing. |

*See* Exhibit A, p. 3. This contention simply uses the language of the claim element to state that Varian infringes and provides no meaningful detail.

In addition, Plaintiff ignores the fact that, by its own admission, this is a "means plus function" element governed by 35 U.S.C. § 112(6). *See id.* The Infringement Contentions state that the "function" of the above claim element is "determining movement of the patient from the aforementioned digital image signals." *Id.* Having stated the function, LPR 3.2 requires that

8

Plaintiff also identify "the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function."

As described in the specification of the '554 patent, the "means determining movement of said patient" consists of software algorithms. *See, e.g.,* Exhibit E at col. 5:15-16 ("Flow charts of suitable software 100 for implementing the invention are illustrated in FIGS. 6-16."). Several cases state that when a means-plus-function element refers to software functionality, the "structure" that performs the function is the combination of a computer and the specific software algorithms describe in the specification of the patent. For example, the Federal Circuit has held as follows: "In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *WMS Gaming, Inc v International Game Technology*, 184 F.3d 1339, 1349 (Fed Cir. 1999). Stated differently, "the structure which provides the means to infringe is the computer or other device programmed with the *specific routine* within the accused software which performs a specific function." *Network Caching Technology*, 2002 WL 32126128 at *6 (emphasis added). "In other words, the structure is simply the combination of the computer *and algorithm*, which then performs the algorithm." *Id.* (emphasis added). Where the algorithm is described in the specification using flow charts, "the more appropriate construction is to construe the disclosed structure relating to the various means responsive limitations to be the particular flowcharts disclosed in the patent." *Itron, Inc. v. Benghiat*, 169 F. Supp. 2d 1073, 1091 (D. Minn. 2001).

In this case, the '554 patent contains numerous flow charts that describe the software algorithms used to implement the "means determining movement of said patient." *See* Exhibit E at Figs. 6-16; *see also id.* at cols. 5:15-8:6. The same is true of the other asserted patent, U.S.

Patent 5,784,431 (the "'431 patent"). For example, the '431 patent contains flow charts that describe the software algorithms used to implement the "tracking means" in asserted claim 21 and the "processing means" in asserted claim 26. *See* Exhibit F at Figs. 3-11; *see also id.* at Fig. 1 (showing a "processor" that includes "coarse align" and "fine align" modules); *id.* at cols. 4:60-65, 5:18-9:21. Yet Plaintiff's Infringement Contentions say nothing about whether or how the accused products implement the algorithms disclosed in the flow charts of the '554 and '431 patents. *See* Exhibit A, pp. 3-6. Although Plaintiff may not yet be required to identify the specific routines in the source code that correspond to each component of the flow charts, it should be able to describe at a more general (but detailed) level why it believes the accused products perform those algorithms.

During meet-and-confer discussions, Plaintiff's counsel stated that they cannot provide more detail until they review Varian's source code and that currently they are "working in a vacuum." That is untrue. As established by the case law discussed above, a plaintiff cannot merely mimic the claim language in its infringement even prior to production of source code. *See supra* at 5-6. To comply with their Rule 11 obligations, Plaintiff's counsel should already have conducted "reverse engineering or its equivalent" to determine the functioning of the accused products. *Network Caching Technology*, 2002 WL 32126128 at *5. Getting access to accused products should not have been difficult as one of Varian's biggest customers is the University of Pittsburgh Medical Center, an institution affiliated with Plaintiff. *See* Exhibit G (excerpts from UPMC's 2006 annual report). Varian has also produced tens of thousands of pages of technical documents, much of it as early as May 30, 2007, which should have further enabled Plaintiff to provide detailed infringement contentions by June 15, 2007.

Although Plaintiff has been informed that the Varian source code is available for review now, Plaintiff's counsel and experts do not plan to review it until the week of July 9, 2007. Plaintiff will then undoubtedly require additional weeks to analyze the source code and prepare further infringement contentions based on that review and analysis. Given the extremely tight discovery schedule in this case, Varian should not have to wait another month or more to find out the basis for Plaintiff's patent infringement claim. Plaintiff is trying to put Varian to the enormous task of defending itself in this litigation while shirking its own obligations under the applicable rules. Accordingly, Varian requests that the Court order Plaintiff to supplement its infringement charts forthwith.

2.    **The Infringement Contentions Are Inadequate Because They Fail To Explain The Basis for Plaintiff's Claim Of Infringement Under The Doctrine Of Equivalents.**

Plaintiff's Infringement Contentions also violate LPR 3.2 by failing to "explain each function, way, and result that it contends are equivalent, and why it contends that any differences are not substantial." Plaintiff has asserted in its Infringement Contentions with respect to both the '554 and '431 patents that it "reserves the right [to] establish infringement under the doctrine of equivalents." *See* Exhibit A, pp. 5, 7. Yet Plaintiff has provided none of the additional information about its DOE theories required by LPR 3.2. During meet-and-confer discussions, Plaintiff's counsel stated that they wanted to wait to see Varian's non-infringement contentions before providing more information about their DOE theories. However, LPR 3.2 does not grant Plaintiff that luxury. They also stated that future discovery may disclose information supporting a DOE infringement theory. However, that does not excuse Plaintiff from identifying the current basis for its DOE claim. Accordingly, Plaintiff should be ordered to supplement its Infringement Contentions to provide the DOE information required by LPR 3.2. If Plaintiff has no current basis to assert infringement under the doctrine of equivalents, it should be ordered to remove the

11

DOE allegations from its Infringement Contentions. Should Plaintiff subsequently develop such a basis, it can amend its Infringement Contentions later "if made in a timely fashion and asserted in good faith and without purpose of delay." LPR 3.7.

**D.    Varian Should Not Have To Serve Its Non-Infringement And Invalidity Contentions Until After Plaintiff Complies With Its Disclosure Obligations.**

The Local Patent Rules in this District and others provide that plaintiffs must disclose their infringement contentions *before* defendants have to disclose their non-infringement and invalidity contentions. *See* LPR 3.2, 3.4; Exhibits C, D; *see also* Exhibit B ¶¶ 5, 6. There is a good reason for establishing this order of disclosure. As one court held in discussing the deficiencies in a plaintiff's infringement contentions: "Because of these deficiencies, [the defendant] is unable to crystallize its non-infringement and invalidity theories, and the parties are hindered in identifying what claim terms need construction." *Connectel*, 391 F. Supp. 2d at 528. With regard to non-infringement, the defendant needs to know the plaintiff's infringement theories in some detail in order to focus its non-infringement arguments and analysis on the proper components of the accused devices. With regard to invalidity, when the plaintiff discloses its infringement theories in detail it sheds light on how it is trying to construe the claims and thereby helps the defendant determine what prior art may be relevant.

Based on these principles, Varian moves for a protective order providing that it need not serve its Non-Infringement and Invalidity Contentions under LPR 3.4 until 14 days after Plaintiff supplements its Infringement Contentions, subject to Varian's right to challenge the adequacy of Plaintiff's supplemental infringement contentions in a timely manner. Because the current due date for Varian's Non-Infringement and Invalidity Contentions is July 2, 2007—just one week from now—Varian has denominated this motion an "Emergency Motion."

III.    **CONCLUSION**

For the reasons set forth above, Varian respectfully requests (1) an order compelling Plaintiff to supplement its Infringement Contentions and (2) a protective order providing that Varian need not serve its Non-Infringement and Invalidity Contentions until fourteen (14) days after such supplementation by Plaintiff.

Respectfully submitted,

PICADIO SNEATH MILLER & NORTON, P.C.

By: /s/ Henry M. Sneath_____
Henry M. Sneath, Esquire
hsneath@psmn.com
Pa. I.D. No. 40559
Shannon M. Clougherty, Esquire
sclougherty@psmn.com
Pa. I.D. No. 88586
600 Grant Street, Suite 4710
Pittsburgh, PA 15219
(412) 288-4000 [T]
(412) 288-2405 [F]

ORRICK, HERRINGTON & SUTCLIFFE LLP

William L. Anthony, Jr. (admitted *pro hac vice*) (CA 106908)
Matthew H. Poppe (admitted *pro hac vice*) (CA 177854)
Zheng (Jen) Liu (admitted *pro hac vice*) (CA 229311)
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400
(650) 614-7401 (fax)
wanthony@orrick.com
mpoppe@orrick.com
jenliu@orrick.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **DEFENDANT VARIAN MEDICAL SYSTEMS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION TO COMPEL PLAINTIFF TO PROVIDE FURTHER INFRINGEMENT CONTENTIONS AND FOR PROTECTIVE ORDER** has been served upon all parties either individually or through counsel via:

| | |
|---|---|
| _____ | Hand-Delivery |
| _____ | Facsimile |
| _____ | First Class, US Mail, Postage Prepaid |
| _____ | Certified Mail-Return Receipt Requested |
| \_\_\_\_\_X\_\_\_\_ | ECF Electronic Service |
| _____ | Overnight Delivery |

at the following addresses:

Rita E. Tautkus
Morgan Lewis & Bockius, LLP
One Market – Spear Street Tower
San Francisco, CA  94105
rtautkus@morganlewis.com

Dated:  June 26, 2007                    _____/s/_____
                                                              Matthew H. Poppe

US_WEST:260257898.2                                      14

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNIVERSITY OF PITTSBURGH | |
| Plaintiff, | |
| v. | Case 2:07-cv-00491-AJS |
| VARIAN MEDICAL SYSTEMS, INC., | Judge Arthur J. Schwab |
| Defendant. | **Filed Under Seal** |

**MEMORANDUM IN SUPPORT OF DEFENDANT VARIAN MEDICAL
SYSTEMS, INC.'S MOTION FOR SANCTIONS PURSUANT TO RULE 11
OF THE FEDERAL RULES OF CIVIL PROCEDURE AND/OR 35 U.S.C. § 285**

**Redacted**

## I.    INTRODUCTION

Plaintiff University of Pittsburgh ("UPitt") and its counsel, Morgan, Lewis & Bockius LLP ("MLB"), have unreasonably asserted that (1) UPitt owns all rights in the patents-in-suit and (2) Defendant Varian Medical Systems, Inc. ("Varian") infringes those patents. Those allegations, as set forth in UPitt's Complaint and other papers and advocated by UPitt and MLB throughout this litigation, are false and unsupported. As a result, UPitt and MLB have violated Rule 11 by presenting frivolous legal contentions and factual allegations for the improper purposes of delay, obfuscation, and harassment. Such conduct also renders this an "exceptional case" under 35 U.S.C. § 285.

