1   WILLIAM L. ANTHONY, JR.  (State Bar No. 166026)
2   wanthony@orrick.com
    MATTHEW H. POPPE  (State Bar No. 177854)
3   mpoppe@orrick.com
    ZHENG LIU  (State Bar No. 229311)
4   jenliu@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE LLP
5   1000 Marsh Road
    Menlo Park, California 94025
6   Telephone:    +1-650-614-7400
    Facsimile:    +1-650-614-7401
7
    Attorneys for Defendant
8   VARIAN MEDICAL SYSTEMS, INC.

9                          UNITED STATES DISTRICT COURT

10                       NORTHERN DISTRICT OF CALIFORNIA

11                            SAN FRANCISCO DIVISION

12

13   UNIVERSITY OF PITTSBURGH OF THE            Case No.  CV 08-02973 MMC
     COMMONWEALTH SYSTEM OF HIGHER
14   EDUCATION d/b/a UNIVERSITY OF              **DECLARATION OF HASSAN
     PITTSBURGH, a Pennsylvania non-profit      MOSTAFAVI IN SUPPORT OF
15   corporation (educational),                 VARIAN'S ADMINISTRATIVE
                                                MOTION TO FILE UNDER SEAL
16                    Plaintiff,                 EXHIBITS TO SEALED POPPE
                                                DECLARATION**
17        v.

18   VARIAN MEDICAL SYSTEMS, INC., a
     Delaware corporation,
19
                      Defendant.
20

21

22

23

24

25

26

27

28

160458463

1    I, Hassan Mostafavi, declare as follows:

2        1.    I reside in the State of California and am an employee at Varian Medical Systems,

3    Inc. ("Varian"). Except as indicated herein, I have personal knowledge of the facts set forth in

4    this Declaration. If called as a witness, I could and would testify competently to the matters set

5    forth herein.

6        2.    From 1982 through the end of 1995, I was a principal at TAU Corporation

7    ("TAU") where I ran the business unit for the company imaging systems areas. Because I was in

8    charge of a business unit, one of my responsibilities was to maintain the confidentiality of TAU's

9    proprietary information. During my tenure at TAU, I worked with Varian on various projects and

10   developed an understanding of Varian's procedures for maintaining the confidentiality of

11   information pertaining to its research and development activities and its licensing agreements

12   with outside parties. In January of 1996, I began two companies, one named Image Science

13   Corporation and another named Imetric. Part of my consulting work while at those two

14   companies was for Varian. From January of 1998 to the present, I have worked at Varian as a

15   senior scientist. In that capacity, and in the course of my prior dealings with Varian, I gained

16   knowledge pertaining to Varian's procedures for maintaining the confidentiality of its research

17   and development activities and the licensing agreements that it executes.

18       3.    I have reviewed the following three documents:

19           a.    Exhibit 10 to the Sealed Declaration of Matthew H. Poppe in Support of

20   Varian's Motion to Transfer Action to U.S. District Court for Western District of Pennsylvania

21   ("Sealed Poppe Declation"), which I understand consists of excerpts from the deposition of Majid

22   Riaziat ("Riaziat transcript"). Pages 18-21 of the Riaziat transcript disclose information related to

23   internal research projects at Varian that Varian was not in the habit of disclosing to the public.

24   Pages 182-184 of the transcript describe the contents of a User's Manual for the Arrow Patient

25   Positioning System. That system was never commercialized, and thus to my knowledge the

26   information in the manual was never made public. Pages 185-196 of the transcript describe a

27   Commercialization and Software License Agreement between TAU and Varian and associated

28   documents described below, as well as Varian's development efforts and strategies related to the

DECL. OF HASSAN MOSTAFAVI ISO VARIAN'S ADMIN.
MOTION TO SEAL EXS. TO SEALED POPPE DECL.
(CASE NO. CV 08-02973 MMC)

160458463

1  same. Pages 197-198 of the transcript describe additional historical information related to the

2  Arrow project and Varian's storage of source code related to that project.

3          b.      Exhibit 20 to the Sealed Poppe Declaration, is a memorandum from Dr.

4  Riaziat to "Tim" regarding the licensing negotiations between Varian and TAU over the Arrow

5  system ("Licensing Negotiations Memorandum"). From the context of the memorandum, I

6  believe "Tim" is Tim Guertin, Varian's current CEO. The memorandum includes proposals for

7  royalty payments and projected sales prices related to the Arrow project.

