1   WILLIAM L. ANTHONY, JR.  (State Bar No. 106908)
    wanthony@orrick.com
2   MATTHEW H. POPPE  (State Bar No. 177854)
    mpoppe@orrick.com
3   ZHENG LIU  (State Bar No. 229311)
    jenliu@orrick.com
4   ORRICK, HERRINGTON & SUTCLIFFE LLP
    1000 Marsh Road
5   Menlo Park, California 94025
    Telephone:     +1-650-614-7400
6   Facsimile:     +1-650-614-7401

7   Attorneys for Defendant
    VARIAN MEDICAL SYSTEMS, INC.
8

9

10                  UNITED STATES DISTRICT COURT

11                NORTHERN DISTRICT OF CALIFORNIA

12                  SAN FRANCISCO DIVISION

13

14   UNIVERSITY OF PITTSBURGH OF THE          Case No.  CV 08-02973 MMC
     COMMONWEALTH SYSTEM OF HIGHER
15   EDUCATION d/b/a UNIVERSITY OF            **DEFENDANT VARIAN MEDICAL
     PITTSBURGH, a Pennsylvania non-profit    SYSTEMS, INC.'S NOTICE OF
16   corporation (educational),               MOTION AND MOTION TO
                                              DISMISS PLAINTIFF'S CLAIMS
17                       Plaintiff,           PURSUANT TO FED. R. CIV. P.
                                              12(B)(6) BASED ON DOCTRINE OF
18          v.                                RES JUDICATA; MEMORANDUM
                                              OF POINTS AND AUTHORITIES IN
19   VARIAN MEDICAL SYSTEMS, INC., a          SUPPORT THEREOF**
     Delaware corporation,
20                                            Date:          September 5, 2008
                         Defendant.           Time:          9:00 a.m.
21                                            Courtroom: 7, 19th Floor

22                                            **Filed Electronically**

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND ................................................................................................ 3

    A.  The Pleadings in the Pennsylvania Case ................................................ 3

    B.  Case Management, Fact Discovery, and Claim Construction in the Pennsylvania Case ................................................................................. 3

    C.  Entry of Judgment "With Prejudice" in the Pennsylvania Case ............ 4

    D.  The Present Action Is Duplicative of the Pennsylvania Case ................ 6

III.  ARGUMENT ...................................................................................................... 6

    A.  Elements of Res Judicata Defense .......................................................... 6

    B.  Res Judicata Is a Proper Basis for a Motion to Dismiss Under Rule 12(b)(6) ................................................................................................... 7

    C.  Varian's Res Judicata Defense Is Evident From the Face of the Complaint and Judicially Noticeable Materials From the Pennsylvania Case ......................... 8

        1.  The Same Parties Are Plaintiff and Defendant in Each Action ................. 8

        2.  The Causes of Action Are Identical, Being Based on the Same Patents ................................................................................................ 8

        3.  The Dismissal "With Prejudice" in the Pennsylvania Case Was a Final Judgment on the Merits for Purposes of Res Judicata ..................... 9

            a.  Dismissal "With Prejudice" Is a Final Judgment on the Merits ................................................................................... 9

            b.  A Dismissal for Lack of Standing May Be "With Prejudice" and Thus Have Preclusive Effect ................................. 11

            c.  A Dismissal Based on a Plaintiff's Untimely Attempt to Amend Its Pleadings May Operate as a Final Judgment on the Merits ................................................................................... 13

        4.  Res Judicata Applies Despite UPitt's Alleged Acquisition of CMU's Patent Ownership Rights After Entry of Judgment in the Prior Case ........... 16

            a.  Each Action Still Has the Same Plaintiff ..................................... 17

            b.  UPitt Could Not Gain the Right to Sue Varian From CMU Because CMU Could Not Have Sued Varian Itself ..................... 17

1

**TABLE OF CONTENTS**
**(continued)**

2

**Page**

3

        c.    Allowing UPitt to Proceed With This Action Would Be
Contrary to Public Policy ............................................................. 19

4

     5.    UPitt's Pending Appeal Supports Dismissal of This Action .................... 19

5

IV.    CONCLUSION ........................................................................................... 20

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

*ALA, Inc. v. CCAIR, Inc.*,
    29 F.3d 855 (3d Cir. 1994).........................................................................................7

*AT&T v. Maydak*,
    1999 U.S.Dist. LEXIS 21938 (W.D. Pa. June 25, 1999)...........................................10

*In re A-Z Electrics, LLC*,
    350 B.R. 886 (Bankr. D. Idaho 2006).......................................................................18

*Accrued Financial Services, Inc. v. Prime Retail, Inc.*,
    298 F.3d 291 (4th Cir. 2002).....................................................................................19

*Adolph Coors Co. v. Sickler*,
    608 F.Supp. 1417 (C.D. Cal. 1985)...........................................................................14

*Anspach v. City of Philadelphia*,
    503 F.3d 256 (3d Cir. 2007).......................................................................................7

*Ball v. Halsell*,
    161 U.S. 72, 16 S.Ct. 554 (1896)..............................................................................19

*Blonder Tongue Labs, Inc. v. University of Ill. Foundation*,
    402 U.S. 313, 91 S.Ct. 1434 (1971)......................................................................6, 18

*Bond v. United States Attorney General's Office*,
    2001 U.S.Dist. LEXIS 15859 (E.D. Pa. Aug. 8, 2001)............................................10

*Byrd v. Farnsworth*,
    1996 U.S.Dist. LEXIS 18707 (N.D. Cal. Dec. 9, 1996) ............................................8

*Cahill v. Liberty Mutual Insurance Co.*,
    80 F.3d 336 (9th Cir. 1996).......................................................................................7

*Chemlen v. Bank of Ireland First Holdings, Inc.*,
    1993 U.S.App. LEXIS 28614 (1st Cir. Nov. 3, 1993)...............................................11

*Coppoletta v. California*,
    2006 U.S.Dist. LEXIS 68861 (N.D. Cal. Sept. 14, 2006) ..........................................8

*Costantini v. Trans World Airlines*,
    681 F.2d 1199 (9th Cir. 1982)....................................................................................9

*E.E.O.C. v. United States Steel Corp.*,
    921 F.2d 489 (3d Cir. 1990)......................................................................................6

**TABLE OF AUTHORITIES**
(continued)

Page

*Ethicon, Inc. v. United States Surgical Corp.,*
    135 F.3d 1456 (Fed. Cir. 1998) ................................................................. 17

*First Options v. Kaplan,*
    913 F.Supp. 377 (E.D. Pa. 1995) ............................................................ 20

*In re FleetBoston Finance Corp. Sec. Litigation,*
    2007 U.S.Dist. LEXIS 87425 (D.N.J. Nov. 28, 2007)............................... 18

*Fogarty v. USA Truck, Inc.,*
    2008 U.S.Dist. LEXIS 50270 (W.D. Pa. June 30, 2008) ............................ 7

*Freedman v. American Export Isbrandtsen Lines, Inc.,*
    451 F.2d 157 (3d Cir. 1971) .................................................................... 10

*Gambocz v. Yelencsics,*
    468 F.2d 837 (3d Cir. 1972) .................................................................... 10

*Gimenez v. Morgan Stanley D.W., Inc.,*
    202 Fed. Appx. 583, 2006 U.S.App. LEXIS 25561 (3d Cir. 2006) ........... 10

*Gonzales v. Banco Central Corp.,*
    27 F.3d 751 (1st Cir. 1994) ....................................................................... 8

*In re Grand Jury Investigation,*
    445 F.3d 266 (3d Cir. 2006) .................................................................... 10

*Huron Holding Corp. v. Lincoln Mine Operating Co.,*
    312 U.S. 183, 61 S.Ct. 513 (1941) ..................................................... 19, 20

*Intellectual Property Development, Inc. v. TCI Cablevision of Cal., Inc.,*
    248 F.3d 1333 (Fed. Cir. 2001) ............................................................... 13

*International Nutrition Co. v. Horphag Research Ltd.,*
    257 F.3d 1324 (Fed. Cir. 2001) ............................................................... 17

*Israel Bio-Engineering Project v. Amgen,, Inc.,*
    475 F.3d 1256 (Fed. Cir. 2007) ............................................................... 17

