1  DANIEL JOHNSON, JR. (SBN 57409)
   RITA E. TAUTKUS (SBN 162090)
2  MORGAN, LEWIS & BOCKIUS LLP
   One Market, Spear Street Tower
3  San Francisco CA 94105
   Telephone:  (415) 442-1000
4  Facsimile:  (415) 442-1001
   Email:  djjohnson@morganlewis.com
5  Email:  rtautkus@morganlewis.com

6  Attorneys for Plaintiff
   UNIVERSITY OF PITTSBURGH
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11                                          Case No. CV 08-02973 MMC
   UNIVERSITY OF PITTSBURGH OF THE
12 COMMONWEALTH SYSTEM OF HIGHER
   EDUCATION d/b/a UNIVERSITY OF           **UNIVERSITY OF PITTSBURGH'S**
13 PITTSBURGH                              **OPPOSITION TO MOTION TO**
                                           **DISMISS UNDER FED. R. CIV. P.**
14              Plaintiff,                 **12(B)(6) BY VARIAN MEDICAL**
                                           **SYSTEMS, INC.**
15      vs.
                                           Date:  September 5, 2008
16 VARIAN MEDICAL SYSTEMS, INC.            Time:  9:00 a.m.
                                           Courtroom 7, 19th Floor
17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    APPLICABLE LAW ............................................................................................ 2

III.   PROCEDURAL HISTORY ................................................................................. 2

    A.     Relevant Facts ............................................................................................ 2

    B.     When UPitt Filed The Pennsylvania Action, It Had A Reasonable Basis To Believe It Had Standing ...................................................................... 4

    C.     New Facts Establishing Standing ............................................................... 4

IV.   ARGUMENT ........................................................................................................ 4

    A.     Claim Preclusion Requires A Prior Decision On The Merits .................... 4

    B.     The Prior Dismissal In The Pennsylvania Case Was Not "On The Merits" Because It Was A Dismissal For Failure To Join A Necessary Party .................. 5

        1.     Under Rule 41(b), A Dismissal Based On Failure To Join A Party Is Not A Judgment On The Merits ................................................. 5

        2.     A Dismissal For Lack Of Standing Is Not Preclusive To A Future Suit Where Standing Exists ........................................................ 5

        3.     Rule 41(b) Prohibits The Result That Varian Seeks ..................... 8

        4.     Varian's Untimeliness Argument Is Wrong As A Matter Of Fact And Law ...................................................................................... 8

        5.     The Cases Cited By Varian Concern A Party Trying To Relitigate The Same Standing Issue A Second Time, An Issue Not Presented In This Case ................................................................. 11

    C.     UPitt Corrected Any Standing Issues That Had Existed In The Pennsylvania Litigation .......................................................................... 13

        1.     It Does Not Matter Whether CMU Could Have Sued Varian ................. 13

        2.     It Does Not Matter Whether UPitt And CMU Were In Privity In The Prior Lawsuit ...................................................................... 14

    D.     UPitt Engaged In No Misconduct In The Pennsylvania Litigation, And Its Complaint Was Not Dismissed As A Sanction ....................................... 15

    E.     Public Policy Demands That UPitt Be Allowed To Have The Merits Of Its Dispute With Varian Resolved .............................................................. 17

    F.     The Appeal Of The Pennsylvania Case Challenges The Ruling That UPitt's Original Ownership Rights Did Not Convey Standing ........................... 19

V.    CONCLUSION .................................................................................................. 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

i

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*,
4
    298 F.3d 291 (4th Cir. 2002)...................................................................................... 18

5
*Adarand Constructors, Inc. v. Mineta*,
    534 U.S. 103 (2001) ................................................................................................... 8

6
*Adolph Coors Co. v. Sickler*,
7
    608 F. Supp. 1417 (C.D. Cal. 1985) ........................................................................ 10

8
*Arachnid, Inc. v. Merit Indus., Inc.*,
    939 F.2d 1574 (Fed. Cir. 1991)................................................................................ 16

9
*Ball v. Halsell*,
10
    161 U.S. 72 (1896) ................................................................................................... 18

11
*Baris v. Sulpicio Lines, Inc.*,
    74 F.3d 567 (5th Cir. 1996)...................................................................................... 11

12
*Chemlen v. Bank of Ireland First Holdings, Inc.*,
13
    No. 93-1592, 1993 U.S. App. LEXIS 28614 (1st Cir. Nov. 3, 1993)...................... 12

14
*Cory v. Fahlstrom*,
    No. 05-3010, 2005 U.S. App. LEXIS 13074 (10th Cir. Jun. 29, 2005).................... 12

15
*Dore v. Kleppe*,
16
    522 F.2d 1369 (5th Cir. 1975)................................................................................... 17

17
*Envtl. Prot. Info. Ctr. v. Pac. Lumber Co.*,
    469 F. Supp. 2d 803 (N.D. Cal. 2007) ...................................................................... 7

18
*Hughes v. United States*,
19
    71 U.S. (4 Wall.) 232 (1866) ............................................................................. 5, 7, 8

20
*Int'l Nutrition Co., v. Horphag Research Ltd.*,
    257 F.3d 1324 (Fed. Cir. 2001) ............................................................................... 14

21
*Intellectual Property Development, Inc. v. TCI Cablevision of California, Inc.*,
22
    248 F.3d 1333 (Fed. Cir. 2001) ................................................................................. 6

23
*Israel Bio-Eng'g Project v. Amgen Inc.*,
    475 F.3d 1256 (Fed. Cir. 2007) ............................................................................... 14

24
*Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.*,
25
    575 F.2d 530 (5th Cir. 1978)...................................................................................... 2

26
*Kearns v. General Motors Corp.*,
    94 F.3d 1553 (Fed. Cir. 1996) ................................................................................. 18

27
*Kremer v. Chem. Constr. Corp.*,
28
    456 U.S. 461 (1982).............................................................................................. 2, 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

ii

**UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)**

*La. Envtl. Action Network v. Browner*,
   87 F.3d 1379 (D.C. Cir. 1996) ........................................................................................... 7

*Lowe v. United States*,
   79 Fed. Cl. 218 (Fed. Cl. 2007) ....................................................................................... 1

*Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   88 F.2d 75 (5th Cir. 1973)................................................................................... 9, 10, 11

*Martin v. Brown*, 63 F.3d 1252 (3d Cir. 1995) ..................................................................... 17

*Media Techs. Licensing, LLC v. Upper Deck Co.*,
   334 F.3d 1366 (Fed. Cir. 2003) .............................................................................. 5, 6, 7, 19

*Mentor H/S, Inc. v. Med. Device Alliance, Inc.*,
   240 F.3d 1016 (Fed. Cir. 2001)................................................................................... 7, 8

*Motorola Credit Corp. v. Uzan*,
   388 F.3d 39 (2d Cir. 2004)................................................................................................. 7

*ProtoComm Corp. v. Novell, Inc.*,
   Civ. Action No. 94-7774, 1998 U.S. Dist. LEXIS 9636 (E.D. Pa. June 29, 1998) .................. 10

*Regents of Univ. of N.M.  v. Knight*,
   21 F.3d 1111 (Fed. Cir. 2003)....................................................................................... 4, 14

*Saylor v. Lindsley*,
   391 F.2d 965 (2d Cir. 1968) ......................................................................................... 5, 17

*Segal v. Am. Tel. & Tel. Co.*,
   606 F.2d 842 (9th Cir. 1979)............................................................................................. 1

