1   DANIEL JOHNSON, JR. (SBN 57409)
    RITA E. TAUTKUS (SBN 162090)
2   MORGAN, LEWIS & BOCKIUS LLP
    One Market, Spear Street Tower
3   San Francisco CA 94105
    Telephone:  (415) 442-1000
4   Facsimile:  (415) 442-1001
    Email:  djjohnson@morganlewis.com
5   Email:  rtautkus@morganlewis.com

6   Attorneys for Plaintiff
    UNIVERSITY OF PITTSBURGH
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11  |                                    | Case No. CV 08-02973 MMC

12  UNIVERSITY OF PITTSBURGH OF THE
    COMMONWEALTH SYSTEM OF HIGHER
    EDUCATION d/b/a UNIVERSITY OF         **UNIVERSITY OF PITTSBURGH'S**
13  PITTSBURGH                            **REQUEST FOR JUDICIAL NOTICE IN**
                                          **SUPPORT OF ITS OPPOSITION TO**
14          Plaintiff,                    **VARIAN MEDICAL SYSTEMS INC.'S**
                                          **MOTION TO DISMISS UNDER FED. R.**
15     vs.                               **CIV. P. 12(B)(6)**

16  VARIAN MEDICAL SYSTEMS, INC.          Date:  September 5, 2008
                                          Time:  9:00 a.m.
17          Defendant.                    Courtroom 7, 19th Floor

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff University of Pittsburgh ("UPitt") respectfully requests that this Court take

2    judicial notice of the following documents pursuant to Federal Rule of Evidence 201 in support of

3    UPitt's Opposition to Varian Medical Systems Inc.'s ("Varian's") Motion to Dismiss.  Each

4    document was filed in a previous action between the parties in the United States District Court for

5    the Western District of Pennsylvania:  University of Pittsburgh v. Varian Medical Systems, Inc.,

6    Case No. 2:07-cv-00491 ("Pennsylvania Action").

7        1.    Defendant Varian Medical Systems, Inc's Opposition to Plaintiff University of

8    Pittsburgh's Motion Pursuant to Federal Rule of Civil Procedure 19 to Join Carnegie Mellon

9    University filed December 12, 2007, Docket No. 162, Pennsylvania Action.  A true and correct

10   copy of this document is attached hereto as Exhibit 1.

11       2.    Memorandum in Support of Defendant Varian Medical Systems, Inc.'s Motion for

12   Summary Judgment for Lack of Standing, Or in the Alternative, Motion for a Preliminary

13   Hearing on the Issue of Standing filed under seal on November 21, 2007, Docket No. 128,

14   Pennsylvania Action.  A true and correct copy of this document is attached hereto as Exhibit 2.

15   **[FILED UNDER SEAL]**

16       3.    Varian Medical Systems, Inc's Motion for Sanctions Pursuant to Rule 11 of the

17   Federal Rules of Civil Procedure and/or 35 U.S.C. § 285 filed on March 20, 2008, Docket No.

18   267, Pennsylvania Action, and the accompanying Proposed Order, Docket No. 267-2.  A true and

19   correct copy of these documents is attached hereto as Exhibit 3.

20                                   **<u>DISCUSSION</u>**

21       University of Pittsburgh requests judicial notice of the aforementioned documents,

22   Exhibits 1-3, under Fed. R. Evid 201(b)(2).  The fact that these documents were filed in the

23   Pennsylvania action is "not subject to reasonable dispute" because it is "capable of accurate and

24   ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed.

25   R. Evid. 201(b)(2).

26       A court generally may take judicial notice of records and files in related court proceedings

27   of another court.  *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (court "may take

28   notice of proceedings in other courts, both within and without the federal judicial system, if those

1   proceedings have a direct relation to matters at issue"); *Lee v. City of Los Angeles*, 250 F.3d 668,

2   690 (9th Cir. 2001) (noting that on a Rule 12(b)(6) motion to dismiss, a court make take judicial

3   notice of another court's opinion for the existence of the opinion, which is not subject to

4   reasonable dispute over its authenticity); *Wheeler v. City of Oakland*, No. 05-0647 SBA, 2006

5   U.S. Dist. LEXIS 27680, at *16 (N.D. Cal. Apr. 27, 2006) ("Court filings and orders are the type

6   of documents that are properly noticed under Rule 201; notice can be taken for purpose of

7   recognizing the judicial act that the order or filing represents on the subject matter of the

8   litigation."); *San Luis & Delta-Mendota Water Auth. v. Badgley*, 136 F. Supp. 2d 1136, 1146

9   (E.D. Cal. 2000) (noting that a court may take judicial notice of a document filed in another court

10   to establish the fact of such litigation and related filings) (citing *Liberty Mut. Ins. Co. v. Rotches

11   Pork Packers, Inc.*, 969 F.2d 1384, 1388-1389 (2d Cir. 1992)).

12          Accordingly, UPitt respectfully requests this Court take judicial notice of Exhibits 1, 2,

13   and 3.

14                                          Respectfully submitted,

15

16   Dated:  August 15, 2008               DANIEL JOHNSON, JR.
                                           RITA E. TAUTKUS
                                           MORGAN LEWIS & BOCKIUS LLP
17
                                           By: /s/ Rita E. Tautkus
18                                             Rita E. Tautkus
                                               Attorneys for Plaintiff
19                                             UNIVERSITY OF PITTSBURGH

20

21

22

23

24

25

26

27

28

UPITT'S REQ FOR JUDICIAL NOTICE ISO ITS OPP TO
VARIAN'S MOT TO DISMISS
(CASE NO. CV 08-02973 MMC)

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNIVERSITY OF PITTSBURGH

   Plaintiff,

 v.

VARIAN MEDICAL SYSTEMS, INC.,

   Defendant.

Case 2:07-cv-00491-AJS

Judge Arthur J. Schwab

**Filed Electronically**

**DEFENDANT VARIAN MEDICAL SYSTEMS, INC.'S OPPOSITION TO
PLAINTIFF UNIVERSITY OF PITTSBURGH'S MOTION PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 19 TO JOIN CARNEGIE
MELLON UNIVERSITY**

# I.  PRELIMINARY STATEMENT

Plaintiff University of Pittsburgh ("UPitt") has presented two basic arguments in response to the motion for summary judgment filed by Defendant Varian Medical Systems, Inc. ("Varian").  First, UPitt argued in its summary judgment opposition brief that it has standing to sue Varian for patent infringement and there is no need for non-party Carnegie Mellon University ("CMU") to be joined as a party.  Varian responds to that argument in its summary judgment reply brief, submitted concurrently herewith along with a corresponding Motion for Leave to File Reply.  Second, UPitt argues in its Motion to Join that CMU should be joined as party in order to address any lack of standing.  Varian responds to that argument in this brief.

# II.  INTRODUCTION

UPitt is seeking to join CMU as a party almost six months after the Court-ordered deadline to move to amend the pleadings or add new parties.  UPitt has no excuse for its excessive delay and cannot justify adding CMU now in light of the serious prejudice that such a late joinder would inflict on Varian.

