DANIEL JOHNSON, JR. (SBN 57409)
RITA E. TAUTKUS (SBN 162090)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
Email: djjohnson@morganlewis.com
Email: rtautkus@morganlewis.com

Attorneys for Plaintiff
UNIVERSITY OF PITTSBURGH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION d/b/a UNIVERSITY OF PITTSBURGH<br><br>       Plaintiff,<br><br>  v.<br><br>VARIAN MEDICAL SYSTEMS, INC.<br><br>      Defendant. | Case No. CV 08-02973 MMC<br><br>**PLAINTIFF'S SUBMISSION OF A REDACTED VERSION OF EXHIBIT 2 TO UNIVERSITY OF PITTSBURGH'S PREVIOUSLY-FILED REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF ITS OPPOSITION TO VARIAN'S MOTION TO DISMISS, PER THE COURT'S ORDER OF AUGUST 19, 2008 (DOC. NO. 65)**<br><br>Date: September 5, 2008<br>Time: 9:00 a.m.<br>Courtroom 7, 19th Floor |

1      Pursuant to the Court's Order Granting Plaintiff's Administrative Motion to File Under Seal

2  Portions of a Document to University of Pittsburgh's Request for Judicial Notice ISO Its Opposition

3  to Varian Medical Systems Inc.'s Motion to Dismiss, dated August 19, 2008 (Document No. 65),

4  University of Pittsburgh ("UPitt") hereby submits for the public record a redacted version of

5  Exhibit 2 that was previously attached as an exhibit to University of Pittsburgh's Request for

6  Judicial Notice in Support of Its Opposition to Varian Medical Systems, Inc.'s Motion to Dismiss

7  Under Fed. R. Civ. P. 12(b)(6), filed on August 18, 2008 (Document No. 58).

8      I, Rita E. Tautkus, declare and state as follows:

9      1.    I am Of Counsel with the law firm of Morgan, Lewis & Bockius LLP, attorneys of

10  record for Plaintiff University of Pittsburgh.  I am licensed to practice law before the Courts for the

11  State of California.  I have direct and personal knowledge of the facts set forth in my Declaration

12  and, if called and sworn as a witness, I would competently testify to these facts.

13      2.    Attached hereto as Exhibit 2 is a true and correct copy of a redacted version of the

14  Memorandum in Support of Defendant Varian Medical Systems, Inc.'s Motion for Summary

15  Judgment for Lack of Standing, Or in the Alternative, Motion for a Preliminary Hearing on the Issue

16  of Standing filed under seal on November 21, 2007, Docket No. 128, in the Western District of

17  Pennsylvania action, Case No. 07-0491.

18      I declare under penalty of perjury under the laws of the United States of America that the

19  foregoing is true and correct and that this declaration was executed this 22nd day of August, 2008, at

20  San Francisco, California.

21                By: /s/ Rita E. Tautkus

22                    Rita E. Tautkus

PLAINTIFF'S SUBMISSION OF A REDACTED VERSION OF EXHIBIT 2 TO ITS PREVIOUSLY-FILED
REQUEST FOR JUDICIAL NOTICE ISO ITS OPP. TO VARIAN'S MOTION TO DISMISS
(Case No. CV 08-02973 MMC)
DB2/20815295.1

1

# EXHIBIT 2

[REDACTED VERSION]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNIVERSITY OF PITTSBURGH

      Plaintiff,

v.

VARIAN MEDICAL SYSTEMS, INC.,

      Defendant.

Case 2:07-cv-00491-AJS

Judge Arthur J. Schwab

**Filed Under Seal**

## MEMORANDUM IN SUPPORT OF DEFENDANT VARIAN MEDICAL SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING, OR IN THE ALTERNATIVE, MOTION FOR A PRELIMINARY HEARING ON THE ISSUE OF STANDING

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..........................................................................................................i

TABLE OF AUTHORITIES ................................................................................................ ii, iii

STATUTES AND REGULATIONS ........................................................................................iv

I.      INTRODUCTION AND SUMMARY.... ...................................................................... 1

II.     STATEMENT OF UNDISPUTED FACTS ................................................................. 1

III.    LEGAL STANDARDS.............................................................................................. 3

        A.      Summary Judgment ...................................................................................... 4

        B.      Preliminary Hearing ...................................................................................... 5

IV.     ARGUMENT ............................................................................................................ 6

