1  WILLIAM L. ANTHONY, JR.  (State Bar No. 106908)
   wanthony@orrick.com
2  MATTHEW H. POPPE  (State Bar No. 177854)
   mpoppe@orrick.com
3  ZHENG LIU  (State Bar No. 229311)
   jenliu@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, California 94025
   Telephone:     +1-650-614-7400
6  Facsimile:      +1-650-614-7401

7  Attorneys for Defendant
   VARIAN MEDICAL SYSTEMS, INC.
8

9

                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                     SAN FRANCISCO DIVISION
12

13

14  UNIVERSITY OF PITTSBURGH OF THE          Case No.  CV 08-02973 MMC
    COMMONWEALTH SYSTEM OF HIGHER
15  EDUCATION d/b/a UNIVERSITY OF            **DEFENDANT VARIAN MEDICAL
    PITTSBURGH, a Pennsylvania non-profit    SYSTEMS, INC.'S REPLY
16  corporation (educational),               MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT OF
17            Plaintiff,                      MOTION TO DISMISS PLAINTIFF'S
                                             CLAIMS PURSUANT TO FED. R.
18       v.                                  CIV. P. 12(B)(6) BASED ON
                                             DOCTRINE OF RES JUDICATA**
19  VARIAN MEDICAL SYSTEMS, INC., a
    Delaware corporation,                    Date:          September 5, 2008
20                                           Time:          9:00 a.m.
             Defendant.                      Courtroom:  7, 19th Floor
21
                                             **Filed Electronically**
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT .................................................................................................................. 2

    A.    UPitt Concedes the Existence of Several Elements of a Res Judicata Defense................................................................................................................... 2

    B.    The Judgment in the Pennsylvania Case Was "on the Merits" and Is Entitled to Res Judicata Effect ..................................................................... 2

        1.    The Pennsylvania Court Intended That Its Dismissal Preclude Further Litigation Between the Parties Related to the Patents-in-Suit .......................................................................................................... 2

        2.    UPitt Has Appealed the Dismissal With Prejudice in the Prior Action to the Federal Circuit and Should Not Be Permitted to Raise the Same Challenge to the Prior Judgment in This Action ........................ 5

        3.    The Pennsylvania Case Was Properly Dismissed With Prejudice, Thus Barring This Identical Action, Because the Basis for the Dismissal Was UPitt's Lack of Diligence, Failure to Comply With a Court Order, and Inconsistent Positions and the Resulting Prejudice to Varian ..................................................................................... 7

            a.    Applying the Res Judicata Doctrine to Bar This Action Is Consistent with Rule 41(b)................................................................. 7

                (1)    Rule 41(b) Does Not Define the Scope of Res Judicata........................................................................................ 8

                (2)    This Action Would Be Barred by Res Judicata Even If Rule 41(b) Did Apply...................................................... 9

            b.    UPitt Has Not Cured—and Cannot Cure—the Defects From the Prior Case Because It Cannot Undo Its Misconduct or the Resulting Prejudice to Varian ................................................. 12

            c.    The Policies Underlying Res Judicata and Rule 16(b) Support Dismissal of This Action............................................... 13

            d.    UPitt May Not Reargue Whether It Had Standing in the Pennsylvania Case....................................................................... 14

III.    CONCLUSION ............................................................................................................. 15

1

# TABLE OF AUTHORITIES

2

Page

3

## FEDERAL CASES

4

*Abbott Labs.* v. *Ortho Diagnostic Sys., Inc.*,
   47 F.3d 1128 (Fed. Cir. 1995)......................................................................................... 3

5

*Acumed LLC* v. *Stryker Corp.*,
   525 F.3d 1319 (Fed. Cir. 2008)....................................................................................... 10

6

*Adolph Coors Co.* v. *Sickler*,
   608 F. Supp. 1417 (C.D. Cal. 1985)............................................................................. 5, 12

7

8

*American Nat'l Bank & Trust Co.* v. *City of Chicago*,
   826 F.2d 1547 (7th Cir. 1987)...................................................................................... 9, 12

9

*Board of Natural Resources* v. *Brown*,
   992 F.2d 937 (9th Cir. 1993)........................................................................................... 10

10

11

*Bui* v. *IBP, Inc.*,
   205 F. Supp. 2d 1181 (D. Kan. 2002) ............................................................................ 6, 7

12

*Componentone, L.L.C.* v. *Componentart, Inc.*,
   2007 WL. 2580635 (W.D. Pa. Aug. 16, 2007) ............................................................... 11

13

14

*Elkin* v. *Fauver*,
   969 F.2d 48 (3d Cir. 1992)............................................................................................... 10

15

*Gil Enters., Inc.* v. *Delvy*,
   79 F.3d 241 (2d Cir. 1996).............................................................................................. 11

16

17

*Gimenez* v. *Morgan Stanley D.W., Inc.*,
   202 Fed. Appx. 583, 2006 U.S. App. LEXIS 25561 (3d Cir. 2006)................................. 5

18

*Hynix Semiconductor Inc.* v. *Rambus Inc.*,
   __ F.R.D. __, 2008 WL. 687252 (N.D. Cal. Mar. 10, 2008) ......................................... 11

19

20

*Korvettes, Inc.* v. *Brous*,
   617 F.2d 1021 (3d Cir. 1980).......................................................................................... 4, 5

21

*Lowe* v. *United States*,
   79 Fed. Cl. 218 (2007) .................................................................................................... 13

22

23

*Magnus Elecs., Inc.* v. *La Republica Argentina*,
   830 F.2d 1396 (7th Cir. 1987).......................................................................................... 6

24

*Mann* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   488 F.2d 75 (5th Cir. 1973)............................................................................................. 12

25

26

*Marin* v. *Hew, Health Care Fin. Agency*,
   769 F.2d 590 (9th Cir. 1985)............................................................................................ 9

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Mentor H/S, Inc.* v. *Medical Device Alliance, Inc.*,
340 F.3d 1016 (Fed. Cir. 2001) ....................................................................... 3

4

*Northeast Drilling, Inc.* v. *Inner Space Servs., Inc.*,
243 F.3d 25 (1st Cir. 2001) ............................................................................ 11