Patent ownership. UPitt alleged in its Complaint that it "is the owner of the entire right, title and interest in and to" U.S. Patent Nos. 5,727,554 and 5,784,431 (the "'554 patent" and the "'431 patent," respectively). That allegation is necessary to establish UPitt's standing to sue. However, it is undeniably false because the patents are co-owned by Carnegie Mellon University ("CMU"). UPitt admitted in a brief that "CMU retains certain rights in the patents-in-suit that arise from the involvement of CMU employees in the research that led to the claimed inventions." UPitt now argues only that it owns all "substantial" rights in the patents. As discussed below, even that argument is frivolous.

CMU's co-ownership of the patents should have been uncovered by UPitt or its counsel during a reasonable pre-suit investigation because the relevant facts have always been in UPitt's possession. UPitt either failed to conduct such an investigation or ignored its results. Consequently, Varian has had to expend a great deal of resources defending itself against a frivolous suit.

Infringement. Because this action may soon be dismissed for lack of standing, this may be Varian's only opportunity to present an independent basis for Rule 11

- 1 -

sanctions: UPitt's lack of a reasonable basis to allege infringement. UPitt did not conduct an adequate pre-suit investigation, and it has never laid out its infringement theories despite its duty to do so pursuant to the Local Patent Rules and in interrogatory responses. Earlier, UPitt argued that it needed Varian's source code before stating its infringement contentions. However, UPitt has now had the source code for months, yet Varian is still being kept in the dark. Varian strongly believes its products do not infringe the patents-in-suit, but it has been put in the position of having to prove a negative because UPitt has not presented Varian with meaningful contentions for Varian to rebut.

For these reasons, Varian respectfully requests that UPitt and/or MLB be sanctioned in the amount of Varian's entire attorney's fees and costs incurred in the course of this litigation, including the present motion. Varian further requests a dismissal order and/or such other relief as the Court deems appropriate.

## II.    NATURE OF THE CASE

Varian is the world leader in the development, manufacture, and sale of equipment for treating cancer using radiation. UPitt alleges that Varian has infringed two patents for radiotherapy technologies. The '431 patent describes a computer program that performs x-ray image matching, in which two images of the same patient taken at different times are compared. The invention supposedly facilitates aiming the radiation beam more accurately during treatment and, when the treatment is finished, verifying that it was done properly. The invention of the '554 patent uses video cameras and a computer program to detect a patient's breathing motion during radiotherapy and control the radiation beam so that it is turned on only during the part of the breathing cycle where the tumor is in the beam's path. *See* Complaint ¶ 6 & Exs. A, B.

## III.    ARGUMENT

### A.    Applicable Standards

#### 1.    Rule 11

Under Fed. R. Civ. P. 11(b), an attorney who presents a pleading, motion, or other paper to the Court certifies that, to the best of his or her knowledge after a reasonable inquiry, (1) the paper is not being presented for any improper purpose, (2) the party's legal contentions are warranted by existing law or a nonfrivolous argument to change existing law, and (3) the factual contentions have evidentiary support "or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." The duties imposed by the various subparts of Rule 11(b) are independent of each other, such that a violation of any one of them justifies sanctions. *CTC Imports and Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991). If Rule 11 is violated, the Court has discretion to determine an appropriate sanction. *See, e.g., DiPaolo v. Moran*, 407 F.3d 140, 144-46 (3d Cir. 2005).

To determine whether Rule 11 has been violated, an objective test of "reasonableness under the circumstances" applies. *Napier v. Thirty or More Unidentified Federal Agents*, 855 F.2d 1080, 1090-91 (3d Cir. 1988). Subjective bad faith need not be shown. *Id.; see also Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995). Moreover, if a reasonable inquiry has not been conducted, the violator will not be shielded from sanctions by "the stroke of luck that the document happened to be justified." *Garr v. U.S. Healthcare, Inc.*, 22 F.3d 1274, 1279 (3d Cir. 1994); *see also Judin v. United States*, 110 F.3d 780, 785 (Fed. Cir. 1997) ("Rule 11 is not about after-the-fact investigation").

Among other things, Rule 11(b) prohibits "later advocating" a pleading, motion, or other paper that violates the standards set forth in the rule. *See* Fed. R. Civ. P. 11(b).

- 3 -

"[A] litigant's obligations with respect to the contents of these papers are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit." Advisory Committee Note to the 1993 amendment to Rule 11, reprinted at 146 F.R.D. 401, 585. Thus, "if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention." *Id.* at 585-86.

Rule 11 sanctions may be awarded even where the court lacks subject matter jurisdiction. *E.g. Willy v. Coastal Corp.*, 503 U.S. 131, 112 S. Ct. 1076, 117 L. Ed. 2d 280 (1992). Rule 11 sanctions have been awarded against plaintiffs who lacked standing or where there were other plain jurisdictional defects. *See, e.g., Davis v. AVCO Finance*, 158 B.R. 1000 (Bankr. N.D. Ind. 1993) (standing); *International Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388 (2d Cir. 1989) (diversity jurisdiction).

### 2.    35 U.S.C. § 285

"The court in exceptional [patent] cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An award of fees is in the trial court's discretion. *Delta-X Corp. v. Baker Hughes Prod. Tools, Inc.*, 984 F.2d 410, 414 (Fed. Cir. 1993). "Bad faith litigation" and "baseless suits" are grounds for an award against the plaintiff. *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050-51 (Fed. Cir. 1992); *Haynes Int'l, Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993). The court may base an award on evidence of either "actual wrongful intent" or "gross negligence." *Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 473 (Fed. Cir. 1985).

- 4 -

B.    **UPitt and MLB Violated Rule 11 and Section 285 by Unreasonably Alleging That UPitt Owned All Rights in the Patents-In-Suit**

1.    **Nature and Relevance of UPitt's Ownership Allegation**

In its Complaint, UPitt falsely alleged that it "is the owner of the *entire* right, title and interest in and to United States Patent No. 5,727,554 ("the '554 patent"), and United States Patent No. 5,784,431 ("the '431 patent") . . . ." Complaint ¶ 5 (emphasis added). This allegation is of central importance to the issue of standing, because a co-owner of a jointly owned patent lacks standing to sue for patent infringement by itself. *International Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001); *Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir. 2007).

2.    **The Patents-in-Suit Are Jointly Owned by UPitt and CMU**

Contrary to the Complaint, UPitt does not own all rights in the patents-in-suit.

█████████████████████████████████████████████████████████

████████████████████████ Concise Statement ¶¶ 3, 9-11.[1]

█████████████████████████████████████████████████████████

████████████████████████ *See id.* ¶¶ 14-20; Exhibits A, B;[2] UPitt SJ Opp. [Docket No. 159] at 2. The guidelines state that "[a]ll [intellectual property] developed jointly by CMU Participants and Pitt Participants during collaboration **shall be owned jointly by Pitt and CMU** . . . ." Exhibit A, § D.4; Exhibit B, § D.4 (emphasis added). ██████████████████████████

---

[1] "Concise Statement" refers to the Concise Statement of Material Facts that Varian filed in support of its Motion for Summary Judgment for Lack of Standing. To avoid unnecessary repetition, Varian incorporates by reference herein its summary judgment papers, Docket Nos. 127-130.

[2] All exhibits referred to in this brief are attached to the Declaration of Matthew H. Poppe, filed herewith.

OHS West:260358483.5

 Concise

Statement ¶¶ 23-25. ████████████████████. *Id.* ¶ 26.

### 3.    During This Litigation, UPitt Attempted to Conceal CMU's Joint Ownership of the Patents-in-Suit

As noted above, UPitt hid CMU's co-ownership of the patents-in-suit by falsely alleging in the Complaint that it owned *all* rights in the patents.  *See* Complaint ¶ 5. UPitt has never withdrawn or amended that allegation.

UPitt again concealed CMU's rights when it responded to Varian's Interrogatory No. 1, which asked about ownership of the patents.  The interrogatory reads:

> State all facts and identify all documents, communications, and things concerning any actual or contemplated transfer of ownership or transfer or license of rights relating to any Patents-In-Suit, including any actual or contemplated contracts, transfer agreements, option agreements, licenses or assignments, or any communications relating to the same, between Plaintiff [UPitt] and any third party.

Exhibit C, pp. 4-5.  In both its original and supplemental responses to this interrogatory, UPitt stated under oath that "there has been no actual transfer of ownership or transfer or license of rights relating to any patents-in-suit."  Exhibit D, pp. 2-3; Exhibit E, p. 4.  This statement was false, because the UPitt/CMU Joint IP Policy Guidelines transferred certain patent rights between UPitt and CMU.  *See* Exhibits A, B.  UPitt admitted this in a recent brief, stating that "the application of the Joint IP Guidelines transferred to UPitt broad rights █████████████████ UPitt SJ Opp. at 10; *see also id.* at 4 (stating that the policies and related decisions by UPitt and CMU ██████ ███████████████████████.  Yet UPitt did not disclose CMU, the Guidelines, or any related communications in its interrogatory response.

OHS West:260358483.5

4.    **Recently, UPitt Admitted That CMU Has Rights in the Patents**

In two recently-filed briefs, UPitt admitted that ███████████████████

███████. *See* UPitt SJ Opp. [Docket No. 159] at 2, 5, 9; UPitt Motion to Join CMU

[Docket No. 149] at 1 ("CMU retains certain rights in the patents-in-suit that arise from

the involvement of CMU employees in the research that led to the claimed inventions.").