8          c.      Exhibit 21 to the Sealed Poppe Declaration is entitled "Commercialization

9  and Software License Agreement between Varian and TAU" ("License Agreement"). It contains

10  a confidentiality provision in Section 19. In addition to setting forth licensing terms, the License

11  Agreement discusses Varian's internal research related to the Arrow project.

12     4.     The portions of the Riaziat deposition transcript identified above, the Licensing

13  Negotiations Memorandum, and the License Agreement contain information pertaining to

14  research and development efforts made by Varian. As a general practice, Varian keeps such

15  documents confidential because they contain technical, business, and marketing information

16  and/or technical details about potential products that Varian may choose to develop and/or

17  market.

18     5.     By keeping such technical, business, and marketing information confidential,

19  Varian is able to time product announcements and marketing decisions in a strategic manner, *e.g.*,

20  by being the first to develop and market certain ideas, and in order to maintain a competitive

21  edge. Even if certain research is unsuccessful, or Varian chooses not to create products based on

22  certain research, Varian's general practice is to keep such information confidential. Otherwise,

23  Varian's competitors might be able to use such information to get a head start in their own

24  research or to perform research more cost-effectively by avoiding the duplication of unsuccessful

25  research. In addition, Varian maintains the confidentiality of technical details related to building

26  various products, such as the type of software it uses for building its products, in order to prevent

27  competitors from copying or simulating Varian products. With these principles in mind, Varian

28  would have kept documentation and technical details related to the Arrow system confidential. I

1    have no reason to believe that Varian, at any time, made public information related to the Arrow

2    system of the type contained in the Riaziat transcript and the other documents discussed above.

3          6.      Varian has taken and continues to take various steps to protect the confidentiality

4    of its research and development efforts.  For example, Varian conducts or maintains the results of

5    its research and development in secure areas that are locked, protected by security guards, and/or

6    watched by receptionists.  The User's Manual for the Arrow system (described herein) and

7    other confidential information would have, as a practice, been disclosed to non-Varian people

8    only if the outsiders executed a confidentiality agreement.  For example, Varian shared the User's

9    Manual for the Arrow system with the University of California at Davis, during a collaborative

10    project.  A confidentiality agreement was almost certainly in place as Varian's practice when

11    engaging in collaborative research with universities was and is to have non-disclosure

12    agreements in place.

13          7.      The Riaziat transcript, the Licensing Negotiations Memorandum, and the License

14    Agreement also contain information about actual or proposed terms of licensing negotiations

15    between Varian and TAU.  Varian maintains the confidentiality of information pertaining to its

16    licensing negotiations and agreements.  In general, Varian maintains the confidentiality of the

17    terms of any licensing agreements so that it can try to maintain an advantage in subsequent

18    licensing negotiations.  The License Agreement also discloses information regarding Varian's

19    research and development efforts related to the Arrow project, and so Varian's practice is to keep

20    this type of document confidential for the additional reasons discussed above in paragraph 5.

21          I declare under penalty of perjury under the laws of the United States that the foregoing is

22    true and correct.

23          Executed this 22nd day of July, 2008 at Palo Alto, California.

24

25                            Hassan Mostafavi

26

27

28

DECL. OF HASSAN MOSTAFAVI ISO VARIAN'S ADMIN.
MOTION TO SEAL EXS. TO SEALED POPPE DECL.
(CASE NO. CV 08-02973 MMC)

160458463

1

## CERTIFICATE OF SERVICE

2

3    I hereby certify that a true and correct copy of DECLARATION OF HASSAN

4    MOSTAFAVIN IN SUPPORT OT VARIAN'S ADMINISTRATIVE MOTION TO FILE

5    UNDER SEAL EXHIBITS TO SEALED POPPE DECLARATION was served upon the

University of Pittsburgh, through its counsel, via:

6

7

8    _____    Hand-Delivery

9    _____    Facsimile

10   _____    First Class, US Mail, Postage Prepaid

11   _____    Certified Mail-Return Receipt Requested

12   _____X\_\_\_\_\_    ECF Electronic Service

13   _____    Overnight Delivery

14

15   at the following addresses:

16
                      Rita E. Tautkus
                  Morgan Lewis & Bockius, LLP
17                One Market – Spear Street Tower
                   San Francisco, CA   94105
18                 rtautkus@morganlewis.com

19

20   Dated:  July 22, 2008              \_\_\_/s/ *Matthew H. Poppe*_____
                                              Matthew H. Poppe

21

22

23

24

25

26

27

28