*Kolkevich v. Attorney General of the U.S.,*
    501 F.3d 323 (3d Cir. 2007) .................................................................... 10

*Krajca v. Southland Corp.,*
    206 F.Supp.2d 1079 (D. Nev. 2002) .......................................................... 9

*Lubrizol Corp. v. Exxon Corp.,*
    929 F.2d 960 (3d Cir. 1991) ...................................................................... 7

**TABLE OF AUTHORITIES**
(continued)

Page

*MGIC Indemnity Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986).................................................................. 7

*Marin v. Hew, Health Care Finance Agency*,
    769 F.2d 590 (9th Cir. 1985).................................................................. 10

*McCalden v. California Library Association*,
    955 F.2d 1214 (9th Cir. 1990)................................................................ 7

*Media Techs. Licensing, LLC v. Upper Deck Co.*,
    334 F.3d 1366 (Fed. Cir. 2003)........................................................ 12, 16

*Motorola Credit Corp. v. Uzan*,
    388 F.3d 39 (2d Cir. 2004)...................................................................... 13

*ProtoComm Corp. v. Novell, Inc.*,
    1998 U.S.Dist. LEXIS 9636 (E.D. Pa. June 29, 1998) ............................ 14

*Robertson v. Bartels*,
    148 F.Supp.2d 443 (E.D. Pa. June 29, 1998) ........................................ 18

*Russo v. Glass*,
    2004 U.S.Dist. LEXIS 16918 (E.D. Pa. Aug. 19, 2004)........................ 8, 14

*Sands v. McCormick*,
    502 F.3d 263 (3d Cir. 2007).................................................................. 7

*Schering Corp. v. Roussel-UCLAF SA*,
    104 F.3d 341 (Fed. Cir. 1997)................................................................ 17

*In re Schimmels*,
    127 F.3d 875 (9th Cir. 1997).................................................................. 10

*Scott v. Kuhlmann*,
    746 F.2d 1377 (9th Cir. 1984)................................................................ 8

*Semtek International Inc. v. Lockheed Martin Corp*,
    531 U.S. 497, 121 S.Ct. 1021 ................................................................ 16

*Simmons v. Anzon, Inc.*,
    1994 U.S.Dist. LEXIS 8488 (E.D. Pa. June 21, 1994) ............................ 8

*Simon v. Allstate Employee Group Medical Plan*,
    263 F.3d 656 (7th Cir. 2001)................................................................ 12

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001)................................................................ 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Staples v. Ruyter Bay Land Partners, LLC*,
2007 U.S.Dist. LEXIS 90806 (D.V.I. Dec. 10, 2007) ................................. 8, 9, 11, 17

*Stephenson v. United Airlines, Inc.*,
2002 U.S.Dist. LEXIS 23301 (N.D. Cal. Nov. 29, 2002) ........................... 9

*Stewart v. U.S. Bancorp*,
297 F.3d 953 (9th Cir. 2002)...................................................................... 12

*Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*,
322 F.3d 1064 (9th Cir. 2003)....................................................... 6, 8, 17, 18

*Talbot v. Quaker-State Oil Refining Co.*,
104 F.2d 967 (3d Cir. 1939)................................................................. 18, 19

*Taylor v. Sturgell*, __ U.S. __,
128 S.Ct. 2161 (2008) ................................................................................ 18

*Tripati v. Henman*,
857 F.2d 1366 (9th Cir. 1988)................................................................... 20

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*,
140 F.3d 478 (3d Cir. 1998)......................................................................... 7

*United States v. Athlone Industrial Inc.*,
746 F.2d 977 (3d Cir. 1984) ...................................................................... 9

*United States v. McGann*,
951 F.Supp. 372 (E.D.N.Y. 1997) ............................................................ 14

*Venuto v. Witco Corp.*,
117 F.3d 754 (3d Cir. 1997)....................................................................... 15

*Western Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981)........................................................................ 7

*Wietschner v. Monterey Pasta Co.*,
294 F.Supp.2d 1102 (N.D. Cal. 2003) ...................................................... 18

*Wong v. Regents of University of California*,
410 F.3d 1052 (9th Cir. 2005)................................................................... 15

**FEDERAL STATUTES AND RULES**

35 U.S.C. § 281 .............................................................................................. 17

Fed. R. Civ. P. 12(b)  .................................................................................. 1, 3, 7

VARIAN'S MOTION TO DISMISS BASED
ON DOCTRINE OF RES JUDICATA
(Case No. CV 08-2973 MMC)

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 5, 2008 at 9:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Maxine M. Chesney, United States District Court, 450 Golden Gate Avenue, San Francisco, CA 94102, defendant Varian Medical Systems, Inc. will and hereby does move the Court for an order dismissing this action without leave to amend pursuant to Fed. R. Civ. P. 12(b)(6), based on the doctrine of res judicata. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities below, the accompanying Request for Judicial Notice and [Proposed] Order, all pleadings on file in this action, oral argument of counsel, and any other matter that may be submitted at the hearing or thereafter in connection with this motion.

**STATEMENT OF RELIEF THE MOVANT SEEKS**

Defendant Varian Medical Systems, Inc. seeks an order dismissing this action without leave to amend based on the doctrine of res judicata, because another court already dismissed Plaintiff University of Pittsburgh's claims against Varian with prejudice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Plaintiff University of Pittsburgh ("UPitt") has already litigated this case and lost. Its patent infringement claims were dismissed "with prejudice" after 14 months of pursuing them against Defendant Varian Medical Systems, Inc. ("Varian") in UPitt's home court, the United States District Court for the Western District of Pennsylvania (the "Pennsylvania Court"). The basis for the dismissal was lack of standing. Patent law requires that all co-owners of a patent be joined as parties in an infringement action. UPitt was not the sole owner of the patents-in-suit, but instead shared ownership equally with Carnegie Mellon University ("CMU"). Yet UPitt did not add CMU as a party at the start of the case, despite its ability to do so and its knowledge of all the facts relevant to standing. Indeed, UPitt sought to mislead Varian and the Pennsylvania Court about those facts, claiming falsely in the Complaint and in interrogatory responses that it was the sole owner of the patents-in-suit. Meanwhile, CMU never sought to intervene in the case to

1   assert its own patent rights despite being fully aware of the case and, indeed, an active participant

2   in discovery.  Only when Varian filed a summary judgment motion, after learning through its own

3   discovery efforts that UPitt lacked full ownership of the patents, did UPitt finally seek to add

4   CMU as a party.  The Pennsylvania Court rejected that request, holding that it was untimely and

5   that joining CMU would have prejudiced Varian.  Concluding that UPitt lacked standing to sue

6   on its own and that CMU should not be added, the Pennsylvania Court granted Varian's summary

7   judgment motion and entered judgment dismissing the case "with prejudice."

8        UPitt is now engaging in various procedural tricks in an attempt to revive its ability to

9   proceed with its patent claims against Varian.  First, UPitt filed this case in a different court in the

10  hopes of avoiding the displeasure of the Pennsylvania Court and perhaps obtaining a better result.

11  UPitt admitted in its opposition to Varian's pending Motion to Transfer that it filed the case here

12  because it knew the case would be dismissed by the Pennsylvania Court.  This type of blatant

13  forum shopping is not permitted, and Varian therefore believes the best course is to transfer this

14  case to the Pennsylvania Court and leave it to that court to decide the present motion to dismiss.

15  Second, UPitt allegedly acquired CMU's ownership rights in the patents-in-suit, in the apparent

16  belief that doing so would enable it to persuade a court that it has "cured" its lack of standing and

17  may proceed with this lawsuit.  However, UPitt ignores the basic premise of the dismissal with

18  prejudice in the Pennsylvania action — namely, that UPitt should have addressed its inability to

19  sue for patent infringement alone by joining CMU as a party in a timely way in the prior action.[1]

20  UPitt's failure to do so was unreasonable and prejudiced Varian, who had to endure the entire

21  discovery and claim construction process without the presence of a necessary party.  Allowing

22  UPitt to resume its attack on Varian through the simple expedient of filing a new lawsuit would

23  render the prior dismissal "with prejudice" meaningless and would encourage slippery legal

24  tactics of the type employed by UPitt in the Pennsylvania case and this action.