*Semtek International, Inc. v. Lockheed Martin Corp.*,
   521 U.S. 497 (2001) ....................................................................................................... 5

*Smith v. Pittsburgh Gage & Supply Co.*,
   388 F.2d 983 (3d Cir. 1968) ......................................................................................... 18

*Staples v. Ruyter Bay Land Partners*,
   Civ. No. 2005-11, 2007 U.S. Dist. LEXIS 90806 (D. V.I. Dec. 10, 2007) ........................... 12

*Stewart v. U.S. Bancorp.*,
   297 F.3d 953 (9th Cir. 2002)..................................................................................... 12, 13

*Talbot v. Quaker-State Oil Refining Co.*,
   104 F.2d 967 (3d Cir. 1939)........................................................................................... 15

*Tripati v. Henman*,
   857 F.2d 1366 (9th Cir. 1988)...................................................................................... 19

*Trujillo v. Colorado*,
   649 F.2d 823 (10th Cir. 1981)..................................................................................... 9, 11

*United States v. McGann*,
   951 F. Supp. 372 (E.D.N.Y. 1997) ................................................................................ 10

MORGAN, LEWIS &
  BOCKIUS LLP
  ATTORNEYS AT LAW
  SAN FRANCISCO

DB2/20806008.1

iii

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

*Venuto v. Witco Corp.*,
  117 F.3d 754 (3d Cir. 1997)......................................................................................... 10

*Wong v. Regents of Univ. of Cal.*,
  410 F.3d 1052 (9th Cir. 2005)...................................................................................... 11

**Statutes**

28 U.S.C. § 1295 ............................................................................................................... 7

35 U.S.C. § 100(d) .......................................................................................................... 14

35 U.S.C. § 261 ............................................................................................................... 14

35 U.S.C. § 281 ............................................................................................................... 14

**Rules**

10th Cir. R. 32.1 ............................................................................................................. 12

Fed. R. Civ. P. 11 ........................................................................................................... 16

Fed. R. Civ. P. 19(b) ........................................................................................................ 3

Fed. R. Civ. P. 41(b) ............................................................................................... passim

**Other Authorities**

Wright, Miller & Cooper, *Federal Practice and Procedure:
  Jurisdiction* § 4435 (2d ed.) ..................................................................................... 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1      The University of Pittsburgh ("UPitt") opposes the motion by Varian Medical Systems,

2  Inc. ("Varian") to dismiss this case on *res judicata* grounds.

3  **I.     INTRODUCTION**

4      The issue before the Court is straightforward: can a party whose complaint has been

5  dismissed for lack of standing file a new complaint after correcting the alleged ownership defect

6  that led to the finding of a lack of standing, and proceed with the new lawsuit?  The answer

7  according to all of the courts to consider this issue and Federal Rule of Civil Procedure 41(b) is

8  YES.  Varian, by ignoring controlling precedent, citing unpublished opinions that do not address

9  the issues to be decided by this Court, and misstating the facts, seeks to dismiss this action, even

10  though there has never been any consideration of the merits of this claim.

11      Varian makes three arguments to support its motion.  It claims that UPitt cannot file a new

12  lawsuit because the first lawsuit was dismissed "on the merits."  It also argues that the case was

13  dismissed due to UPitt's alleged unreasonable delay in adding Carnegie Mellon Uiversity

14  ("CMU") as a party, and UPitt must be punished for its unreasonable delay in naming CMU as a

15  party.  Finally, it argues that the prior order is entitled to *res judicata* effect because the decision

16  was based on prudential rather than constitutional standing.

17      None of Varian's arguments have any merit.  In case after case, the courts of this circuit

18  and the Federal Circuit have held a litigant whose action has been dismissed based on a lack of

19  standing, can cure the defect and re-file, so long as it makes sufficient allegations of facts that it

20  has corrected the standing issue.  In *Segal v. Am. Tel. & Tel. Co.*, 606 F.2d 842, 844-45 (9th Cir.

21  1979), the Ninth Circuit held:

22          Although a judgment of dismissal for lack of jurisdiction is valid and final, the
            judgment does not bar another action by the plaintiff on the same claim.  The
23          aspect of res judicata with which we are concerned is issue preclusion, formerly
            denominated "direct estoppel."  Issue preclusion, unlike bar, forecloses litigation
24          only of those issues of fact or law that were actually litigated . . . .

25  (citations omitted).  Quoting the Restatement, the court went on to note that filing a new claim

26  after the barrier to suit no longer exists is not prohibited.  *Id.* at 845.

27      The Court of Federal Claims has ruled on this issue as well, providing a cogent summary

28  of the law.  *See Lowe v. United States*, 79 Fed. Cl. 218, 230 (Fed. Cl. 2007):

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                                         1
UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1
2
3
4
5

> In summary, a prior dismissal on jurisdictional grounds does not prohibit a subsequent claim on the merits, because those merits have not been heard by the court; the prior dismissal *does* preclude the same action based on the same facts unless the jurisdictional flaw that necessitated dismissal of the first suit has been cured. . . . If the alleged "cure" is sufficient to repair the prior jurisdictional defect, collateral estoppel does not apply to the prior jurisdictional determination because the issue of the court's subject matter jurisdiction over the case *as situated post-"cure"* has not yet been litigated.

6   (emphasis in original).  In the instant case, there are "new facts" and "new issues" for the Court to

7   consider.  In particular, the current standing posture must be evaluated by considering the

8   sufficiency of an assignment of patent rights from CMU to UPitt, occurring after the prior

9   standing dismissal, which cures any prior standing issue, and unquestionably enables UPitt to

10  bring its patent claims in this Court.

11          As will be shown herein, Varian's motion is without merit, and is little more than an effort

12  to convince this Court to ignore long standing precedent and to transform an improvidently

13  granted "dismissal with prejudice" based on standing into a bar against further litigation between

14  the parties.

15  **II.     APPLICABLE LAW**

16          *Res judicata* is composed of two doctrines:  (1) claim preclusion or "true *res judicata*,"

17  and (2) issue preclusion or "collateral estoppel."  *Kaspar Wire Works, Inc. v. Leco Eng'g &*

18  *Mach., Inc.*, 575 F.2d 530, 535 (5th Cir. 1978).  Claim preclusion holds that a "*judgment on the*

19  *merits* of an action precludes the parties . . . from relitigating issues that were or could have been

20  raised in that action."  *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 n.6 (1982) (emphasis

21  added).  Issue preclusion does not require a judgment on the merits, but is more limited than

22  claim preclusion, in that it only prevents litigation of an issue that is *identical* to an issue *fully*

23  *litigated* in the prior case.  *Id.*

24  **III.    PROCEDURAL HISTORY**

25          **A.      Relevant Facts**

26          UPitt has asserted infringement of U.S. Patent Nos. 5,727,554 ('554 Patent) and 5,784,431

27  ('431 Patent), collectively the "patents-in-suit."  *See* Docket Entry 1 (Compl. ¶¶ 11, 16).  UPitt

28  owns the patents-in-suit, including the right to maintain this lawsuit.  *Id.* at Exs. 1, 2, 4.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                                          2

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1    UPitt filed a prior lawsuit against Varian alleging infringement of the '554 Patent and

2    '431 Patent in the Western District of Pennsylvania in April 2007.  Varian's Req. for Judicial

3    Notice in Supp. of Mot. to Dismiss Ex. A [hereinafter "Varian's Req. for Judicial Notice"].  On

4    November 21, 2007, Varian moved to dismiss the case based on lack of standing, asserting that

5    CMU had an ownership interest in the patents-in-suit.  UPitt's Req. for Judicial Notice In Opp'n

6    to Varian's Mot. to Dismiss Ex. 2 [hereinafter "UPitt's Req. for Judicial Notice"].  Varian

7    asserted that CMU's ownership rights created a "jurisdictional" defect, and raised the prospect

8    that an appellate court would void any final judgment based on "no jurisdiction."  *Id.* at Ex. 1 at 2,

9    9.