UPitt's entire joinder argument is based on ignoring the distinction between co-owners and exclusive licensees.  In all of the cases cited by UPitt, the plaintiff was an exclusive licensee and a request was made to join the patent owner as a party pursuant to Fed. R. Civ. P. 19.  However, UPitt and CMU are patent co-owners, not a patent owner and an exclusive licensee.  Case law recognizes that Rule 19 does not apply in the co-owner situation.  A co-owner such as CMU cannot be involuntarily joined as a party.  The reason is that a co-owner has the right to unilaterally grant non-exclusive licenses under its patent, and refusing to join in an infringement lawsuit is equivalent to granting a

- 1 -

license. Although CMU is apparently willing to join this action as a plaintiff, it cannot be permitted to do so at this late date. The defect caused by its non-participation during the last eight months is jurisdictional, and jurisdiction cannot be conferred by consent.

As noted above, Varian would be severely prejudiced if CMU were to be added as a party now. Discovery is closed, and Varian has not had the opportunity to test CMU's contentions through interrogatories or to depose CMU and obtain documents on the full range of relevant topics. Nor has CMU provided infringement contentions as required by Local Rule. In addition, CMU was not a participant in most of the depositions in this case, including several depositions of out-of-state witnesses who will not be available for trial, and there is a serious question whether the deposition testimony will be admissible at trial against CMU (who had no opportunity to cross-examine) pursuant to Fed. R. Evid. 804(b)(1). Yet another form of prejudice that Varian would suffer if CMU were added as a party is the risk that a final judgment in Varian's favor might be voided due to the jurisdictional issues created by CMU's late addition as a party. Such a result would necessitate duplicative proceedings and would expose Varian to the equivalent of double jeopardy. Varian has suffered that fate in the recent past and does not want history to repeat itself. Finally, Varian cannot foresee all possible ways that UPitt and CMU might seek to take advantage of CMU's late addition as a party. Adding CMU as a party would unfairly expose Varian to the risk of being blindsided by unforeseen issues in the future.

The present problem is one of UPitt's own creation. UPitt knew that CMU was a co-owner when it filed this action and it should have included CMU as a plaintiff at that time, but it inexcusably failed to do so. Varian should not be penalized for UPitt's negligence. If UPitt and CMU now want to jointly pursue an infringement case against

- 2 -

Varian, they should be required to commence a new action to avoid the possibility of jurisdictional defects and to eliminate the prejudice that Varian would suffer if the current case were to continue with CMU as an added party.

## III. ARGUMENT

### A. Rule 19 Does Not Apply in Cases, Such as the Present Case, That Involve Patent Co-Owners Rather Than a Patent Owner and an Exclusive Licensee

Rule 19(a) ordinarily permits the involuntary joinder of persons with an interest in the subject matter of a lawsuit. However, this rule does not apply to patent co-owners due to the substantive rule of patent law under which "one co-owner has the right to limit the other co-owner's ability to sue infringers by refusing to join voluntarily in the patent infringement suit." *Israel Bio-Eng'g Project v. Amgen, Inc.*, 475 F.3d 1256, 1264 (Fed. Cir. 2007); *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 (Fed. Cir. 1998). "[T]he courts have uniformly refused to invoke the involuntary plaintiff procedure [of Rule 19(a)] to make a co-owner of a patent an involuntary plaintiff." *Cilco, Inc. v. Precision-Cosmet, Inc.*, 624 F. Supp. 49, 52 (D. Minn. 1985); *see also Gibbs v. Emerson Elec. Mfg. Co.*, 29 F. Supp. 810, 811-12 (W.D. Mo. 1939) (holding that Rule 19(a) does not apply in the case of "coowners of patents" due to their "substantive rights," the result of which is that "one joint owner . . . cannot compel the other coowner to join in a suit for an infringement, and neither can he make him a party defendant").

UPitt misleadingly cites several cases for the proposition that "courts look to Rule 19 in determining whether a co-owner of a patent must be joined." *See* UPitt Brf. at 4. However, none of the cited cases support that point. Instead, every case cited by UPitt deals solely with the separate issue of whether a patent owner may be joined pursuant to Rule 19 in a lawsuit filed by an *exclusive licensee*, not a co-owner. *See Abbott Labs. v.*

- 3 -

*Diamedix Corp.*, 47 F.3d 1128, 1130 (Fed. Cir. 1995) ("this case can best be resolved by addressing [the question of] whether a licensee . . . has the statutory right to bring an action for infringement without joining the patent owner");[1] *Biagro Western Sales, Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1145 (E.D. Cal. 2001) ("Plaintiff's rights are closer to those of an exclusive licensee without 'all substantial rights'."); *Intellectual Property Dev., Inc. v. TCI Cablevision of Cal.*, 248 F.3d 1333, 1347 (Fed. Cir. 2001) ("It was proper for IPD, as an exclusive licensee of fewer than all substantial rights in the '202 patent, to add CPL as a party plaintiff."); *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376-81 (Fed. Cir. 2000) (determining that licensee lacked standing to sue without joining patent owner).

Thus, UPitt's motion must be denied because Rule 19 does not apply in this case.

**B.      Joinder of CMU as a Plaintiff Is Not Otherwise Permissible**

**1.      All Co-Owners Must Be Named as Plaintiffs at the Inception of a Patent Infringement Lawsuit**

Even though CMU is apparently willing to be added as a plaintiff, its joinder at this late date is impermissible because "all co-owners of a patent must join in an infringement suit *at its inception.*" *Willingham v. Star Cutter Co.*, 555 F.2d 1340, 1343 (6th Cir. 1977) (emphasis added). "Patent law dictates that standing is determined by the parties' rights on the date suit is filed." *Alcatel USA, Inc. v. Orckit Communications*, 2000 WL 502846, *2 (N.D. Cal. Apr. 13, 2000); *see also Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) ("in order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent *at*

---

[1] In its opening brief, UPitt erroneously cited this case as *Abbott Laboratories v. Ortho Diagnostic Systems, Inc. See* UPitt Brf. at 3. Ortho Diagnostic Systems was another party in the case but its name is not in the title of the case.

- 4 -

*the inception of the lawsuit*") (emphasis in original). Thus, in *Switzer Bros., Inc. v. Byrne*, 242 F.2d 909 (6th Cir. 1957), the court affirmed an order dismissing a patent infringement complaint where two co-owners were not joined as plaintiffs when the suit was filed. The court held that this jurisdictional defect was not cured by a post-filing assignment of all rights in the patents-in-suit to the parties by the other co-owners. *Id.* at 913. It also affirmed the district court's order denying leave to add the other co-owners as parties. *Id.* "The right of the plaintiff to recover depended upon its right at the inception of the suit and the nonexistence of a cause of action when the suit was started is a fatal defect which cannot be cured by the accrual of a cause of action pending suit." *Id.*

For similar reasons, UPitt should not be permitted to cure its lack of standing by adding CMU as a plaintiff after eight months of intense litigation.

### 2. UPitt Cannot Show Good Cause to Add a Party After the June 15, 2007 Deadline Set Forth in the Case Management Order

On June 4, 2007, this Court entered a Case Management Order pursuant to Fed. R. Civ. P. 16(e) and Local Rule 16.1.2(A). *See* Exhibit A. As required by Fed. R. Civ. P. 16(b)(1) and Local Rule 16.1.2(A)(1), the Case Management Order established a deadline for seeking leave to join other parties and to amend the pleadings. *Id.* at ¶ (4). The deadline was June 15, 2007—almost six months ago. *Id.*

Even if UPitt could cure its lack of standing by adding CMU as a party, it would have to show good cause to add a party after the deadline established in the Case Management Order. *See* Fed. R. Civ. P. 16(b) ("A schedule shall not be modified except upon a showing of good cause and by leave of the district judge . . . ."); *Componentone, L.L.C. v. Componentart, Inc.*, 2007 WL 2580635, *1-*2 (W.D. Pa. Aug. 16, 2007). "'Good cause' under Rule 16(b) focuses on the diligence of the party seeking the

modification of the scheduling order." *Componentone, L.L.C.*, 2007 WL 2580635 at *2.