        A.      Where A Patent Is Jointly Owned, All Co-Owners Must Voluntarily
                Join as Plaintiffs or the Case Must Be Dismissed for Lack of Standing.......... 6

        B.      UPitt Is Not the Sole Owner of the Patents-in-Suit and It Therefore
                Lacks Standing to Sue for Patent Infringement ............................................... 7

                1.      CMU Co-Owns the Patents-in-Suit Pursuant to 1994 and 1997
                        Agreements Between CMU and UPitt Regarding Ownership of
                        Patents Resulting from Collaborative Projects...................................... 7

                2.      UPitt and CMU Specifically Agreed That They Would Jointly
                        Own the Inventions of the Patents-in-Suit ........................................... 8

                3.      The Conduct of UPitt and CMU After Issuance of the Patents-in
                        Suit Shows They Believed They Jointly Owned the Patents .............. 9

                4.      CMU Still Believes It Is a Co-Owner of the Patents-in-Suit .............. 12

IV.     CONCLUSION............. ............................................................................................ 13

## TABLE OF AUTHORITIES

### CASES

*Abbott Labs. v. Diamedix Corp.*,
47 F.3d 1128, 1130 (Fed. Cir. 1995) ........................................................................................ 6

*Bischoff v. Osceola County, Fla.*,
222 F.3d 874, 876-82 (11th Cir. 2000) .................................................................................. 4, 5

*Blum v. Commissioner of Internal Revenue*,
183 F.2d 281, 287 (3d Cir. 1950) ............................................................................................ 9

*Boston Chapter v. Harris*,
607 F.2d 514, 526 n.15 (1st Cir. 1979) .................................................................................. 4, 5

*Doherty v. Rutgers School of Law-Newark*,
651 F.2d 893, 898 n.6 (3d Cir. 1981) ................................................................................... 3, 4,5

*Ethicon, Inc. v. United States Surgical Corp.*,
135 F.3d 1456, 1468 (Fed. Cir. 1998) ...................................................................................... 6

*FilmTec Corp. v. Allied-Signal, Inc.*,
939 F.2d 1568, 1571 (Fed. Cir. 1991) ...................................................................................... 6

*Imperial Tobacco, Ltd. v. Philip Morris, Inc.*,
899 F.2d 1575, 1580 n.7 (Fed. Cir. 1990) ................................................................................ 6

*International Nutrition Co. v. Horphag Research Ltd.*,
257 F.3d 1324, 1331 (Fed. Cir. 2001) ................................................................................... 1, 6

*Israel Bio-Engineering Project v. Amgen, Inc.*,
475 F.3d 1256, 1263 (Fed. Cir. 2007) .................................................................................. 4, 5, 6

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992) ...................................................................... 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574, 584-88 (1986) ................................................................................................... 5

*N.A.A.C.P., Boston Chapter v. Harris*,
607 F.2d 514, 526 n.15 (1st Cir. 1979) .................................................................................. 4, 5

*Novartis Corp. v. Ben Venue Labs., Inc.*,
271 F.3d 1043, 1046 (Fed. Cir. 2001) ...................................................................................... 4

*PC Connector Solutions, LLC v. Smartdisk Corp.*,
406 F.3d 1359, 1365 (Fed. Cir. 2005) ...................................................................................... 4

*Pennsylvania Prison Soc. v. Cortes,*
__ F.3d __, 2007 WL 3244012, *4 (3d Cir. Nov. 5, 2007) ...................................................... 3

*Rite-Hite Corp. v. Kelley Co., Inc.,*
56 F.3d 1538, 1551-54 (Fed. Cir. 1995) .................................................................................. 6

*Schering Corp. v. Roussel-UCLAF SA,*
104 F.3d 341, 345 (Fed. Cir. 1997) ......................................................................................... 6

*Techsearch, LLC v. Intel Corp.,*
286 F.3d 1360, 1372 (Fed. Cir. 2002) ..................................................................................... 5

*Telemac Cellular Corp. v. Topp Telecom, Inc.,*
247 F.3d 1316, 1323 (Fed. Cir. 2001) ..................................................................................... 4

## STATUTES AND REGULATIONS

13A Wright, Miller & Cooper,
*Federal Practice and Procedure* § 3531.15 (2d ed. 1984) ...................................................... 5

35 U.S.C. § 281 .......................................................................................................................... 6

## RULES OF CIVIL PROCEDURE

Federal Rules of Civil Procedure 56(c)..................................................................................... 4