5

6

*ProtoComm Corp.* v. *Novell, Inc.*,
1998 U.S. Dist. LEXIS 9636 (E.D. Pa. June 29, 1998) ...................................... 6

7

*Reiffin* v. *Microsoft Corp.*,
104 F. Supp. 2d 48 (D.D.C. 2000) ..................................................................... 7

8

9

*In re Schimmels*,
127 F.3d 875 (9th Cir. 1997) ............................................................................ 8

10

*Segal* v. *AT & T Co.*,
606 F.2d 842 (9th Cir. 1979) .......................................................................... 13

11

12

*Semtek Int'l Inc.* v. *Lockheed Martin Corp.*,
531 U.S. 497, 121 S. Ct. 1021 (2001) ............................................................... 8

13

*Sendi* v. *NCR Comten, Inc.*,
624 F. Supp. 1205 (E.D. Pa. 1986) ................................................................... 6

14

15

*Taylor* v. *Sturgell*,
__ U.S. __, 126 S. Ct. 2161 (2008) ................................................................... 8

16

*Toxgon Corp.* v. *BNFL, Inc.*,
312 F.3d 1379 (Fed. Cir. 2002) ...................................................................... 10

17

18

*Trujillo* v. *Colorado*,
649 F.2d 823 (10th Cir. 1981) ........................................................... 10, 11, 12

19

*United States* v. *McGann*,
951 F. Supp. 372 (E.D.N.Y. 1997) ................................................................... 6

20

21

*Yourish* v. *California Amplifier*,
191 F.3d 983 (9th Cir. 1999) .......................................................................... 11

22

**STATE CASES**

23

*Boccardo* v. *Safeway Stores, Inc.*,
134 Cal. App. 3d 1037, 184 Cal. Rptr. 903 (1982) .......................................... 12

24

25

**FEDERAL STATUTES AND RULES**

26

Fed. R. Civ. P. 11(b) ..................................................................................... 9

27

Fed. R. Civ. P. 12(b)(6)......................................................................... 2, 3, 5

28

1

**TABLE OF AUTHORITIES**
**(continued)**

2

Page

3    Fed. R. Civ. P. 16(b) ................................................................................. 9, 11, 13, 14

4    Fed. R. Civ. P. 41(b) ........................................................................... 2, 7, 8, 9, 10, 11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

In its opposition brief, UPitt provided a blatantly erroneous description of the basis for the dismissal in the Pennsylvania case, the intended scope and effect of that dismissal, and the law of res judicata as it applies to the facts of this case.  Varian will highlight several key points here that will be discussed more fully below.

First, it cannot be doubted that the Pennsylvania Court *intended* that its judgment "with prejudice" have the effect of barring all further litigation between the parties based on alleged infringement of the patents-in-suit.  The special master had proposed allowing UPitt to do exactly what it has done here, *i.e.*, file a new complaint naming all necessary parties.  The Pennsylvania Court clearly had the power and authority to do so, based on controlling precedent and UPitt's representations that its co-owner, CMU, was willing to be added as a party.  However, after carefully considering the issue, the Pennsylvania Court rejected the recommendation of the special master and dismissed the case with prejudice.  It also rejected a subsequent, last-ditch effort by UPitt to obtain a dismissal without prejudice in reliance on the same arguments UPitt asserts here.  UPitt itself does not doubt the Pennsylvania Court's intent, having stated in its opposition to Varian's pending Motion to Transfer that it believes the Pennsylvania Court would dismiss this case on res judicata grounds.

Second, if UPitt disagrees with the Pennsylvania Court's decision to dismiss the prior case with prejudice, the proper forum for UPitt's challenge is the Court of Appeals.  Indeed, UPitt has filed an appeal from the judgment entered by the Pennsylvania Court and has stated its intent to raise the dismissal "with prejudice" as an issue on appeal.  UPitt should not be permitted to raise a simultaneous collateral attack on the prior judgment via this lawsuit.  Doing so has merely raised the prospect of having two identical patent infringement lawsuits proceed in two different courts at the same time (if the Federal Circuit reverses the judgment in the Pennsylvania case)—a point UPitt does not dispute.

Third, any challenge to the Pennsylvania Court's decision to dismiss the prior case with prejudice or to the res judicata impact of that decision should fail.  UPitt's challenge is based on misstating the basis for the dismissal.  The Pennsylvania Court did not dismiss the prior case for

VARIAN'S REPLY ISO MOTION TO DISMISS
BASED ON DOCTRINE OF RES JUDICATA
(Case No. CV 08-2973 MMC)

1    failure to add a party pursuant to Rule 19.  As noted by UPitt in its opposition brief, a case may be

2    dismissed under Rule 19 only if "a person who is required to be joined . . . cannot be joined."

3    Here, CMU could have been joined—as previously argued by UPitt—because CMU was within

4    the jurisdiction of the Pennsylvania Court and was willing to be joined.  The Pennsylvania Court

5    refused to join CMU and dismissed the case with prejudice for reasons totally unrelated to Rule

6    19.  Nor was the case dismissed for lack of jurisdiction.  Rather, it was dismissed due to UPitt's

7    bad faith and lack of diligence, its failure to comply with court orders, its prior insistence that

8    Varian be held to a strict timeliness standard, and the prejudice Varian would have suffered had

9    CMU been added so late.  Thus, giving res judicata effect to the dismissal with prejudice is both

10   required and in accordance with Rule 41(b) and the policies underlying res judicata.

## II.    ARGUMENT

### A.    UPitt Concedes the Existence of Several Elements of a Res Judicata Defense

13   In its opposition brief, UPitt does not dispute that the following elements of a res judicata

14   defense are present in this case:

15        1.    The claims are exactly the same as in the Pennsylvania case.

16        2.    The parties are exactly the same as in the Pennsylvania case.

17        3.    A final judgment was entered in the Pennsylvania case.

18   *See* Varian's Opening Brf. at 6-7 (stating elements of res judicata defense).  UPitt also does not

19   dispute that a res judicata defense may be raised by a motion to dismiss under Rule 12(b)(6) or

20   that the Court may take judicial notice of the pleadings and orders in the prior case in connection

21   with ruling on such a motion.  UPitt's only basis for disputing the application of res judicata here

22   is its argument that the final judgment in the prior action was not "on the merits."