5.    **UPitt's False Assertion of Ownership Violated Rule 11**

UPitt's false allegations of complete patent ownership in the Complaint and in

UPitt's interrogatory responses are sanctionable.  UPitt has no excuse for failing to be

forthright. The evidence shows that UPitt *knew* it was a mere co-owner of the patents-in-

suit, yet it filed this case by itself anyway and misrepresented its true ownership status.

In addition, as the relevant facts were in UPitt's possession prior to filing suit, they

should have been discovered by MLB as part of a reasonable pre-filing investigation.

Varian was able to discover the key facts related to CMU's co-ownership of the

patents directly from UPitt witnesses. ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████ *See* Exhibit F, pp. 40:11-13, 41:8-25, 62:6-64:14, 71:5-20. ██████████

████████████████████████████████████████████████ f

██████████████████████████████████ *See* Exhibit G,

pp. 7:12-8:3, 59:8-60:6, 61:14-62:3, 93:10-94:21, 121:20-122:20; Exhibit H, pp. 8:23-

10:15, 14:3-19:5, 36:14-40:1, 46:5-48:16.  This shows UPitt knew the relevant facts and

MLB should have discovered them. *See Wigod v. Chicago Mercantile Exch.*, 981 F.2d

1510, 1523 (7th Cir. 1992) (attorney should interview available witnesses before suing).

- 7 -

Similarly, many of the documents that show CMU's co-ownership of the patents-in-suit were in UPitt's possession prior to suit, as shown by the fact that UPitt produced them in this action. *See* Poppe SJ Decl. [Docket No. 130], ¶¶ 3-4, 12-13, 17, 23-25 & Exs. B, C, K, L, P, V, W, X.[3] These include the Joint Policy Guidelines that establish CMU's joint ownership, as well as an agreement with a third party in which UPitt and CMU jointly granted an option to license the patents-in-suit. *See id.*, Exs. P, X. ████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████. *See id.*, ¶¶ 8, 14, 18, 20, 26-34 & Exs. G, M, Q, S, Y-GG; *see also* Exhibit H, pp. 40:20-42:8, 46:5-53:4; UPitt Motion to Join CMU [Docket No. 149]. ████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████. *See* Poppe SJ Decl., Exs. G, M, S, Y-FF. UPitt should have reviewed those documents before filing a Complaint asserting that it owned "the entire right, title and interest in and to" the patents-in-suit. *See Insurance Benefit Administrators, Inc. v. Martin*, 871 F.2d 1354, 1357 (7th Cir. 1989) (to comply with Rule 11, all available relevant documents should be examined prior to filing a case).

As UPitt's false ownership allegations were the result of intentional misdirection (or in MLB's case, perhaps inadequate investigation), they violated Rule 11 and also render this an "exceptional case" under 35 U.S.C. § 285. *See, e.g.,* Fed. R. Civ. P. 11(b)(3); *Peerless Indus. Paint Coatings Co. v. Canam Steel Corp.*, 979 F.2d 685, 687

---

[3] The document marked as Exhibit P to the Poppe SJ Decl., though marked with CMU Bates numbers, was also produced by UPitt in this action.

OHS West:260358483.5

(8th Cir. 1992) (sanctions for misstating facts); *Caroll v. Acme-Cleveland Corp.*, 955 F.2d 1107, 1116 n.4 (7th Cir. 1992) (same) ; *Belmont Community Hosp. v. Quong Yick Co. ERISA Plan*, 1991 U.S. Dist. LEXIS 16796, at *3-*6 (N.D. Ill. Nov. 8, 1991) (sanctions due to no evidentiary support for element of claim); *Van Berkel v. Fox Farm & Rd. Mach.*, 581 F. Supp. 1248, 1249-50 (D. Minn. 1984) (same); *In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) (sanctions for omitting "highly relevant facts"); *Warshay v. Guinness PLC*, 750 F. Supp. 628, 639 (S.D.N.Y. 1990) (sanctions for misleading assertions and omitted facts).

6.  **When UPitt's False Ownership Allegations Were Brought to Light, UPitt Asserted Frivolous Standing Arguments**

In opposing Varian's summary judgment motion for lack of standing, UPitt sought to avoid the consequences of its admissions and the other evidence of CMU's co-ownership of the patents-in-suit by relying on frivolous legal and factual arguments. Specifically, UPitt argued that it owned "all substantial rights" in the patents despite CMU's admitted retention of certain rights. *See* UPitt SJ Opp. [Docket No. 159], *passim*.

One right that UPitt concedes is substantial is the right to license a patent to others. *See id.* at 9 (citing *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1378 (Fed Cir. 2000)). UPitt argued that it alone can license the patents-in-suit to others, *see id.* at 5-9, but that argument was frivolous. It was based entirely on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.* at 5. UPitt offered no explanation why a provision addressing UPitt's ▮▮▮▮▮▮▮ would strip CMU of its statutory right to license a jointly-owned patent. *See Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997) ("Each co-owner's ownership rights carry with them the right to license others. . . ."). UPitt also ignored

- 9 -

evidence 

. *See* Concise Statement ¶¶ 24-25; Exhibit I.

Another right that is considered "substantial" for standing purposes is the right to make, use, and sell the patented invention(s). *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132-33 (Fed. Cir. 1995). A joint owner generally retains these rights absent a contrary agreement. 35 U.S.C. § 262. UPitt did not argue that CMU had relinquished these rights. UPitt merely stated, conclusorily, that CMU had retained the right to use the inventions for "scholarly purposes" only. *See* UPitt SJ Opp. [Docket No. 159] at 9. That statement was made without citation to evidence or authority or supporting argument.

Because UPitt's standing argument ignored controlling authority and relied upon a selective and misleading presentation of evidence, it was frivolous and in violation of Rule 11 and 35 U.S.C. § 285. *See, e.g., Zuk v. Eastern Pa. Psychiatric Inst. of the Medical College of Pa.*, 103 F.3d 294, 299-300 (3d Cir. 1996) (affirming award of sanctions where party's brief showed failure to research law properly); *In re Ronco, Inc.*, 838 F.2d at 218 (sanctioning appellant for omitting "highly relevant facts"); *Warshay*, 750 F. Supp. at 639 (sanctioning party for making misleading assertions and omitting facts); *Fransen v. Terps, L.L.C.*, 153 F.R.D. 655, 660 (D. Colo. 1994) ("Lacking any authority directly supporting his position, [a party] must at least articulate some rational basis" for his position to avoid sanctions).

## C.    The Issue of Infringement

UPitt alleges that "Varian has infringed and continues to infringe the Patents-In-Suit . . . ." Complaint ¶ 6. This allegation is legally and factually unsupported.

- 10 -

1.   **UPitt and MLB Did Not Adequately Investigate Infringement Prior to Filing Suit**

"Performing a pre-filing assessment of the basis of each infringement claim is . . . extremely important." *View Eng'g v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 986 (Fed. Cir. 2000) (affirming district court's award of Rule 11 sanctions). This is because "[a] patent suit can be an expensive proposition" and "[d]efending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates." *Id.* A patent plaintiff's failure to demonstrate that, prior to filing suit, it had a reasonable basis to believe it could prove infringement "should ordinarily result in the district court expressing its broad discretion in favor of Rule 11 sanctions, at least in the absence of a sound excuse or considerable mitigating circumstances." *Id.*

Rule 11 requires that plaintiff's counsel interpret the pertinent patent claims, compare them to each accused device, and reach a reasonable conclusion of infringement before filing a patent suit. *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066, 1072-74 (Fed. Cir. 2002). A reasonable investigation ordinarily requires examining the accused device. *Judin v. United States*, 110 F.3d 780, 784-85 (Fed. Cir. 1997) (reversing denial of Rule 11 motion); *View Eng'g*, 208 F.3d at 985 (affirming Rule 11 sanctions). "[R]everse engineering or its equivalent is required." *Network Caching Technology, LLC v. Novell, Inc.*, 2002 WL 32126128, at *5 (N.D. Cal. 2002). If necessary, the plaintiff and its counsel should contact the defendant and/or third parties to try to obtain sample products and/or inquire about their operation. *See Judin*, 110 F.3d at 781, 784.[4]

---

[4] In Federal Circuit cases that deny Rule 11 sanctions, the plaintiff had acquired a sample of the accused product and made other efforts to obtain infringement information. *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1302 (Fed. Cir. 2004); *Hoffmann-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1363-65 (Fed. Cir. 2000); *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed. Cir. 1992).

- 11 -

UPitt refused to disclose ██████████████████████████ ██████████████████. *See* Exhibit H, pp. 36:14-40:1, 60:5-94:17. The limited information UPitt provided indicates that ███████████████████████ ████████████████████████████████████████████████ *See id.* at 60:21-61:10. UPitt also apparently ██████████████████████████ ██████████████████████████████████ *See id.* at 62:21-64:22. However, UPit ████████████████████████████████ ████████████████████████████████ *See id.* at 66:10-73:23, 75:1-11, 81:9-82:9, 94:11-17. UPitt also ███████████████ ████████████████ *Id.* at 88:20-89:21.

UPitt could have obtained direct access to the accused Clinac®, Trilogy™, PortalVision™, On-Board Imager®, and/or RPM Respiratory Gating systems by simply contacting its sister institution, UPMC, which owns those devices. *See* Exhibit J; Exhibit AA, pp. 37:4-40:2. However, UPitt made ████████████████████████ ████████████████ *See* Exhibit H, pp. 66:10-73:23, 88:20-90:4; Exhibit K. An internal email produced by a UPMC employee pursuant to subpoena indicates that UPMC was responsive to UPitt's request. *See* Exhibit K. However, ██████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████" Exhibit H, pp. 69:20-70:18. Thus, despite the relative ease with which UPitt could have examined the accused products, it failed to do so. The considerable benefit that could have been obtained by such an examination—learning prior to filing that there was no good faith basis to allege infringement—is precisely the reason that Rule 11 exists and compels sanctions here.