25        The application of res judicata here is straightforward.  The present action has the same

26  causes of actions, is based on the same patents, and involves the same parties as the prior case in

27

28  _____
    [1] UPitt could also, of course, have acquired CMU's patent rights earlier to avoid lack of standing.

the Pennsylvania Court.  The Pennsylvania Court's entry of judgment dismissing UPitt's claims with prejudice constitutes a final judgment on the merits.  Thus, every element of a res judicata defense is present based on the allegations of UPitt's Complaint and judicially noticeable facts.  Accordingly, Varian's motion to dismiss should be granted without leave to amend.

## II.    BACKGROUND

### A.    The Pleadings in the Pennsylvania Case

On April 13, 2007, UPitt filed a complaint against Varian for patent infringement in the Pennsylvania Court based on alleged infringement of two patents:  U.S. Patent Nos. 5,727,554 and 5,784,431 (the "'554 patent" and "'431 patent," respectively).  *See* RJN,[2] Ex. A at ¶¶ 5-6 & Exs. A, B.  The Complaint falsely states, among other things, that "Plaintiff is the owner of the *entire* right, title and interest in and to [the '554 patent and '431 patent] . . . ."  *Id*., Ex. A at ¶ 5 (emphasis added).

Varian answered on May 14, 2007, denying the infringement allegations and asserting counterclaims for a declaratory judgment of non-infringement and invalidity.  *See* RJN, Ex. B.

### B.    Case Management, Fact Discovery, and Claim Construction in the Pennsylvania Case

On June 4, 2007, the Pennsylvania Court issued a Case Management Order setting an aggressive case schedule, including close of fact discovery on October 5, 2007 and a claim construction hearing on November 29, 2007.  *See* RJN, Ex. C.  The Case Management Order also provided that "[t]he parties shall move to amend the pleadings *or add new parties* by June 15, 2007."  *Id*., Ex. C at ¶ 4 (emphasis added).

The case proceeded beyond the close of discovery, the date for which held firm except for certain discrete items that the court allowed to proceed later.  *See* RJN, Ex. D at ¶ 7.  Extensive discovery took place, as can be seen from the substantial motion practice it generated.  *See* RJN, Ex. E.  In all, more than twenty motions (discovery and otherwise) were decided by the court and the special master in the Pennsylvania case.  *See id*.  The parties also submitted full briefing on

---

[2] "RJN" refers to the Request for Judicial Notice in Support of Defendant Varian Medical Systems, Inc.'s Motion to Dismiss Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(6) Based on Doctrine of Res Judicata, filed herewith.

VARIAN'S MOTION TO DISMISS BASED
ON DOCTRINE OF RES JUDICATA
(Case No. CV 08-2973 MMC)

1    claim construction, as well as expert reports, and a full-day hearing was conducted in front of a

2    special master on November 29, 2007.  *See* RJN, Ex. E at items 47-57, 96-122; *id.*, Ex. F.  The

3    special master did not rule on claim construction prior to the dismissal of the Pennsylvania case.

4              **C.    Entry of Judgment "With Prejudice" in the Pennsylvania Case**

5              On November 21, 2007, Varian filed a motion for summary judgment in the Pennsylvania

6    case based on UPitt's lack of standing.  *See* RJN, Ex. E at items 128-130, 132 & text order dated

7    11/26/2007.  The motion was based on the fact that UPitt was not the sole owner of the patents-

8    in-suit, but rather CMU was a co-owner.  *See id.*, Exs. G, H.  The Pennsylvania Court referred the

9    motion to a special master for an initial ruling.  *See id.*, Ex. E at text order dated 11/26/2007.

10             On December 5, 2007, concurrently with its opposition to Varian's summary judgment

11    motion, UPitt filed a motion to join CMU as a party.  *See id.*, Ex. E at items 149-154; *id.*, Ex. I.

12    In the motion, UPitt admitted that CMU "retains certain rights in the patents-in-suit that arise

13    from the involvement of CMU employees in the research that led to the claimed inventions."  *Id.*,

14    Ex. I at 1.  UPitt further admitted that joinder of CMU was "feasible" because CMU was "within

15    the jurisdiction of the Court, and because CMU is willing to be added as a plaintiff to this action."

16    *Id.*, Ex. I at 1, 4-5.  UPitt further admitted that CMU "has already been an active participant in

17    this litigation," as detailed by UPitt in its motion.  *See id.*, Ex. I at 1-3.  UPitt represented to the

18    court that CMU agreed it had "some interest in the outcome of the present litigation" and that

19    "CMU does not object to this venue for adjudicating the present litigation."  *Id.*, Ex. I at 5.  UPitt

20    reiterated many of these points in another brief it filed later.  *See id.*, Ex. M at 2.  After Varian

21    filed its opposition, the Pennsylvania Court denied UPitt's motion on December 14, 2007.  *See*

22    *id.*, Ex. E at items 162-163; *id.*, Ex. J.

23             The summary judgment proceedings then moved forward.  The motion was fully briefed

24    by mid-December 2007.  *See id.*, Ex. E at items 153-154, 159-161, 164-167, 169-173.  On March

25    10, 2008, the special master issued a Report and Recommendation ("R&R").  *See id.*, Ex. G.  The

26    special master agreed with Varian that CMU co-owned the patents-in-suit, but he recommended

27    granting Varian's motion "without prejudice" and that UPitt be permitted to amend its complaint

28    to add CMU as a party.  *See id.*

VARIAN'S MOTION TO DISMISS BASED
                                                                      ON DOCTRINE OF RES JUDICATA
                                                                      (Case No. CV 08-2973 MMC)

1    Varian objected to the Special Master's recommended remedy of allowing UPitt to add

2    CMU.  *See id.*, Exs. K, L.  Varian pointed out that the court-ordered deadline to add parties had

3    passed long before; that UPitt had failed to comply with that deadline despite knowing all the

4    relevant facts regarding CMU's co-ownership of the patents-in-suit; that UPitt had made false

5    statements in its complaint and interrogatory responses about the extent of its patent ownership

6    rights; and that Varian would be severely prejudiced if UPitt were allowed to add CMU as a

7    party.  *See id.*, Ex. K at 1-2, 5-9; *id.*, Ex. L.  Varian also explained that UPitt had repeatedly and

8    successfully asserted untimeliness arguments against Varian, and UPitt should be held to the

9    same standard it had espoused.  *See id.*, Ex. K at 9.  Each party submitted additional briefs on the

10   question of whether the R&R should be adopted.  *See id.*, Exs. M, N; *id.*, Ex. E at item 272.  In its

11   other brief on that topic, Varian stated clearly that "[g]ranting Varian's motion should dispose of

12   UPitt's claims once and for all" and that "UPitt's failure to join a necessary party within the time

13   limit established by the Court should bar UPitt from pursuing its claim further in this *or any other*

14   *proceeding . . . .*"  *Id.*, Ex. N at 1-2 (emphasis added).

15       On April 30, 2008, the Pennsylvania Court adopted the R&R in part and denied it in part.

16   *See id.*, Ex. H.  It adopted the finding that CMU was a co-owner of the patents-in-suit and the

17   recommendation that Varian's summary judgment motion be granted, but decided that the action

18   would be dismissed "with prejudice."  *Id.*  The court found that UPitt's attempt to add CMU as a

19   party "was untimely and unfair to defendant."  *Id.*, Ex. H at 5 & fn. 3.  "Plaintiff obviously knew

20   of CMU's existence and its residual rights in the patents-in-suit, and chose not to join CMU, at

21   the inception of this case."  *Id.*, Ex. H at 4-5.  In a harsh appraisal, the court further commented

22   that "[w]hether plaintiff's very sophisticated patent counsel made this tactical decision not to join

23   CMU in order to make discovery of CMU as a non-party more difficult for defendant, or for some

24   other tactical reason, the Court does not know."  *Id.*, Ex. H at 5.

25       UPitt later asked the Pennsylvania Court to change the dismissal to be without prejudice,

26   arguing (as it does in this proceeding) that a dismissal for lack of standing cannot support a

27   dismissal with prejudice.  *See* RJN, Ex. O at 3-4.  The Pennsylvania Court rejected that request

28   and entered judgment in Varian's favor on June 16, 2008.  *See id.*, Ex. P.  The judgment expressly

- 5 -

1  states that UPitt's claims are "DISMISSED WITH PREJUDICE." *Id*.  UPitt has filed a notice of

2  appeal.  *See id.*, Ex. Q.