10   Varian's summary judgment motion in the Pennsylvania Litigation was unmistakably

11   based on the absence of CMU:

> If a patent is jointly owned, all co-owners must consent to join as plaintiffs in an
> infringement suit.  A co-owner acting alone lacks standing to sue for patent
> infringement.  As a result, "one co-owner has the right to impede the other co-
> owner's ability to sue infringers by refusing to voluntarily join in such a suit" . . . .
>
> CMU is a co-owner of the patents in suit. . . . .  Accordingly, UPitt is not the sole
> owner and lacks standing to sue Varian for patent infringement.

16   (citations omitted).  UPitt's Req. for Judicial Notice Ex. 2 at 6-7.  Fed. R. Civ. P. 19(b) provides

17   that a court can dismiss the action "[i]f a person who is required to be joined . . . cannot be

18   joined."  The Special Master recommended dismissal of UPitt's claims based on lack of standing

19   due to non-joinder of CMU:

> In sum, we find that CMU is a co-owner of the patents and retained substantial
> rights in the patents-in-suit.  CMU is a necessary party to this action.  We
> recommend that the District Court grant the motion for summary judgment without
> prejudice.

23   Varian's Req. for Judicial Notice Ex. G at 10.  Judge Schwab agreed with the Special Master that

24   Varian's motion for summary judgment for lack of standing should be granted based on non-

25   joinder of a necessary party.  Noting that the Special Master had found that "CMU thus is a

26   necessary party to this action," Judge Schwab stated that "[t]his Court agrees with the analysis of

27   the Special Master on this legal point."  *Id.* at Ex. H at 2.

28   On April 30, 2008, the Pennsylvania Court granted Varian's motion for "lack of

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

3

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1    standing," and dismissed the case.  Varian's Req. for Judicial Notice Ex. H at 6.

2        **B.      When UPitt Filed The Pennsylvania Action, It Had A Reasonable**
         **Basis To Believe It Had Standing**
3

4        Patent ownership begins with the inventor(s).  *Regents of Univ. of N.M. v. Knight*, 321

5    F.3d 1111, 1118-19 (Fed. Cir. 2003).  All of the inventors of the '554 and '431 Patents assigned

6    their "entire right, title and interest" to the patents-in-suit solely to UPitt.  *See* Docket Entry 1

7    (Compl. Exs. 2, 4 (assignments dated August 1996 and October 1996, respectively)).  No other

8    entity was assigned these rights, not even CMU.

9        CMU and UPitt created policies for joint development projects ("Joint IP Policy

10   Guidelines") such as the project that led to the patents-in-suit.  *See* Sealed Declaration of

11   Matthew H. Poppe in Support of Varian's Motion to Transfer Action to U.S. District Court for the

12   Western District of Pennsylvania Exs. H, I [hereinafter "Poppe Decl."].  These policies, when

13   read in their entirety, are consistent with a single institution, here UPitt, receiving legal title to the

14   patents-in-suit so that it could commercialize the patents, while both institutions shared in the

15   proceeds of this commercialization.  *Id.* at Ex. H § G, Ex. I § G

16       **C.      New Facts Establishing Standing**

17       After the order in April dismissing the matter, less than two months later on June 16,

18   2008, CMU assigned to UPitt any ownership interest it had in the patents-in-suit.  *See* Docket

19   Entry 1 (Compl. Ex. 1).  After that assignment, UPitt unquestionably had full ownership of the

20   patents and the right to sue Varian.  *Id.* at Exs. 1, 2, 4.  On the same day it received the

21   assignment from CMU, UPitt filed the instant lawsuit, alleging the "new facts" concerning its

22   standing to bring suit.  *See* Docket Entry 1 (Compl. ¶¶ 10, 15, Ex. 1).  Unable to dispute these

23   facts, Varian's brief simply ignores the factual change in ownership, and argues as if the transfer

24   did not occur.  The law makes clear that the transfer of title requires this Court to allow this case

25   to proceed.

26   **IV.    ARGUMENT**

27       **A.      Claim Preclusion Requires A Prior Decision On The Merits**

28       For over 100 years, a fundamental requirement for *res judicata* has been a prior judgment

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                                    4

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

on the merits. *Hughes v. United States*, 71 U.S. (4 Wall.) 232, 237 (1866). Determining whether a decision is on the merits cannot be accomplished by inspection of the prior judgment for a "with prejudice" designation. *See Semtek International, Inc. v. Lockheed Martin Corp.*, 521 U.S. 497, 499, 509 (2001) (analyzing Rule 41(b) and finding prior judgment not necessarily preclusive even though it was "with prejudice"). Rather, the issue is whether the prior judgment decided the matter in dispute. As noted by the court in *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968), "[t]he requirement that a judgment, to be *res judicata*, must be rendered 'on the merits' guarantees to every plaintiff the right once to be heard on the *substance* of his claim" (emphasis added).

**B.    The Prior Dismissal In The Pennsylvania Case Was Not "On The Merits" Because It Was A Dismissal For Failure To Join A Necessary Party**

**1.    Under Rule 41(b), A Dismissal Based On Failure To Join A Party Is Not A Judgment On The Merits**

Fed. R. Civ. P. 41(b) says a judgment is to be considered an adjudication on the merits "*except* one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19" (emphasis added). The rule is clear on its face that dismissals based on failure to join a party are not "on the merits." Of course, that also has been black-letter law for over a century. *Hughes*, 71 U.S. at 237 ("If the first suit was dismissed for defect of pleadings, or *parties*, . . . or the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit.") (emphasis added).

**2.    A Dismissal For Lack Of Standing Is Not Preclusive To A Future Suit Where Standing Exists**

A judgment based on lack of standing is jurisdictional in nature, rather than on the merits. *Media Techs. Licensing, LLC v. Upper Deck Co.*, 334 F.3d 1366 (Fed. Cir. 2003) is controlling authority on this issue and requires that Varian's Motion to Dismiss be denied. Despite Varian's efforts to conjure up some distinctions between the current facts and *Media Technologies*, the cases are identical for purposes of resolving the claim preclusion issue presented by Varian's motion. Like this case, *Media Technologies* involved two lawsuits, the first one having been

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

5

**UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)**

1    dismissed on standing grounds.  *See* 334 F.3d at 1368.  More particularly, the first suit was

2    dismissed because the assignment to the plaintiff was ineffective, so that, just like this case, the

3    plaintiff was alleged not to have full ownership of the patents.  *See id.*  The first suit in *Media*

4    *Technologies* was dismissed "with prejudice," as was the Pennsylvania Litigation.  *See id.* at

5    1369.  The ownership was subsequently corrected by a proper transfer to Media Technologies,

6    and suit was refiled.  *Id.* at 1368-69.  The District Court dismissed the second suit based on claim

7    preclusion.  *Id.* at 1369.  It relied on the fact that the prior case "was dismissed with prejudice,"

8    the same language that Varian treats as a magical incantation in this case.  *See id.*  The Federal

9    Circuit reversed, stating unambiguously that dismissals based on standing are not preclusive:

> To be given preclusive effect, a judgment must be a final adjudication of the rights
> of the parties and must dispose of the litigation on the merits. . . . The Ninth
> Circuit, in common with other federal courts, recognizes that standing is a
> threshold question that must be resolved *before proceeding to the merits* of a case.
> . . .
>
> Because standing is jurisdictional, *lack of standing precludes a ruling on the*
> *merits*.  Thus, the district court erred in giving preclusive effect to the
> Telepresence judgment because its dismissal of Telepresence's complaint for lack
> of standing was not a final adjudication of the merits.