Also relevant is whether the opposing party would be prejudiced. *See id.*

> a. **UPitt Has Not Acted With Diligence in Seeking to Add CMU as a Party**

UPitt cannot establish the requisite good cause here because it has not acted

diligently to add CMU as a party. In *Componentone, L.L.C.*, the court denied the

plaintiff's motion to add a new party on the grounds that the plaintiff should have been

aware of the other party and its relevant conduct when the plaintiff filed the original

complaint. *See id.* at *2. The same reasoning applies here.

All of the facts showing that CMU is a co-owner of the patents-in-suit and thus a

necessary party were in UPitt's possession when it filed this lawsuit in April 2007. Three

CMU researchers are named on the face of the patents, which are attached as exhibits to

the Complaint. In addition, UPitt is a party to Intellectual Property Policy Guidelines that

were jointly adopted by UPitt and CMU and which UPitt admits govern the two

universities' respective rights with respect to the patents-in-suit. *See* UPitt SJ Opp. at 2,

5-6.[2] The Guidelines declare that jointly developed patents such as the patents-in-suit

"shall be owned jointly by" UPitt and CMU. Poppe SJ Decl., Ex. P, § D.4.; *id.*, Ex. Q,

§ D.4.[3] Furthermore, prior to filing this lawsuit, UPitt repeatedly acted in a manner that

showed its understanding that CMU was a co-owner of the patents-in-suit. *See* Varian SJ

---

[2] "UPitt SJ Opp." refers to Plaintiff University of Pittsburgh's Opposition to Defendant Varian Medical Systems, Inc.'s Motion for Summary Judgment for Lack of Standing, or in the Alternative, Motion for a Preliminary Hearing on the Issue of Standing, filed on December 5, 2007.

[3] "Poppe SJ Decl." refers to the Declaration of Matthew H. Poppe in Support of Defendant Varian Medical Systems, Inc.'s Motion for Summary Judgment for Lack of Standing, or in the Alternative, Motion for a Preliminary Hearing on the Issue of Standing, filed on November 21, 2007.

- 6 -

Brf. at 9-12.[4] UPitt's failure to include CMU as a plaintiff at the inception of this action was purely a result of its negligent failure to perform a reasonable investigation of the patent ownership issue prior to filing suit, with the result that Varian and the Court must deal with the issue now.

### b. Varian Would Be Severely Prejudiced If CMU Were to Be Added as a Party at This Late Date

UPitt's joinder motion should be denied for the additional reason that Varian would be severely prejudiced by CMU's addition to the case eight months after the filing of the Complaint, at a time when fact discovery is closed and a claim construction hearing has already been held. UPitt's delay and the resulting prejudice to Varian may be considered as a basis for denying UPitt's motion even if the Court determines that Rule 19 applies. *See, e.g., Arnold v. BLaST Intermediate Unit 17*, 843 F.2d 122, 125 n.6 (3d Cir. 1988) (holding that joinder of party would not be permitted where there had been "ample opportunity" to join the party earlier, even though that ruling might necessitate a separate action against the other party); *Barr Rubber Prods. Co. v. Sun Rubber Co.*, 425 F.2d 1114, 1126-27 n.23 (2d Cir. 1970) ("[T]he denial of Barr's motion to join two additional parties after four and one half years and six thousand pages of deposition testimony was not an abuse of discretion. To rule otherwise would have opened up a 'Pandora's box' of discovery, further protracting an already unduly distended case.").

Pursuant to the Case Management Order, discovery in this case closed on October 5, 2007. *See* Exhibit A at ¶ (10). UPitt argues that Varian already obtained discovery from CMU pursuant to subpoena. However, Varian would have had additional discovery

---

[4] "Varian SJ Brf." refers to the Memorandum in Support of Defendant Varian Medical Systems, Inc.'s Motion for Summary Judgment for Lack of Standing, or in the Alternative, Motion for a Preliminary Hearing on the Issue of Standing, filed on November 21, 2007.

- 7 -

tools available to it if CMU had been a party during the discovery period, and Varian would have had reason to seek broader discovery from CMU if CMU were a co-plaintiff. For example, interrogatories may not be propounded to non-parties. If CMU had been named a plaintiff in this action, Varian would have wanted to propound interrogatories to CMU to learn its contentions regarding relevant issues in the case. Varian also would have had the benefit of receiving Rule 26(a) disclosures and Infringement Contentions from CMU. Because discovery is closed, however, Varian would be deprived of those important discovery devices. Varian also engaged in narrower document and deposition discovery from CMU than it would have if CMU had been a party. This can be seen by comparing the document requests and deposition topics in the subpoenas Varian issued to CMU with the document requests and deposition topics that Varian propounded to UPitt. *Compare* Exhibits B, C *with* Exhibits D, E. Varian engaged in this narrower discovery because (1) non-parties are generally not expected to undergo the same discovery burdens as parties[5] and (2) CMU's status as a non-party meant that it was not worthwhile seeking certain types of information (relating to such issues as damages, patent marking, and laches) that would have been relevant had CMU been a plaintiff.

Varian is also likely to be prejudiced at trial in connection with the use of deposition testimony if CMU is added as a party. Several witnesses have been deposed who are unlikely to appear willingly at trial and who reside outside the Court's subpoena power. These include Andre Kalend (an inventor who lives in West Virginia), Karun Shimoga (an inventor who lives in California), Charalambos Athanassiou (an inventor

---

[5] This principle is reflected in an order issued by the Court in this action quashing another subpoena that Varian issued to a third party and ordering Varian to meet and confer with the subpoenaed party on "a more reasonable and narrower request." *See* Exhibit F.

who lives in Pittsburgh but has spent substantial amounts of time in Greece during recent years and was unavailable for much of the discovery period), Majid Riaziat (a former Varian engineer who lives in California), Jack Coats (a former Varian employee who lives in Maryland), and Dennis Quagliani (a former employee of non-party Elekta, Inc. who resides in Georgia). Varian will not be able to call these witnesses at trial to present live testimony and will therefore need to present their deposition testimony to the extent it is relevant. However, Varian may be precluded from using the testimony against CMU because CMU and its counsel were not present at these depositions and arguably lacked a meaningful opportunity to examine the witnesses as required by Fed. R. Evid. 804(b)(1).

Varian also would face substantial risks due to the jurisdictional issues created by CMU's late additional as a party. Even if this Court concludes that UPitt's lack of standing can be cured by adding CMU as a party, the Court of Appeal might disagree. As a result, Varian might continue to devote substantial resources to defending itself in this action, obtain a victory through summary judgment or trial, and then see its favorable judgment voided by an appellate court finding of no jurisdiction. Varian recently suffered this fate in another case and wants to avoid a repeat. *See Varian Medical Systems, Inc. v. Delfino*, 25 Cal. Rptr. 3d 298 (2005). The duplication of proceedings that would result from such a scenario would victimize not only Varian but the Court as well.