## I.      INTRODUCTION AND SUMMARY

Defendant Varian Medical Systems, Inc. ("Varian") hereby moves for summary judgment on every cause of action in the Complaint on the basis that Plaintiff University of Pittsburgh ("UPitt") is not the sole owner of the patents-in-suit and it therefore lacks standing to sue for patent infringement. In particular, undisputed evidence shows that non-party Carnegie Mellon University ("CMU") is a co-owner of the patents-in-suit. If the Court finds that there are genuine disputes of material fact that preclude summary judgment, Varian requests that the Court schedule a preliminary hearing on the issue of standing to resolve the issue before additional resources are devoted to this litigation.

The two patents-in-suit are United States Patent Nos. 5,727,554 (the "'554 patent") and 5,784,431 (the "'431 patent"). The purported innovations described therein were created during the execution of a joint collaborative research project (the "Joint Project") between members of The Department of Radiation Oncology at UPitt and members of the CMU Robotics Institute. CMU and UPitt executed agreements in 1994 and 1997 which made the two entities co-owners of any intellectual property rights that flowed from joint research projects such as the Joint Project. Because CMU, a co-owner of the patents-in-suit, has not joined as a plaintiff in this patent infringement action, UPitt lacks standing to sue and the case must be dismissed. *See, e.g., International Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001).

## II.     STATEMENT OF UNDISPUTED FACTS

A detailed fact statement is set forth in Varian's Concise Statement of Material Facts in Support of Motion for Summary Judgment, filed herewith (the "Concise Statement"). Following is a summary:

- 1 -

The Complaint in this action has a single count that alleges infringement by Varian of the '554 and '431 patents. Concise Statement ¶ 1. Each patent names the same five inventors. *Id.* ¶ 2. The inventors developed the patented inventions pursuant to a joint collaborative research project they called the "dynamic/conformal radiotherapy program." *Id.* ¶ 3. The inventors began joint work on the Joint Project in 1994, the patent applications were filed in 1996, and the patents issued in 1998. *Id.* ¶¶ 4-8.

From the time they began work on the Joint Project through the issuance of the patents-in-suit, two of the inventors were employed by UPitt and two by CMU.[1] *Id.* ¶¶ 9-10. In 1994, UPitt and CMU entered into a three-year agreement providing that all intellectual property resulting from joint research by their respective faculty members would be jointly owned by the universities. *Id.* ¶¶ 14-15. This agreement was renewed in 1997 for another three-year term. *Id.* ¶¶ 16-19. These general agreements govern the respective rights of UPitt and CMU with respect to the patents-in-suit. *Id.* ¶ 20. UPitt and CMU also specifically agreed that they would jointly own the inventions of the two patents-in-suit. *Id.* ¶ 21.

When the patent applications were filed, each of the inventors signed an "Assignment" stating that they were assigning their patent rights to UPitt. *Id.* ¶ 12. In doing so, however, there was no intent to contravene the agreements described above and confer sole ownership on UPitt. *Id.* ¶ 13.

After the patents issued, UPitt and CMU continued to act in a manner that was consistent with joint ownership. Specifically:

---

[1] The fifth inventor was a CMU student and/or employee at the time of the Joint Project. Concise Statement ¶ 11.

- In 1998, one of the UPitt inventors sent a letter to the director of UPitt's Office of Research ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 23.

- Also in 1998, UPitt and CMU entered into an agreement with Elekta Oncology Systems Inc. ("Elekta") ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[2] The
  agreement specified that UPitt and CMU *jointly* granted to Elekta an option to negotiate a license to the patents-in-suit. *Id.* ¶ 24.

- In 2002, UPitt briefly had discussions with Varian about a possible license to the patents-in-suit. In connection with those discussions, UPitt sought approval from CMU before offering specific licensing terms to Varian. *Id.* ¶ 25.

CMU's 30(b)(6) designee testified at deposition that CMU still believes it is a co-owner of the patents-in-suit. *Id.* ¶ 26.

## III.    LEGAL STANDARDS

The burden of proof on the issue of standing lies with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136 (1992); *Pennsylvania Prison Soc. v. Cortes*, __ F.3d __, 2007 WL 3244012, *4 (3d Cir. Nov. 5, 2007). Because standing is not a "mere pleading requirement[]" but is rather "an indispensable part of the plaintiff's case," it "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136-37; *Pennsylvania Prison Soc.*, 2007 WL 3244012 at *4. If the plaintiff fails to satisfy its burden, the case must be dismissed. *See id.*; *see also, e.g., Doherty v. Rutgers School of Law-Newark*, 651 F.2d 893, 898 n.6 (3d Cir. 1981) (stating, in connection with

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

motion to dismiss, that "the complaint must be dismissed" if plaintiff fails to meet standing requirements).