### B.    The Judgment in the Pennsylvania Case Was "on the Merits" and Is Entitled to Res Judicata Effect

#### 1.    The Pennsylvania Court Intended That Its Dismissal Preclude Further Litigation Between the Parties Related to the Patents-in-Suit

26   The Pennsylvania Court clearly intended that its dismissal of the prior case have

27   preclusive effect.  This new action is not a proper vehicle for challenging that decision.  Such a

28   challenge by UPitt should instead be confined to the pending appeal that involves the same issue.

There can be no doubt about the Pennsylvania Court's intent when it dismissed the prior case with prejudice. UPitt itself stated in its opposition to Varian's pending Motion to Transfer that the Pennsylvania Court "has said it will not entertain the claims." *See* Document No. 33 at 7; *see also id.* ("In the Pennsylvania Litigation, and over UPitt's objections, the Western District of Pennsylvania dismissed UPitt's case 'with prejudice.' The District Court in Pennsylvania thus has, at a minimum, suggested that it would refuse to permit refiling in that Court.").

The course of events in the Pennsylvania case bears out UPitt's understanding of the intended effect of the dismissal with prejudice. Had the Pennsylvania Court wanted to permit future litigation between the parties, it would have simply adopted the recommendation of the special master in its entirety. The special master recommended that Varian's summary judgment motion be granted "without prejudice to UPitt to file an amended complaint . . . in which CMU is added as a party plaintiff . . . ." *See* RJN, Ex. G at 10. He based his recommendation in part on "the apparent willingness of CMU to join the action, and the fact that CMU is subject to the jurisdiction of the Court." *Id.*[1] UPitt has essentially done what the special master recommended, except instead of filing a new complaint with CMU as an added party it filed a new complaint after purportedly acquiring CMU's patent rights.

The Pennsylvania Court rejected that part of the special master's recommendation, however. After determining that Varian's motion for summary judgment should be granted, it turned to the separate question of "whether the dismissal should be with or without prejudice." *See id.*, Ex. H at 3. It first found that all co-owners generally should be included as plaintiffs at the inception of a case. *See id.* at 3-4. It then ruled that UPitt would not be allowed to add CMU as a party or proceed further against Varian—despite CMU's willingness and availability to be joined—because of the special circumstances of the case, namely:

---

[1] As UPitt has argued, "[t]he Court could . . . have joined CMU to the [Pennsylvania] action." *See* Reply Request for Judicial Notice in Support of Defendant Varian Medical Systems, Inc.'s Motion to Dismiss Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(6) Based on Doctrine of Res Judicata, filed herewith, Ex. A at 3 fn. 3 (citing *Abbott Labs. v. Ortho Diagnostic Sys., Inc.*, 47 F.3d 1128, 1133-34 (Fed. Cir. 1995), and *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 340 F.3d 1016, 1019 (Fed. Cir. 2001)).

1.  UPitt knew it should have acted earlier:  "Plaintiff obviously knew of CMU's existence and its residual rights in the patents-in-suit, and chose not to join CMU, at the inception of this case."  *Id*. at 4-5.

2.  UPitt's request to add a party was made in bad faith:  "Whether plaintiff's very sophisticated patent counsel made this tactical decision not to join CMU in order to make discovery of CMU as a non-party more difficult for defendant, or for some other tactical reason, the Court does not know."  *Id*. at 5.

3.  UPitt's untimely request was in violation of a court order:  "[T]he Court denied [UPitt's] Motion [to join CMU as a party] pursuant to the June 4, 2007 Case Management Order . . . because said Motion was untimely in that new parties were to be added approximately 6 months earlier, by June 15, 2007, and discovery previously had closed on October 5, 2007, except for specific limited discovery."  *Id*. at 2; *see also id*., Ex. C at ¶ 4 (relevant provision of Case Management Order).

4.  UPitt's request was inconsistent with its prior insistence that Varian be held to a strict timeliness standard:  "Importantly, this denial [of UPitt's motion to join CMU as a party] . . . was consistent with the ruling of the Court denying, as untimely, defendant's Motion to Amend Answer . . . to add an affirmative defense and counterclaim of inequitable conduct. . . . Although plaintiff vigorously and successfully opposed this motion of defendant as untimely, plaintiff sought to add a new party (CMU) in a more untimely manner."  *Id*., Ex. H at 2.

5.  UPitt's delay was prejudicial to Varian:  "[P]laintiff's argument that since some discovery has been conducted relating to CMU, CMU can be added as a party, and the case can simply proceed, is not credible, as any review of the docket will establish.  The request to add CMU was untimely and unfair to defendant on December 5, 2007 . . ., and it is even more so now four (4) months later."  *Id*. at 5.  "Defendant continues to oppose the untimely addition of non-party CMU to the litigation, including because of the additional expense of the litigation to deal with the CMU discovery and other issues . . . . The Court agrees."  *Id*. at 5 fn. 5.

Varian also presented evidence that UPitt not only knew about CMU's patent rights at the outset of the case but misled Varian and the Court about that fact by making false statements regarding patent ownership in its Complaint and interrogatory responses.  *See id*., Ex. K at 6; Ex. A at ¶ 5; Ex. L at Ex. A, pp. 2-3; Ex. L at Ex. B, pp. 2-5.

UPitt did not accept the summary judgment ruling lying down.  On May 15, 2008, it filed a Motion Requesting Entry of Judgment in which it took issue with the Pennsylvania Court's decision to dismiss its claims with prejudice and urged a change to dismissal without prejudice. In so doing, UPitt relied on some of the same arguments on which its present opposition is based:

Regarding the disposition of this action, the dismissal for lack of standing is not on the merits of the case.  *See* Fed. R. Civ. P. 41(b); *Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980) ("A dismissal for lack of jurisdiction is plainly not a determination of the merits of a claim."). Additionally, UPitt respectfully disagrees with the Court's dismissing the action *with prejudice*.  Rather, the dismissal should be *without prejudice*.

*See Korvettes*, 617 F.2d at 1024 ("Ordinarily, such a dismissal is 'without prejudice.'"); *see, also, H.R. Techs., Inc.*, 275 F.3d at 1385.