OHS West:260358483.5

### 2.     UPitt Has Never Disclosed Its Infringement Contentions to Varian, Presumably to Hide the Weakness of Its Case

UPitt's failure to conduct an adequate pre-filing investigation of infringement is not a mere technicality. Even now, after completion of discovery, UPitt's infringement case lacks any merit whatsoever. This is shown by UPitt's repeated refusal to state its infringement contentions in anything but the vaguest, most general terms. *See, e.g., McLaurin v. Werner*, 909 F. Supp. 447, 456 (S.D. Miss. 1995) (awarding Rule 11 sanctions where plaintiff's "stalling approach to the prosecution of the [] suit show[s] that his complaint lacked good faith underpinnings from the start").

The Complaint states a bare allegation of infringement by Varian. It provides no details regarding the alleged infringement. *See* Complaint ¶ 6.

On June 15, 2007, UPitt served infringement contentions pursuant to LPR 3.2. Exhibit L. Varian moved to compel further infringement contentions, arguing that they were so vague as to violate LPR 3.2.[5] Docket Nos. 34-39. In its successful opposition, UPitt blamed the lack of detail in its infringement contentions on its lack of access to Varian source code and technical documents. *See* Docket No. 40. However, the cases cited by UPitt held that a plaintiff should supplement its contentions after receiving the defendant's technical information. *See id.* at 4-7. Also, UPitt told the Court it had promised Varian "that it will supplement its Disclosure once it has been provided access

---

[5] In its motion, Varian pointed out that UPitt's infringement contentions do nothing more than parrot back the language of the patent claims. For example, one element of claim 21 of the '431 patent is a "tracking means tracking movement between successive sets of DPIS." *See* '431 patent (attached as Exhibit B to the Complaint), col. 11, lines 4-5. UPitt's corresponding infringement contention reads, "As currently understood, the On-Board Imager of the Clinac and Trilogy systems use successive images to track movements between successive sets of digital portal image signals." Exhibit L, p. 5. This statement does not identify the structure(s) within the accused products that correspond to the claim language; rather, it is a bare accusation of infringement.

- 13 -

to, and analyzed, Varian's source code...." *Id.* at 11. Varian produced its source code and technical documents months ago, but UPitt still has not supplemented its contentions. Poppe Rule 11 Decl. ¶¶ 13, 29-30.[6]

In an effort to obtain more information about UPitt's infringement position, Varian served UPitt with interrogatories on September 5, 2007. *See* Exhibit M. Among other things, Varian asked UPitt to "state all facts and identify all evidence that you believe support your contention" that Varian infringes any claim of the patents-in-suit. *Id.* at 4. UPitt's response was due on the last day of discovery, after UPitt had received all information it might need to provide a complete answer. ██████████████

███████████████████████████████████████████████████

██████████████████████ ▌. *See* Exhibit N, p. 4. ██████████████

███████████████████████████████████████ ▐. *See id.* at 5-11. ██████████████████████████████████████

██████████████████████ *See* Exhibit O, pp. 7-8; Exhibit P, p. 6.

### 3.    UPitt Lacks a Good Faith Basis to Allege Infringement

Varian believes that UPitt lacks a good faith basis to allege infringement. UPitt's refusal to provide detailed infringement contentions is evidence of that fact. However, that same refusal makes it impossible for Varian to demonstrate non-infringement conclusively because Varian does not know what UPitt's infringement arguments are and therefore cannot attempt to rebut them. Varian would have to prove a negative. Yet if this case is dismissed for lack of standing, Varian may have no other opportunity to seek sanctions for UPitt's unreasonable infringement allegations. Accordingly, UPitt should

---

[6] "Poppe Rule 11 Decl." refers to the Declaration of Matthew H. Poppe in Support of Defendant Varian Medical Systems, Inc.'s Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure, filed herewith.

be held fully accountable for alleging infringement without first conducting an adequate pre-filing investigation and without ever providing Varian with detailed infringement contentions as required by Rule 33 and the Local Patent Rules.

Although Varian cannot present a comprehensive non-infringement argument here for the reasons discussed above, two examples will show why Varian reasonably believes that UPitt's infringement position is frivolous.

Claim 26 of the '431 patent requires a "processing means" that automatically matches (*i.e.*, aligns) two digital x-ray images "without input of any physical dimensions of any features within said images . . . ." '431 patent (Exhibit B to the Complaint), col. 12, lines 5-8. UPitt concedes that the "matching" of claim 26 must occur "automatically by the use of x-ray opaque fiducials."[7] Docket No. 102, p. 34. According to the '431 patent, the fiducials are placed on a patient before x-rays are taken. *See* Complaint, Ex. B, col. 5, lines 41-43. They can then be detected in the x-ray images. *See id.*, col. 7, lines 38-49. Varian's accused On-Board Imager® device has a function █████████████ ████████████████████████████. *See* Exhibit Q, pp. VAR00002975 to VAR00002985. However, that function require█████████████████████████ ████████*See id.* at VAR00002978; Exhibit R, pp. 138:15-24. Consequently, it does not operate "without input of any physical dimensions of any features within said images," as required by claim 26. UPitt has no non-frivolous argument to the contrary.

Claim 21 of the '431 patent requires a "tracking means tracking movement between successive sets of digital portal image signals." *See* Complaint, Ex. B, col. 11, lines 4-5. "Tracking" refers to identifying movement *as it occurs* so that the radiation

---

[7] In this context, x-ray opaque fiducials are objects that are made of a material that causes them to show up in x-ray images. They are used as reference points in the images.

- 15 -

therapy equipment can be adjusted in response to that movement. *See id.,* col. 4, lines 49-52 ("The invention can be used to detect patient movement *during treatment* to terminate generation of the x-ray beam . . . or to maneuver the equipment to maintain proper alignment"; emphasis added); *see also id.,* col. 2, lines 36-42; col. 3, lines 30-36; col. 3, line 67 - col. 4, line 3; col. 6, lines 60-64; col. 7, lines 3-5; col. 9, lines 11-21; Figs. 3, 11. Varian's accused On-Board Imager® device does not infringe claim 21 because it does not "track movement." Indeed, as it cannot be used *at all* while the treatment beam is on, it obviously cannot be used to ████████████████████████████ ████████████████. *See* Exhibit R, pp. 45:12-46:3, 59:15-60:10. Also, the On-Board Imager® can match only████████████████████████████ ████████████ *See* Exhibit Q, pp. VAR00002959-VAR00002996, VAR00003040-VAR00003041; Exhibit R, pp. 58:19-59:13, 71:25-74:23, 86:15-88:1, 108:5-109:13, 118:13-122:1. It cannot match████████████████████, as required by claim 21. *Id.* Again, UPitt has no non-frivolous argument to the contrary.

D.  **The Court Should Sanction UPitt and/or MLB in a Manner That Will Deter Future Misconduct and Compensate Varian for Its Losses**

District Courts have broad discretion in determining both the type and amount of Rule 11 sanctions. "[T]he sanction may consist of, . . . if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."[8] Fed. R. Civ. P. 11(c)(2); *see also, e.g., Napier v. Thirty or More Unidentified Federal Agents,* 855 F.2d 1080, 1091 (3d Cir. 1988) ("Rule 11 specifically authorizes as

---

[8] For violations of Rule 11(b)(1) and (b)(3), a party or its counsel may be sanctioned. *See* Fed. R. Civ. P. 11(c). For Rule 11(b)(2), only counsel may be sanctioned. Fed. R. Civ. P. 11(c)(2)(A). The Court may sanction a firm rather than individual attorneys. *See* Fed. R. Civ. P. 11(c); *MHC Investment Co. v. Racom Corp.,* 323 F.3d 620 (8th Cir. 2003).

- 16 -

one available sanction an award equivalent to the movant's legal fees."); *DiPaolo v. Moran*, 407 F.3d 140, 145 (3d Cir. 2005) (fee shifting is approved method for achieving goals of Rule 11); *Divane v. Krull Elec. Co.*, 319 F.3d 307, 314 (7th Cir. 2003) (to serve Rule 11's deterrent purpose, courts "more commonly . . . may direct the offending party to pay the other party's reasonable attorney's fees."); Fed. R. Civ. P. 11(c)(1)(A) (authorizing award of fees to prevailing party on Rule 11 motion). As noted, reasonable attorney's fees may also be awarded pursuant to 35 U.S.C. § 285.

An appropriate sanction in this case would be to award Varian its entire fees and costs, or a portion thereof deemed proper by the Court. Fees and costs may be awarded under Rule 11 to the extent they were "incurred as a direct result of the violation." Fed. R. Civ. P. 11(c). Here, all of Varian's fees and costs resulted from the violations of UPitt and its counsel, MLB. UPitt's false allegations regarding patent ownership were a necessary predicate for UPitt's standing to sue. Because UPitt lacks standing, this case should never have been filed. UPitt's false statements and withholding of material facts compounded the problem by delaying resolution of the standing issue by many months. Thus, UPitt's false allegations have been a direct cause of all of Varian's fees and costs. Likewise, this entire case relates to the allegation that Varian is infringing the patents-in-suit. UPitt and MLB violated Rule 11 by making that allegation without an adequate pre-filing investigation, and by continuing to advocate it without a reasonable factual or legal basis. All of Varian's fees and costs relate to its defense against that infringement allegation; thus, they were all "incurred as a direct result of the violation."

An award of Varian's fees and costs also would meet the requirement that the sanction be "warranted for effective deterrence." Fed. R. Civ. P. 11(c). UPitt has

- 17 -

demanded that Varian state a willingness to pay over one million dollars before UPitt will even agree to *discuss* settling this case, and UPitt undoubtedly will ask for an award of tens of millions of dollars in damages if this case goes to a jury. UPitt clearly perceives that it has an enormous amount to gain from this litigation. Similarly, MLB presumably expected to earn hundreds of thousands if not millions of dollars in fees, particularly if it won or obtained a substantial settlement. An award of anything less than the full amount of Varian's fees and costs is unlikely to deter future violations when such large amounts are at stake. Moreover, UPitt and its counsel are both likely to engage in future patent litigation. UPitt has a massive patent licensing program, having produced 23 patent licenses in this action related to biotechnology and medical devices alone. Poppe Rule 11 Decl. ¶ 31. UPitt earns millions of dollars per year in licensing fees. *See* Exhibit S. UPitt will undoubtedly encounter future licensing targets who resist being bullied into licenses, resulting in more patent lawsuits by UPitt. Likewise, UPitt's counsel has a substantial patent practice and will be involved in many more patent suits in the future. *See* Exhibits T, U. Thus, anything other than a substantial monetary sanction is unlikely to have a meaningful deterrent effect.