3       **D.     The Present Action Is Duplicative of the Pennsylvania Case**

4       UPitt filed this action on the same day it appealed from the judgment in the Pennsylvania

5  case.  *See* Docket No. 1.  It can easily be seen that this action is nothing but a duplicate of its

6  predecessor.  This is a patent infringement case.  *Id*.  UPitt is the only plaintiff and Varian is the

7  only defendant.  *Id.* The only cause of action is based on alleged infringement of the '431 and

8  '554 patents. *Id.*  Other similarities between the two cases include allegations of contributory

9  infringement, inducement of infringement, and willful infringement; the allegation that each case

10  is an "exceptional case"; and requests for a reasonable royalty, increased damages, attorney fees,

11  interest, and costs.  *Compare* Docket No. 1 *with* RJN, Ex. A.

12  **III.   ARGUMENT**

13       **A.     Elements of Res Judicata Defense**

14       The present action is barred by res judicata.  "The doctrine of res judicata is not a mere

15  matter of technical practice and procedure but a rule of fundamental and substantial justice."

16  *E.E.O.C. v. United States Steel Corp.*, 921 F.2d 489, 492 (3d Cir. 1990).[3]  The U.S. Supreme

17  Court laid out the elements of a res judicata defense (claim preclusion) in *Blonder Tongue*:  "In

18  determining the validity of a plea of res judicata three questions are pertinent:  Was the issue

19  decided in the prior adjudication identical with the one presented in the action in question?  Was

20  there a final judgment on the merits?  Was the party against whom the plea is asserted a party or

21  in privity with a party to the prior adjudication?"  *Blonder Tongue Labs, Inc. v. University of Ill.*

22  *Found.*, 402 U.S. 313, 323-24, 91 S. Ct. 1434, 1440 (1971); *see also E.E.O.C.*, 921 F.2d at 493.[4]

23       Under these standards, res judicata applies in the present situation because:

24       • the same plaintiff, UPitt, and same defendant, Varian, are parties;

25

26  [3] Due to the pending Motion to Transfer, it is uncertain whether this motion will be decided in the Northern District of California or Western District of Pennsylvania.  Varian respectfully cites to authorities from both jurisdictions, with Ninth Circuit authorities primarily in the footnotes.

27  [4] The Ninth Circuit follows the same three-prong test.  *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003).

28

1        •    the same patent infringement claims based on the same patents are raised; and

2        •    the dismissal in the Pennsylvania action was a final judgment on the merits.

3 UPitt's alleged post-judgment acquisition of patent ownership rights from CMU does not change

4 the analysis. UPitt is still the same party against whom dismissal with prejudice was entered in

5 the prior action. Moreover, CMU had no right to sue Varian because it was in privity with UPitt

6 in the Pennsylvania case. Thus, UPitt could not gain the right to sue Varian by acquiring CMU's

7 patent ownership rights.

8        **B.**      **Res Judicata Is a Proper Basis for a Motion to Dismiss Under Rule 12(b)(6)**

9        A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) if, from the

10 face of the complaint, the plaintiff has failed to state a claim upon which relief can be granted.

11 Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), a court must

12 take all allegations in the complaint as true and construe all inferences from them in the light most

13 favorable to the plaintiff. *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d

14 478, 483 (3d Cir. 1998).[5] A court need not, however, credit bald assertions or legal conclusions.

15 *Anspach v. City of Philadelphia*, 503 F.3d 256, 260 (3d Cir. 2007).[6] The court may consider not

16 only the allegations of the complaint but also matters that are subject to judicial notice. *See, e.g.,*

17 *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (judicial proceedings constitute public

18 records of which court may take judicial notice in connection with motion to dismiss).[7]

19        A motion to dismiss under Rule 12(b)(6) may be granted where all the elements of an

20 affirmative defense appear on the face of the complaint. *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855,

21 859 (3d Cir. 1994).[8] In particular, courts will grant a motion to dismiss based on a res judicata

22 defense where the relevant facts appear on the face of the complaint or are judicially noticeable.

23 *See, e.g., Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960 (3d Cir. 1991); *Fogarty v. USA Truck,*

24 _____

[5] *See also Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

25 [6] *See also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

26 [7] *See also MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) (court may take

27 judicial notice of documents from prior proceeding when considering motion to dismiss).

28 [8] *See also McCalden v. California Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990) (motion to dismiss complaint may be granted where affirmative defense clearly appears on face of pleading).

*Inc.*, 2008 U.S. Dist. LEXIS 50270, at *14-21 (W.D. Pa. June 30, 2008); *Russo v. Glass*, 2004 U.S. Dist. LEXIS 16918, at *5-7 (E.D. Pa. Aug. 19, 2004), *aff'd*, 204 Fed. Appx. 157 (3d Cir. 2006); *Simmons v. Anzon, Inc.*, 1994 U.S. Dist. LEXIS 8488, at *4-13 (E.D. Pa. June 21, 1994).[9]

### C.    Varian's Res Judicata Defense Is Evident From the Face of the Complaint and Judicially Noticeable Materials From the Pennsylvania Case

#### 1.    The Same Parties Are Plaintiff and Defendant in Each Action

UPitt is the sole plaintiff and Varian is the only defendant in both the present action and the Pennsylvania case. *Compare* Docket No. 1 *with* RJN, Ex. A. "[T]he . . . requirement [that the parties be the same in each action] is clearly satisfied because the same parties are present in both cases." *Simmons*, 1994 U.S. Dist. LEXIS 8488, at *5; *see also Russo*, 2004 U.S. Dist. LEXIS 16918, at *6 (same party prong met because "Plaintiff and Defendant were both parties in the 2002 action"); *Staples v. Ruyter Bay Land Partners*, *LLC*, 2007 U.S. Dist. LEXIS 90806, at *13 (D.V.I. Dec. 10, 2007) (referring to *Gonzales v. Banco Cent. Corp.*, 27 F.3d 751, 756 (1st Cir. 1994), as "noting the ease in determining whether the parties are the same in 'situations in which precisely the same parties appear in both suits'").[10]

#### 2.    The Causes of Action Are Identical, Being Based on the Same Patents

The second element of a res judicata defense is met because the causes of action in this case are the same as in the Pennsylvania case. As in *Simmons*, "Plaintiff's second complaint is not only related but is nearly identical in form and substance to [its] earlier complaint." 1994 U.S. Dist. LEXIS 8488, at *11. Both cases allege infringement by Varian of the '431 and '554 patents, and nothing else. *See supra* at 7. UPitt stated repeatedly in its opposition to the pending Motion to Transfer that when the Pennsylvania case was dismissed, it simply "refile[d] its claims"

---

[9] *See also Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *Coppoletta v. California*, 2006 U.S. Dist. LEXIS 68861, at *14-16 (N.D. Cal. Sept. 14, 2006) (affirmative defenses such as res judicata may be raised on motion to dismiss "as long as the complaint clearly shows on its face that the affirmative defense bars the action"); *Byrd v. Farnsworth*, 1996 U.S. Dist. LEXIS 18707, at *3-4 (N.D. Cal. Dec. 9, 1996) ("An FRCP 12(b)(6) motion may be premised on res judicata, if the basis for that defense can be established by public records which are properly the subject of judicial notice.").

[10] Ninth Circuit law supports the same conclusion. *See Tahoe*, 322 F.3d at 1081.

in this action.  *See, e.g.,* Docket No. 33 at 2.  That constitutes an admission that the causes of action are the same in each case.

The Third Circuit takes a "broad view of what constitutes identity of causes of action." *United States v. Athlone Indus. Inc.*, 746 F.2d 977, 984 (3d Cir. 1984); *Staples*, 2007 U.S. Dist. LEXIS 90806, at *17.  The Third Circuit has examined the following four factors to determine whether the "same causes of action" requirement is met:

> (1) whether the acts complained of and the demand for relief are the same;

> (2) whether the theory of recovery is the same;

> (3) whether the witnesses and documents necessary at trial are the same; and

> (4) whether the material facts alleged are the same.