16   *Id.* at 1369-70 (emphasis added).  Similarly, the Pennsylvania Court's dismissal, *see* Varian's

17   Req. for Judicial Notice Ex. H at 6 ("the Court grants the Motion for Summary Judgment for

18   Lack of Standing"), is not preclusive, and *Media Technologies* makes crystal clear that it would

19   be legal error to give that prior judgment preclusive effect.

20          Varian attempts to get around the controlling holding in *Media Technologies* by arguing

21   that the case concerned constitutional standing while the dismissal in the Pennsylvania Litigation

22   involved "prudential" standing, and therefore, was not a "jurisdictional" dismissal.  Varian's

23   Mem. of P. & A. in Supp. of Mot. To Dismiss 13 [hereinafter "Varian Mem."].  To support its

24   position Varian relies on *Intellectual Property Development, Inc. v. TCI Cablevision of*

25   *California, Inc.*, 248 F.3d 1333, 1348-49 (Fed. Cir. 2001).  *Id.*  Contrary to Varian's assertions,

26   *TCI* does not hold that a dismissal based on prudential standing is not jurisdictional.   In fact

27   there is controlling Federal Circuit law, conveniently ignored by Varian that is directly on point

28   and reaches a contrary conclusion.  The Federal Circuit has held that lack of standing is

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

1    jurisdictional, whether based on constitutional standing or prudential standing.  *Mentor H/S, Inc.*

2    *v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1018 (Fed. Cir. 2001).[1]  After noting that Mentor

3    satisfied constitutional standing as an exclusive licensee, the Federal Circuit still dismissed the

4    case based on lack of standing because "the issue of whether an exclusive licensee has sufficient

5    rights in a patent to bring suit in its own name is jurisdictional, and, therefore, is not waived by a

6    party's failure to raise the issue in the district court."  *Id.*

7        This Court has ruled consistently with *Mentor*.  *See Envtl. Prot. Info. Ctr. v. Pac. Lumber*

8    *Co.*, 469 F. Supp. 2d 803, 812 (N.D. Cal. 2007) ("An Article III court cannot entertain the claims

9    of a litigant unless that party has demonstrated the threshold issue of whether it has constitutional

10   and prudential standing to sue.").  Unable to square its "prudential" argument with the decisions

11   in *Media Technologies* and *Mentor*,[2] Varian cites off-point decisions (like *TCI*) and misstates

12   their holdings.

13       Varian's argument is surprising given the contrary position it took on the same issue in the

14   Pennsylvania Court.  In its opposition to add CMU to that case, Varian said "[t]he defect caused

15   by its non-participation during the last eight months is jurisdictional, and jurisdiction cannot be

16   conferred by consent."  UPitt's Request for Judicial Notice Ex. 1 at 2.  Varian worried that, if the

17   case were to proceed in its current form, the parties would find the "judgment voided by an

18   appellate court finding of no jurisdiction."  *Id.* at 9.  Now that Varian perceives that previous

19   position is no longer advantageous, it blithely takes a contrary position in this Court.  Such flip-

20   flops cannot change the law as articulated in *Mentor*.

21       The other theory that Varian advances in a weak attempt to distinguish *Media*

22   *Technologies* is that the correction of standing in that case occurred "promptly," whereas in this

---

23   [1] Varian cites *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 55 (2d Cir. 2004) for the proposition
     that prudential standing is not jurisdictional.  However, unlike *Motorola*, this is a patent case, and
24   Federal Circuit law controls.  28 U.S.C. § 1295.  There appears to be a significant split in the
     circuits on this issue.  *See also La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1381 (D.C.
25   Cir. 1996) ("An Article III court cannot entertain the claims of a litigant unless the party has
     demonstrated constitutional and prudential standing . . . .").
26   [2] Because lack of standing is jurisdictional under Federal Circuit law, Rule 41(b) prevents a
     standing dismissal from being considered "adjudications on the merits" for *res judicata* purposes.
27   *See* Fed. R. Civ. P. 41(b); *Hughes* 71 U.S. at 237.  This is yet another reason why the dismissal in
     the Pennsylvania Litigation cannot be given claim preclusive effect.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                                                    7
UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1  case it allegedly did not.  Varian Mem. 16.  UPitt disagrees with that statement factually, but it is

2  also legally irrelevant.  Varian cites no case for the theory that standing, left uncorrected for too

3  long, results in an adjudication on the merits.  Such a holding would be contrary to established

4  precedent that lack of standing always requires dismissal for want of jurisdiction, even if raised,

5  *sua sponte*, for the first time at the Supreme Court.  *See Adarand Constructors, Inc. v. Mineta*,

6  534 U.S. 103, 110 (2001); *see also Mentor*, 240 F.3d at 1018.  A lack of standing always

7  precludes a court from reaching the merits.  *See id.*  Therefore, *Media Technologies* controls this

8  case, and mandates that Varian's motion to dismiss be denied.

9  **3.    Rule 41(b) Prohibits The Result That Varian Seeks**

10         Because (1) the Pennsylvania Litigation was dismissed due to failure to join a necessary

11  party and the lack of jurisdiction that resulted, and (2) Rule 41(b) excludes dismissals for failure

12  to join a party or for lack of jurisdiction from being adjudications on the merits, it is indisputable

13  that the dismissal in Pennsylvania was not an adjudication on the merits.  It is equally clear that,

14  because the dismissal was not an adjudication on the merits, it is not preclusive to the current

15  action.  *See Hughes*, 71 U.S. at 237.

16
17  **4.    Varian's Untimeliness Argument Is Wrong As A Matter**
         **Of Fact And Law**

18         Varian argues to this court that the basic premise of the dismissal was that UPitt failed to

19  address the standing issue in a timely way and its "failure to do so was unreasonable."  Varian

20  Mem. 2.  That is, Varian is arguing to this court that the dismissal was based on UPitt's conduct.

21  But in the Pennsylvania Litigation, Varian argued that the dismissal was required as a matter of

22  law.  It argued there was only one time to address the standing issue:  on of the filing of the

23  complaint.  The Pennsylvania Court adopted Varian's argument that UPitt could not correct or

24  cure the standing problem by amending the pleadings.  The Pennsylvania Court's decision to

25  dismiss rests on a legal conclusion of whether UPitt had standing to sue at the time it filed the

26  complaint, and not on findings of fact as to UPitt's conduct and the timeliness of its response to

27  the issue.  As discussed earlier, at the time it filed the initial complaint UPitt believed it had all of

28  the authority it needed to bring the action in its own name.  All of the inventors had assigned their

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

8

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1    rights to UPitt and CMU had entered into an agreement giving UPitt the exclusive right to

2    commercialize the patents.