Finally, Varian cannot foresee all possible ways that UPitt and/or CMU might seek to take advantage of CMU's late addition as a party. For example, CMU might raise objections in the future based on its non-participation in earlier proceedings that Varian cannot now predict. In addition, CMU might raise unexpected arguments or issues that Varian did not have the opportunity to explore during discovery because CMU was not a

- 9 -

party at that time and has never provided information about its legal positions in this case. Thus, adding CMU as a party would unfairly expose Varian to the risk of being blindsided by unforeseen issues in the future.

## IV.   CONCLUSION

For the reasons stated above and in its opening brief, Varian respectfully requests that the Court deny UPitt's motion to join CMU as a party.

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _/s/ Henry M. Sneath_
William L. Anthony, Jr. (admitted _pro hac vice_) (CA 106908)
Matthew H. Poppe (admitted _pro hac vice_) (CA 177854)
Zheng (Jen) Liu (admitted _pro hac vice_) (CA 229311)
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400
(650) 614-7401 (fax)
wanthony@orrick.com
mpoppe@orrick.com
jenliu@orrick.com

PICADIO SNEATH MILLER & NORTON, P.C.

Henry M. Sneath, Esquire
hsneath@psmn.com
Pa. I.D. No. 40559
Shannon M. Clougherty, Esquire
sclougherty@psmn.com
Pa. I.D. No. 88586
600 Grant Street, Suite 4710
Pittsburgh, PA 15219
(412) 288-4000 [T]
(412) 288-2405 [F]

- 10 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of **DEFENDANT VARIAN MEDICAL SYSTEMS, INC.'S OPPOSITION TO PLAINTIFF UNIVERSITY OF PITTSBURGH'S MOTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 19 TO JOIN CARNEGIE MELLON UNIVERSITY** was served upon all parties either individually or through counsel via:

| | |
|---|---|
| _____ | Hand-Delivery |
| _____ | Facsimile |
| _____ | First Class, US Mail, Postage Prepaid |
| _____ | Certified Mail-Return Receipt Requested |
| ___X___ | ECF Electronic Service |
| _____ | Overnight Delivery |

at the following addresses:

Rita E. Tautkus
Morgan Lewis & Bockius, LLP
One Market – Spear Street Tower
San Francisco, CA  94105
rtautkus@morganlewis.com

Dated:  December 12, 2007                    By: *Henry M. Sneath*_____
                                                                    Henry M. Sneath

# EXHIBIT 2

[REDACTED VERSION]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNIVERSITY OF PITTSBURGH

      Plaintiff,

v.

VARIAN MEDICAL SYSTEMS, INC.,

      Defendant.

Case 2:07-cv-00491-AJS

Judge Arthur J. Schwab

**Filed Under Seal**

**MEMORANDUM IN SUPPORT OF DEFENDANT VARIAN MEDICAL
SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT FOR LACK
OF STANDING, OR IN THE ALTERNATIVE, MOTION FOR A
PRELIMINARY HEARING ON THE ISSUE OF STANDING**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES .................................................................................................. ii, iii

STATUTES AND REGULATIONS ........................................................................................ iv

I.    INTRODUCTION AND SUMMARY… ................................................................... 1

II.   STATEMENT OF UNDISPUTED FACTS ................................................................ 1

III.  LEGAL STANDARDS .................................................................................................. 3

       A.    Summary Judgment ....................................................................................... 4

       B.    Preliminary Hearing ...................................................................................... 5

IV.   ARGUMENT ................................................................................................................ 6

       A.    Where A Patent Is Jointly Owned, All Co-Owners Must Voluntarily
            Join as Plaintiffs or the Case Must Be Dismissed for Lack of Standing.......... 6

       B.    UPitt Is Not the Sole Owner of the Patents-in-Suit and It Therefore
            Lacks Standing to Sue for Patent Infringement ................................................ 7

            1.   CMU Co-Owns the Patents-in-Suit Pursuant to 1994 and 1997
                  Agreements Between CMU and UPitt Regarding Ownership of
                  Patents Resulting from Collaborative Projects...................................... 7

            2.   UPitt and CMU Specifically Agreed That They Would Jointly
                  Own the Inventions of the Patents-in-Suit ............................................ 8

            3.   The Conduct of UPitt and CMU After Issuance of the Patents-in
                  Suit Shows They Believed They Jointly Owned the Patents ................ 9

            4.   CMU Still Believes It Is a Co-Owner of the Patents-in-Suit ............... 12

IV.   CONCLUSION............................................................................................................. 13

i

## TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Diamedix Corp.,*
  *47 F.3d 1128, 1130 (Fed. Cir. 1995)* ........................................................................................ 6

*Bischoff v. Osceola County, Fla.,*
  *222 F.3d 874, 876-82 (11th Cir. 2000)* .................................................................................. 4, 5

*Blum v. Commissioner of Internal Revenue,*
  *183 F.2d 281, 287 (3d Cir. 1950)* ........................................................................................... 9

*Boston Chapter v. Harris,*
  *607 F.2d 514, 526 n.15 (1st Cir. 1979)* ................................................................................. 4, 5

*Doherty v. Rutgers School of Law-Newark,*
  *651 F.2d 893, 898 n.6 (3d Cir. 1981)* ................................................................................. 3, 4,5

*Ethicon, Inc. v. United States Surgical Corp.,*
  *135 F.3d 1456, 1468 (Fed. Cir. 1998)* ....................................................................................... 6

*FilmTec Corp. v. Allied-Signal, Inc.,*
  *939 F.2d 1568, 1571 (Fed. Cir. 1991)* ....................................................................................... 6

*Imperial Tobacco, Ltd. v. Philip Morris, Inc.,*
  *899 F.2d 1575, 1580 n.7 (Fed. Cir. 1990)* ................................................................................. 6

*International Nutrition Co. v. Horphag Research Ltd.,*
  *257 F.3d 1324, 1331 (Fed. Cir. 2001)* .................................................................................. 1, 6

*Israel Bio-Engineering Project v. Amgen, Inc.,*
  *475 F.3d 1256, 1263 (Fed. Cir. 2007)* ................................................................................ 4, 5, 6

*Lujan v. Defenders of Wildlife,*
  *504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992)* ...................................................................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  *475 U.S. 574, 584-88 (1986)* ...................................................................................................... 5

*N.A.A.C.P., Boston Chapter v. Harris,*
  *607 F.2d 514, 526 n.15 (1st Cir. 1979)* ................................................................................. 4, 5

*Novartis Corp. v. Ben Venue Labs., Inc.,*
  *271 F.3d 1043, 1046 (Fed. Cir. 2001)* ....................................................................................... 4

*PC Connector Solutions, LLC v. Smartdisk Corp.,*
  *406 F.3d 1359, 1365 (Fed. Cir. 2005)* ....................................................................................... 4

*Pennsylvania Prison Soc. v. Cortes,*
__ F.3d __, 2007 WL 3244012, *4 (3d Cir. Nov. 5, 2007) ....................................................... 3

*Rite-Hite Corp. v. Kelley Co., Inc.,*
56 F.3d 1538, 1551-54 (Fed. Cir. 1995) .................................................................................. 6

*Schering Corp. v. Roussel-UCLAF SA,*
104 F.3d 341, 345 (Fed. Cir. 1997) ......................................................................................... 6

*Techsearch, LLC v. Intel Corp.,*
286 F.3d 1360, 1372 (Fed. Cir. 2002) ..................................................................................... 5

*Telemac Cellular Corp. v. Topp Telecom, Inc.,*
247 F.3d 1316, 1323 (Fed. Cir. 2001) ..................................................................................... 4

## STATUTES AND REGULATIONS

13A Wright, Miller & Cooper,
*Federal Practice and Procedure* § 3531.15 (2d ed. 1984) ...................................................... 5

35 U.S.C. § 281 ......................................................................................................................... 6

## RULES OF CIVIL PROCEDURE

Federal Rules of Civil Procedure 56(c) .................................................................................... 4

## I.    INTRODUCTION AND SUMMARY

Defendant Varian Medical Systems, Inc. ("Varian") hereby moves for summary judgment on every cause of action in the Complaint on the basis that Plaintiff University of Pittsburgh ("UPitt") is not the sole owner of the patents-in-suit and it therefore lacks standing to sue for patent infringement. In particular, undisputed evidence shows that non-party Carnegie Mellon University ("CMU") is a co-owner of the patents-in-suit. If the Court finds that there are genuine disputes of material fact that preclude summary judgment, Varian requests that the Court schedule a preliminary hearing on the issue of standing to resolve the issue before additional resources are devoted to this litigation.