There are multiple ways to challenge standing in a patent infringement suit. Summary judgment is "one frequently used method." *Israel Bio-Engineering Project v. Amgen, Inc.*, 475 F.3d 1256, 1263 (Fed. Cir. 2007) (affirming order granting motion for summary judgment for lack of standing). Another available procedure is a preliminary hearing, during which the court hears evidence and can resolve witness credibility issues. *Id.*; *see also Doherty*, 651 F.2d at 898 ("to avoid an unnecessary trial, the district court may conduct a preliminary evidentiary hearing on standing" and dismiss the case if plaintiff fails to prove standing); *Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 876-82 (11th Cir. 2000) (discussing when standing should be resolved by summary judgment motion and when by preliminary hearing); *N.A.A.C.P., Boston Chapter v. Harris*, 607 F.2d 514, 526 n.15 (1st Cir. 1979) (holding that court may conduct preliminary evidentiary hearing on standing "[t]o avoid an unnecessary trial").

## A.    Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001). The party moving for summary judgment must initially demonstrate that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See PC Connector Solutions, LLC v. Smartdisk Corp.*, 406 F.3d 1359, 1365 (Fed. Cir. 2005); *see also Novartis Corp. v. Ben*

OHS West:260332905.4

*Venue Labs., Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). In order to avoid summary judgment, the opposing party then must come forward with specific evidence of the existence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584-88 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586; *see also Techsearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("[G]eneral assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden.").

### B.    Preliminary Hearing

If the Court finds that there are genuine issues of material fact that preclude summary judgment, a preliminary hearing may be held to resolve the issue of standing prior to trial. At a preliminary hearing on standing, a district court may take evidence and make factual determinations. *See Israel Bio-Engineering Project*, 475 F.3d at 1263; *Doherty*, 651 F.2d at 898; *Bischoff*, 222 F.3d at 876-82; *N.A.A.C.P., Boston Chapter*, 607 F.2d at 526 n.15. The plaintiff bears the burden of proof on the issue of standing and the case must be dismissed if the plaintiff fails to carry its burden. *See Israel Bio-Engineering Project*, 475 F.3d at 1263; *Doherty*, 651 F.2d at 898 n.6; 13A Wright, Miller & Cooper, *Federal Practice and Procedure* § 3531.15 (2d ed. 1984) (explaining that preliminary hearing is "a means of requiring the plaintiff to carry the burden of establishing standing").

OHS West:260332905.4

## IV.   ARGUMENT

### A.   Where a Patent Is Jointly Owned, All Co-Owners Must Voluntarily Join as Plaintiffs or the Case Must Be Dismissed for Lack of Standing

Standing to bring a patent infringement suit is governed by 35 U.S.C. § 281, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281; *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1130 (Fed. Cir. 1995). If a party lacks title to a patent, that party has no standing to bring an infringement action under that patent and the suit must be dismissed. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551-54 (Fed. Cir. 1995) (en banc); *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1571 (Fed. Cir. 1991). The question of standing to sue is a jurisdictional one. *Imperial Tobacco, Ltd. v. Philip Morris, Inc.*, 899 F.2d 1575, 1580 n.7 (Fed. Cir. 1990).

If a patent is jointly owned, all co-owners must consent to join as plaintiffs in an infringement suit. *International Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001). A co-owner acting alone lacks standing to sue for patent infringement. *Israel Bio-Engineering Project*, 475 F.3d at 1264-65. As a result, "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Ethicon, Inc. v. United States Surgical Corp,* 135 F.3d 1456, 1468 (Fed. Cir. 1998) (holding "as a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit"); *Schering Corp. v. Roussel-UCLAF SA,* 104 F.3d 341, 345 (Fed. Cir. 1997). There are only two exceptions to this rule, and neither is applicable here. *See Ethicon, Inc.*, 135 F.3d at 1468 n.9 (co-owner may be compelled to join as plaintiff in infringement suit if (1) exclusive licensee

OHS West:260332905.4

files suit and seeks to join patent owner as plaintiff or (2) co-owner has agreed in writing

to waive its right to refuse to join suit).