*Id.*, Ex. O at 3-4 (emphasis in original); *see also* Reply RJN, [2] Ex. A at 2-3 (adding that dismissal with prejudice was inappropriate because UPitt allegedly could have cured the standing defect). UPitt submitted a proposed order that provided for dismissal without prejudice. *See* RJN, Ex. O at 4; *see also id.*, Ex. O at Ex. A, ¶ 1. The Pennsylvania Court rejected UPitt's proposed order and entered judgment dismissing UPitt's claims with prejudice. *See id.*, Ex. P at 1 & fn. 1.

Thus, the Pennsylvania Court made a conscious and reasoned decision to dismiss the prior case with prejudice in order to bar UPitt's claims against Varian forever. Varian explained in Section III.C.3.a of its opening brief that "[a] dismissal that is specifically rendered 'with prejudice' qualifies as an adjudication on the merits and thus carries preclusive effect." *Gimenez v. Morgan Stanley D.W., Inc.*, 202 Fed. Appx. 583, 2006 U.S. App. LEXIS 25561, at *3 (3d Cir. 2006); *see also* Varian's Opening Brief at 9-10 & fns. 12-13 (quoting *Gimenez* and discussing other cases with similar holdings); *see also Adolph Coors Co. v. Sickler*, 608 F. Supp. 1417, 1432 (C.D. Cal. 1985) ("Traditional rules of res judicata allow judges to control the preclusive effects of their decisions."). In its opposition, UPitt did not discuss or contest the applicability of any of the case law cited in that section of Varian's opening brief.

### 2. UPitt Has Appealed the Dismissal With Prejudice in the Prior Action to the Federal Circuit and Should Not Be Permitted to Raise the Same Challenge to the Prior Judgment in This Action

UPitt is asking this court to find that the dismissal with prejudice in the prior case was "improvidently granted." *See* UPitt Opp. Brf. At 2. However, it is not the function of a district court to evaluate whether the rulings of other district courts are correct. That is the function of appellate courts. UPitt has appealed from the judgment in the Pennsylvania case, *see* RJN, Ex. Q, and it therefore has the opportunity to challenge the Pennsylvania Court's decision to dismiss the

---

[2] "Reply RJN" refers to the Reply Request for Judicial Notice in Support of Defendant Varian Medical Systems, Inc.'s Motion to Dismiss Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(6) Based on Doctrine of Res Judicata, filed herewith.

1    prior case with prejudice in that forum.  Indeed, UPitt has stated its intent to do so.  Accordingly,

2    UPitt should not be permitted to raise the same challenge in this action.

3    Although UPitt characterizes its appeal as a challenge to the Pennsylvania Court's ruling

4    that it lacked standing, *see* UPitt Opp. Brf. at 19 & fn. 8, UPitt has identified as a second issue on

5    appeal "[w]hether the district court erred in dismissing [UPitt's] patent infringement claims with

6    prejudice."  *See* Reply RJN, Ex. B.  That is the same issue UPitt is trying to raise here in order to

7    defeat Varian's res judicata defense.  However, courts routinely refuse to permit litigants to file

8    new lawsuits as an end run around district court decisions in prior cases where those decisions

9    could have been challenged on appeal.  *See, e.g., ProtoComm Corp. v. Novell, Inc.*, 1998 U.S.

10   Dist. LEXIS 9636, at *6-7, *29-31 (E.D. Pa. June 29, 1998) (after being denied leave to amend to

11   assert new claims, plaintiff asserted same claims in second suit; claims were dismissed based on

12   res judicata; plaintiff's proper remedy was to appeal from the denial of leave to amend; plaintiff

13   "cannot now try to circumvent that decision by pursuing those same claims in this lawsuit.");

14   *Sendi v. NCR Comten, Inc.*, 624 F. Supp. 1205, 1207 (E.D. Pa. 1986) (applying res judicata:

15   "[T]he fact that plaintiff was denied leave to amend does not give him the right to file a second

16   lawsuit based on the same facts. . . . Sendi's proper recourse was to appeal from the denial of his

17   motion to amend."); *United States v. McGann*, 951 F. Supp. 372, 383 (E.D.N.Y. 1997) (same);

18   *Magnus Elecs., Inc. v. La Republica Argentina*, 830 F.2d 1396, 1402 (7th Cir. 1987) (same).

19   UPitt's conduct raises the specter of two identical lawsuits proceeding simultaneously.

20   That will occur if this case is allowed to proceed and the Federal Circuit reverses the dismissal of

21   the Pennsylvania case.[3]  Courts strongly disapprove such parallel proceedings due to the burdens

22   placed on the defendant and the courts and the possibility of inconsistent rulings.  For example, in

23   *Bui v. IBP, Inc.*, 205 F. Supp. 2d 1181 (D. Kan. 2002), the court found that the plaintiff's claims

24

25   _____

26   [3] UPitt argues that the cases are not identical because its ownership rights are different in this case
     than in the Pennsylvania case.  *See* UPitt Opp. Brf. at 19.  However, UPitt misses the point, which
27   is that UPitt will be asserting the same patents and requesting the same relief in each case.  Thus,
     the two cases would require duplicative preparations by the parties and decisions by the court and
28   raise the possibility of inconsistent rulings.

1    were barred by res judicata where the same claims had been dismissed in a prior case for lack of

2    subject matter jurisdiction.  The court explained its ruling in part as follows:

3            The fact that plaintiff's appeal is currently pending before the Tenth Circuit
         also bears some weight on this [res judicata] analysis. . . . [T]he practical
4        effect of the results of the appeal show the propriety of imposing a bar here.
         In the event the Tenth Circuit reverses this court's jurisdictional ruling in
5        *Bui I*, plaintiff will obtain the identical relief he seeks through this case, i.e.,
         plaintiff will be able to pursue his state law claim for retaliatory discharge
6        in federal court.  If no collateral estoppel effect were given to *Bui I*,
         defendant would then be forced to defend two identical claims in the same
7        forum, giving rise to the possibility of inconsistent judgments.  Conversely,
         in the event the Tenth Circuit affirms the dismissal for lack of jurisdiction,
8        it would be unfair to permit plaintiff another bite at the apple . . . ."