Several other factors also support an award of fees and costs against UPitt and MLB. For example, the violator's ability to pay is a key factor in determining whether and in what amount to award monetary sanctions. *Zuk v. Eastern Pa. Psychiatric Inst. of the Medical College of Pa.*, 103 F.3d 294, 301 (3d Cir. 1996). Here, UPitt is a major university and MLB is a global law firm, each of which clearly has the financial resources to pay a substantial monetary penalty. As noted above, for example, UPitt earns millions of dollars a year in patent royalties alone. *See supra* at 18.

- 18 -

Another factor in determining an appropriate sanction is the amount of time that the plaintiff and its counsel had to investigate the facts and law prior to committing a Rule 11 violation. *CTC Imports and Exports v. Nigerian Petroleum Corp.*, 951 F.2d 573, 578 (3d Cir. 1991). Here, UPitt had years to investigate the issues of ownership and infringement prior to suing Varian. Discussions between UPitt and Varian concerning the patents-in-suit commenced in 2002 and resumed in 2005. *See* Exhibits V, W. ███

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████. *See* Exhibit H, pp. 16:2-18:16. This lawsuit was not filed until nine months later, in April 2007. Since then, UPitt and its counsel have had another nine months, plus the benefit of discovery, to investigate those issues and voluntarily abandon the Complaint. Instead, however, Varian has been forced to engage in protracted litigation in order to achieve the dismissal of this lawsuit.

Also relevant in determining Rule 11 sanctions are the violators' state of mind and level of experience. *Lieb v. Topstone Indus.*, 788 F.2d 151, 157-58 (3d Cir. 1986). "Although a subjective test penalty is not used in deciding initially whether sanctions should be imposed, it may be relevant in determining the form and amount of punishment or compensation." *Id.* at 157. This includes "the state of the attorney's or party's actual or presumed knowledge when the pleading or other paper was signed." *Id.* at 158. Also, "the conduct of an experienced lawyer or of a lawyer who acted in bad faith is more apt to invite assessment of a substantial penalty than that of a less experienced or merely negligent one." *Id.* These factors support a substantial monetary sanction against UPitt and/or MLB. As noted above, each of them is very experienced in patent matters. *See*

- 19 -

*supra*, p. 18. In addition, the facts support the conclusion that the Rule 11 violations here were not merely negligent but instead were done with knowledge and in bad faith.

This motion could not reasonably have been presented earlier; certainly not so as to bring about a ruling prior to the close of discovery and the claim construction hearing. Because UPitt was not forthright about patent ownership, Varian could not be sure that UPitt lacked standing until it obtained all relevant documents and deposed UPitt's and CMU's 30(b)(6) witnesses. Only then was Varian was able to determine conclusively that the patent rights were governed by the Joint IP Policy Guidelines, under which the patents are "owned jointly" by UPitt and CMU. *See supra*, pp. 5-9. The last 30(b)(6) deposition did not take place until October 22, 2007, in response to a court order. Poppe Rule 11 Decl. ¶ 32; Docket No. 83. Also, one of the key documents on which Varian relied to establish UPitt's lack of standing was not produced by UPitt until October 19, 2007, after discovery closed. Poppe Rule 11 Decl. ¶ 33. With respect to infringement, Varian notified UPitt of its Rule 11 violations by letter on August 7, 2007, and September 4, 2007. *See* Exhibits X, Y. UPitt denied violating Rule 11. *See* Exhibit Z. Varian did not believe it should file a Rule 11 motion on this issue until it had seen UPitt's detailed infringement contentions. UPitt did not make it clear until after the close of discovery that it would refuse to provide its contentions to Varian. *See supra*, p. 14.

If the Court grants Varian's motion, Varian requests leave to submit details regarding its reasonable fees and expenses incurred in this action at that time in accordance with a schedule to be set by the Court.

Another appropriate sanction would be an order dismissing this infringement action with prejudice. *See Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)

- 20 -

(dismissal is available sanction under Rule 11); *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 111 S. Ct. 922 (1991) (affirming dismissal order under Rule 11). Although the *Gaiardo* court expressed reluctance to dismiss a client's case under Rule 11 "because of the lawyer's indiscretion," that concern does not apply to a case such as this where the client is equally at fault for the violations.

## IV.    CONCLUSION

For the reasons stated above, Varian respectfully requests that the Court grant its motion for Rule 11 sanctions and/or reasonable attorney fees pursuant to 35 U.S.C. § 285.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:   /s/  *Matthew H. Poppe*
William L. Anthony, Jr. (admitted *pro hac vice*) (CA 106908)
Matthew H. Poppe (admitted *pro hac vice*) (CA 177854)
Zheng (Jen) Liu (admitted *pro hac vice*) (CA 229311)
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400
(650) 614-7401 (fax)
wanthony@orrick.com
mpoppe@orrick.com
jenliu@orrick.com

PICADIO SNEATH MILLER & NORTON, P.C.

Henry M. Sneath, Esquire
hsneath@psmn.com
Pa. I.D. No. 40559
Shannon M. Clougherty, Esquire
sclougherty@psmn.com
Pa. I.D. No. 88586
600 Grant Street, Suite 4710
Pittsburgh, PA 15219
(412) 288-4000 [T]
(412) 288-2405 [F]

- 21 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the **MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND/OR 35 U.S.C. § 285** was served upon the University of Pittsburgh and Morgan Lewis & Bockius LLP either individually or through counsel via:

| | |
|---|---|
| _____X_____ | Hand-Delivery |
| _____ | Facsimile |
| _____ | First Class, US Mail, Postage Prepaid |
| _____ | Certified Mail-Return Receipt Requested |
| _____ | ECF Electronic Service |
| _____ | Overnight Delivery |

at the following addresses:

Rita E. Tautkus
Morgan Lewis & Bockius, LLP
One Market – Spear Street Tower
San Francisco, CA  94105
rtautkus@morganlewis.com

Dated:  January 16, 2008                    _____

OHS West:260358483.5

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNIVERSITY OF PITTSBURGH

        Plaintiff,

   v.                         Case 2:07-cv-00491-AJS

VARIAN MEDICAL SYSTEMS, INC.,    Judge Arthur J. Schwab

        Defendant.           **REDACTED FOR PUBLIC FILE**

**<u>DEFENDANT/COUNTERCLAIMANT VARIAN MEDICAL SYSTEM INC.'S
MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM</u>**

## TABLE OF CONTENTS

**Page**

I.    RELIEF REQUESTED .................................................................................... 1

II.   INTRODUCTION ........................................................................................... 1

III.  RELEVANT PROCEDURAL HISTORY ...................................................... 3

      A.    The Pleadings ...................................................................................... 3

      B.    Relevant Discovery .............................................................................. 4

            1.    The Invention Disclosures Were Produced Many Months Late ............... 4

            2.    Mr. Athanassiou Avoided a Deposition for Two Months ........................ 5

      C.    Case Status and Future Proceedings ..................................................... 6

IV.   STANDARDS APPLICABLE TO MOTION FOR LEAVE TO AMEND
      PLEADING AFTER DEADLINE IN CASE MANAGEMENT ORDER ...................... 6

      A.    Rule 15(a) ............................................................................................. 6

      B.    Rule 16(b) ............................................................................................. 7

      V.    ARGUMENT ......................................................................................... 8

      A.    Varian Has a Meritorious Inequitable Conduct Defense Based on
            Evidence That Was Produced After the Close of Discovery ................................ 8

            1.    Failure to Disclose Material Prior Art Listed in the Late-Produced
                  Invention Disclosure for the '431 Patent .................................................... 9

            2.    Failure to Disclose the Best Mode of Implementing the Digitizer
                  Element of the Claimed Invention of the '554 Patent ............................... 11

            3.    Other Misrepresentations and Non-Disclosures Constituting
                  Evidence of Intent to Deceive and/or Independent Acts of
                  Inequitable Conduct .................................................................................... 12

      B.    Varian Acted Diligently to Investigate Inequitable Conduct by UPitt But
            Was Thwarted by the Late Disclosures of UPitt and Mr. Athanassiou ............... 12

      C.    UPitt Will Not Be Prejudiced and the Court Will Not Be Inconvenienced
            If This Motion Is Granted ........................................................................... 13

**TABLE OF CONTENTS**
(continued)

**Page**

D.  The Public and Varian Would Suffer Enormous Prejudice If This Motion
Were Denied ................................................................................................... 14

V.  CONCLUSION............................................................................................................ 15

## TABLE OF AUTHORITIES

Page

## FEDERAL CASES

Adams v. Gould, Inc.,
  739 F.2d 858 (3d Cir. 1984)..................................................................................7

Bower v. Jones,
  978 F.2d 1004 (7th Cir. 1992) .............................................................................13

Callaway Golf Co. v. Dunlop Slazenger Group Ams,
  295 F. Supp. 430 (D. Del. 2003)...........................................................................7

Consolidated Aluminum Corp. v. Foseco Int'l Ltd.,
  910 F.2d 804 (Fed. Cir. 1990)..............................................................................11

Cornell & Co. v. Occupational Safety & Health Review Comm'n,
  573 F.2d 820 (3d Cir. 1978)...................................................................................7

Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,
  120 F.3d 1253 (Fed. Cir. 1997).............................................................................10

Digital Control Inc. v. Charles Mach. Works,
  437 F.3d 1309 (Fed. Cir. 2006)..............................................................................9

Dole Fresh Fruit Co. v. Delaware Cold Storage,
  961 F. Supp. 676 (D. Del. 1997)......................................................................7, 14