*Staples*, 2007 U.S. Dist. LEXIS 90906, at *18; *Athlone*, 746 F.2d at 984.  Here, the two actions have exactly the same theory of recovery and demand for relief and are based on the same alleged acts.  Accordingly, the same witnesses and documents would be necessary at trial in each action.  As noted above, many courts have made similar findings and granted motions to dismiss under Rule 12(b)(6) based on res judicata.  *See supra* at 8-9 & fn. 9.[11]

### 3.    The Dismissal "With Prejudice" in the Pennsylvania Case Was a Final Judgment on the Merits for Purposes of Res Judicata

The Pennsylvania Court's judgment dismissing UPitt's patent infringement claims against Varian "with prejudice" constitutes a final judgment "on the merits" for purposes of res judicata.  Therefore, the third and final element of res judicata is also established.

#### a.    Dismissal "With Prejudice" Is a Final Judgment on the Merits

The Pennsylvania Court explicitly considered whether the dismissal for lack of standing in the prior case should be with or without prejudice.  The special master had recommended that the

---

[11] The Ninth Circuit follows a similar four-factor test that asks "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts.  The last of these criteria is the most important." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982).  These factors may be applied on a motion to dismiss by comparing the complaints in the two actions.  *See, e.g., Stephenson v. United Airlines, Inc.*, 2002 U.S. Dist. LEXIS 23301, at *9-14 (N.D. Cal. Nov. 29, 2002); *Krajca v. Southland Corp.*, 206 F. Supp. 2d 1079 (D. Nev. 2002); *see also supra* at 9 fn. 9.

VARIAN'S MOTION TO DISMISS BASED ON DOCTRINE OF RES JUDICATA
(Case No. CV 08-2973 MMC)

1    case be dismissed without prejudice, and UPitt repeatedly argued for such a dismissal and against

2    a dismissal with prejudice. *See supra* at 5-7. However, the Pennsylvania Court rejected those

3    arguments and entered a dismissal *with* prejudice because of UPitt's unjustified delay in adding

4    CMU as a party and the resulting prejudice to Varian. *See id.*

5         A dismissal with prejudice "is a complete adjudication of the issues presented by the

6    pleadings and bars further action between the parties," regardless of the reason for dismissal.

7    *Freedman v. American Export Isbrandtsen Lines, Inc.*, 451 F.2d 157, 158 (3d Cir. 1971); *Bond v.*

8    *United States Attorney General's Office*, 2001 U.S. Dist. LEXIS 15859, at *6 (E.D. Pa. Aug. 8,

9    2001). "A dismissal that is specifically rendered 'with prejudice' qualifies as an adjudication on

10   the merits and thus carries preclusive effect." *Gimenez v. Morgan Stanley D.W., Inc.*, 202 Fed.

11   Appx. 583, 2006 U.S. App. LEXIS 25561, at *3 (3d Cir. 2006) (citing *Gambocz v. Yelencsics*,

12   468 F.2d 837, 840 (3d Cir. 1972)).[12] This is true even if a case is dismissed with prejudice for

13   procedural reasons such that the underlying merits of the case are not addressed. *See id.* (res

14   judicata applied where prior claims were dismissed for failure to retain counsel and to properly

15   refile within specified time).[13] Many courts have held that dismissals "with prejudice" based on

16   procedural failings have preclusive effect. *See, e.g.*, *Freedman*, 451 F.2d at 158 (dismissal for

17   failure to appear at trial); *Russo*, 2004 U.S. Dist. LEXIS 16918, at *6-7 (dismissal for failure to

18   timely file amended complaint); *AT&T v. Maydak*, 1999 U.S. Dist. LEXIS 21938, at *13-14

19   (W.D. Pa. June 25, 1999) (dismissal because claims constituted contumacious and harassing

20   conduct). Thus, regardless of how UPitt wishes to characterize the dismissal in the Pennsylvania

21   case, the dismissal "with prejudice" renders it a final judgment on the merits.

22

23   [12] *Gimenez* is designated "non-precedential" by the Third Circuit. However, the opinion may be
     cited consistent with N.D. Cal. Civil L.R. 3-4(e) because the Third Circuit does not prohibit

24   citations to its non-precedential decisions. *See In re Grand Jury Investigation*, 445 F.3d 266, 276
     (3d Cir. 2006); *Kolkevich v. Attorney Gen. of the U.S.*, 501 F.3d 323, 332 (3d Cir. 2007).

25   [13] The law in the Ninth Circuit is even clearer on this point. *See In re Schimmels*, 127 F.3d 875,
     884 (9th Cir. 1997) ("An involuntary dismissal generally acts as a judgment on the merits for the

26   purposes of res judicata, regardless of whether the dismissal results from procedural error or from
     the court's considered examination of the plaintiff's substantive claims."); *Marin v. Hew, Health*

27   *Care Fin. Agency*, 769 F.2d 590, 593 (9th Cir. 1985) ("Even without a determination which is
     literally on the merits, a denial with prejudice may be a final judgment with res judicata effect as

28   long as the result is not unfair.").

VARIAN'S MOTION TO DISMISS BASED
                                                ON DOCTRINE OF RES JUDICATA
                                                (Case No. CV 08-2973 MMC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.    A Dismissal for Lack of Standing May Be "With Prejudice" and Thus Have Preclusive Effect

UPitt argued to the Pennsylvania Court, as well as to this Court in its opposition to the pending Motion to Transfer, that a dismissal for lack of standing is "jurisdictional" and therefore cannot be deemed a judgment "on the merits" with preclusive effect.  This argument misapplies the applicable law.  Varian explains in this section that the Pennsylvania Court's dismissal for lack of standing was properly designated "with prejudice" because (1) it was based on findings of fact that affected the merits and (2) the dismissal was based on a lack of "prudential" standing, not jurisdictional standing.  In the following section, Varian explains that UPitt's undue delay in seeking to add CMU as a party and the resulting prejudice to Varian constitute additional factors that justified a dismissal with prejudice.

When a dismissal for lack of standing is based on factual findings, it is "on the merits" for the purposes of res judicata.  *See, e.g.*, *Staples*, 2007 U.S. Dist. LEXIS 90806, at *9-12; *Chemlen v. Bank of Ireland First Holdings, Inc.*, 1993 U.S. App. LEXIS 28614 (1st Cir. Nov. 3, 1993).[14] In *Staples*, the previous action had been dismissed based on a finding that the right to bring suit vested in a homeowners association rather than the individual plaintiffs.  *Staples*, 2007 U.S. Dist. LEXIS 90806, at *11.  The court held that "this factual finding, even though made in the context of determining the 2003 Plaintiffs' standing, was a determination of the merits of those claims" and thus the dismissal satisfied the test for res judicata.  *Id.* at *11-12.  The court noted that "courts in other circuits have held that '[t]here is ample support for the legal conclusion that a prior decision on lack of standing has a res judicata effect as to that litigant." *Id.* (citing cases).

*Chemlen* reached a similar result.  There, the first action had been dismissed based on a finding that the plaintiff did not have a property interest in the bankruptcy court's approval of a settlement.  *Chemlen*, 1993 U.S. App. LEXIS 28614, at *9-10.  The court held that "[s]ince Chemlen's underlying claims were predicated on his property interest in the settlement, this factual finding, even though made in the context of determining Chemlen's standing, was a

---

[14] *Chemlen* is not a published case.  However, it may be cited consistent with N.D. Cal. Civil L.R. 3-4(e), which prohibits citation to opinions designated "not for citation," in light of the fact that the First Circuit does not prohibit citation to its unpublished decisions.  *See* 1st Cir. R. 32.1.0(a).