3         Undaunted, Varian argues that because the attempt to amend the pleading occurred after

4    the expiration of the local rule for adding new parties, the failure to name the parties in

5    accordance with the local rule means a subsequent suit must be barred.  Varian cites no Ninth

6    Circuit precedent to support its position, and the other circuit courts that have considered the issue

7    have specifically held that the words of Rule 41(b) cannot be ignored.  In *Trujillo v. Colorado*,

8    649 F.2d 823, 824 (10th Cir. 1981), the District Court ruled that an indispensable party had to be

9    joined for the case to continue.  When the plaintiff did not offer an amendment to correct the

10   deficiency, the District Court dismissed the action.  *Id.*  Plaintiff refiled, and the District Court

11   found the claim barred by *res judicata*.  *Id.* at 825.  The Tenth Circuit reversed, citing Rule 41(b).

12   *Id.* Just like Varian, the defendant argued that the case was dismissed for failure to obey orders of

13   the Court, but the Tenth Circuit rejected that proposition:

14
15        Trujillo's Title VII action was dismissed for failure to join proper parties and not
          for disobedience of a court order.  The dismissal, therefore, did not constitute an
          adjudication on the merits and did not render that action res judicata to Trujillo's
16        present suit.

17   *Id. Trujillo* relied on an earlier Fifth Circuit case that reached the same conclusion.  In *Mann v.*

18   *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 488 F.2d 75, 76 (5th Cir. 1973), the District Court

19   found that Mann had not established diversity jurisdiction, and gave him 10 days to amend his

20   complaint.  He did not amend, and the District Court "dismissed for failure to obey the Court's

21   March order."  *Id.*  The suit was refiled, but dismissed because the District Court "saw it as 'an

22   apparent effort to thwart the Court's prior dismissal and denials of plaintiff's two motions to

23   vacate said dismissal.'"  *Id.*   The Fifth Circuit reversed, and was pointed in its assessment of the

24   allegation that failure to timely amend the complaint can turn what Rule 41 states is not an

25   adjudication on the merits into an adjudication on the merits:

26
27        We hold that the suit should not have been dismissed. . . .  Had the District Judge
          intended what he wrote literally – that the action was being dismissed because the
          March order had been "disobeyed" – he would have been guilty of an abuse of his
28        Rule 41(b) discretion to dismiss.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                                      9

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1    *Id.*  Based on Rule 41(b) and the case law interpreting that provision, it would be legal error to

2    conclude that the dismissal in Pennsylvania Litigation was a judgment on the merits that has

3    claim preclusive effect.

4           Varian cites a hodgepodge of district court cases, often unpublished, that give preclusive

5    effect to denials of requests to amend the pleadings.  Those cases are all distinguishable from the

6    current facts because they did not involve jurisdictional dismissals or other dismissals that Rule

7    41(b) states are not adjudications on the merits.  Varian relies heavily on *ProtoComm Corp. v.*

8    *Novell, Inc.*, Civ. Action No. 94-7774, 1998 U.S. Dist. LEXIS 9636 (E.D. Pa. June 29, 1998)

9    (cited in Varian Mem. 14).  The original case in *ProtoComm* was not dismissed for defect of

10   parties; rather, it was tried to a jury resulting in a money judgment. *Id.* at *6-7.  An attempt to

11   add Novell prior to trial was denied (and later given preclusive effect), but there is no indication

12   that Novell was ever considered to be a necessary party to the case as filed. *Id.* at *6, *13-14.

13   Rule 41(b) did not apply.  *See also United States v. McGann*, 951 F. Supp. 372, 375, 382

14   (E.D.N.Y. 1997) (court's rejection of new claims against the same defendant did not implicate the

15   Rule 41(b) categories of non-adjudications on the merits) (cited in Varian Mem. 14); *Adolph*

16   *Coors Co. v. Sickler*, 608 F. Supp. 1417, 1429, 1433 (C.D. Cal. 1985) (same) (cited in Varian

17   Mem. 14); *Venuto v. Witco Corp.*, 117 F.3d 754, 756-57 (3d Cir. 1997) (the plaintiffs sought to be

18   added were not necessary parties, and the case was tried to plaintiff's verdict as filed instead of

19   being dismissed on a party joinder issue) (cited in Varian Mem. 15).  In each of these cases cited

20   by Varian, the Courts had jurisdiction and had all necessary parties before them.  The Courts

21   involved also reached the merits of the claims in those cases.

22          The Pennsylvania Court, by virtue of its holding on standing, concluded that it did not

23   have all necessary parties before the Court, and lacked jurisdiction to hear the matter.

24   Accordingly, it did not reach the merits of the claims.  While the cases cited by Varian indicate

25   that courts have authority to preclude new claims at a late stage of the litigation, the cases do not

26   stand for the proposition that UPitt is barred from pursuing its previously-dismissed claims now

27   that it is unquestionably before a Court with jurisdiction, and all necessary parties are

28   unquestionably present.  The cases similarly do not stand for the proposition that a court can enter

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                                            10

**UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)**

1  an order in contravention of Rule 41(b), or that a dismissal related to joinder of parties can be

2  treated as an adjudication on the merits and given preclusive effect.

3      *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052 (9th Cir. 2005) (cited in Varian Mem. 9)

4  does not concern the issues raised by Varian's motion.  The case did not involve a motion to

5  dismiss on joinder grounds, and did not involve a motion to amend at all.  Whether tardily-

6  produced evidence can be excluded, the issue in *Wong* (*id.* at 1060), is not governed by Rule

7  41(b).  On the other hand, whether to treat a dismissal for failure to join a party, or for lack of

8  jurisdiction, as preclusive is governed by Rule 41(b), which answers the question with a

9  resounding "no."  As Wright, Miller & Cooper have noted:

10      The first category covers involuntary dismissals for lack of jurisdiction, . . . or
   failure to join a party under Civil Rule 19. . . .   [S]uch dismissals do not operate as
11  an adjudication upon the merits.  Dismissal on any of these grounds indeed should
   not preclude a second action on the same claim that overcomes the initial defect of
12  jurisdiction, venue, or parties. . . .  [T]he court should not have any option to
   provide that such a dismissal does operate as an adjudication that bars a second
13  action.

14  Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4435 (2d ed.).  Of

15  course, that is exactly the result that *Trujillo* and *Mann*, discussed *supra*, reached.  The cases cited

16  by Varian did not reach that conclusion because they did not concern that issue.

17          **5.**      **The Cases Cited By Varian Concern A Party Trying To
   Relitigate The Same Standing Issue A Second Time, An**
18                  **Issue Not Presented In This Case**

19      Trying to skirt established law, Varian cites several cases that bear little resemblance to

20  the facts here.  However, they have one important characteristic in common.  Each case cited by

21  Varian involves a second lawsuit where *the standing issue is the same* as in a prior case.  The

22  doctrine of issue preclusion prevents the same litigant from relitigating the same standing issue

23  based on the same underlying facts a second time.  *See Baris v. Sulpicio Lines, Inc.*, 74 F.3d 567

24  (5th Cir. 1996) (a standing dismissal should not preclude a party from "litigating the same claim,

25  *provided that the specific defect has been corrected*," but "[s]uch a dismissal should, however,

26  preclude relitigation of the specific issue of jurisdiction") (emphasis added).  UPitt is not trying to

27  relitigate the same standing issue that was presented in the Pennsylvania Litigation.  Rather, this

28  case presents a *different* standing posture than presented in the Pennsylvania Litigation.  The

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

11

**UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)**

1    Pennsylvania Court decided whether UPitt had standing based on the assignments from the

2    inventors to UPitt.  *See* Docket Entry 1 (Compl. Exs. 2, 4); Varian's Req. for Judicial Notice Ex.