The two patents-in-suit are United States Patent Nos. 5,727,554 (the "'554 patent") and 5,784,431 (the "'431 patent"). The purported innovations described therein were created during the execution of a joint collaborative research project (the "Joint Project") between members of The Department of Radiation Oncology at UPitt and members of the CMU Robotics Institute. CMU and UPitt executed agreements in 1994 and 1997 which made the two entities co-owners of any intellectual property rights that flowed from joint research projects such as the Joint Project. Because CMU, a co-owner of the patents-in-suit, has not joined as a plaintiff in this patent infringement action, UPitt lacks standing to sue and the case must be dismissed. *See, e.g., International Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001).

## II.    STATEMENT OF UNDISPUTED FACTS

A detailed fact statement is set forth in Varian's Concise Statement of Material Facts in Support of Motion for Summary Judgment, filed herewith (the "Concise Statement"). Following is a summary:

- 1 -

The Complaint in this action has a single count that alleges infringement by Varian of the '554 and '431 patents. Concise Statement ¶ 1. Each patent names the same five inventors. *Id.* ¶ 2. The inventors developed the patented inventions pursuant to a joint collaborative research project they called the "dynamic/conformal radiotherapy program." *Id.* ¶ 3. The inventors began joint work on the Joint Project in 1994, the patent applications were filed in 1996, and the patents issued in 1998. *Id.* ¶¶ 4-8.

From the time they began work on the Joint Project through the issuance of the patents-in-suit, two of the inventors were employed by UPitt and two by CMU.[1] *Id.* ¶¶ 9-10. In 1994, UPitt and CMU entered into a three-year agreement providing that all intellectual property resulting from joint research by their respective faculty members would be jointly owned by the universities. *Id.* ¶¶ 14-15. This agreement was renewed in 1997 for another three-year term. *Id.* ¶¶ 16-19. These general agreements govern the respective rights of UPitt and CMU with respect to the patents-in-suit. *Id.* ¶ 20. UPitt and CMU also specifically agreed that they would jointly own the inventions of the two patents-in-suit. *Id.* ¶ 21.

When the patent applications were filed, each of the inventors signed an "Assignment" stating that they were assigning their patent rights to UPitt. *Id.* ¶ 12. In doing so, however, there was no intent to contravene the agreements described above and confer sole ownership on UPitt. *Id.* ¶ 13.

After the patents issued, UPitt and CMU continued to act in a manner that was consistent with joint ownership. Specifically:

---

[1] The fifth inventor was a CMU student and/or employee at the time of the Joint Project. Concise Statement ¶ 11.

- 2 -

- In 1998, one of the UPitt inventors sent a letter to the director of UPitt's Office of Research

  *Id.* ¶ 23.

- Also in 1998, UPitt and CMU entered into an agreement with Elekta Oncology Systems Inc. ("Elekta")
  [2] The agreement specified that UPitt and CMU *jointly* granted to Elekta an option to negotiate a license to the patents-in-suit. *Id.* ¶ 24.

- In 2002, UPitt briefly had discussions with Varian about a possible license to the patents-in-suit. In connection with those discussions, UPitt sought approval from CMU before offering specific licensing terms to Varian. *Id.* ¶ 25.

CMU's 30(b)(6) designee testified at deposition that CMU still believes it is a co-owner of the patents-in-suit. *Id.* ¶ 26.

## III.   LEGAL STANDARDS

The burden of proof on the issue of standing lies with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992); *Pennsylvania Prison Soc. v. Cortes*, __ F.3d __, 2007 WL 3244012, *4 (3d Cir. Nov. 5, 2007). Because standing is not a "mere pleading requirement[]" but is rather "an indispensable part of the plaintiff's case," it "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136-37; *Pennsylvania Prison Soc.*, 2007 WL 3244012 at *4. If the plaintiff fails to satisfy its burden, the case must be dismissed. *See id.*; *see also, e.g., Doherty v. Rutgers School of Law-Newark*, 651 F.2d 893, 898 n.6 (3d Cir. 1981) (stating, in connection with

---

2

motion to dismiss, that "the complaint must be dismissed" if plaintiff fails to meet standing requirements).

There are multiple ways to challenge standing in a patent infringement suit. Summary judgment is "one frequently used method." *Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) (affirming order granting motion for summary judgment for lack of standing). Another available procedure is a preliminary hearing, during which the court hears evidence and can resolve witness credibility issues. *Id.*; *see also Doherty*, 651 F.2d at 898 ("to avoid an unnecessary trial, the district court may conduct a preliminary evidentiary hearing on standing" and dismiss the case if plaintiff fails to prove standing); *Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 876-82 (11th Cir. 2000) (discussing when standing should be resolved by summary judgment motion and when by preliminary hearing); *N.A.A.C.P., Boston Chapter v. Harris*, 607 F.2d 514, 526 n.15 (1st Cir. 1979) (holding that court may conduct preliminary evidentiary hearing on standing "[t]o avoid an unnecessary trial").

## A.    Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001). The party moving for summary judgment must initially demonstrate that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See PC Connector Solutions, LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1365 (Fed. Cir. 2005); *see also Novartis Corp. v. Ben*

OHS West:260332905.4

*Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). In order to avoid summary judgment, the opposing party then must come forward with specific evidence of the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584-88 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586; *see also Techsearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("[G]eneral assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden.").

## B.    Preliminary Hearing

If the Court finds that there are genuine issues of material fact that preclude summary judgment, a preliminary hearing may be held to resolve the issue of standing prior to trial. At a preliminary hearing on standing, a district court may take evidence and make factual determinations. *See Israel Bio-Engineering Project*, 475 F.3d at 1263; *Doherty*, 651 F.2d at 898; *Bischoff*, 222 F.3d at 876-82; *N.A.A.C.P., Boston Chapter*, 607 F.2d at 526 n.15. The plaintiff bears the burden of proof on the issue of standing and the case must be dismissed if the plaintiff fails to carry its burden. *See Israel Bio-Engineering Project*, 475 F.3d at 1263; *Doherty*, 651 F.2d at 898 n.6; 13A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3531.15 (2d ed. 1984) (explaining that preliminary hearing is "a means of requiring the plaintiff to carry the burden of establishing standing").