**B.    UPitt Is Not the Sole Owner of the Patents-in-Suit and It Therefore Lacks Standing to Sue for Patent Infringement**

CMU is a co-owner of the patents-in-suit.  It had an agreement with UPitt during

the relevant time period providing that the two universities would jointly own patents

resulting from research collaboration between UPitt and CMU personnel.  The agreement

was in place when the patented inventions were developed, when the patent applications

were filed, and when the patents issued.  In addition, UPitt and CMU specifically agreed

to share ownership of the patents-in-suit themselves.  After issuance of the patents, UPitt

and CMU continued to act in accordance with the understanding that they were co-

owners of the patents-in-suit.  Accordingly, UPitt is not the sole owner and it lacks

standing to sue Varian for patent infringement.

**1.    CMU Co-Owns the Patents-in-Suit Pursuant to 1994 and 1997 Agreements Between CMU and UPitt Regarding Ownership of Patents Resulting from Collaborative Projects**

CMU is a co-owner of the patents-in-suit pursuant to a pair of written agreements

between CMU and UPitt that were in effect from 1994, when the Joint Project started,

until 2000, which was two years after the patents-in-suit issued.   The agreements

expressly provided that patent rights resulting from collaborative research would be

jointly owned by UPitt and CMU.  Because the patents-in-suit resulted from collaborative

research, ownership of the patents is governed by these agreements.

On October 13, 1994, UPitt and CMU jointly adopted "Policy Guidelines" for

"Intellectual Property Rights and Technology Transfer Procedures in Collaborative

Projects of the University of Pittsburgh and Carnegie Mellon University" (the "Joint IP

- 7 -

Policy Guidelines"). Concise Statement ¶ 14. The guidelines were adopted for a three-year period. *Id.* ¶¶ 14, 16. Pursuant to Section D.4., "[a]ll [intellectual property] developed jointly by CMU Participants and Pitt Participants during collaboration shall be owned jointly by Pitt and CMU . . . ."[3] *Id.* ¶ 15. The guidelines were renewed in substantially the same form for another three-year period in 1997. *Id.* ¶¶ 17-19.

The patents-in-suit were developed jointly by three CMU Participants (Dr. Takeo Kanade, Dr. Karun Shimoga, and Charalambos Athanassiou) and two Pitt Participants (Dr. Joel Greenberger and Dr. Andre Kalend) during collaborative research, namely the Joint Project. *Id.* ¶¶ 2-4, 9-11. The inventions were developed, the patent applications were filed, and the patents-in-suit issued while the Joint IP Policy was in effect. *Id.* ¶¶ 4-8, 14, 16-17, 19-20. Consequently, the patents are governed by the Joint IP Policy Guidelines and are jointly owned by CMU and UPitt. *Id.* ¶ 20.

## 2. UPitt and CMU Specifically Agreed That They Would Jointly Own the Inventions of the Patents-in-Suit

In addition to the general patent agreements described in the preceding section, CMU and UPitt expressly agreed that they would jointly own the inventions of the two patents-in-suit. This is shown by a memorandum written by inventor Andre Kalend to inventor Joel Greenberger on September 6, 1995, while the Joint Project was in progress and a year before the patent applications were filed, stating: "my last [UPitt]/CMU meeting (8/11/95) included [lead CMU inventor] Dr. Kanade; he has agreed to the above three modes being declared as individual patents through [UPitt], but with 50/50

---

[3] A "CMU Participant" was a participant in collaborative research who had "his/her primary appointment" with CMU, and a "Pitt Participant" was a participant in collaborative research who had "his/her primary appointment" with UPitt. Declaration of Matthew H. Poppe in Support of Defendant Varian Medical Systems, Inc.'s Motion for Summary Judgment for Lack of Standing, or in the Alternative, Motion for a Preliminary Hearing on the Issue of Standing ("Poppe Decl."), Ex. P, § B.1.

- 8 -

[UPitt]/CMU ownership." Concise Statement ¶ 21; Poppe Decl., Ex. M, p. 1.[4] By "modes," Dr. Kalend was referring to software functionality corresponding to the inventions of the patents-in-suit and one other patent. *See id.*

### 3.    The Conduct of UPitt and CMU After Issuance of the Patents-in-Suit Shows They Believed They Jointly Owned the Patents

After the patents-in-suit issued in 1998, UPitt and CMU continued to act consistently with the belief that they were joint owners. *See Blum v. Commissioner of Internal Revenue*, 183 F.2d 281, 287 (3d Cir. 1950) (district court's interpretation of contract related to patent ownership was supported by fact that parties treated patent as if it was owned by particular party). This is shown clearly by three different events.