9    *Id*. at 1189 (paragraph break omitted).  These observations are equally true here.  *Cf. Reiffin v.*

10   *Microsoft Corp.*, 104 F. Supp. 2d 48, 55 (D.D.C. 2000) (granting motion to transfer  in part

11   because:  "Should the Federal Circuit vacate the Northern District's decision and remand to the

12   Northern District, and this court declined to transfer the instant action to that court, [plaintiff]

13   would have closely related claims pending in two different districts at once.").

14                    **3.    The Pennsylvania Case Was Properly Dismissed With Prejudice, Thus
                       Barring This Identical Action, Because the Basis for the Dismissal Was
15                     UPitt's Lack of Diligence, Failure to Comply With a Court Order, and
                       Inconsistent Positions and the Resulting Prejudice to Varian**
16

17           UPitt's opposition is based on misstating the reasons behind the dismissal with prejudice

18   in the Pennsylvania case and misapplying the law of res judicata.  The Pennsylvania Court did not

19   merely find that UPitt lacked standing.  That defect could have been addressed by adding CMU as

20   a party and continuing with the case.  Rather, it found that UPitt knew it should have added CMU

21   as a party at the start of the case and failed to do so for "tactical" reasons, despite a court order

22   mandating joinder of all parties by a set date, with resulting prejudice to Varian.  In order to

23   uphold the principles that led to the dismissal in the first place, that dismissal must be given res

24   judicata effect.  UPitt cannot be permitted to "cure" the standing defect now in a separate action

25   when it had the duty and opportunity to do so in a timely way in the prior action.

26                        **a.    Applying the Res Judicata Doctrine to Bar This Action Is
                           Consistent With Rule 41(b)**

27           UPitt relies heavily on Fed. R. Civ. P. 41(b) to argue that res judicata does not apply here.

28   However, Rule 41(b) does not define the scope of the res judicata doctrine.  It merely defines the

VARIAN'S REPLY ISO MOTION TO DISMISS
BASED ON DOCTRINE OF RES JUDICATA
(Case No. CV 08-2973 MMC)

1  effect of dismissals that do not specify whether they are with or without prejudice.  Here, the

2  Pennsylvania Court's dismissal states that it is "with prejudice," so Rule 41(b) does not determine

3  its effect.  Although the doctrine of res judicata is consistent with Rule 41(b) in many ways, it is

4  more nuanced and case-specific.  Moreover, barring UPitt's claims here is consistent with Rule

5  41(b) because the dismissal in the prior case was not based on failure to join a party under Rule

6  19 or lack of jurisdiction, but on UPitt's lack of diligence, failure to comply with a court order,

7  inconsistent positions, and prejudice to Varian.

8  **(1)    Rule 41(b) Does Not Define the Scope of Res Judicata**

9  UPitt incorrectly asserts that "Rule 41(b) excludes dismissals for failure to join a party or

10  for lack of jurisdiction from being adjudications on the merits . . . ."  *See* UPitt Opp. Brf. at 8; *see*

11  *also id*. at 5.  In fact, the rule does not apply here at all because it only governs dismissals that are

12  silent as to whether they are with or without prejudice.  "Rule 41(b) sets forth nothing more than a

13  default rule for determining the import of a dismissal (a dismissal is 'upon the merits,' with the

14  three stated exceptions, unless the court 'otherwise specifies.')."  *Semtek Int'l Inc. v. Lockheed*

15  *Martin Corp.*, 531 U.S. 497, 503, 121 S. Ct. 1021, 1025 (2001).  Here, the dismissal order states

16  that it is "with prejudice."  *See* RJN, Ex. P.  Therefore, Rule 41(b) does not apply.

17  Moreover, Rule 41(b) does not even define the res judicata effect of dismissal orders to

18  which it applies.  It merely specifies that certain dismissals "operate[] as an adjudication on the

19  merits," while others do not.  *See* Fed. R. Civ. P. 41(b).  Whether a dismissal is "on the merits" is

20  a different question from whether it has claim preclusive effect.  *See Semtek*, 531 U.S. at 503, 121

21  S. Ct. at 1025.  Rule 41(b) "would be a highly peculiar context in which to announce a federally

22  prescribed rule on the complex question of claim preclusion . . . ."  *Id*.  Rather, the scope of the

23  res judicata doctrine in federal question cases is prescribed by federal common law.  *E.g. Taylor*

24  *v. Sturgell*, __ U.S. __, 126 S. Ct. 2161, 2171 (2008).

25  The doctrine of res judicata does not lend itself to absolutes and bright lines as UPitt

26  wants the Court to believe.  For example, while UPitt cites cases stating a "rule" that res judicata

27  applies only when a court passes on the substance of a claim, many other cases recognize that res

28  judicata may apply "regardless of whether the dismissal results from procedural error or from the

1  court's considered examination of the plaintiff's substantive claims." *See In re Schimmels*, 127

2  F.3d 875, 884 (9th Cir. 1997); *see also infra* at 14.  Thus, it is often necessary to examine the

3  policies underlying the doctrine of res judicata to determine whether it applies in a particular case.

4  *See, e.g., Marin v. Hew, Health Care Fin. Agency*, 769 F.2d 590, 593-94 (9th Cir. 1985);

5  *American Nat'l Bank & Trust Co. v. City of Chicago*, 826 F.2d 1547, 1551-53 (7th Cir. 1987).

6          **(2)    This Action Would Be Barred by Res Judicata Even If
                  Rule 41(b) Did Apply**

7

8          Even if Rule 41(b) did apply here, UPitt's action would be barred because the prior case

9  was dismissed based on UPitt's failure to join CMU in a timely way as required by the Federal

10  Rules of Civil Procedure and the Pennsylvania Court's Case Management Order.

11          The first sentence of Rule 41(b) provides that "[i]f the plaintiff fails . . . to comply with

12  these rules or a court order, a defendant may move to dismiss the action or any claim against it."