Douglas Press Co. v. Tabco, Inc.,
  2004 WL. 1144054 (N.D. Ill. May 17, 2004) ......................................................13

Enzo Life Scis., Inc. v. Digene Corp.,
  270 F. Supp. 2d 484 (D. Del. 2003)..................................................................8, 13

Espeed, Inc. v. Brokertec USA,
  480 F.3d 1129 (Fed. Cir. 2007).............................................................................10

FilmTec Corp. v. Hydranautics,
  67 F.3d 931 (Fed. Cir. 1995).................................................................................7

In re Hayes Microcomputer Prods., Inc. Patent Litig.,
  982 F.2d 1527 (Fed. Cir. 1992).............................................................................13

Hazel-Atlas Glass Co. v. Hartford-Empire Co.,
  322 U.S. 238, 64 S. Ct. 997 (1944).......................................................................15

iii

## TABLE OF AUTHORITIES

Page

Impax Labs. v. Aventis Pharms.,
    468 F.3d 1366 (Fed. Cir. 2006)..................................................................................10

Imperial Chem. Indus., PLC v. Barr Labs.,
    795 F. Supp. 619 (S.D.N.Y. 1992), *vacated*, 991 F.2d 811 (Fed. Cir. 1993) .........11

LabWare, Inc. v. Thermo Labsystems, Inc.,
    2005 U.S. Dist. LEXIS 1452 (E.D. Pa. Jan. 31, 2005) ............................................7

Lorenz v. CSX Corp.,
    1 F.3d 1406 (3d Cir. 1993)........................................................................................7

MercExchange, L.L.C. v. eBay, Inc.,
    271 F. Supp. 2d 784 (E.D. Va. 2002) ......................................................................14

Molins PLC v. Textron,
    48 F.3d 1172 (Fed. Cir. 1995)...........................................................................8, 9 15

Monsanto Co. v. Rohm & Haas Co.,
    456 F.2d 592 (3d Cir. 1972).....................................................................................14

ResQNet.com, Inc. v. Lansa, Inc.,
    382 F. Supp. 2d 424 (S.D.N.Y. 2005)......................................................................13

Ricoh Co., Ltd. v. Nashua Corp.,
    947 F. Supp. 21 (D.N.H. 1996).................................................................................14

Shane v. Fauver,
    213 F.3d 113 (3d Cir. 2000).......................................................................................7

## FEDERAL STATUTES

35 U.S.C. § 112.....................................................................................................................2

37 C.F.R. § 1.56...................................................................................................................9

37 C.F.R. § 1.56(b)..............................................................................................................9

Fed. R. Civ. P. 15................................................................................................................2

Fed. R. Civ. P. 16(b) ...........................................................................................................7

Fed. R. Civ. P. 16(e) ...........................................................................................................3

iv

## TABLE OF AUTHORITIES

**Page**

### MISCELLANEOUS

3 *Chisum on Patents* § 7.05[1][g] (2007) ....................................................................................12

v

## I.    **RELIEF REQUESTED**

This is a patent case in which Plaintiff University of Pittsburgh ("UPitt") alleges that Defendant Varian Medical Systems, Inc. ("Varian") is infringing U.S. Patent Nos. 5,784,431 and 5,727,554 (the "'431 patent" and "'554 patent," respectively).   Varian hereby seeks leave to amend its pleading to add an affirmative defense and counterclaim of inequitable conduct in the procurement of the patents.   Varian asked UPitt for its consent to the amendment on January 21, 2008; two weeks later, UPitt finally responded in the negative.   *See* Poppe Decl., Exs. T, U, V.[1]

## II.    **INTRODUCTION**

Two weeks after the deadline to complete discovery, UPitt produced key documents showing the inequitable conduct of the inventors, the patent prosecutor, and a senior UPitt official in connection with the '431 patent.   The most important document is a "Disclosure of Invention" written by the inventors and delivered to UPitt's Office of Technology Transfer.   It contains a list of highly material prior art references that were wrongfully withheld from the Patent Office during the prosecution of the '431 Patent.   It shows that the inventors, the patent prosecutor, and UPitt's former Director of the Office of Intellectual Property ("Director of IP") were aware of this prior art but failed to disclose it to the Patent Office in violation of their respective duties, and despite the inventors' affirmative representations to the Patent Office that all material information would be disclosed.   UPitt should have produced the invention disclosure on May 30, 2007 pursuant to the Local Patent Rules, but it was withheld from production until October 19, 2007 for no good reason.

---

[1] "Poppe Decl." refers to the Declaration of Matthew H. Poppe in Support of Varian's Motion for Leave to File Amended Answer and Counterclaim, filed herewith.

Still later, on November 16, 2007, Varian learned about another act of inequitable conduct, this time in connection with the '554 patent. The new evidence was provided by inventor Charalambos Athanassiou during his deposition. Varian had been trying to depose him for two months, but he had failed to comply with his deposition subpoena. When he finally appeared for deposition, he admitted that ███████████████████████████████████ ████████████████████████████████████—but they intentionally withheld this information from the Patent Office in order to ██████████████████. By doing so, they violated the "best mode" requirement of 35 U.S.C. § 112 ("The specification . . . shall set forth the best mode contemplated by the inventor of carrying out his invention.").

This new information also makes it clear that a series of other material misstatements and non-disclosures made during the prosecution of the patents-in-suit were part of an ongoing pattern of concealment and deception. Varian was not comfortable seeking leave to plead an inequitable conduct defense based on those other acts by themselves due to the serious nature of the allegation and Varian's burden to show by clear and convincing evidence that the actors intended to deceive the Patent Office. Moreover, the Federal Circuit has repeatedly cautioned against pleading inequitable conduct without an adequate evidentiary basis, and Rule 9 imposes a high pleading threshold. However, the newly discovered evidence provides a new context in which to evaluate those other acts of concealment, making it appropriate to plead them now as part of an inequitable conduct defense. They also represent further evidence of the UPitt actors' intent to deceive when they withheld the prior art and best mode information described above.

Based on these facts, Varian hereby moves pursuant to Fed. R. Civ. P. 15 and 16 for leave to amend its Answer and Counterclaim to add an inequitable conduct defense and counterclaim. Although the Court set June 15, 2007 as the deadline for motions to amend the

- 2 -

OHS West:260380967.1

pleadings, Rule 16 permits parties to amend after the deadline upon a showing of "good cause." Good cause exists here because Varian only recently discovered the basis for its defense and counterclaim through UPitt's late production of the invention disclosure and the Athanassiou deposition. Indeed, Varian could not have pled its defense and counterclaim with specificity as required by Rule 9 until after it learned the new information, nor is there anything it could have done to learn the information sooner. Moreover, case law explicitly encourages accused infringers to conduct relevant discovery before asserting an inequitable conduct defense, even if this necessitates amending the pleadings after the scheduling order deadline has passed.

For these reasons, Varian respectfully requests that its motion for leave to amend be granted. Varian's proposed amended pleading is attached as Exhibit A.

## III.   **RELEVANT PROCEDURAL HISTORY**

### A.   **The Pleadings**

UPitt filed this patent infringement action against Varian on April 13, 2007. UPitt alleges that Varian is infringing the '431 and '554 patents. *See* Docket No. 1.

Varian filed its Answer and Counterclaim on May 14, 2007. *See* Docket No. 20. Varian denied infringing the patents-in-suit, pled various affirmative defenses, and asserted counterclaims of non-infringement and invalidity. *Id.*

On June 4, 2007, this Court entered a Case Management Order pursuant to Fed. R. Civ. P. 16(e) and Local Rule 16.1.2(A). *See* Docket No. 30. It provided, among other things, that "[t]he parties shall move to amend the pleadings or add new parties by June 15, 2007." *Id.* ¶ 4. The Court did not grant Varian's request for a longer period of time to allege inequitable conduct. *See id.* As discussed below, the effect of that ruling was to subject the present motion to the "good cause" standard of Rule 16 rather than the more lenient amendment standard of

- 3 -

Rule 15. *See infra* at 7. The Case Management Order also provided that "[t]he parties shall complete fact discovery by October 5, 2007 . . . ." *See* Docket No. 30 at ¶ 10.

### B.   Relevant Discovery

### 1.   The Invention Disclosures Were Produced Many Months Late

UPitt produced the invention disclosures corresponding to the patents-in-suit almost five months late. UPitt should have produced them on May 30, 2007, when its document production pursuant to Local Patent Rule 3.1(a) was due. *See* Docket No. 30 at ¶ 2. That rule provides that a party asserting a patent infringement claim must produce with its Initial Disclosures "[a]ll documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit . . . ." LPR 3.1(a). However, UPitt did not produce the invention disclosures. Poppe Decl. ¶ 2. UPitt produced only 510 pages on that day, of which all but 26 pages consisted of copies of the patents-in-suit and the corresponding, publicly-available file histories. *Id.* On June 4, 2007, Varian sent UPitt a letter noting the small size of the document production and asking for the immediate production of other documents called for by the local rule. *Id.*, Ex. A. UPitt responded that it had conducted a reasonable search and produced all non-privileged documents within the scope of the rule.[2] *Id.*, Ex. B.

UPitt should also have produced the invention disclosures in response to document requests served by Varian on May 23, 2007 ("First Set of RFPs"). Several requests (*e.g.,* Request Nos. 6, 7, 10, 12, 13, 22, 23, 49, 50) included the invention disclosures within their scope, including one (No. 7) that expressly asked for production of "invention disclosures." *See*

---

[2] That statement almost immediately proved to be false, as UPitt produced other documents related to the conception, development, and reduction to practice of the patented inventions on June 11 and July 9, 2007. *Id.* ¶¶ 7-8 & Exs. E, F.

- 4 -

Poppe Decl., Ex. C at 5-7, 11. UPitt agreed to produce responsive, non-privileged documents. *See id.*, Ex. D at 7-10, 13, 21. However, UPitt did not produce the invention disclosures on the June 22, 2007 due date. *Id.* ¶ 2.