VARIAN'S MOTION TO DISMISS BASED
ON DOCTRINE OF RES JUDICATA
(Case No. CV 08-2973 MMC)

1   determination of the merits of those claims." *Id.*; *see also Simon v. Allstate Employee Group*

2   *Med. Plan*, 263 F.3d 656, 658 (7th Cir. 2001) (dismissal for lack of standing under ERISA had

3   preclusive effect).[15]

4         Like the dismissals in *Staples* and *Chemlen*, the dismissal in the Pennsylvania case was

5   based on a factual finding relating to the merits, namely that UPitt did not have full ownership of

6   the patents-in-suit. *See* RJN, Ex. G at 10; *id.*, Ex. H at 2.  The special master devoted more than

7   seven pages to analyzing technology agreements between UPitt and CMU and assignments from

8   the inventors before concluding that CMU was a co-owner of the patents and had to be joined to

9   satisfy patent law's standing requirements. *See id.*, Ex. G at 2-6, 8-10.  Thus, the dismissal with

10  prejudice represents an adjudication of the merits and has res judicata effect.  For the same

11  reason, the present case is distinguishable from others in which courts have stated that dismissals

12  for lack of standing preclude a ruling on the merits and lack claim preclusive effect. *See Staples*,

13  2007 U.S. Dist. LEXIS 90806, at *9-10 (considering such a case and finding it "not applicable").

14        UPitt's argument that the judgment in the Pennsylvania case lacks res judicata effect is

15  based primarily on *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366 (Fed. Cir.

16  2003).  In *Media Techs.*, the Federal Circuit reversed the district court's ruling that a dismissal

17  with prejudice for lack of standing in a prior patent infringement suit barred the present action.

18  The court found that the dismissal for lack of standing in the prior action did not constitute a

19  judgment "on the merits." *Id.* at 1369-70.  However, the holding of *Media Techs.* does not apply

20  here because the facts of the present case are materially different.  In particular, the plaintiff in the

21  first action addressed in *Media Techs.* had no ownership interest in the patents-in-suit whatsoever.

22  *Id.* at 1368.  "Therefore it lacked the cognizable injury necessary to assert standing under Article

23  III of the Constitution." *Id.*  In other words, the lack of standing completely deprived the court of

24  subject matter jurisdiction. *Id.* at 1369-70.  Here, by contrast, UPitt co-owned the patents-in-suit

25

26  [15] *Cf. Stewart v. U.S. Bancorp*, 297 F.3d 953 (9th Cir. 2002).  In *Stewart*, the Ninth Circuit found that although jurisdictional dismissals are not on the merits for the purposes of res judicata, this

27  rule did not apply to a dismissal based on federal preemption because "[a] district court's analysis of whether the complaint is federally preempted is a question of law and fact; it is a decision on

28  the merits of the pleadings." *Id.* at 956-57.

VARIAN'S MOTION TO DISMISS BASED
ON DOCTRINE OF RES JUDICATA
(Case No. CV 08-2973 MMC)

1   throughout the proceedings.  *See* RJN, Ex. H at 2-3; *id*., Ex. G.  Thus, UPitt had an Article III

2   basis to assert standing, but it lacked what the Federal Circuit has termed "prudential" standing.

3   *See, e.g., Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1348-49

4   (Fed. Cir. 2001) ("*TCI*").[16]  Since the dismissal of UPitt's claims in the Pennsylvania case was

5   based on a lack of prudential standing, not Article III standing, it was not "jurisdictional" in the

6   sense required for a dismissal to be deemed non-claim preclusive.  *Cf. Motorola Credit Corp. v.*

7   *Uzan*, 388 F.3d 39, 55 (2d Cir. 2004) (explaining, in connection with discussion of whether court

8   had authority to exercise supplemental jurisdiction, that dismissal of RICO claim was based on

9   lack of "statutory" standing rather than "constitutional" standing and thus it was "on the merits

10   rather than for lack of subject-matter jurisdiction").

11                    **c.      A Dismissal Based on a Plaintiff's Untimely Attempt to Amend
                                Its Pleadings May Operate as a Final Judgment on the Merits**

12

13          Another reason why the Pennsylvania judgment should bar UPitt from reasserting its

14   patent infringement claims in this action is that the dismissal with prejudice in the prior case was

15   based on the fact that UPitt's attempt to add CMU as a party was *untimely and prejudicial*.  UPitt

16   could have joined CMU at the start of the case or any time thereafter.  Yet it did not attempt to do

17   so until six months after the court-ordered deadline to add parties, despite its knowledge of the

18   facts making CMU a necessary party.  *See supra* at 4-6.  Indeed, UPitt misled Varian and the

19   Pennsylvania Court regarding those facts by stating in its Complaint and interrogatory responses

20   that it was the sole owner of the patents-in-suit.  *See id.*  As a result, the Pennsylvania Court

21   found that UPitt's failure to add CMU as a party in a timely way was a "tactical decision."  *See*

22   RJN, Ex. H at 5.  UPitt's wrongful conduct, combined with resulting prejudice to Varian, brought

23   about the dismissal with prejudice.  *See id.*, Ex. H at 4-5 & fn.3.  A dismissal with prejudice under

24   such circumstances was absolutely proper and has res judicata effect.

25          When a dismissal follows an attempt by the plaintiff to amend his complaint that is denied

26   due to untimeliness, the dismissal may operate as a final judgment on the merits with respect to

27   ───────────────────────
   [16] UPitt made this point in a prior motion, relying on *TCI* to argue that "[t]he requirement that all
28   co-owners to a patent-in-suit must be joined to establish standing is a 'prudential' requirement,
   distinguishable from the constitutional requirement for jurisdiction."  *See* RJN, Ex. I at 3.

VARIAN'S MOTION TO DISMISS BASED
                                                        ON DOCTRINE OF RES JUDICATA
                                                        (Case No. CV 08-2973 MMC)

1    arguments the plaintiff was not allowed to raise.  *See, e.g.*, *ProtoComm Corp. v. Novell, Inc.*,

2    1998 U.S. Dist. LEXIS 9636 (E.D. Pa. June 29, 1998); *Russo  v. Glass*, 2004 U.S. Dist. LEXIS

3    16918, at *5-7 (E.D. Pa. Aug. 19, 2004), *aff'd*, 204 Fed. Appx. 157 (3d Cir. 2006); *Adolph Coors*

4    *Co. v. Sickler*, 608 F. Supp. 1417 (C.D. Cal. 1985).

5         This case is strikingly similar to *ProtoComm*.  There, the plaintiff sought to amend its

6    complaint in a first action to add a new party and several new claims.  1998 U.S. Dist. LEXIS

7    9636, at *6.  The court partly denied leave to amend because amendment after a year of litigation

8    "would have resulted at that 'advanced stage of the proceedings' in 'further delay of this action'

9    that 'would be unfair to [defendant] and this court.'"  *Id*. at *1, *6, *29.  The case proceeded to

10   trial on other claims and judgment was entered.  *Id.* at *6-7.  In a second action, the court found

11   that res judicata applied to bar assertion of the claims the plaintiff had not been allowed to add by

12   amendment, including against the defendant that the plaintiff had unsuccessfully sought to add.

13   *Id.* at *30-31.  The court rejected the plaintiff's argument that denial of leave to amend meant it

14   could not have asserted the claims earlier, finding that almost all of the alleged events had taken

15   place before filing and the plaintiff had waited more than a year before attempting to amend.  *Id.*

16   at *29.  The court noted that the proper remedy was to appeal in the first lawsuit and challenge

17   the denial of leave to amend.  *Id.* at *30 (stating also that plaintiff "cannot now try to circumvent

18   that decision by pursuing those same claims in this lawsuit."); *see also United States v. McGann*,

19   951 F. Supp. 372, 379 (E.D.N.Y. 1997) (describing similar tactics by plaintiff as "attempting an

20   end run around the denial of its motion to amend its complaint by filing a new one, or as it is

21   occasionally put, attempting to accomplish indirectly what it could not accomplish directly").

22        Similarly, in *Adolph Coors*, the plaintiff sought to amend its complaint in the first action

23   after a motion for summary judgment had been filed.  608 F. Supp at 1429.  The court denied

24   leave to amend, finding that the plaintiff had long been on notice of the facts on which it sought

25   to base its new claim and that amendment would prejudice the defendants.  *Id.* at 1431.  The

26   remaining claims were disposed of on summary judgment, and the plaintiff filed a second action

27   asserting the claim it had sought to add.  *Id.* at 1429.  The second court held that the plaintiff was

28   barred from asserting the claim in a new action because "[the previous judge's] findings of

- 14 -

1    prejudice to the defendants is exactly the type of finding which would support a court's decision

2    to bar a claim so as to protect a party from the 'cost and vexation of multiple lawsuits,'" one of

3    the policies underlying res judicata. *Id.* at 1431.