3    G at 10.  The standing posture of this case is based on those two assignments *and a new*

4    *assignment* from CMU that did not form a part of the standing resolution in the Pennsylvania

5    Litigation.  Docket Entry 1 (Compl. Ex. 1).  UPitt's standing based on those three assignments

6    has never been litigated, and issue preclusion cannot apply.  *See Kremer*, 456 U.S. at 467 n.6.

7        In *Staples v. Ruyter Bay Land Partners*, Civ. No. 2005-11, 2007 U.S. Dist. LEXIS 90806

8    (D. V.I. Dec. 10, 2007) (cited in Varian Mem. 11), plaintiffs were dismissed for lack of standing,

9    and then later returned, with no changed facts, and reasserted the same claims with the same

10   standing issue existing.  *Id.* at * 12 ("In the instant action, without asserting a basis for standing,

11   the Staples allege claims in the same capacity as the 2003 Plaintiffs in the 2003 Action.").  The

12   Court did not allow the plaintiffs to relitigate the same standing issue a second time.  *Id.*  While

13   *Staples* uses the term claim preclusion, it is facially an issue preclusion case.[3]  For this same

14   reason, *Chemlen v. Bank of Ireland First Holdings, Inc.*, No. 93-1592, 1993 U.S. App. LEXIS

15   28614 (1st Cir. Nov. 3, 1993) (cited in Varian Mem. 11-12), does not control this case.  A

16   bankruptcy proceeding had determined that Chemlen did not have standing to prosecute an appeal

17   of a lawsuit settlement by a trustee.  *Id.* at *1-3.  Chemlen filed another case *that had the same*

18   *standing deficiency* as the first case.  *Id.* at *3-4.  It was held that *res judicata* prevented the

19   second case.  *Id.* at *4.

20       It is unclear why Varian cited *Stewart v. U.S. Bancorp.*, 297 F.3d 953 (9th Cir. 2002) (*see*

21   Varian Mem. 12 n.15), as that case did not concern a dismissal for failure to join the proper

22   parties, or for lack of jurisdiction, or for lack of standing.  Rather, plaintiffs' claims were

23   dismissed because they were preempted by federal law.  *Id.* at 959.  The case actually supports

24

25   [3] Whether the Court uses the term "claim preclusion" or the term "issue preclusion" is not
     determinative.  *See, e.g., Cory v. Fahlstrom*, No. 05-3010, 2005 U.S. App. LEXIS 13074 (10th
26   Cir. Jun. 29, 2005) (unpublished) (affirming district court's dismissal of plaintiff's claims for lack
     of standing where facts underlying standing did not change).  The Tenth Circuit noted that the
27   District Court's reference to claim preclusion was not correct, but that issue preclusion did apply.
     *Id* at *4-*5.  The Tenth Circuit allows citation to its unpublished decisions.  *See* 10th Cir. R.
28   32.1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                                    12

**UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)**

1   UPitt because the Ninth Circuit confirms that Rule 41(b) prohibits a dismissal based on "lack of

2   jurisdiction, for improper venue, or for failure to join a party" from being an adjudication on the

3   merits. *Id.* at 956. The reason the court found *res judicata* to apply is that preemption is a

4   substantive bar to a claim, not a lack of subject matter jurisdiction. *Id.* at 958 ("[F]ederal

5   preemption is a defense that applies once the court that is exercising jurisdiction considers the

6   merits of the claims presented.").   As discussed above, standing is jurisdictional, and precludes

7   reaching the merits. Therefore, under *Stewart*, Rule 41(b) would control and mandate that the

8   dismissal in Pennsylvania Litigation was not "on the merits," and thus not preclusive to this case.

9   Moreover, unlike standing, preemption cannot be cured. Therefore, finding it to be a decision on

10  the merits is far more sensible than any finding that a dismissal for lack of standing is claim

11  preclusive to a future suit with corrected standing.

12      Varian's arguments to this Court that a prior dismissal on standing bars the current claims

13  where any standing issue has been corrected is unsupported by any legal authority. It would be

14  legal error to grant Varian's motion.

15      **C.    UPitt Corrected Any Standing Issues That Had Existed In The**
          **Pennsylvania Litigation**
16

17      Varian argues that UPitt has not cured the standing issue that existed in the Pennsylvania

18  Litigation. Varian Mem. 17-20. The arguments advanced are misplaced.

19          **1.    It Does Not Matter Whether CMU Could Have Sued**
                **Varian**
20

21      Varian seems to be arguing that, since CMU did not have standing to sue as a co-owner,

22  its assignee would not have standing to sue either. Varian Mem. 17. That would be true if CMU

23  had transferred its rights to some stranger to the case. However, CMU transferred its rights to

24  UPitt, the entity that already had all rights other than those CMU allegedly had. Accordingly,

25  after the assignment, UPitt necessarily has all rights in the patents, and standing to sue. The cases

26  cited by Varian are not relevant as they simply hold that all co-owners must join as plaintiffs in a

27  patent infringement suit. In this case, UPitt acquired whatever interest CMU had, <u>if any</u>, in the

28  patents-in-suit. It added what CMU had to its own prior ownership rights, unquestionably

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                          13
UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1    securing full ownership, and standing to sue by itself.[4]  *See Int'l Nutrition Co., v. Horphag*

2    *Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001) (50% co-owner cannot bring suit) (cited in

3    Varian Mem. 17); *Israel Bio-Eng'g Project v. Amgen Inc.*, 475 F.3d 1256, 1264-65 (Fed. Cir.

4    2007) (there is no standing unless all co-owners join the suit) (cited in Varian Mem. 17).  Varian

5    cites no case for the proposition that, if Party A and Party B are co-owners, and Party B assigns to

6    Party A, Party A still lacks standing to sue.  No such case law exists, and the proposition is

7    facially unsound.  Title to an invention initially vests in the inventors.  *Regents of Univ. of N.M.*,

8    321 F.3d at 1118-19.  They typically assign the invention to their employer.  *See id.* at 1119.

9    According to Varian's theory, the employer would lack standing to sue because no individual

10   inventor had standing.  Varian ignores that after execution of such assignments, employers sue

11   based on inventions of their employees every day, which is specifically authorized by statute.  35

12   U.S.C. § 261 (patents freely assignable), § 100(d) ("patentee" includes successors in title), § 281

13   ("patentee" has remedy of civil suit).

14                    **2.      It Does Not Matter Whether UPitt And CMU Were In
                               Privity In The Prior Lawsuit**
15

16         Varian stretches the doctrine of claim preclusion beyond all recognition when it asserts

17   that CMU lost its patents rights as a result of a jurisdictional standing resolution in the

18   Pennsylvania Litigation where it was not a party.  Varian Mem. 17 n.19, 18.  It is ironic that

19   Varian spent so much time in the Pennsylvania Litigation complaining that CMU was not a party,

20   and now, in this Court, argues that CMU was for all practical purposes a party (Varian Mem. 18),

21   and is barred by the result.[5]

22   [4] If Varian contends that the combination of UPitt's original rights and CMU's prior rights are not
     the entire ownership interest, that would be a question of fact precluding the grant of a 12(b)(6)
23   motion where UPitt's operative pleading asserts full ownership rights.  *See* Docket Entry 1
     (Compl. ¶¶ 10, 15).
24   [5] Varian does not seem troubled by such inconsistencies.  In the Pennsylvania Litigation, in
     opposition to UPitt's efforts to add CMU, Varian said UPitt "should be required to commence a
25   new action to avoid the possibility of jurisdictional defects and to eliminate the prejudice that
     Varian would suffer if the current case were to continue with CMU as an added party."  UPitt's
26   Request for Judicial Notice Ex. 1 at 3.  After convincing the Pennsylvania Court to deny the
     motion to amend, requiring UPitt to file this new case, Varian flip-flops and says it is prejudiced
27   by the new case, and the new case is barred.  Varian is apparently willing to say anything to avoid
     facing the merits of this infringement case.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                                    14

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

First and foremost, as discussed above, the dismissal in the Pennsylvania Litigation was not on the merits, so it is not preclusive to UPitt.  It is for the same reason not preclusive to CMU, whether or not UPitt and CMU were in privity in that lawsuit.