- 5 -

## IV.    ARGUMENT

### A.    Where a Patent Is Jointly Owned, All Co-Owners Must Voluntarily Join as Plaintiffs or the Case Must Be Dismissed for Lack of Standing

Standing to bring a patent infringement suit is governed by 35 U.S.C. § 281, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1130 (Fed. Cir. 1995). If a party lacks title to a patent, that party has no standing to bring an infringement action under that patent and the suit must be dismissed. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551-54 (Fed. Cir. 1995) (en banc); *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1571 (Fed. Cir. 1991). The question of standing to sue is a jurisdictional one. *Imperial Tobacco, Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1580 n.7 (Fed. Cir. 1990).

If a patent is jointly owned, all co-owners must consent to join as plaintiffs in an infringement suit. *International Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001). A co-owner acting alone lacks standing to sue for patent infringement. *Israel Bio-Engineering Project*, 475 F.3d at 1264-65. As a result, "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Ethicon, Inc. v. United States Surgical Corp*, 135 F.3d 1456, 1468 (Fed. Cir. 1998) (holding "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit"); *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997). There are only two exceptions to this rule, and neither is applicable here. *See Ethicon, Inc.*, 135 F.3d at 1468 n.9 (co-owner may be compelled to join as plaintiff in infringement suit if (1) exclusive licensee

OHS West:260332905.4

files suit and seeks to join patent owner as plaintiff or (2) co-owner has agreed in writing to waive its right to refuse to join suit).

**B.     UPitt Is Not the Sole Owner of the Patents-in-Suit and It Therefore Lacks Standing to Sue for Patent Infringement**

CMU is a co-owner of the patents-in-suit. It had an agreement with UPitt during the relevant time period providing that the two universities would jointly own patents resulting from research collaboration between UPitt and CMU personnel. The agreement was in place when the patented inventions were developed, when the patent applications were filed, and when the patents issued. In addition, UPitt and CMU specifically agreed to share ownership of the patents-in-suit themselves. After issuance of the patents, UPitt and CMU continued to act in accordance with the understanding that they were co-owners of the patents-in-suit. Accordingly, UPitt is not the sole owner and it lacks standing to sue Varian for patent infringement.

**1.     CMU Co-Owns the Patents-in-Suit Pursuant to 1994 and 1997 Agreements Between CMU and UPitt Regarding Ownership of Patents Resulting from Collaborative Projects**

CMU is a co-owner of the patents-in-suit pursuant to a pair of written agreements between CMU and UPitt that were in effect from 1994, when the Joint Project started, until 2000, which was two years after the patents-in-suit issued. The agreements expressly provided that patent rights resulting from collaborative research would be jointly owned by UPitt and CMU. Because the patents-in-suit resulted from collaborative research, ownership of the patents is governed by these agreements.

On October 13, 1994, UPitt and CMU jointly adopted "Policy Guidelines" for "Intellectual Property Rights and Technology Transfer Procedures in Collaborative Projects of the University of Pittsburgh and Carnegie Mellon University" (the "Joint IP

- 7 -

Policy Guidelines"). Concise Statement ¶ 14. The guidelines were adopted for a three-year period. *Id.* ¶¶ 14, 16. Pursuant to Section D.4., "[a]ll [intellectual property] developed jointly by CMU Participants and Pitt Participants during collaboration shall be owned jointly by Pitt and CMU . . . ."[3] *Id.* ¶ 15. The guidelines were renewed in substantially the same form for another three-year period in 1997. *Id.* ¶¶ 17-19.

The patents-in-suit were developed jointly by three CMU Participants (Dr. Takeo Kanade, Dr. Karun Shimoga, and Charalambos Athanassiou) and two Pitt Participants (Dr. Joel Greenberger and Dr. Andre Kalend) during collaborative research, namely the Joint Project. *Id.* ¶¶ 2-4, 9-11. The inventions were developed, the patent applications were filed, and the patents-in-suit issued while the Joint IP Policy was in effect. *Id.* ¶¶ 4-8, 14, 16-17, 19-20. Consequently, the patents are governed by the Joint IP Policy Guidelines and are jointly owned by CMU and UPitt. *Id.* ¶ 20.

### 2. UPitt and CMU Specifically Agreed That They Would Jointly Own the Inventions of the Patents-in-Suit

In addition to the general patent agreements described in the preceding section, CMU and UPitt expressly agreed that they would jointly own the inventions of the two patents-in-suit. This is shown by a memorandum written by inventor Andre Kalend to inventor Joel Greenberger on September 6, 1995, while the Joint Project was in progress and a year before the patent applications were filed, stating: "my last [UPitt]/CMU meeting (8/11/95) included [lead CMU inventor] Dr. Kanade; he has agreed to the above three modes being declared as individual patents through [UPitt], but with 50/50

---

[3] A "CMU Participant" was a participant in collaborative research who had "his/her primary appointment" with CMU, and a "Pitt Participant" was a participant in collaborative research who had "his/her primary appointment" with UPitt. Declaration of Matthew H. Poppe in Support of Defendant Varian Medical Systems, Inc.'s Motion for Summary Judgment for Lack of Standing, or in the Alternative, Motion for a Preliminary Hearing on the Issue of Standing ("Poppe Decl."), Ex. P, § B.1.

- 8 -

[UPitt]/CMU ownership." Concise Statement ¶ 21; Poppe Decl., Ex. M, p. 1.[4]  By

"modes," Dr. Kalend was referring to software functionality corresponding to the

inventions of the patents-in-suit and one other patent. *See id.*

### 3. The Conduct of UPitt and CMU After Issuance of the Patents-in-Suit Shows They Believed They Jointly Owned the Patents

After the patents-in-suit issued in 1998, UPitt and CMU continued to act

consistently with the belief that they were joint owners. *See Blum v. Commissioner of*

*Internal Revenue*, 183 F.2d 281, 287 (3d Cir. 1950) (district court's interpretation of

contract related to patent ownership was supported by fact that parties treated patent as if

it was owned by particular party). This is shown clearly by three different events.

The first event was the sending of a letter by Dr. Joel Greenberger, one of the

UPitt inventors. Concise Statement ¶ 23. In the letter, Dr. Greenberger

*Id.* The letter is dated October

29, 1998, just a few months after the patents-in-suit issued. *Id.; compare id.* ¶¶ 7-8. Dr.

Greenberger sent the letter to Michael Crouch, who at the time was UPitt's Director,

Office of Research. *Id.* ¶ 23. Dr. Greenberger testified that he sent the letter to Mr.

Crouch to inform him about the nature of a research agreement related to the patents, and

that he made an effort to be accurate in the letter. *Id.*; Poppe Decl., Ex. U, pp. 247:15-

248:16. Indeed, before sending the letter to Mr. Crouch, Dr. Greenberger had it reviewed

by Reed McManigle, a lawyer in UPitt's technology transfer office. Concise Statement

¶ 23; Poppe Decl., Ex. U, pp. 249:12-250:5.

---

[4] In this memorandum, Dr. Kalend referred to "UPMC" (the University of Pittsburgh
Medical Center) instead of "UPitt." Dr. Greenberger and possibly also Dr. Kalend held
positions with both entities and appeared to use the terms interchangeably at times. *See*
Poppe Decl., Ex. F, p. 40:11-15; *id.*, Ex. T, p. 19.