The first event was the sending of a letter by Dr. Joel Greenberger, one of the UPitt inventors. Concise Statement ¶ 23. In the letter, Dr. Greenberger

*Id.* The letter is dated October 29, 1998, just a few months after the patents-in-suit issued. *Id.; compare id.* ¶¶ 7-8. Dr. Greenberger sent the letter to Michael Crouch, who at the time was UPitt's Director, Office of Research. *Id.* ¶ 23. Dr. Greenberger testified that he sent the letter to Mr. Crouch to inform him about the nature of a research agreement related to the patents, and that he made an effort to be accurate in the letter. *Id.*; Poppe Decl., Ex. U, pp. 247:15-248:16. Indeed, before sending the letter to Mr. Crouch, Dr. Greenberger had it reviewed by Reed McManigle, a lawyer in UPitt's technology transfer office. Concise Statement ¶ 23; Poppe Decl., Ex. U, pp. 249:12-250:5.

---

[4] In this memorandum, Dr. Kalend referred to "UPMC" (the University of Pittsburgh Medical Center) instead of "UPitt." Dr. Greenberger and possibly also Dr. Kalend held positions with both entities and appeared to use the terms interchangeably at times. *See* Poppe Decl., Ex. F, p. 40:11-15; *id.*, Ex. T, p. 19.

The second event also took place on October 29, 1998.  On that date, UPitt and

CMU entered into an agreement with Elekta ███████████████████████████

████████████████████████████████████████████████████████████████

Concise Statement ¶ 24; Poppe Decl., Ex. X.  Part of the consideration Elekta received in

exchange for this funding was an option to license the patents-in-suit.  Concise Statement

¶ 24; Poppe Decl., Ex. X, p. 6.  The agreement unambiguously reveals the universities'

understanding that they shared ownership of the patents-in-suit, ███████████████

██████████████████████████████████████████████     Specifically, in

Paragraph 11.2, UPitt and CMU *jointly* granted to Elekta an exclusive option to negotiate

a royalty-bearing, exclusive license to the patents-in-suit:



    ....

Concise Statement ¶ 24; Poppe Decl., Ex. X, p. 6 (emphasis added); *see also* Poppe

Decl., Ex. X, p. 1 (defining "Universities" to include UPitt and CMU).  If UPitt were the

sole owner of the patents-in-suit, ████████████████████████████████████

██████████████████████████████[5]

───────────────────────────

[5]  The agreement also confirms that the patents-in-suit ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

The third event occurred several years later, in 2002, when UPitt briefly engaged in discussions with Varian about a possible license to the patents-in-suit. Concise Statement ¶ 25. At the end of May 2002, when UPitt believed that the Varian discussions were moving toward a possible license agreement, it informed CMU about the discussions. *Id.* The related email correspondence shows that both UPitt and CMU understood that they were joint owners of the patents-in-suit and would share any proceeds from a license agreement with Varian.

UPitt's representative, Reed McManigle, initiated the discussion with CMU on May 31, 2002, by stating that "we never had the inventors tell us their relative contribution to the inventions, so we'll have to get that information *before we can fill in the split between Pitt and CMU*." Poppe Decl., Ex. Y (emphasis added); *see also id.*, Ex. Z (5/31/02 email from McManigle to three inventors stating, "As part of this licensing process, we'll need to reach some agreement between Pitt and CMU about how proceeds will be distributed, which is driven by the respective contributions of the inventors."). CMU's representative, Carl Mahler, stated in a response that CMU would insist upon "approval of all licenses by CMU prior to execution on its behalf." *Id.*, Ex. AA. One week later, Mr. McManigle wrote back that "the interinstitutional agreement between Pitt and CMU will provide for 60% of the proceeds to go to Pitt, and 40% to CMU . . . ." *Id.*, Ex. CC; *see also id.*, Ex. DD (correcting the split to 60% for CMU and 40% for UPitt). Still later, on June 18, Mr. McManigle wrote to Mr. Mahler that he had not "made a proposal to Varian yet" because he had not worked out an

*Id.*, Ex. X, pp. 6-7.