13  Under the express terms of the rule, such a dismissal always operates as an adjudication on the

14  merits; it is not subject to the exceptions that apply to "any dismissal not under this rule."  The

15  dismissal of UPitt's case by the Pennsylvania Court is such a dismissal because it was based on

16  UPitt's failure to comply with a provision in the Case Management Order that set a deadline for

17  adding parties.[4]  *See supra* at 3-4.  Dismissals for failure to comply with a court order under Rule

18  41(b) typically involve the additional elements of willful delay by the plaintiff and/or prejudice to

19  the defendant.  *See generally* 9 Wright & Miller, *Federal Practice and Procedure* § 2369 (3d ed.

20  2008).  The Pennsylvania Court found that those elements were present here.  *See supra* at 3-4.

21  Thus, the dismissal would be deemed "on the merits" under Rule 41(b).[5]

22

23

24  [4] UPitt blatantly mischaracterizes the court's Case Management Order, entered as required by
    Fed. R. Civ. P. 16(b), as a "local rule for adding new parties."  *See* UPitt Opp. Brf. at 9.

25  [5] UPitt argues that the Pennsylvania Court's denial of Varian's Rule 11 motion indicates that the
    Pennsylvania Court did not intend to dismiss the prior case as a sanction for UPitt's misconduct.

26  *See* UPitt Opp. Brf. at 16.  However, that conclusion does not follow.  Rule 11 only addresses
    sanctions for submitting a paper to a court without adequately investigating the factual and legal

27  basis for the paper, making frivolous arguments in a paper, or submitting a paper for purposes of
    harassment.  *See* Fed. R. Civ. P. 11(b).  It does not address dismissal as a sanction for violation of

28  a court order.  *See id.*

1    UPitt argues that the dismissal should have been without prejudice because it was "for . . .

2    failure to join a party under Rule 19."  *See* UPitt Opp. Brf. at 5 (citing Fed. R. Civ. P. 41(b)).

3    However, that was not the basis for the dismissal.  As UPitt notes elsewhere, a court can dismiss

4    an action under Rule 19 only "[i]f a person who is required to be joined . . . cannot be joined."

5    *See id*. at 3 (quoting Fed. R. Civ. P. 19(b)).  Here, CMU could have been joined in the prior case

6    because it was within the Pennsylvania Court's jurisdiction and was willing to be joined.  *See*

7    *supra* at 3 fn. 1.  The Pennsylvania Court did not dismiss the action because CMU could not be

8    joined, but because of UPitt's misconduct as discussed in the preceding paragraph.

9    UPitt also argues that the dismissal was "for lack of jurisdiction" within the meaning of

10   Rule 41(b) because it was based on UPitt's lack of standing.  However, UPitt's lack of standing

11   does not explain the decision to dismiss the prior case with prejudice.  In the absence of other

12   factors, the Pennsylvania Court would undoubtedly have permitted UPitt to add CMU as a party

13   as recommended by the special master and permitted by applicable law.  *See supra* at 3 & fn. 1.

14   It is the Pennsylvania Court's findings regarding UPitt's delay, its failure to comply with the Case

15   Management Order, its prior insistence on strict compliance with deadlines, and prejudice to

16   Varian that explain the dismissal with prejudice.  *See supra* at 3-4.  Significantly, that court did

17   not itself characterize its dismissal as one for lack of jurisdiction.  *See* RJN, Ex. H.  Furthermore,

18   UPitt acknowledges that the defect in this case merely involved "prudential" standing and that

19   there is a circuit split on the issue of whether prudential standing is deemed jurisdictional.  *See*

20   UPitt Opp. Brf. at 7 & fn. 1.  Both the Third and Ninth Circuits are among the courts that hold

21   prudential standing is *not* jurisdictional.  *See Board of Natural Resources v. Brown*, 992 F.2d 937,

22   946 (9th Cir. 1993); *Elkin v. Fauver*, 969 F.2d 48, 52 n.1 (3d Cir. 1992).  Consequently, that rule

23   applies here because the Federal Circuit applies the law of the regional circuit where the district

24   court sits when it decides issues of subject matter jurisdiction or res judicata.  *Toxgon Corp. v.*

25   *BNFL, Inc.*, 312 F.3d 1379, 1380-81 (Fed. Cir. 2002) (subject matter jurisdiction); *Acumed LLC*

26   *v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (res judicata).[6]

27   _____

28   [6] The Federal Circuit will apply its own law if the res judicata issue is "peculiar to patent law,"
     such as where it requires determining whether two infringement claims are identical.  *Acumed*,

1      The cases that UPitt cites in support of its Rule 41(b) argument are inapplicable here.  For

2  example, UPitt cites *Trujillo v. Colorado*, 649 F.2d 823 (10th Cir. 1981).  There, the plaintiff's

3  complaint was dismissed for failure to include proper parties, with leave to amend.  The plaintiff

4  did not amend and a final dismissal was entered.  When the plaintiff later re-filed the action with

5  the proper parties, the district court found it barred by res judicata because the plaintiff had not

6  complied with the order permitting leave to amend.  The Tenth Circuit reversed, holding that the

7  dismissal was actually based on failure to join proper parties and not disobedience of a court

8  order.  "Had the District Judge intended what he wrote literally—that the action was being

9  dismissed because the March order had been 'disobeyed'—he would have been guilty of an abuse

10  of his Rule 41(b) discretion to dismiss."  *Id*. at 825.

11      That is the key point of distinction between *Trujillo* and the present case:  in *Trujillo*, the

12  facts did not support dismissal with prejudice.  There was no showing of undue delay, as the final

13  dismissal occurred just four months after the case was filed.  *See id*. at 824.  Nor was there a

14  finding of prejudice to the defendants.  Finally, there was no showing of willfulness or bad faith

15  by the plaintiff.  By contrast, these factors *were* present in the Pennsylvania case.  *See supra* at 3-

16  4.  The *Trujillo* court specifically noted that dismissal for disobedience of a court order *may* be

17  granted in some cases.  *See id*. at 825.  Indeed, many cases have upheld dismissals with prejudice

18  under Rule 41(b) for failure to amend a complaint within the time frame established by the court.

19  *See, e.g., Yourish v. California Amplifier*, 191 F.3d 983, 989-92 (9th Cir. 1999).