On October 3, 2007, Varian took the deposition of Richard Westerhoff, the patent attorney who prosecuted the patent applications corresponding to the patents-in-suit on behalf of UPitt and the inventors. When Varian's counsel asked Mr. Westerhoff whether the inventors had prepared written invention disclosures and whether copies had been given to him, UPitt's counsel asserted privilege objections and he was instructed not to respond. *See id.*, Ex. G at 44:12-45:18. He was also instructed not to answer whether the inventors had given him any written materials describing prior art. *Id.*, Ex. G at 45:20-47:6. Thus, not only did UPitt fail to produce the invention disclosures but it interfered with Varian's inquiry into whether such documents even existed.

On October 19, 2007, *two weeks after the fact discovery cut-off* and nearly five months after the Court-ordered document production date described above, UPitt produced 779 pages. Poppe Decl. ¶ 10. Included in that production were invention disclosures corresponding to the patents-in-suit. *Id.* Also produced were other documents relating to UPitt's internal approval process for the patents-in-suit, including documents showing that ████████████████ ████████████████████████████████████████████████. *Id.* ¶ 11 & Ex. I. UPitt admitted that it had intentionally withheld the invention disclosures based on a since-abandoned claim of privilege. *See id.*, Ex. K at 2. Based on this late production of relevant documents, the Court granted Varian leave to re-depose several of the inventors and UPitt's 30(b)(6) designees, which are now in the process of being scheduled. *See* Docket No. 223.

- 5 -

### 2.    Mr. Athanassiou Avoided a Deposition for Two Months

Varian was unable to obtain deposition testimony from Mr. Athanassiou until November 16, 2007 because he failed to appear before then, in violation of the terms of his subpoena.

Varian served Mr. Athanassiou with a subpoena scheduling his deposition for September 17, 2007.  Poppe Decl., Ex. L.  Four days before the deposition, UPitt's counsel sent an email stating that Mr. Charalambos would not appear.[3]  *Id.*, Ex. M.  Neither an alternative date nor an explanation was provided.  *See id.*  After several weeks, the Court ordered UPitt to produce Mr. Athanassiou for deposition on a specified date or file an affidavit stating that his appearance could not be secured.  *See* Docket No. 83 at ¶ 3(c).  UPitt filed the affidavit.  *See* Docket No. 94.

Finally, on October 25, 2007, UPitt notified Varian that Mr. Athanassiou had resurfaced.  Poppe Decl., Ex. N.  The parties agreed on November 16, 2007 as the deposition date and it proceeded at that time.  *See id.* ¶ 18 & Exs. O, P.

### C.    Case Status and Future Proceedings

As noted above, the fact discovery deadline was October 5, 2007, although both parties produced certain documents and took depositions after that date.

On November 29, 2007, the Honorable Donald Ziegler held a claim construction hearing to interpret specified terms and phrases in the asserted patent claims.  A ruling is pending.  It is likely that one or both parties will ask the Court to review the ruling after it issues.

No other events have been scheduled in this case, including expert discovery, dispositive motions, pretrial proceedings, and trial.

---

[3] UPitt's counsel also represents Mr. Athanassiou in this matter.

- 6 -

IV.    **STANDARDS APPLICABLE TO MOTION FOR LEAVE TO AMEND
PLEADING AFTER DEADLINE IN CASE MANAGEMENT ORDER**

A.    **Rule 15(a)**

Motions for leave to amend a pleading are governed by Rule 15(a), which provides that "leave shall be freely given when justice so requires." In ruling on such a motion, "a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities." *FilmTec Corp. v. Hydranautics*, 67 F.3d 931, 935 (Fed. Cir. 1995). As a result, the Rule 15 standard is a liberal one. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (denial of leave to amend without justification is abuse of discretion). "'[P]rejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)). In the absence of prejudice or bad faith, delay alone is an inadequate basis for denying a motion to amend. *See Adams v. Gould, Inc.*, 739 F.2d 858, 868 (3d Cir. 1984); *Dole Fresh Fruit Co. v. Delaware Cold Storage*, 961 F. Supp. 676, 686 (D. Del. 1997).

B.    **Rule 16(b)**

When a motion for leave to amend a pleading is filed after the deadline for doing so as set forth in a scheduling order, some courts have held that the movant must also satisfy the "good cause" standard of Rule 16(b). In general, good cause exists if a deadline "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b) adv. comm. notes; *see also, e.g., Callaway Golf Co. v. Dunlop Slazenger Group Ams*, 295 F. Supp. 2d 430, 432 (D. Del. 2003); *LabWare, Inc. v. Thermo Labsystems, Inc.*, 2005 U.S. Dist. LEXIS 1452, at * 8 (E.D. Pa. Jan. 31, 2005).

- 7 -

At least one court has applied the above standards in granting a defendant's motion for leave to add an inequitable conduct defense in a patent case. *See Enzo Life Scis., Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 490 (D. Del. 2003) (motion filed more than six months after scheduling order deadline to amend pleadings). The *Enzo* court based its ruling on a finding that "there was no undue delay or a likelihood of prejudice to [plaintiff]"—essentially the same standards that govern a motion to amend a pleading under Rule 15(a). *See id.*

## V.    ARGUMENT

The Court should allow Varian to amend its pleadings to add an affirmative defense and counterclaim alleging inequitable conduct. The standards of Rules 15 and 16 are met because (1) the evidence produced by UPitt and Mr. Athanassiou give Varian a meritorious inequitable conduct defense and counterclaim; (2) UPitt and Mr. Athanassiou did not provide the relevant evidence—and thus Varian could not have met the pleading requirements of Rule 9(b)—until after the close of discovery; (3) the timing of the newly obtained discovery was entirely the fault of UPitt and Mr. Athanassiou, as Varian had sought diligently and in good faith from the beginning of discovery to gather the information it needed for a potential inequitable conduct defense; (4) UPitt will not be prejudiced by the proposed amendments; and (5) Varian and the public would be severely prejudiced if this motion were denied.

### A.    Varian Has a Meritorious Inequitable Conduct Defense Based on Evidence That Was Produced After the Close of Discovery

Varian seeks to add an inequitable conduct defense and counterclaim based on the material misstatements and non-disclosures of the inventors, the patent prosecutor, and Plaintiff's Director of IP during the prosecution of the patent applications that correspond to the patents-in-suit. Inequitable conduct is an accepted defense to patent infringement claims. *See, e.g., Molins PLC v. Textron,* 48 F.3d 1172, 1182 (Fed. Cir. 1995). It arises from any breach of

- 8 -

the duty of candor that certain individuals—including inventors, patent prosecutors, and others who are substantively involved in the preparation or prosecution of a patent application and are associated with the inventor or assignee—owe the Patent and Trademark Office. *Id.* at 1178 & n.6; 37 C.F.R. § 1.56. Breaches include affirmative misrepresentations of material fact and failures to disclose material information, when coupled with an intent to deceive. *Id.*

### 1.     Failure to Disclose Material Prior Art Listed in the Late-Produced Invention Disclosure for the '431 Patent

Failure to disclose material prior art is a common basis for a finding of inequitable conduct. *See, e.g., Molins PLC*, 48 F.3d at 1178. "Material" means that a reasonable patent examiner would have found the prior art relevant to determining whether the claimed invention is patentable; prior art may be material even if it would not ultimately prevent issuance of the patent. *Digital Control Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1314-16 (Fed. Cir. 2006); *see also* 37 C.F.R. § 1.56(b).

As discussed above, the invention disclosure related to the '431 patent, which UPitt did not produce until two weeks after the close of discovery, contains a two-page list of "references" that were not disclosed to the Patent Office during the prosecution of the patent. *See* Poppe Decl., Ex. H at PITT00008661-PITT00008662; *compare* Complaint, Ex. B, p. 1 (copy of complaint listing cited references). The materiality of the '431 references is shown by the fact that (1) the invention disclosure ███████████████████████████████████████

████████████████████,[4] *see* Poppe Decl., Ex. H at PITT00008653; and (2) Varian independently identified several of them as invalidating prior art in its Invalidity Contentions,

---

[4] Although the discussion in the invention disclosure was about ████████████████████
█████████████████████████████████████ would still have been relevant to a reasonable examiner in determining whether the patent claims accurately described the alleged invention without encompassing the prior art.

OHS West:260380967.1

well before UPitt produced the invention disclosure, *see id.*, Ex. Q at 29, 35-38. At trial, Varian would also present expert testimony on the issue of materiality.

The inventors obviously knew about these references because they signed (and presumably wrote) the invention disclosure. *See id.*, Ex. H at PITT00008643. Several other recently produced documents show that ███████████████████████████

████████████████████████████████████████████████████

████. *See id.*, Ex. I. Finally, it is clear that the patent prosecutor (Mr. Westerhoff) had a copy of the invention disclosure due to ███████████████████████████████████

██████████. *Compare id.*, Ex. H, with Complaint, Ex. B. Furthermore, although Mr. Westerhoff was prevented from answering directly whether he was given a copy of the invention disclosure, he testified that ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████ *See id.*, Ex. G at 45:20-46:12. ██████████

██████████████████████

To prove inequitable conduct, Varian must also show that the references were withheld with the intent to deceive the Patent Office. However, intent to deceive is "rarely" proven by direct evidence. *Espeed, Inc. v. Brokertec USA*, 480 F.3d 1129, 1137-38 (Fed. Cir. 2007). Intent can be inferred if a withheld reference is shown to be highly material and the patentee knew or should have known of that materiality. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997). Thus, Varian will be able to argue that intent to deceive should be inferred from the high level of materiality of the references cited in the invention disclosure. It will also be able to cite the other misrepresentations and omissions discussed below as evidence of intent. *See infra* at 12; *Impax Labs. v. Aventis Pharms.*, 468 F.3d 1366,

- 10 -

1375 (Fed. Cir. 2006) (intent can be "inferred from the facts and circumstances surrounding the applicant's overall conduct").  Other evidence of intent may exist, but Varian has thus far been prevented from obtaining deposition testimony from the inventors and patent prosecutor regarding the invention disclosure.