4        The Third Circuit has expressly held that a plaintiff's untimely conduct may serve as the

5    basis for a dismissal with prejudice. *See Venuto v. Witco Corp.*, 117 F.3d 754 (3d Cir. 1997). In

6    *Venuto*, the plaintiff in a first action was denied leave to add Venuto as a co-plaintiff because the

7    amendment was untimely. *Id.* at 757. The denial was "without prejudice." *Id.* Venuto later filed

8    his own action against the defendant, which was dismissed based on res judicata. *Id.* at 757-58.

9    The Third Circuit reversed, but only because the dismissal was expressly "without prejudice." *Id.*

10   at 758. Responding to the argument that allowing Venuto's untimely claims would reward delay,

11   the court stated that "if a district court concludes that a litigant has unduly delayed, it can—and,

12   presumably, ordinarily will—deny a motion to amend 'with prejudice.'" *Id.* at 759. That, of

13   course, is precisely what happened in the Pennsylvania case between UPitt and Varian.

14       The principle that a plaintiff's untimely conduct may support the dismissal of its claims

15   with prejudice is further supported by Rule 16(b) and the general need of district courts to be able

16   to manage the cases before them and control their dockets. Rule 16(b) expressly directs district

17   courts to include in their scheduling orders a deadline to add parties. Fed. R. Civ. P. 16(b)(3)(A).

18   "[T]he district court needs the authority to manage the cases before it efficiently and effectively."

19   *Wong v. Regents of University of California*, 410 F.3d 1052, 1060 (9th Cir. 2005).

20           In these days of heavy caseloads, trial courts in both the federal and state
             systems routinely set schedules and establish deadlines to foster the
21           efficient treatment and resolution of cases. Those efforts will be
             successful only if the deadlines are taken seriously by the parties, and the
22           best way to encourage that is to enforce the deadlines. Parties must
             understand that they will pay a price for failure to comply strictly with
23           scheduling and other orders, and that failure to do so may properly support
             severe sanctions and exclusions of evidence. The Federal Rules of Civil
24           Procedure explicitly authorize the establishment of schedules and
             deadlines, in Rule 16(b), and the enforcement of those schedules by the
25           imposition of sanctions, in Rule 16(f).

26   *Id.* UPitt's insistence that it be permitted to proceed with this action despite the dismissal with

27   prejudice in the Pennsylvania case would permit a plaintiff, without consequence, to file a case

28   with a known defect; fail to correct that defect despite having the ability to do so, with malicious

VARIAN'S MOTION TO DISMISS BASED
ON DOCTRINE OF RES JUDICATA
(Case No. CV 08-2973 MMC)

1   intent; force a defendant to defend itself on the merits through more than a year of expensive and

2   burdensome litigation; and seek to cure the defect only when forced to do so in violation of a

3   scheduling order and with prejudice to the other party.  That unjust result is not mandated by any

4   authority.  *See also Semtek Int'l Inc.* v. *Lockheed Martin Corp*, 531 U.S. 497, 509, 121 S. Ct.

5   1021, 1028-29 ("If . . . state law did not accord claim-preclusive effect to dismissals for willful

6   violations of discovery orders, federal courts' interest in the integrity of their own processes

7   might justify a contrary federal rule.").

8           This principle provides yet another basis for distinguishing the *Media Techs.* case relied

9   upon by UPitt.  *See supra* at 13-14.  In *Media Techs.*, there was no finding that the plaintiff's

10  failure to address standing earlier was wrongful, dilatory, or prejudicial to the defendant.  *See*

11  *Media Techs.*, 334 F.3d at 1368-69.  Rather, upon learning that the plaintiff lacked ownership of

12  the patent-in-suit and thus lacked standing to sue, the patent owner promptly assigned the patent

13  to another entity and arranged for that entity to file suit.  *Id*.  Here, by contrast, the Pennsylvania

14  Court found that UPitt knew all along that CMU was a co-owner and should be joined as a party;

15  that UPitt failed to join CMU in order to obtain tactical advantages in that action; that in doing so,

16  UPitt ignored the scheduling order specifying a date by which all parties must be joined; and that

17  Varian would have been prejudiced by the addition of a new party after the close of discovery and

18  claim construction proceedings.  *See* RJN, Ex. H at 2, 4-5.

19                  **4.      Res Judicata Applies Despite UPitt's Alleged Acquisition of CMU's
                             Patent Ownership Rights After Entry of Judgment in the Prior Case**

20

21          UPitt claims that CMU assigned its rights in the patents-in-suit to UPitt on the day this

    lawsuit was filed.[17]  *See* Docket No. 1, Ex. A.  UPitt has indicated a belief that as the current sole
22
    owner of the patents-in-suit, it can bring this present action free from any limitations imposed on
23
    it by the final judgment in the Pennsylvania action.  This is wishful thinking.  The prior judgment
24
    still binds UPitt and the present action is still barred by the doctrine of res judicata.
25

26

27  _____

28  [17] Varian has not had the opportunity to investigate UPitt's claims regarding this assignment and
    reserves the right to challenge the existence, scope, and validity of the assignment.

1

### a.    Each Action Still Has the Same Plaintiff

2

Regardless of which new right UPitt has allegedly acquired, it is still the party against

3

whom a dismissal with prejudice was entered in the duplicative Pennsylvania case.  There is still

4

identicality of parties in the two actions for purposes of res judicata.  *See supra* at 9; *Staples*, 2007

5

U.S. Dist. LEXIS 90806, at *13.[18]

6

### b.    UPitt Could Not Gain the Right to Sue Varian From CMU Because CMU Could Not Have Sued Varian Itself

7

8

UPitt has contended that it "cured" its lack of standing by allegedly acquiring CMU's

9

ownership rights in the patents-in-suit.  This contention has as a necessary premise that CMU

10

could have sued Varian for alleged infringement of those patents prior to the assignment.  This

11

premise is unfounded.  In fact, CMU's ability to bring an infringement lawsuit against Varian,

12

like UPitt's, was eliminated by the dismissal with prejudice in the Pennsylvania case.

13

Prior to the assignment, as discussed above, UPitt and CMU were co-owners of the

14

patents-in-suit.  *See supra* at 5-7; RJN, Exs. G, H.  Accordingly, based on the principles that led

15

to the granting of Varian's summary judgment motion in the Pennsylvania case, CMU could not

16

have sued Varian by itself; it would have had to join its co-owner, UPitt, as a party.  *See, e.g.,* 35

17

U.S.C. § 281; *International Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed.

18

Cir. 2001); *Israel Bio-Engineering Project v. Amgen,, Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir.

19

2007); RJN, Exs. G, H.  However, CMU could not have joined UPitt as a party due to the claim

20

preclusive effect of the prior judgment in the Pennsylvania case.[19]  Thus, under substantive patent

21

law (which is the basis of the requirement that all patent owners be joined as parties, *see Ethicon,*

22

*Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998)), CMU could not have

23

proceeded with an infringement suit against Varian.

24

---

[18] *See also Tahoe*, 322 F.3d at 1081.

25

[19] It is well-established that one co-owner may "impede" another co-owner's ability to sue an alleged infringer by unilaterally granting a patent license to the infringer or by "refusing to

26

voluntarily join in such a suit."  *Ethicon, Inc. v. United States Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998); *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344-45 (Fed. Cir.

27

1997).  It is a logical extension of that principle that one co-owner may similarly impede another co-owner's ability to sue an alleged infringer by losing its ability to participate in such a suit by

28

virtue of litigation misconduct or error in a prior, duplicative lawsuit.

VARIAN'S MOTION TO DISMISS BASED ON DOCTRINE OF RES JUDICATA (Case No. CV 08-2973 MMC)

1    CMU also would have been barred from suing Varian for alleged infringement of the

2    patents-in-suit under the doctrine of res judicata because it is in privity with UPitt with respect to

3    the Pennsylvania case.  Res judicata applies not only to parties in the first lawsuit but also to non-

4    parties who are in "privity" with a party.  *Blonder Tongue Labs, Inc. v. University of Ill. Found.*,

5    402 U.S. 313, 323-24, 91 S. Ct. 1434, 1440 (1971).  One basis for a finding of privity is that the

6    non-party was "adequately represented by someone with the same interests who was a party ...."