The cases cited by Varian do not support the legal propositions that Varian advances.  In *Talbot v. Quaker-State Oil Refining Co.*, 104 F.2d 967, 968 (3d Cir. 1939) (cited in Varian Mem. 18-19), the first court decided that the defendant was licensed, noting that "a license by one of two joint owners is a complete defense to an infringement suit."  Unlike a standing dismissal for failure to join a necessary party, a successful license defense is a defense *on the merits* and, therefore, the court precluded a privy to the plaintiff from litigating the same claim.  The case has no application here.  Varian's citation of a case on license defense is odd, to say the least, given that Varian's *refusal to license* the UPitt patents is the reason for this lawsuit.  The other cases by Varian in its brief at page 18 relate to *whether* two parties are in privity, and have nothing to do with a prior dismissal that was not on the merits.

### D.    UPitt Engaged In No Misconduct In The Pennsylvania Litigation, And Its Complaint Was Not Dismissed As A Sanction

Varian speaks of UPitt's "slippery legal tactics," and "unjustified delay."  Varian Mem. 2, 10.  While such name-calling is irrelevant to whether a standing dismissal is preclusive, the allegations are also factually untrue.  Shortly before filing the application that would become the '554 Patent, UPitt secured an assignment from each of the inventors.  *See* Docket Entry 1 (Compl. Ex. 2 (assignment dated August 1996)).  The assignment was recorded at the United States Patent and Trademark Office ("USPTO"), and the USPTO issued the '554 patent listing "University of Pittsburgh of the Commonwealth System of Higher Education" as the assignee.  *Id.* at Ex. 3.  Similarly, shortly before filing the application that would become the '431 Patent, UPitt secured an assignment from each of the inventors.  *Id.* at Ex. 4 (assignment dated October 1996).  Again, the assignment was recorded at the USPTO, and the '431 Patent issued listing "University of Pittsburgh of the Commonwealth System of Higher Education" as the assignee.  *Id.* at Ex. 5.  When UPitt filed its suit in Pennsylvania, it believed it had standing to file the suit, and official title records so indicated.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

15

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1   The cornerstone of a patentee's right to sue is possession of legal title to the patent at

2   issue. *See Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) ("The

3   general rule is that one seeking to recover money damages for infringement of a United States

4   patent (an action 'at law') must have held *legal title* to the patent *during the time of*

5   *infringement*.") (emphasis in original).  At all times UPitt has had legal title to both patents in

6   suit.  All of the inventors assigned all right, title, and interest in the patents-in-suit to UPitt.  No

7   other entity was assigned these rights, not even CMU.

8   Varian argued in the Pennsylvania Litigation that two policy documents relating to joint

9   development projects between UPitt and CMU ("Joint IP Policy Guidelines") prevented UPitt

10  from having all substantial rights in the patent.  *See* Poppe Decl. Exs. H, I.  Particularly, Varian

11  latches on to statements in the policies that all IP jointly developed by UPitt and CMU would be

12  jointly owned by UPitt and CMU, but that does not change the fact that the inventors transferred

13  *legal title* in the patents-in-suit to UPitt, and what CMU received under the Joint IP Policy

14  Guidelines was a right to share in licensing proceeds from the patents-in-suit.  *Id.* at Ex. H § G,

15  Ex. I § G.  At no time did CMU claim that it had the right to assert the patents.  Varian notes that

16  CMU was aware of the Pennsylvania Litigation (Varian Mem. 18); CMU never asserted that

17  UPitt was not the proper party to sue Varian.  While these facts are not relevant to the instant

18  motion, they make clear that UPitt had a reasonable basis to file the suit in Pennsylvania.

19  As discussed earlier, Varian tries to suggest that the standing dismissal in the

20  Pennsylvania Litigation is some type of sanction for "wrongful" conduct by UPitt.  Varian Mem.

21  16.  The record in Pennsylvania says otherwise.  Trying to press its wrongful conduct theory in

22  Pennsylvania, Varian filed a motion for sanctions under Fed. R. Civ. P. 11.  UPitt's Req. for

23  Judicial Notice Ex. 3.  Varian submitted a proposed order asking for a myriad of over-zealous,

24  punitive relief, including the following:  "This action is hereby DISMISSED WITH PREJUDICE.

25  The Court finds this further sanction is also needed to deter future violations of Rule 11 . . . ."  *Id.*

26  The Court denied the motion for sanctions *in its entirety*.  Varian's Req. for Judicial Notice Ex. E

27  at 43 (Apr. 30, 2008 Text Order).  Therefore, there is no basis in the evidentiary record to

28  conclude that the "with prejudice" dismissal in the Pennsylvania Litigation is based on anything

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

16

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1  other than the basis stated, namely, lack of standing.[6]

2

3  **E.    Public Policy Demands That UPitt Be Allowed To Have The Merits Of Its Dispute With Varian Resolved**

4  Varian apparently believes that public policy entitles it to a free ride on UPitt's hard work

5  because the Pennsylvania Court disagreed with UPitt that the inventions solely belonged to UPitt,

6  and instead found they were jointly owned by UPitt and CMU.  *See* Varian Mem. 19.  It is clear

7  that the inventions were not developed by Varian, or owned in any part by Varian, or licensed in

8  any way to Varian, even though Varian has misappropriated them to make a profit.  In that

9  circumstance, public policy counsels that UPitt should have its day in court on the substance of

10  the patent infringement claims, now that it has all the ownership interests that anyone has ever

11  claimed are necessary to fully own the patents-in-suit.  "*[R]es judicata* is a principle of public

12  policy and should be applied so as to give rather than deny justice." *Dore v. Kleppe*, 522 F.2d

13  1369, 1374 (5th Cir. 1975); *see also Saylor*, 391 F.2d at 968 ("every plaintiff [has] the right once

14  to be heard on the substance of his claim").