- 9 -

The second event also took place on October 29, 1998. On that date, UPitt and

CMU entered into an agreement with Elekta ███████████████████████████

█████████████████████████████████████████████████████████████████

Concise Statement ¶ 24; Poppe Decl., Ex. X. Part of the consideration Elekta received in

exchange for this funding was an option to license the patents-in-suit. Concise Statement

¶ 24; Poppe Decl., Ex. X, p. 6. The agreement unambiguously reveals the universities'

understanding that they shared ownership of the patents-in-suit, ████████████████

█████████████████████████████████████████████   Specifically, in

Paragraph 11.2, UPitt and CMU *jointly* granted to Elekta an exclusive option to negotiate

a royalty-bearing, exclusive license to the patents-in-suit:



....

Concise Statement ¶ 24; Poppe Decl., Ex. X, p. 6 (emphasis added); *see also* Poppe

Decl., Ex. X, p. 1 (defining "Universities" to include UPitt and CMU). If UPitt were the

sole owner of the patents-in-suit, █████████████████████████████████████

███████████████████[5]

---

[5] The agreement also confirms that the patents-in-suit ████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

The third event occurred several years later, in 2002, when UPitt briefly engaged in discussions with Varian about a possible license to the patents-in-suit. Concise Statement ¶ 25. At the end of May 2002, when UPitt believed that the Varian discussions were moving toward a possible license agreement, it informed CMU about the discussions. *Id.* The related email correspondence shows that both UPitt and CMU understood that they were joint owners of the patents-in-suit and would share any proceeds from a license agreement with Varian.

UPitt's representative, Reed McManigle, initiated the discussion with CMU on May 31, 2002, by stating that "we never had the inventors tell us their relative contribution to the inventions, so we'll have to get that information *before we can fill in the split between Pitt and CMU.*" Poppe Decl., Ex. Y (emphasis added); *see also id.*, Ex. Z (5/31/02 email from McManigle to three inventors stating, "As part of this licensing process, we'll need to reach some agreement between Pitt and CMU about how proceeds will be distributed, which is driven by the respective contributions of the inventors."). CMU's representative, Carl Mahler, stated in a response that CMU would insist upon "approval of all licenses by CMU prior to execution on its behalf." *Id.*, Ex. AA.   One week later, Mr. McManigle wrote back that "the interinstitutional agreement between Pitt and CMU will provide for 60% of the proceeds to go to Pitt, and 40% to CMU . . . ." *Id.*, Ex. CC; *see also id.*, Ex. DD (correcting the split to 60% for CMU and 40% for UPitt). Still later, on June 18, Mr. McManigle wrote to Mr. Mahler that he had not "made a proposal to Varian yet" because he had not worked out an

*Id.*, Ex. X, pp. 6-7.

arrangement with CMU "that would give UPitt negotiating authority." *Id.*, Ex. EE. The discussions between UPitt and CMU were not brought to a conclusion because, before that happened, Varian notified UPitt that it did not want to license the patents-in-suit after all. *Id.*, Ex. FF.

These discussions show that in 2002, UPitt and CMU both understood that CMU was a co-owner of the patents-in-suit such that (1) UPitt needed CMU's approval before offering specific licensing terms to a third party and (2) UPitt had to share any licensing proceeds with CMU.

### 4.    CMU Still Believes It Is a Co-Owner of the Patents-in-Suit

CMU's Rule 30(b)(6) designee testified at deposition that CMU believes it is a co-owner of the patents-in-suit.  Concise Statement ¶ 26.  The designee was Robert Wooldridge, CMU's Director for the Center for Technology Transfer and Enterprise Creation at CMU. Poppe Decl., Ex. I, pp. 6:18-7:23, 36:25-37:10, 43:22-46:21.  Mr. Wooldridge was directly involved in discussions with UPitt's technology transfer office in 1997 regarding ownership of the patents-in-suit. *Id.*, Ex. I, pp. 93:18-95:21, 96:19-97:23.  He based his conclusions about ownership on that experience, as well as on his knowledge of the Joint IP Policy Guidelines between UPitt and CMU (discussed *supra* at 7-8) and the facts surrounding the Joint Project. *See id.*, Ex. I, pp. 71:18-77:5, 79:9-14, 80:4-81:21, 84:8-14, 84:23-85:9, 88:18-92:4, 93:18-95:21, 96:19-97:23, 101:15-103:5, 113:14-114:17, 118:18-119:5, 146:3-148:6.  He also testified that CMU is entitled to co-ownership rights to the patents-in-suit by virtue of CMU's Intellectual Property Policy, in effect since 1985, which states that CMU owns the intellectual property associated with inventions by its faculty and students under circumstances such as those present here. *Id.*, Ex. I, pp. 49:22-52:8, 55:5-16, 56:19-59:18, 60:18-64:12.

- 12 -

## V.    CONCLUSION

Based on the foregoing, Varian respectfully requests an Order from the Court granting its motion for summary judgment for lack of standing. If the Court determines that there are genuine issues of material fact that preclude granting summary judgment, Varian requests in the alternative that the Court schedule a preliminary hearing at the earliest possible time to resolve the issue of UPitt's standing to sue. Varian also requests any other relief that the Court deems just under the circumstances.

Respectfully submitted,

PICADIO SNEATH MILLER & NORTON, P.C.

By:___s/ Shannon M. Clougherty_____
Henry M. Sneath, Esquire
hsneath@psmn.com
Pa. I.D. No. 40559
Shannon M. Clougherty, Esquire
sclougherty@psmn.com
Pa. I.D. No. 88586
600 Grant Street, Suite 4710
Pittsburgh, PA 15219
(412) 288-4000 [T]
(412) 288-2405 [F]

ORRICK, HERRINGTON & SUTCLIFFE LLP

William L. Anthony, Jr. (admitted *pro hac vice*)
(CA 106908)
Matthew H. Poppe (admitted *pro hac vice*)
(CA 177854)
Zheng (Jen) Liu (admitted *pro hac vice*)
(CA 229311)
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400
(650) 614-7401 (fax)
wanthony@orrick.com
mpoppe@orrick.com
 jenliu@orrick.com

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **MEMORANDUM IN SUPPORT OF DEFENDANT VARIAN MEDICAL SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING, OR IN THE ALTERNATIVE, MOTION FOR A PRELIMINARY HEARING ON THE ISSUE OF STANDING** was served upon all parties either individually or through counsel via:

| | |
|---|---|
| _____X_____ | Hand-Delivery |
| _____ | Facsimile |
| _____ | First Class, US Mail, Postage Prepaid |
| _____ | Certified Mail-Return Receipt Requested |
| _____ | ECF Electronic Service |
| _____ | Overnight Delivery |

at the following addresses:

Rita E. Tautkus
Morgan Lewis & Bockius, LLP
One Market – Spear Street Tower
San Francisco, CA  94105
rtautkus@morganlewis.com

Dated: November 21, 2007          /s/ Shannon M. Clougherty
                                  Shannon M. Clougherty

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNIVERSITY OF PITTSBURGH

       Plaintiff,

v.

VARIAN MEDICAL SYSTEMS, INC.,

       Defendant.

Case 2:07-cv-00491-AJS

Judge Arthur J. Schwab

**Electronically Filed**

## MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND/OR 35 U.S.C. § 285

Defendant Varian Medical Systems, Inc. ("Varian") moves this Court to grant its Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure and/or 35 U.S.C. § 285. As set forth in greater detail in the accompanying memorandum, Plaintiff University of Pittsburgh ("UPitt") and its counsel, Morgan, Lewis & Bockius LLP ("MLB"), should have known at the time of filing UPitt's Complaint, and if not prior to filing the Complaint then at a later time as discovery progressed and motions were filed, that the allegations in the Complaint regarding UPitt's ownership and Varian's infringement of United States Patent Nos. 5,727,554 and 5,784,431 were unwarranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or the establishment of new law, and they had no evidentiary support, in violation of Rule 11(b)(2) and (b)(3). In addition, UPitt and MLB filed and pursued the Complaint and other papers in this action for improper purposes in violation of Rule 11(b)(1), namely to impose expense and burden on Varian in the hopes of pressuring Varian into agreeing to an unwarranted license with respect to the patents-in-suit, and for other purposes of delay, obfuscation, and harassment.