OHS West:260332905.4

arrangement with CMU "that would give UPitt negotiating authority." *Id.*, Ex. EE. The discussions between UPitt and CMU were not brought to a conclusion because, before that happened, Varian notified UPitt that it did not want to license the patents-in-suit after all. *Id.*, Ex. FF.

These discussions show that in 2002, UPitt and CMU both understood that CMU was a co-owner of the patents-in-suit such that (1) UPitt needed CMU's approval before offering specific licensing terms to a third party and (2) UPitt had to share any licensing proceeds with CMU.

### 4.     CMU Still Believes It Is a Co-Owner of the Patents-in-Suit

CMU's Rule 30(b)(6) designee testified at deposition that CMU believes it is a co-owner of the patents-in-suit. Concise Statement ¶ 26. The designee was Robert Wooldridge, CMU's Director for the Center for Technology Transfer and Enterprise Creation at CMU. Poppe Decl., Ex. I, pp. 6:18-7:23, 36:25-37:10, 43:22-46:21. Mr. Wooldridge was directly involved in discussions with UPitt's technology transfer office in 1997 regarding ownership of the patents-in-suit. *Id.*, Ex. I, pp. 93:18-95:21, 96:19-97:23. He based his conclusions about ownership on that experience, as well as on his knowledge of the Joint IP Policy Guidelines between UPitt and CMU (discussed *supra* at 7-8) and the facts surrounding the Joint Project. *See id.*, Ex. I, pp. 71:18-77:5, 79:9-14, 80:4-81:21, 84:8-14, 84:23-85:9, 88:18-92:4, 93:18-95:21, 96:19-97:23, 101:15-103:5, 113:14-114:17, 118:18-119:5, 146:3-148:6. He also testified that CMU is entitled to co-ownership rights to the patents-in-suit by virtue of CMU's Intellectual Property Policy, in effect since 1985, which states that CMU owns the intellectual property associated with inventions by its faculty and students under circumstances such as those present here. *Id.*, Ex. I, pp. 49:22-52:8, 55:5-16, 56:19-59:18, 60:18-64:12.

- 12 -

## V.    CONCLUSION

Based on the foregoing, Varian respectfully requests an Order from the Court granting its motion for summary judgment for lack of standing. If the Court determines that there are genuine issues of material fact that preclude granting summary judgment, Varian requests in the alternative that the Court schedule a preliminary hearing at the earliest possible time to resolve the issue of UPitt's standing to sue. Varian also requests any other relief that the Court deems just under the circumstances.

Respectfully submitted,

PICADIO SNEATH MILLER & NORTON, P.C.

By:____s/ Shannon M. Clougherty_____
Henry M. Sneath, Esquire
hsneath@psmn.com
Pa. I.D. No. 40559
Shannon M. Clougherty, Esquire
sclougherty@psmn.com
Pa. I.D. No. 88586
600 Grant Street, Suite 4710
Pittsburgh, PA 15219
(412) 288-4000 [T]
(412) 288-2405 [F]

ORRICK, HERRINGTON & SUTCLIFFE LLP

William L. Anthony, Jr. (admitted *pro hac vice*)
(CA 106908)
Matthew H. Poppe (admitted *pro hac vice*)
(CA 177854)
Zheng (Jen) Liu (admitted *pro hac vice*)
(CA 229311)
1000 Marsh Road
Menlo Park, CA  94025
(650) 614-7400
(650) 614-7401 (fax)
wanthony@orrick.com
mpoppe@orrick.com
 jenliu@orrick.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **MEMORANDUM IN SUPPORT OF DEFENDANT VARIAN MEDICAL SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING, OR IN THE ALTERNATIVE, MOTION FOR A PRELIMINARY HEARING ON THE ISSUE OF STANDING** was served upon all parties either individually or through counsel via:

| | |
|---|---|
| ____X____ | Hand-Delivery |
| _____ | Facsimile |
| _____ | First Class, US Mail, Postage Prepaid |
| _____ | Certified Mail-Return Receipt Requested |
| _____ | ECF Electronic Service |
| _____ | Overnight Delivery |

at the following addresses:

Rita E. Tautkus
Morgan Lewis & Bockius, LLP
One Market – Spear Street Tower
San Francisco, CA  94105
rtautkus@morganlewis.com

Dated: November 21, 2007        /s/ Shannon M. Clougherty
                                Shannon M. Clougherty