20      Other significant differences between *Trujillo* and the present case are the facts that (1)

21  the dismissal in *Trujillo* did not specify that it was with prejudice, and (2) *Trujillo* was decided

22  before the 1983 amendment of Rule 16(b), which added a provision *requiring* that scheduling

23  orders include a deadline for adding parties.  *See* Fed. R. Civ. P. 16(b)(3)(A) & Adv. Comm.

24  Notes.  That amendment highlights the importance of timely joinder of necessary parties.  It also

25  means that a plaintiff who wants to add a party after the court-ordered deadline must now meet

26

27

28  525 F.3d at 1323.  Here, there is no dispute that UPitt's claims are identical in the two actions, and the issue of whether the prior dismissal was "on the merits" is not peculiar to patent law.

1   the "good cause" standard of Rule 16(b)(4), which requires a showing of diligence by the moving

2   party and a lack of prejudice to the opposing party.  *See Componentone, L.L.C. v. Componentart,*

3   *Inc.*, 2007 WL 2580635, at *1-*2 (W.D. Pa. Aug. 16, 2007); *Hynix Semiconductor Inc. v. Rambus*

4   *Inc.*, __ F.R.D. __, 2008 WL 687252, at *4-*5 & n.6 (N.D. Cal. Mar. 10, 2008).  The Rule 16(b)

5   "good cause" requirement applies even when the party to be added after the deadline is deemed a

6   necessary party under Rule 19.  *See Northeast Drilling, Inc. v. Inner Space Servs., Inc.*, 243 F.3d

7   25, 36-37 (1st Cir. 2001); *Gil Enters., Inc. v. Delvy*, 79 F.3d 241, 247-48 (2d Cir. 1996).

8        UPitt also cites *Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 488 F.2d 75 (5th

9   Cir. 1973).  The facts in that case were virtually identical to those in *Trujillo*, in that the case was

10  dismissed a few months after it was filed and the plaintiff failed to amend on time.  There was no

11  showing of undue delay, willfulness, bad faith, prejudice, or other circumstances justifying

12  dismissal with prejudice, and thus it was held to be error when the first dismissal was given res

13  judicata effect.  *See id.* at 76.  Therefore, all of the comments in the preceding paragraphs about

14  why *Trujillo* is poor precedent for this case apply equally to *Mann*.

15              **b.      UPitt Has Not Cured—and Cannot Cure—the Defects From**
                **the Prior Case Because It Cannot Undo Its Misconduct or the**
16              **Resulting Prejudice to Varian**

17       UPitt argues at length in its opposition brief that res judicata does not apply because UPitt

18  "cured" the standing defect in the prior case.  However, UPitt had the duty and the opportunity to

19  "cure" the defect much earlier by joining CMU as a party at the inception of the Pennsylvania

20  case.  The Pennsylvania Court held that UPitt failed to do so for "tactical" reasons, and that its

21  unreasonable delay violated a court order and caused prejudice to Varian.  UPitt cannot reverse its

22  wrongdoing or undo the consequences thereof, and it therefore cannot implement a true cure.

23       The principle at work here was expressed well in another context as follows:  "if timely

24  action by appellants would have 'secured them access to a federal adjudication on the merits of

25  their state claim,' then the claim should be barred by res judicata."  *Adolph Coors Co. v. Sickler*,

26  608 F. Supp. 1417, 1433 (C.D. Cal. 1985) (quoting *Boccardo v. Safeway Stores, Inc.*, 134 Cal.

27  App. 3d 1037, 184 Cal. Rptr. 903 (1982)).  The *Coors* court relied on this principle to foreclose

28  the plaintiff from pursuing a claim that the plaintiff had been denied leave to add in a prior case

1    due to untimeliness.  *See id.*  A similar result was reached in *American Nat'l Bank & Trust Co.*,

2    826 F.2d at 1551-53.  There, a first case was dismissed on grounds that under Illinois law were

3    deemed "jurisdictional."  The court concluded that the "jurisdictional" label did not conclusively

4    determine the dismissal's res judicata impact.  *See id.* at 1552-53.  More pertinent was the fact

5    that the plaintiff "had an *opportunity* to receive an adjudication from that court.  That he bollixed

6    his opportunity by . . . failing to prosecute it properly does not justify exposing the defendant to

7    another round."  *Id.* at 1553 (emphasis in original).  The principle espoused in these cases has

8    equal application here, because timely action by UPitt to add CMU as a party in the prior case

9    would have enabled it to obtain a ruling on the substance of its infringement claims in that court.

10       On page 1 of its opposition brief, UPitt cites *Segal v. AT & T Co.*, 606 F.2d 842 (9th Cir.

11   1979), for the proposition that "filing a new claim after the barrier to suit no longer exists is not

12   prohibited."  However, in *Segal* there was no finding of fault by the plaintiff in failing to clear the

13   barrier in the prior case.  *See id.* at 844-46.  Moreover, there is no indication in the opinion that

14   the district court in the prior case had entered a dismissal "with prejudice"; to the contrary, the

15   dismissal "was not intended to end litigation between the parties; rather, the intent was to permit

16   the litigation to continue in another forum."  *Id.* at 846.  Here, by contrast, the Pennsylvania Court

17   *did* intend to foreclose future litigation between the parties and signaled that intent by dismissing

18   UPitt's claims with prejudice in its well-reasoned order.  *See supra* at 2-5.

19       UPitt also cites *Lowe v. United States*, 79 Fed. Cl. 218 (2007), for the proposition that a

20   new action may be filed "[i]f the alleged 'cure' is sufficient to repair the prior jurisdictional

21   defect."  As in *Segal*, it does not appear that the initial dismissal in *Lowe* was designated "with

22   prejudice," and the court did not find that the grounds for dismissal were due to dilatoriness or

23   other wrongdoing by the plaintiff.  *See id.* at 221-22, 227-31.  The court thus was able to rely on

24   the rule that a dismissal for lack of subject matter jurisdiction does not operate as an adjudication

25   on the merits "[u]nless the judgment ordering dismissal specifies otherwise . . . ."  *See id.* at 229.