### 2.     Failure to Disclose the Best Mode of Implementing the Digitizer Element of the Claimed Invention of the '554 Patent

Failure to disclose the best mode for practicing an invention, with an intent to deceive, can constitute inequitable conduct.  *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 808-09 (Fed. Cir. 1990); *Imperial Chem. Indus., PLC v. Barr Labs.*, 795 F. Supp. 619, 626-27 (S.D.N.Y. 1992), *vacated*, 991 F.2d 811 (Fed. Cir. 1993).

Here, one of the claim elements in the '554 patent is a "camera means generating digital image signals . . . ." *See, e.g.,* Complaint, Ex. A at col. 10, lines 44-45.  One of the figures in the patent also shows a "digitizer" attached to a camera. *See id.*, Ex. A at col. 4, lines 7-11 & Fig. 4. Mr. Athanassiou testified at his deposition that ███████████████████████

██████████████████████████████████████

████████████ Poppe Decl., Ex. R at 200:6-11. █████████

██████████████████████████ *Id.*, Ex. R at 202:18-21. ████████

████████████████████████████████████████

████████████████████████████████████████

███ *Id.*, Ex. R at 202:25-203:4.  It appears that █████████████

██████████████ *See id.*, Ex. R at 10:16-24, 15:12-25, 204:18-205:1.  Yet the inventors did not disclose to the Patent Office what appears to have been their best way of implementing the claimed camera digitizer.  Instead, the patent shows the "digitizer" as a black box, with no detail

- 11 -

provided, as if the inventors had no specific understanding of how to implement it. *See* Complaint, Ex. A at col. 4, lines 7-11 & Fig. 4.

The reason why this information was excluded from the patent specification and withheld from the Patent Office is clear. Mr. Athanassiou stated at his deposition that ████████████ ██████████████████████—indeed, he refused to talk about it at his deposition unless the transcript was placed under seal. *See* Poppe Decl., Ex. R at 201:19-203:5. However, the patent laws do not allow inventors to withhold best mode information simply because they want to keep it confidential. "The best mode requirement forces the inventor to disclose information he might otherwise preserve as a trade secret." 3 *Chisum on Patents* § 7.05[1][g] (2007) (citing cases). Thus, the inventors' intentional failure to disclose what they contemplated as the best mode for implementing the camera digitizer constitutes inequitable conduct.

### 3. Other Misrepresentations and Non-Disclosures Constituting Evidence of Intent to Deceive and/or Independent Acts of Inequitable Conduct

Several other material misrepresentations and non-disclosures were made during the prosecution of the patents-in-suit. The wrongful acts are detailed in Varian's proposed amended pleading (attached as Exhibit A) in paragraphs 22-30. They include a failure to disclose other items of material prior art; failure to submit source code developed by the inventors that constituted the best mode for implementing the patented inventions; misrepresentations about alleged distinctions between a key prior art reference and one of the patent claims that has been asserted against Varian; and more. Taken together, these acts form a pattern of deception that provides further evidence of the UPitt actors' intent to deceive the Patent Office and, in some cases, may include independent acts of inequitable conduct.

OHS West:260380967.1

**B.    Varian Acted Diligently to Investigate Inequitable Conduct by UPitt But Was Thwarted by the Late Disclosures of UPitt and Mr. Athanassiou**

As described in great detail above, Varian did not obtain the primary evidence on which its proposed inequitable conduct defense is based until October and November 2007. *See supra* at 3-6. This was after the close of discovery and well after the deadline for amending the pleadings. *See id.* The reason for this timing was the dilatory behavior of UPitt and Mr. Athanassiou. Varian is not at fault. *See Bower v. Jones,* 978 F.2d 1004, 1010 (7th Cir. 1992) (no undue delay where party discovered documents on which claim was based late in discovery).

Varian could not have filed this motion by the June 15, 2007 deadline in the Case Management Order because an inequitable conduct defense must be pled with specificity pursuant to Rule 9(b). *See, e.g., Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 487-88 (D. Del. 2003) (citing many other cases). Pleading inequitable conduct without an adequate basis can subject a defendant to Rule 11 sanctions. *See In re Hayes Microcomputer Prods., Inc. Patent Litig.,* 982 F.2d 1527, 1546 (Fed. Cir. 1992) (affirming denial of sanctions but suggesting sanctions could be awarded for unfounded pleading of inequitable conduct).

Many courts have permitted and even *encouraged* accused infringers to pursue relevant discovery, such as depositions of inventors and patent prosecutors, before pleading inequitable conduct. *See, e.g., Enzo Life Sciences, Inc.*, 270 F. Supp. 2d at 487-90 ("Digene was prudent and possibly required to confirm the factual allegations [related to inequitable conduct] through discovery"); *Douglas Press Co. v. Tabco, Inc.,* 2004 WL 1144054, *1-*2 (N.D. Ill. May 17, 2004) ("Allegations of inequitable conduct are serious and we cannot fault Tabco for waiting for further evidence before filing such an affirmative defense"); *ResQNet.com, Inc. v. Lansa, Inc.,* 382 F. Supp. 2d 424, 448-52 (S.D.N.Y. 2005) (granting motion for leave to amend to add inequitable conduct defense, where motion was filed weeks before close of fact discovery);

- 13 -

*MercExchange, L.L.C. v. eBay, Inc.*, 271 F. Supp. 2d 784, 786-89 (E.D. Va. 2002) (granting leave to amend to add inequitable conduct defense and citing numerous other cases).

### C.    UPitt Will Not Be Prejudiced and the Court Will Not Be Inconvenienced If This Motion Is Granted

UPitt will not be prejudiced if this motion is granted.  The prejudice typically claimed by parties opposing a motion for leave to amend is that they lack sufficient time for additional discovery or they would have to duplicate prior discovery.  *See, e.g., Ricoh Co., Ltd. v. Nashua Corp.*, 947 F. Supp. 21, 25 (D.N.H. 1996).  That concern does not apply here because all the relevant facts and evidence are and always have been in the possession of UPitt and its representatives.  *See supra* at 3-6, 8-12.  In addition, UPitt's inability to take discovery related to inequitable conduct is its own fault, because it did not produce the documents revealing its inequitable conduct until after discovery closed.  Finally, UPitt was apprised early in the proceedings that Varian intended to investigate inequitable conduct and might seek to amend the pleadings in that regard.  *See* Poppe Decl. ¶ 21 & Ex. S at 8.  Thus, UPitt had the opportunity to seek discovery related to that issue had it wanted to.

UPitt also will not be prejudiced because no dates have been set for expert reports, expert discovery, summary judgment, or trial.  Consequently, UPitt will have plenty of time to prepare its response to Varian's new allegations.  *See Dole Fresh Fruit Co. v. Delaware Cold Storage*, 961 F. Supp. 676, 686 (D. Del. 1997) (motion to amend granted where it was unlikely opposing party would have conducted case differently had moving party amended earlier).  For the same reasons, Varian's proposed amended answer will not burden the Court as no other changes to the case schedule or Case Management Order will be needed.

- 14 -

**D.    The Public and Varian Would Suffer Enormous Prejudice If This Motion Were Denied**

By contrast, the public would suffer tremendous prejudice if this motion were denied. Inequitable conduct "inflict[s] damage on the patent examining system . . . and on the public . . . ." *Molins PLC,* 48 F.3d at 1182. "[T]he public [has] a paramount interest in seeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct . . . ." *Monsanto Co. v. Rohm & Haas Co.*, 456 F.2d 592, 598 (3d Cir. 1972) (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 246, 64 S.Ct. 997, 1001 (1944)). This is because "a patent is an exception to the general rule against monopolies and to the right to access to a free and open market." *Id.* (quoting *Precision Co. v. Automotive Co.*, 324 U.S. 806, 814-16, 65 S.Ct. 993, 997 (1945)). *Enforcing* a patent obtained through inequitable conduct would inflict even greater harm on the public than procuring such a patent in the first place. To avoid this harm, Varian should be permitted to add its inequitable conduct defense.

Varian also would be greatly harmed if this motion were denied. A finding of inequitable conduct would make one or both patents-in-suit unenforceable. *See supra* at 8. Therefore, depriving Varian of this important defense could mean the difference between complete victory and substantial liability.

**V.    CONCLUSION**

For the above reasons, Varian respectfully requests that the Court grant its motion for leave to file the Amended Answer and Counterclaim submitted herewith as Exhibit A.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  /s/  *Matthew H. Poppe*
William L. Anthony, Jr. (admitted *pro hac vice*) (CA 106908)
Matthew H. Poppe (admitted *pro hac vice*) (CA 177854)
Zheng (Jen) Liu (admitted *pro hac vice*) (CA 229311)

- 15 -

1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400
(650) 614-7401 (fax)
wanthony@orrick.com
mpoppe@orrick.com
jenliu@orrick.com

PICADIO SNEATH MILLER & NORTON, P.C.

Henry M. Sneath, Esquire (Pa. I.D. No. 40559)
hsneath@psmn.com
Shannon M. Clougherty, Esquire (Pa. I.D. No. 88586)
sclougherty@psmn.com
600 Grant Street, Suite 4710
Pittsburgh, PA 15219
(412) 288-4000 [T]
(412) 288-2405 [F]

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **DEFENDANT/COUNTERCLAIMANT VARIAN MEDICAL SYSTEM INC.'S MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM [REDACTED FOR PUBLIC FILE]** was served upon all parties either individually or through counsel via:

|   |   |
|---|---|
| _____ | Hand-Delivery |
| _____ | Facsimile |
| _____ | First Class, US Mail, Postage Prepaid |
| _____ | Certified Mail-Return Receipt Requested |
| \_\_\_\_X\_\_\_\_ | ECF Electronic Service |
| _____ | Overnight Delivery |

at the following addresses:

Rita E. Tautkus
Morgan Lewis & Bockius, LLP
One Market – Spear Street Tower
San Francisco, CA  94105
rtautkus@morganlewis.com

Dated:  February 6, 2008

_/s/  Matthew H. Poppe_____
Matthew H. Poppe

- 17 -