7    *Taylor v. Sturgell*, __ U.S. __, 128 S. Ct. 2161, 2172 (2008).  Adequate representation may be

8    found where the party understood itself to be acting in a representative capacity or the court took

9    care to protect the non-party's interests.  *Id.* at 2174.  Here, UPitt admitted[20] and the Pennsylvania

10    Court found that, pursuant to an agreement between UPitt and CMU, "UPitt was designated as the

11    institution responsible for commercializing the patents[-in-suit]."  *See* RJN, Ex. G at 5, 8-9; *id.*,

12    Ex. H at 2-3.  UPitt's "contractual responsibility" to CMU, *see* RJN, Ex. G at 8, creates the basis

13    for a finding of privity based on adequate representation.  Further grounds for a finding of privity

14    include the fact that CMU not only had notice of the Pennsylvania case while it was pending but,

15    in UPitt's words, CMU was an "active participant" in that lawsuit, it had "some interest in the

16    outcome," and it was "willing to be added as a plaintiff."  *See* RJN, Ex. I at 1-5; *id.*, Ex. M at 2.[21]

17    Such factors may be considered in a privity analysis.  *See, e.g., Tahoe*, 322 F.3d at 1082 (quoting

18    *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997)); *Robertson v. Bartels*, 148 F. Supp. 2d 443,

19    449-50 (D.N.J. 2001).

20    A third basis for finding that CMU would have been barred from suing Varian for alleged

21    infringement of the patents-in-suit is the rule adopted by the Third Circuit in *Talbot v. Quaker-*

22    *State Oil Refining Co.*, 104 F.2d 967 (3d Cir. 1939).  In *Talbot*, the defendant sued one co-owner

23    of a patent for the right to use the patented invention pursuant to a contract, and won.  *Id.* at 967.

24

25    [20] UPitt's admissions on which the Pennsylvania Court's findings were based are contained in a
brief and other materials that UPitt filed under seal in the Pennsylvania case.  If the Court wishes,

26    Varian will submit those materials to this Court under seal so they may be considered directly.

27    [21] A court may take judicial notice of a party's admissions in documents filed in other court
proceedings.  *E.g. In re FleetBoston Fin. Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 87425, at *119

28    (D.N.J. Nov. 28, 2007); *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1109 (N.D.
Cal. 2003); *In re A-Z Elecs., LLC*, 350 B.R. 886, 888 (Bankr. D. Idaho 2006).

VARIAN'S MOTION TO DISMISS BASED
ON DOCTRINE OF RES JUDICATA
(Case No. CV 08-2973 MMC)

1   Both co-owners then together brought a patent infringement suit against the defendant. *Id.* at

2   967-68.  The court held that the second suit was barred by res judicata.  *Id*. at 968-69.  Even

3   though one of the co-owners had not been a party to the prior action, the court found he was still

4   bound by the judgment.  *Id*.  This was based largely on his shared interests with the other owner:

5           Property in patents . . . is of a peculiar character and, . . . there is actually a
            much closer interrelationship between the rights of co-owners and a much
6           nearer approach to substantial identity of interests than with tangibles or
            ordinary choses in action.  In its essence all that the Government confers
7           by the patent is the right to exclude others from making, using or vending
            the invention, and as to this essential attribute of the property each joint
8           owner is in a very real sense at the mercy of any other.

9    *Id*. at 968 (citations omitted).  The court also noted that the non-party co-owner had knowledge

10   of the prior suit and had been involved in the proceedings.  *Id.* at 969.  The judgment against

11   UPitt in the Pennsylvania case was binding against CMU for the same reasons.

12          Because CMU could not have sued Varian for infringement of the patents-in-suit, UPitt

13   cannot have gained the right to sue Varian by acquiring CMU's patent ownership rights.

14                    **c.       Allowing UPitt to Proceed With This Action Would Be**
                               **Contrary to Public Policy**
15
16          Allowing this case to proceed, after the Pennsylvania case was dismissed with prejudice

17   due to UPitt's untimeliness, would contravene public policies in favor of enforcing compliance

     with court orders, enabling district courts to manage their dockets, and encouraging finality of
18
     judgments.  *See supra* at 7-8, 15-17.  Those public policies present an independent basis for
19
     dismissing this case, whether directly or, for example, as a basis for invalidating the assignment
20
     of rights from CMU to UPitt.  *See, e.g., Ball v. Halsell*, 161 U.S. 72, 80, 16 S. Ct. 554, 556 (1896)
21
22   ("an assignment of a chose in action will not be sanctioned when it is opposed to any rule of law

23   or public policy"); *Accrued Financial Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 297-300

24   (4th Cir. 2002) (invalidating assignments based on public policy).

25                    **5.       UPitt's Pending Appeal Supports Dismissal of This Action**

26          As mentioned above, UPitt has appealed from the judgment in the Pennsylvania case.  *See*

27   *supra* at 7.  The appeal does not "detract from [the judgment's] decisiveness and finality" for

28   purposes of res judicata.  *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183,

- 19 -                  VARIAN'S MOTION TO DISMISS BASED
                        ON DOCTRINE OF RES JUDICATA
                        (Case No. CV 08-2973 MMC)

189, 61 S. Ct. 513, 515 (1941).  Rather, the judgment retains its preclusive effect unless and until the appellate court reverses.  *Id.*; *First Options v. Kaplan*, 913 F. Supp. 377, 382 (E.D. Pa. 1995) ("The finality of a judgment, and therefore its preclusive effect . . . is not affected by a pending appeal.").[22]  This rule identifies the route UPitt should have taken:  await the result of appeal in the Pennsylvania case.  UPitt's arguments about why this action is not barred by res judicata can be presented equally in that appeal to argue that the prior case should not have been dismissed with prejudice.  If the appellate court upholds the dismissal with prejudice, then this action has no business going forward.  By contrast, if the appeal results in a reversal of the judgment in the Pennsylvania case, UPitt's filing of this case will have brought about the unseemly result of two identical cases proceeding at the same time in two different courts.  To prevent that possibility, this case should be dismissed.

## IV.   CONCLUSION

The present action in California has the same causes of actions, is based on the same patents, and involves the same parties as the previous action in the Pennsylvania Court.  The Pennsylvania action was dismissed on the merits with prejudice.  Because UPitt is forever barred from pursuing the present action under the doctrine of res judicata, Varian respectfully requests that the Court grant its Motion to Dismiss without leave to amend.

Dated:  July 23, 2008                          ORRICK, HERRINGTON & SUTCLIFFE LLP


By:_____/s/ *Matthew H. Poppe*_____
                    Matthew H. Poppe
        Attorneys for Defendant Varian Medical
                        Systems, Inc.

---

[22] *See also Tripati v. Henman*, 857 F.2d 1366 (9th Cir. 1988) ("'The established rule in the federal courts is that a final judgment retains all of its res judicata consequences pending decision of the appeal....'  To deny preclusion in these circumstances would lead to an absurd result:  Litigants would be able to refile identical cases while appeals are pending, enmeshing their opponents and the court system in tangles of duplicative litigation.") (citations omitted).

1

**CERTIFICATE OF SERVICE**

2

3

    I hereby certify that a true and correct copy of **DEFENDANT VARIAN MEDICAL**

**SYSTEMS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S**

4

**CLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6) BASED ON DOCTRINE OF RES**

5

**JUDICATA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

6

**THEREOF** was served upon the University of Pittsburgh, through its counsel, via:

7

8

            _____        Hand-Delivery

9

            _____        Facsimile

10

            _____        First Class, US Mail, Postage Prepaid

11

            _____        Certified Mail-Return Receipt Requested

12

            _____X\_\_\_\_        ECF Electronic Service

13

            _____        Overnight Delivery

14

15

    at the following addresses:

16

                        Rita E. Tautkus
17                   Morgan Lewis & Bockius, LLP
                     One Market – Spear Street Tower
18                   San Francisco, CA   94105
                     rtautkus@morganlewis.com
19

20

Dated:  July 25, 2008                    \_\_/s/ *Matthew H. Poppe*_____
21                                          Matthew H. Poppe

22

23

OHS West:260473791.3
24

25

26

27

28