15  While Varian complains of prejudice, it never articulates what prejudice it suffered.  For

16  example, it never identified any discovery it took in the Pennsylvania Litigation that would have

17  been unnecessary had CMU been a party.  The important question is not what burden litigation

18  placed on Varian, as it is a patent infringer whose conduct is actionable.  Rather, the question is

19  what burden did the initial portion of the dispute occurring without CMU as a party place on

20  Varian.  As Varian admits in its paper, CMU was subject to discovery in the Pennsylvania

21  Litigation.  Varian Mem. 18.  The only additional burden placed on Varian by CMU's absence

22  was the motion practice to determine whether CMU had ownership rights.  However, the parties

23  disputed that issue (and still dispute it), so resolution of the disputed issue was not an *undue*

24  burden, or an *unfair* burden, to place on Varian.[7]  Ultimately, the District Court in Pennsylvania

25  [6] To the extent Varian is arguing that the Pennsylvania Court nevertheless dismissed the

26  Pennsylvania Action with prejudice as a sanction, it would be contrary not only to the record, but to the law.  *See Martin v. Brown*, 63 F.3d 1252, 1262-63 (3d Cir. 1995) (holding that imposition of sanctions violates due process if it was done without *particularized* notice and an opportunity

27  to be heard) (emphasis added).
[7] UPitt has also taken other steps to avoid inefficiencies going forward, such as (1) agreeing that

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                17

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1   disagreed that UPitt was the sole owner, and promptly thereafter, UPitt obtained a new

2   assignment from CMU so that Varian's infringement could be addressed.  Public policy does not

3   suggest that infringers be allowed unfettered access to the intellectual property of others over an

4   initial standing dispute about whether a patent is solely owned or co-owned by the plaintiff,

5   which is later mooted by a supplemental assignment.  In a troubling pattern in its motion,

6   Varian's cases on this subject simply do not support the proposition it argues.  *See Ball v. Halsell*,

7   161 U.S. 72, 77-78, 84 (1896) (enforcing a statute that forbade the assignment of claims against

8   the government for purposes of litigation) (cited in Varian Mem. 19); *Accrued Fin. Servs., Inc. v.*

9   *Prime Retail, Inc.*, 298 F.3d 291, 298 (4th Cir. 2002) (rejecting "lawsuit-mining" assignments for

10  litigation "with no regard for the informed wishes of the real parties in interest") (cited in Varian

11  Mem. 19).  In this case, the assignment from CMU to UPitt was for the purpose of vesting

12  ownership in a single party that could enforce the patents against an infringer who might

13  otherwise get a free ride on the work of others.  The assignment from CMU to UPitt does not

14  violate public policy.  Varian's motion is particularly shocking in that it asks the Court to

15  invalidate the assignment on public policy grounds in the context of a Rule 12(b)(6) motion based

16  on no factual findings.  That would be legal error.

17       While public policy sometimes counsels courts to reject *res judicata* even though it

18  technically applies (*see Smith v. Pittsburgh Gage & Supply Co.*, 388 F.2d 983, 984 (3d Cir.

19  1968)), Varian cites no cases for the application of *res judicata* due to public policy when the

20  technical requirements, like a prior judgment on the merits, are not met.

21       Finally, the Federal Circuit has noted that "[w]hen applying *res judicata* to bar causes of

22  action that were not before the court in the prior action, due process of law and the interest of

23  justice requires cautious restraint."  *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1556 (Fed.

24  Cir. 1996).  Varian told the Pennsylvania Court that the Pennsylvania Litigation could not

25

26  discovery taken in the prior case can be used in this case, and (2) agreeing to have the Special
    Master from the Pennsylvania Litigation finish his work on claim construction, or alternatively, to

27  have an accelerated *Markman* hearing in this case, since the issues have already been briefed. On
    the other hand, Varian is not looking for fairness or efficiency; it is looking to win the lottery by

28  turning a minor standing issue in the prior suit into a multimillion dollar release.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                                    18
          UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
          UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
                            (CASE NO. CV 08-02973 MMC)

1  proceed due to a "jurisdictional" issue, and that a new suit should be required.  UPitt Request for

2  Judicial Notice Ex. 1 at 2, 3.  Varian is poorly situated from a justice and public policy

3  perspective to assert that this new case is barred because of the jurisdictional dismissal it brought

4  about in the prior case by its motion practice.

5
6  **F.    The Appeal Of The Pennsylvania Case Challenges The Ruling That UPitt's Original Ownership Rights Did Not Convey Standing**

7  UPitt has never contended that the appeal in the Pennsylvania Case made the dismissal in

8  the Pennsylvania Case non-preclusive.  Thus, Varian's extended discussion of the finality of

9  judgments pending appeal (Varian Mem. 20) is irrelevant.  The prior judgment is not preclusive

10  because it was a finding of lack of jurisdiction, based on standing, for failure to join a necessary

11  party, and thus not on the merits, under either common law or Fed. R. Civ. P. 41(b).  Given that

12  the prior decision is not preclusive, the presence of an appeal of that decision cannot justify

13  dismissal of this case.  Varian cites no authority for that proposition.  That would be new law.

14  The concern voiced by *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (cited in

15  Varian Mem. 20 n.22) is not present here.  UPitt has not filed an "identical" case to the one

16  previously filed in Pennsylvania.  Rather, UPitt has filed a new case where it unquestionably has

17  standing to sue, even if it did not have standing in Pennsylvania.[8]

18  **V.    CONCLUSION**

19  Varian has wholly failed to demonstrate that this case should be dismissed.  It cites no

20  case, in any court, where a dismissal based on a standing deficiency was held to be *res judicata*

21  against a subsequent suit where standing had been corrected.  Fed. R. Civ. P. 41(b) and *Media*

22  *Technologies* control this case and require that the case be allowed to proceed.  Varian's Motion

23  to Dismiss should be denied and this case must be allowed to proceed to trial.

24
25
26

27  [8] UPitt believes it had standing originally, and that is why it has appealed the dismissal in the Pennsylvania Litigation.  The Court of Appeals will not address the standing posture presented in this case as that issue was not litigated in the Pennsylvania Court.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1                    19
UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Dated: August 15, 2008

MORGAN, LEWIS & BOCKIUS LLP
DANIEL JOHNSON, JR.
RITA E. TAUTKUS

By: /s/ Daniel Johnson, Jr.
    Daniel Johnson, Jr.
    Attorneys for Plaintiff
    UNIVERSITY OF PITTSBURGH

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/20806008.1

20

UNIVERSITY OF PITTSBURGH'S OPPOSITION TO MOTION TO DISMISS
UNDER FED. R. CIV. P. 12(B)(6) BY VARIAN MEDICAL SYSTEMS, INC.
(CASE NO. CV 08-02973 MMC)

1   DANIEL JOHNSON, JR. (SBN 57409)
    RITA E. TAUTKUS (SBN 162090)
2   MORGAN, LEWIS & BOCKIUS LLP
    One Market, Spear Street Tower
3   San Francisco CA 94105
    Telephone:  (415) 442-1000
4   Facsimile:  (415) 442-1001
    Email:  djjohnson@morganlewis.com
5   Email:  rtautkus@morganlewis.com

6   Attorneys for Plaintiff
    UNIVERSITY OF PITTSBURGH

7

8                     UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11  | UNIVERSITY OF PITTSBURGH OF THE | Case No. CV 08-02973 MMC
12  | COMMONWEALTH SYSTEM OF HIGHER
    | EDUCATION d/b/a UNIVERSITY OF | **[PROPOSED] ORDER DENYING**
13  | PITTSBURGH | **MOTION TO DISMISS UNDER FED. R.**
    |                         | **CIV. P. 12(B)(6) BY VARIAN MEDICAL**
14  |        Plaintiff,       | **SYSTEMS, INC.**
15  |    v.
16  | VARIAN MEDICAL SYSTEMS, INC.
17  |        Defendant.
18

19

20

21

22

23

24

25

26

27

28

1         Upon consideration of Defendant Varian Medical Systems, Inc.'s ("Varian's") Motion to

2    Dismiss Under Fed. R. Civ. P. 12(b)(6), Plaintiff University of Pittsburgh's Opposition to Varian's

3    Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6), any reply thereto, supporting papers and

4    materials, the pleadings and papers of record, and oral arguments by counsel,

5    IT IS HEREBY ORDERED THAT:

6         The Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) by Varian Medical Systems, Inc. is

7    hereby DENIED.

8

9    IT IS SO ORDERED.

10   Dated: _____, 2008

11                                        The Honorable Maxine M. Chesney
                                          United States District Court Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28