In compliance with Rule 11(c)(1)(A), Varian served UPitt and MLB with a copy of Varian's motion papers at least twenty-one (21) days prior to filing them.

For the reasons set forth herein and in the accompanying papers, Varian respectfully requests that this Honorable Court grant its Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure and/or 35 U.S.C. § 285. A proposed Order of Court is attached.

Dated: January 16, 2008

<div style="margin-left:3em">

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  /s/  Matthew H. Poppe
William L. Anthony, Jr. (admitted *pro hac vice*) (CA 106908)
Matthew H. Poppe (admitted *pro hac vice*) (CA 177854)
Zheng (Jen) Liu (admitted *pro hac vice*) (CA 229311)
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400
(650) 614-7401 (fax)
wanthony@orrick.com
mpoppe@orrick.com
jenliu@orrick.com

PICADIO SNEATH MILLER & NORTON, P.C.

Henry M. Sneath, Esquire
hsneath@psmn.com
Pa. I.D. No. 40559
Shannon M. Clougherty, Esquire
sclougherty@psmn.com
Pa. I.D. No. 88586
600 Grant Street, Suite 4710
Pittsburgh, PA 15219
(412) 288-4000 [T]
(412) 288-2405 [F]

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND/OR 35 U.S.C. § 285** was served upon the University of Pittsburgh and Morgan Lewis & Bockius, LLP either individually or through counsel via:

|        |                                          |
|--------|------------------------------------------|
| __X__  | Hand-Delivery                            |
| _____ | Facsimile                                |
| _____ | First Class, US Mail, Postage Prepaid    |
| _____ | Certified Mail-Return Receipt Requested  |
| _____ | ECF Electronic Service                   |
| _____ | Overnight Delivery                       |

at the following addresses:

<div align="center">

Rita E. Tautkus
Morgan Lewis & Bockius, LLP
One Market – Spear Street Tower
San Francisco, CA   94105
rtautkus@morganlewis.com

</div>

Dated:  January 16, 2008                  _____

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE AND/OR 35 U.S.C. § 285** was served upon the University of Pittsburgh and Morgan Lewis & Bockius, LLP either individually or through counsel via:

| | |
|---|---|
| _____ | Hand-Delivery |
| _____ | Facsimile |
| _____ | First Class, US Mail, Postage Prepaid |
| _____ | Certified Mail-Return Receipt Requested |
| _____X_____ | ECF Electronic Service |
| _____ | Overnight Delivery |

at the following addresses:

Rita E. Tautkus
Morgan Lewis & Bockius, LLP
One Market – Spear Street Tower
San Francisco, CA  94105
rtautkus@morganlewis.com

Dated:  March 20, 2008

/s/Matthew H. Poppe
Matthew H. Poppe

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNIVERSITY OF PITTSBURGH

        Plaintiff,

   v.

VARIAN MEDICAL SYSTEMS, INC.,

        Defendant.

Case 2:07-cv-00491-AJS

Judge Arthur J. Schwab

**Filed Electronically**

## PROPOSED ORDER OF COURT

AND NOW, to-wit, this _____ day of _____, 2008, upon consideration of Varian Medical Systems, Inc.'s Motion for Sanctions Pursuant to Rule 11 of the Federal Rules of Civil Procedure and/or 35 U.S.C. § 285, it is hereby ORDERED, ADJUDGED and DECREED that the foregoing Motion is GRANTED.

The Court finds that Plaintiff University of Pittsburgh ("UPitt") and its litigation counsel, Morgan Lewis & Bockius LLP ("MLB") have violated Rule 11 of the Federal Rules of Civil Procedure, and that this case is an "exceptional case" within the meaning of 35 U.S.C. § 285, for the following reasons:

(1)    The allegation in the Complaint that UPitt owns the "entire right, title, and interest in and to" the patents-in-suit lacked evidentiary support when it was made. Carnegie Mellon University ("CMU") owns rights in the patents by UPitt's own admission, and all of the relevant facts were in the possession of or available to UPitt and MLB before the Complaint was filed.

(2)    The argument in UPitt's opposition to Varian's Motion for Summary Judgment for Lack of Standing [Docket No. 159] that it owned "all substantial rights" in the patents-in-suit lacked evidentiary support when it was made and was not warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law of the establishment of new law. The evidence indisputably shows that CMU retains the rights to use and license the inventions of the patents-in-suit. Patent law recognizes these as substantial rights

OHS West:260364621.1

for standing purposes. All of the relevant facts were in the possession of or available to UPitt and MLB prior to the filing of the Complaint, and the applicable law is well-established.

(3)    The allegation in the Complaint that Varian infringed U.S. Patent Nos. 5,727,554 and 5,784,431 lacked evidentiary support when it was made. UPitt and MLB failed to conduct a reasonable pre-filing investigation of infringement because they failed to acquire, use, test, or reverse-engineer any of the accused products. UPitt and MLB had pre-filing access to those products at no expense through UPitt's sister institution, the University of Pittsburgh Medical Center, which owned samples of the accused products.

(4)    UPitt and MLB unreasonably continued to advocate throughout this litigation that Varian infringed the patents-in-suit despite a lack of evidentiary support. The unreasonableness of UPitt's infringement position is shown, for example, by its failure to provide Varian with sufficiently detailed infringement contentions, its misleading quotation from a leading Federal Circuit case in connection with claim construction, and the evidence presented to the Court showing that even under UPitt's own claim construction there would be no infringement of the asserted claims of U.S. Patent No. 5,784,431.

(5)    The Court finds that the above-referenced baseless allegations and legal arguments were made by UPitt and MLB for the improper purpose of attempting to coerce Varian to pay exorbitant fees to license the patents-in-suit, and for other improper purposes of delay, obfuscation, and harassment.

Based on the above findings, the Court hereby issues the following sanctions:

(1)    Monetary sanctions shall be issued against UPitt and MLB, jointly and severally, in an amount to be determined, which shall represent the reasonable attorney's fees and costs incurred by Varian as a direct result of the Rule 11 violations to the extent necessary to deter future violations of Rule 11. The Court finds that UPitt and MLB are able to pay Varian's reasonable attorney's fees and expenses; that each of them is likely to engage in future patent

litigation; and that each of them had abundant time to investigate the relevant facts (and in MLB's case, the relevant law) before making the baseless allegations described above.  This award is further justified by 35 U.S.C. § 285.

(2)     This action is hereby DISMISSED WITH PREJUDICE.  The Court finds that this further sanction is also needed to deter future violations of Rule 11 given the high stakes involved and the unreasonableness of UPitt's infringement position.

By no later than _____, 2008, Varian shall file a statement setting forth its reasonable attorney's fees and costs incurred in this action, together with supporting evidence. UPitt shall have until _____, 2008 to file a responsive statement.  If Varian wishes to file a reply, it may request leave to do so promptly after the responsive statement is filed.

IT IS SO ORDERED.

BY THE COURT:

_____