26       Under the facts of the present case, this Court should find that UPitt's purported "cure"

27   both comes too late and is incomplete.  UPitt cannot undo its prior wrongful conduct, and it

28   cannot cure the harm caused to Varian by having to spend a year litigating against UPitt's patent

1    infringement claims in the absence of a necessary party and under false pretenses. Therefore, it

2    was proper to dismiss the prior case "with prejudice" and res judicata applies.[7]

3                c.    **The Policies Underlying Res Judicata and Rule 16(b) Support**
                       **Dismissal of This Action**
4

5            UPitt takes pains to distinguish many of Varian's cited cases on the facts in support of its

6    argument that they are inapposite. However, UPitt's approach ignores the underlying policies

7    that ultimately must be examined to determine whether res judicata properly applies in a given

8    case. By now, Varian's position should be clear that it would violate the policies underlying the

9    res judicata doctrine and Rule 16(b) if UPitt were allowed to misrepresent the extent of its patent

10   rights and flaunt the Pennsylvania Court's scheduling order, causing prejudice to Varian, with no

11   consequence other than having to re-file its claims in a new court.

12           UPitt argues that Varian cited no case in which res judicata applied despite the lack of a

13   ruling on the substance of the plaintiff's claim. *See* UPitt Opp. Brf. at 5, 18. UPitt apparently

14   neglected to read pages 10 and 13-16 of Varian's opening brief, where Varian cited numerous

15   cases in which the plaintiff's procedural failings in a first case justified preclusion of its claims in

16   a second case despite no ruling on the substance. *See also* 18 A Wright, Miller & Cooper,

17   *Federal Practice and Procedure* § 4435, at p. 134 (2d ed. 2002) ("Thus it is clear that an entire

18   claim may be precluded by a judgment that does not rest on any examination whatever of the

19   substantive rights asserted."). UPitt also argues that certain cases cited by Varian do not apply

20   here because they involved the invocation of res judicata following denial of a motion for leave to

21   add claims, not parties. *See* UPitt Opp. Brf. at 10. However, the underlying principle is the same.

22   Where a plaintiff is foreclosed from adding a claim or party in a first case based on elements of

23   delay and prejudice, the plaintiff may not re-file its claims in a second action. *See* Varian's

24   Opening Brf. at 10, 13-16 (citing and discussing cases); *see also* 18A Wright, Miller & Cooper,

25   *supra* § 4435,at p. 145 (if failure to satisfy a particular precondition should not always operate as

26   an adjudication on the merits of the claim, "it should nonetheless remain open to the court to

27   ─────────────────────

28   [7] UPitt argues Varian has not identified its prejudice, but the Pennsylvania Court already made a
     finding of prejudice that is not subject to challenge in these proceedings. *See supra* at 3.

protect the defendant who has had to incur the burden of preparing a defense by specifying that a particular dismissal is with prejudice").

### d. UPitt May Not Reargue Whether It Had Standing in the Pennsylvania Case

UPitt spends an inordinate portion of its opposition arguing that, despite the conclusive ruling of the Pennsylvania Court, it has always had full "legal title" to the patents-in-suit and thus had standing to sue in the prior case. *See* UPitt Opp. Brf. at 15-17. However, that issue was conclusively decided in Varian's favor, *see* RJN, Exs. H, P, and as usual UPitt's arguments are based on ignoring or misconstruing key facts. Varian will simply point out what it successfully argued at length to the Pennsylvania Court: although the inventors executed assignments of the patents-in-suit in favor of UPitt, UPitt transferred partial ownership to CMU by way of separate written agreements providing that jointly developed intellectual property "shall be owned jointly" by UPitt and CMU. *See* RJN, Ex. G at 3. UPitt's meaningless distinction between "legal title" and "ownership" and its attempt to dismiss the binding agreements as mere "policy documents" are unavailing. *See* UPitt Opp. Brf. at 16. The Pennsylvania Court rejected such arguments and the matter is now a question for the Federal Circuit.

Varian also takes issue with UPitt's suggestion that Varian is an infringer who will be allowed to continue engaging in wrongful acts if this action is dismissed. *See* UPitt Opp. Brf. at 17. Varian has substantial defenses of non-infringement, invalidity, and inequitable conduct that it believes would defeat UPitt's claims were the case to go forward. However, Varian has already borne the burden of full fact discovery and claim construction proceedings on those claims in the Pennsylvania case because UPitt was not forthcoming with the facts regarding ownership of the patents-in-suit, thus delaying resolution of the standing issue. The effect of the dismissal in the Pennsylvania case is to spare Varian from having to defend itself again given that the dismissal of the first action was due to UPitt's procedural misconduct.

## III.    CONCLUSION

The dismissal of the Pennsylvania case with prejudice has res judicata effect here because it was based not merely on UPitt's lack of standing but on UPitt's failure to take steps available to

1    it to cure that defect in a timely way in the prior action, in violation of a court order and with

2    resulting prejudice to Varian.  Accordingly, Varian respectfully requests that the Court grant its

3    Motion to Dismiss without leave to amend.

4    Dated:  August 22, 2008                    ORRICK, HERRINGTON & SUTCLIFFE LLP

5

6                                               By:_____/s/ _Matthew H. Poppe_____
                                                         Matthew H. Poppe
7                                               Attorneys for Defendant Varian Medical
                                                         Systems, Inc.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2       I hereby certify that a true and correct copy of DEFENDANT VARIAN MEDICAL

3 SYSTEMS, INC.'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN

4 SUPPORT OF MOTION TO DISMISS PLAINTIFF'S CLAIMS PURSUANT TO FED. R. CIV.

5 P. 12(B)(6) BASED ON DOCTRINE OF RES JUDICATA was served upon the University of

6 Pittsburgh, through its counsel, via:

7

8              _____     Hand-Delivery

9              _____     Facsimile

10              _____     First Class, US Mail, Postage Prepaid

11              _____     Certified Mail-Return Receipt Requested

12          _____X_____     ECF Electronic Service

13              _____     Overnight Delivery

14

15       at the following addresses:

16                                Rita E. Tautkus

17                      Morgan Lewis & Bockius, LLP
                     One Market – Spear Street Tower
                     San Francisco, CA  94105

18                      rtautkus@morganlewis.com

19

20 Dated:  August 22, 2008               \_\_\_/s/ *Matthew H. Poppe*_____

21                              Matthew H. Poppe

22

23 OHS West:260494153.1

24

25

26

27

28