1    WILLIAM L. ANTHONY, JR.  (State Bar No. 166026)
     wanthony@orrick.com
2    MATTHEW H. POPPE  (State Bar No. 177854)
     mpoppe@orrick.com
3    ZHENG LIU  (State Bar No. 229311)
     jenliu@orrick.com
4    ORRICK, HERRINGTON & SUTCLIFFE LLP
     1000 Marsh Road
5    Menlo Park, California 94025
     Telephone:     +1-650-614-7400
6    Facsimile:     +1-650-614-7401
7    Attorneys for Defendant
     VARIAN MEDICAL SYSTEMS, INC.
8
                    UNITED STATES DISTRICT COURT
9
                  NORTHERN DISTRICT OF CALIFORNIA
10
                     SAN FRANCISCO DIVISION
11

12

13   UNIVERSITY OF PITTSBURGH OF THE          Case No.  CV 08-02973 MMC
     COMMONWEALTH SYSTEM OF HIGHER
14   EDUCATION d/b/a UNIVERSITY OF            **VARIAN'S SUPPLEMENTAL
     PITTSBURGH, a Pennsylvania non-profit    REQUEST FOR JUDICIAL NOTICE
15   corporation (educational),               IN SUPPORT OF MOTION TO
                                              DISMISS PLAINTIFF'S CLAIMS
16                Plaintiff,                   PURSUANT TO FED. R. CIV. P.
                                              12(B)(6) BASED ON DOCTRINE OF
17          v.                                RES JUDICATA**

18   VARIAN MEDICAL SYSTEMS, INC., a          Date:        September 5, 2008
     Delaware corporation,                    Time:        9:00 a.m.
19                                            Courtroom:  7, 19th Floor
                  Defendant.
20

21

22

23

24

25

26

27

28

1    Defendant Varian Medical Systems, Inc. ("Varian") respectfully requests that this Court

2    take judicial notice of the following document pursuant to Federal Rule of Evidence 201 in

3    support of Varian's Motion to Dismiss Plaintiff's Claims Pursuant to Fed. R. Civ. P. 12(b)(6)

4    Based on Doctrine of Res Judicata:

5        1.    Brief for Plaintiff-Appellant University of Pittsburgh, filed on August 29, 2008 in

6    the United States Court of Appeals for the Federal Circuit, Case Nos. 2008-1441, 2008-1454.  A

7    true and correct copy of this document is attached hereto as Exhibit A.

8                                    **DISCUSSION**

9        On Friday, August 29, 2008, Plaintiff University of Pittsburgh ("UPitt") filed its opening

10   brief on appeal from the judgment in the identical Pennsylvania action between the parties.  The

11   brief was served via FedEx and received by Varian earlier today.

12       In connection with its pending Motion to Dismiss, Varian stated that the Federal Circuit

13   was the proper forum for UPitt's argument that the Pennsylvania Court should not have dismissed

14   the prior case with prejudice.  *See* Varian Reply at 5-7.  Varian stated further that (1) UPitt had

15   the opportunity to raise that argument on appeal and (2) UPitt had stated its intent to do so.  *See*

16   *id*.  The attached appellate brief shows that UPitt has acted on that intent, arguing to the Federal

17   Circuit at length as one of two main issues it has raised on appeal that "the district court erred in

18   dismissing the University of Pittsburgh's patent infringement claims *with* prejudice."  *See* Exhibit

19   A, attached hereto, at 8, 31-39.  This reinforces Varian's position that it is untoward of UPitt to

20   assert that same argument in this Court in its effort to pursue a duplicative action here.  Because

21   the judgment in the prior case has res judicata effect unless and until it is reversed on appeal, the

22   present action should be dismissed.  *See* Varian Opening Brf. at 19-20 & fn. 22.

23       UPitt's appellate brief, being a record on file in another court, is subject to judicial notice.

24   *See, e.g., Corder v. Gates*, 104 F.3d 247, 248 & n.1 (9th Cir. 1996) (granting defendant's motion

25   for the court to take judicial notice of briefs and records in two earlier appeals); *Ervin v. Judicial*

26   *Council of Cal.*, No. C 06-7479 CW, 2007 U.S. Dist. LEXIS 39554, at *3 & n.2 (N.D. Cal. May

27   18, 2007) (taking notice of an appeal in another proceeding); *United States v. Beattie*, No. C-06-

28   3537, 2007 U.S. Dist. LEXIS 40115, at *2 (N.D. Cal. May 14, 2007) (taking judicial notice of

1  defendant's docket on appeal); *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1091 &

2  n.1 (N.D. Cal. 2003) (taking judicial notice of the documents and pleadings filed in a state court

3  action); *Western Federal Sav. & Loan Ass'n v. Heflin Corp.*, 797 F. Supp. 790, 792 (N.D. Cal.

4  1992) (taking judicial notice of an entire state court action file involving a judicial foreclosure,

5  including both complaint and answer); *Piper v. RGIS Inventory Specialists, Inc.*, No. C-07-00032,

6  2007 U.S. Dist. LEXIS 44486, at *3 & n.1 (N.D. Cal. 2007) (taking judicial notice of pleadings in

7  various actions).

8      For the foregoing reasons, Varian respectfully requests that the Court take judicial notice

9  of UPitt's opening appellate brief attached hereto as Exhibit A.

10  Dated:  September 2, 2008

11              WILLIAM L. ANTHONY
            MATTHEW H. POPPE
12              ZHENG LIU
            ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14              By:_____/s/ *Matthew H. Poppe*_____
                    Matthew H. Poppe
15                  Attorneys for Defendant
            VARIAN MEDICAL SYSTEMS, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2    I hereby certify that a true and correct copy of the VARIAN'S SUPPLEMENTAL

3    REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S

4    CLAIMS PURSUANT TO FED. R. CIV. P. 12(B)(6) BASED ON DOCTRINE OF RES

5    JUDICATA was served upon the University of Pittsburgh, through its counsel, via:

6

7    _____    Hand-Delivery

8    _____    Facsimile

9    _____    First Class, US Mail, Postage Prepaid

10    _____    Certified Mail-Return Receipt Requested

11    _____X_____    ECF Electronic Service

12    _____    Overnight Delivery

13

14    at the following addresses:

15            Rita E. Tautkus
            Morgan Lewis & Bockius, LLP
16            One Market – Spear Street Tower
            San Francisco, CA   94105
17            rtautkus@morganlewis.com

18

19    Dated:  September 2, 2008            ___/s/ Matthew H. Poppe_____
                            Matthew H. Poppe
20

21

22

23

24

25

26

27

28

# EXHIBIT A

2008-1441, 1454

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

---

UNIVERSITY OF PITTSBURGH,

Plaintiff-Appellant,

v.

VARIAN MEDICAL SYSTEMS, INC.,

Defendant-Cross-Appellant.

---

On Appeal from the
United States District Court for the Western District of Pennsylvania
Civil No. 07-0491-AJS
Honorable Arthur J. Schwab

---

# BRIEF FOR PLAINTIFF-APPELLANT
## UNIVERSITY OF PITTSBURGH

---

Daniel Johnson, Jr.
MORGAN, LEWIS & BOCKIUS LLP
Spear Street Tower
1 Market Street
San Francisco, CA 94105
(415) 442-1000

Peter Buscemi
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004-2541
(202) 739-3000

Roderick R. McKelvie
Richard J. Johnson, Jr.
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 662-6000

Deanna L. Kwong
COVINGTON & BURLING LLP
One Front Street, Floor 35
San Francisco, CA 94111
(415) 591-6000

*Attorneys for Plaintiff-Appellant,*
*University of Pittsburgh*

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellant University of Pittsburgh certifies the following:

1.    The full name of every party or amicus represented by me is:

**University of Pittsburgh**

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

**N/A**

3.    All parent corporations and any publicly held companies that own 10% or more of the stock of the parties represented by me are:

**N/A**

4.    The names of all firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this court are:

Roderick R. McKelvie
Richard J. Johnson, Jr.
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 662-6000

Deanna L. Kwong
COVINGTON & BURLING LLP
One Front Street, Floor 35
San Francisco, CA 94111
(415) 591-6000

Allison K. Young
Darcy A. Paul
MORGAN, LEWIS & BOCKIUS LLP
2 Palo Alto Square, Suite 700
3000 El Camino Real
Palo Alto, CA 94306

Peter Buscemi
John D. Zele
Bradford A. Cangro
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

Christopher K. Ramsey
Elizabeth Stroyd Windsor
MORGAN, LEWIS & BOCKIUS LLP
301 Grant Street
One Oxford Centre, Suite 3200

Daniel Johnson, Jr.
Rita E. Tautkus
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower

i

Pittsburgh, PA  15219-6401          San Francisco, CA  94306

_Roderick R. McKelvie_
Roderick R. McKelvie

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ....................................................................... i

TABLE OF AUTHORITIES ......................................................................... vi

STATEMENT OF RELATED CASES ......................................................... ix

JURISDICTIONAL STATEMENT ................................................................ 1

PRELIMINARY STATEMENT ...................................................................... 2

STATEMENT OF THE ISSUES ................................................................... 8

STATEMENT OF THE CASE ........................................................................ 9

STATEMENT OF FACTS ............................................................................ 11

    1.  Pitt and Carnegie Mellon Scientists Agree to Collaborate to Develop Respiratory Gating and Image Matching Technologies to Assist in the Radiation Treatment of Lung Cancer Patients ........................................... 11

    2.  Pitt and Carnegie Mellon's Guidelines for Collaborative Projects .................................................................. 11

    3.  The Inventors Agree to Pursue Patent Protection and to Assign the Patents to Pitt ........................................................ 13

    4.  Pitt's Efforts to License the Patents as the Responsible Technology Transfer Office ...................................................... 14

    5.  Pitt Sues Varian for Infringing the Claims of the '554 and '431 Patents ............................................................................ 16

    6.  The District Court Rules that Carnegie Mellon is a Co-Owner of the Patents and that Pitt Lacks Standing to Sue for Infringement, and the Court Dismisses Pitt's Complaint with Prejudice ............................................................ 18

SUMMARY OF THE ARGUMENT .......................................................... 20

iii

ARGUMENT ...................................................................................21

I.   THE TRIAL COURT ERRED IN RULING THAT PITT LACKED
STANDING TO SUE VARIAN ...................................................21

    A.   Standard of Review ...............................................................21

    B.   The Entity that Holds Legal Title to a Patent Has Standing to
Sue for Infringement ............................................................21

    C.   Because Pitt Holds Legal Title to the Patents-in-Suit, It Has
Standing to Sue Varian.........................................................24

    D.   The Trial Court Erred in Ruling that Carnegie Mellon is a
Co-Owner of the Patents ......................................................25

        1.   The Guidelines did not vest title in the patents in
Carnegie Mellon............................................................26

        2.   There is a difference between jointly owned IP and the
patents on portions of that IP .......................................28

        3.   The parties agreed that Pitt should hold title to the
patents, and they implemented that agreement by the
assignments ...................................................................29

II.   THE TRIAL COURT ERRED IN DISMISSING PITT'S
COMPLAINT WITH PREJUDICE .............................................31

    A.   Standard of Review ...............................................................31

    B.   While The District Court Identified the Basis For Its
Decision to Dismiss the Complaint, It Failed to Identify a
Basis For Ordering that the Dismissal Be With Prejudice.................32

        1.   A dismissal for lack of standing should be without
prejudice.......................................................................33

        2.   Under Rule 19, a court cannot dismiss for failure to
join a required party, if joinder is feasible .....................34

3.    Even assuming that dismissal under Rule 19 for failure to join a required party was proper, it should have been without prejudice ................................................................36

4.    A dismissal with prejudice as a sanction must be supported by the record...........................................................37

CONCLUSION................................................................................39

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Laboratories v. Diamedix Corp.*,
   47 F.3d 1128 (Fed. Cir. 1995) ..................................................25, 31

*Arachnid, Inc. v. Merit Industries, Inc.*,
   939 F.2d 1574 (Fed. Cir. 1991) ............................22, 24, 27, 28

*Crown Die & Tool Co. v. Nye Tool & Machine Works*,
   261 U.S. 24 (1923) ...................................................21, 23, 29

*DDB Technologies, L.L.C. v. MLB Advanced Media, L.P.*,
   517 F.3d 1284 (Fed. Cir. 2008) .........................................26

*Donnelly v. Johns-Manville Sales Corp.*,
   677 F.2d 339 (3d Cir. 1982) ..............................................39

*Dredge Corp. v. Penny*,
   338 F.2d 456 (9th Cir. 1964) .............................................36

*E.E.O.C. v. Metal Service Co.*,
   892 F.2d 341 (3d Cir. 1990) ..............................................31

*Fieldturf, Inc. v. Southwest Recreational Industries, Inc.*,
   357 F.3d 1266 (Fed. Cir. 2004) .........................................33

*Filmtec Corp. v. Allied-Signal Inc.*,
   939 F.2d 1568 (Fed. Cir. 1991) .........................................26

*Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*,
   93 F.3d 774 (Fed. Cir. 1996) ............................................27

*General Refractories Co. v. First State Insurance Co.*,
   500 F.3d 306 (3d Cir. 2007) ..........................................31, 36

*General Tire & Rubber Co. v. Watkins*,
   326 F.2d 926 (4th Cir. 1964) .............................................35

*Gould Electronics, Inc. v. United States*,
   220 F.3d 169 (3d Cir. 2000) ...................................................................31

*H.R. Technologies, Inc. v. Astechnologies, Inc.*,
   275 F.3d 1378 (Fed. Cir. 2002) .........................................................21, 33

*Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried
   Employees*,
   974 F.2d 391 (3d Cir. 1992) ...................................................................31

*IpVenture, Inc. v. Prostar Computer, Inc.*,
   503 F.3d 1324 (Fed. Cir. 2007) ..............................................................27

*Janney Montgomery Scott, Inc. v. Shephard Niles, Inc.*,
   11 F.3d 399 (3d Cir. 1993) .....................................................................34

*Kasap v. Folger Nolan Fleming & Douglas, Inc.*,
   166 F.3d 1243 (D.C. Cir. 1999)..............................................................33

*Korvettes, Inc. v. Brous*,
   617 F.2d 1021 (3d Cir. 1980) .................................................................32

*Macklin v. Butler*,
   553 F.2d 525 (7th Cir. 1977) ..................................................................35

*Media Technologies Licensing, L.L.C. v. The Upper Deck Co.*,
   334 F.3d 1366 (Fed. Cir. 2003) ..............................................................33

*Nicolson Pavement Co. v. Jenkins*,
   81 U.S. (14 Wall.) 452 (1871) ................................................................30

*Prima Tek II, L.L.C. v. A-Roo Co.*,
   222 F.3d 1372 (Fed. Cir. 2000) .................................................21, 25, 29

*Rite-Hite Corp. v. Kelley Co., Inc.*,
   56 F.3d 1538 (Fed. Cir. 1995) ................................................................21

*Scarborough v. Eubanks*,
   747 F.2d 871 (3d Cir. 1984) ...................................................................39

*Sicom Systems, Ltd. v. Agilent Technologies, Inc.*,
   427 F.3d 971 (Fed. Cir. 2005) ................................................................33

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000) ......................................................26

*Sprint Communications Co. v. APCC Services, Inc.*,
  128 S. Ct. 2531 (2008)....................................................................24

*Switzer Brothers, Inc. v. Byrne*,
  242 F.2d 909 (6th Cir. 1957) ..........................................................17

*Symes v. Harris*,
  472 F.3d 754 (10th Cir. 2006) ...................................................34, 35

*Textile Productions, Inc. v. Mead Corp.*,
  134 F.3d 1481 (Fed. Cir. 1998) .......................................................33

*Three Rivers Cablevision, Inc. v. City of Pittsburgh*,
  502 F. Supp. 1118 (W.D. Pa. 1980) ................................................36

*Vaupel Textilmaschinen K.G v. Meccanica Euro Italia S.P.A.*,
  944 F.2d 870 (Fed. Cir. 1991) ...................................................25, 29

*Walter Kidde Portable Equipment, Inc. v. Universal Security Instruments, Inc.*,
  479 F.3d 1330 (Fed. Cir. 2007) .......................................................31

*Willingham v. Star Cutter Co.*,
  555 F.2d 1340 (6th Cir. 1977) ........................................................17

## STATUTES

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1295 ...................................................................................1

28 U.S.C. § 1338 ...................................................................................1

35 U.S.C. § 281 ...................................................................................21

## RULES

Fed. R. Civ. P. 19 ........................................................................*passim*

## STATEMENT OF RELATED CASES

No appeal in or from the same civil action was previously before this Court or any other appellate court.

The Court should be aware that Plaintiff-Appellant University of Pittsburgh ("Pitt") has filed an action in the United States District Court for the Northern District of California, accusing Varian Medical Systems, Inc. ("Varian") of infringing the same patents at issue in the present appeal. That action is captioned *University of Pittsburgh of the Commonwealth System of Higher Education d/b/a University of Pittsburgh v. Varian Medical Systems, Inc.*, Case No. CV 08-02973, and is pending before the Honorable Maxine M. Chesney.

## JURISDICTIONAL STATEMENT

The district court had original subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. § 1338(a).

This Court has jurisdiction over the final judgment dismissing the action for lack of standing pursuant to 28 U.S.C. §§ 1291 and 1295(a)(1).

On April 30, 2008, the district court entered an order adopting in part the Special Master's Report and Recommendation and granting Defendant Varian's motion for summary judgment for lack of standing and dismissing the action with prejudice. A0063-A0068. Thereafter, Defendant Varian moved to dismiss its counterclaims without prejudice, and the district court obliged by order dated June 16, 2008. A0694.

On June 16, 2008, the district court entered final judgment. A0050. On that same day, Plaintiff Pitt filed its notice of appeal. The district court's final judgment provides the basis for appeal.

## PRELIMINARY STATEMENT

The district court in this patent case made two principal errors. First, it concluded incorrectly that Pitt—at all times, the only legal titleholder of the patents-in-suit—lacks standing to bring this patent infringement action. The court failed to properly consider that because Pitt unilaterally holds legal title to the asserted patents, it has standing to sue. On that basis, the court improperly dismissed Pitt's complaint. Second, the court compounded its error by declaring that its dismissal of Pitt's action was "with prejudice." The court did not explain what it meant by using the expression "with prejudice" in this context. If and to the extent that the court's use of the phrase was intended to connote some "claim preclusive" effect, then the judgment is improper. The court's decision regarding Pitt's standing is not a ruling on the merits and, thus, cannot preclude an action in which any possible standing issue has been corrected.

This patent case relates to a joint venture between Pitt and Carnegie Mellon University ("Carnegie Mellon"). In 1994, scientists at Pitt and Carnegie Mellon agreed to work together to develop an apparatus for use in radiation therapy of lung cancer patients. A0246-A0247, A0300-A0301, A0309-A310. The apparatus was designed to more accurately aim a radiation beam at a tumor within a patient's body during cancer treatment. The universities agreed on standard procedures to facilitate this type of collaboration, including how they would

2

manage the resources and costs each university would contribute and incur. A0447-A0456. One aspect of their agreement addressed how they expected to manage intellectual property ("IP") issues. In a paper titled "Policy Guidelines -- Intellectual Property Rights and Technology Transfer Procedures in Collaborative Projects of the University of Pittsburgh and Carnegie Mellon University," the two universities agreed on general procedures for protecting and commercializing any jointly developed intellectual property. A0447-A0451. In the Guidelines, they agreed they would jointly own jointly developed IP, though the ownership rights, expenses, and proceeds would be calculated in accordance with the relative contributions of the scientists. A0448-A0449.

The universities agreed that for the collaborative projects they would not create a new entity to manage the commercialization of any inventions. A0447. Rather, they agreed to designate a Technology Transfer Office at one of the universities to take sole responsibility for determining whether and in what manner to pursue commercialization of the jointly developed IP. A0449-A0450.

The research was a success. When it came time to apply for patent protection, the schools agreed that Pitt would be the Designated Technology Transfer Office responsible for handling the commercialization. A0364. Pitt arranged for the preparation of patent applications. The five inventors assigned their rights in the applications to Pitt, and Pitt took title to the patents pursuant to

3

the agreement of the parties; that is, Pitt took title to the patents as the party designated to commercialize the inventions pursuant to the terms of the agreement. A0204, A0222, A0404-A0408.

The patents issued and Pitt pursued commercial opportunities, including licenses. A0204, A0222, A0504-A0505, A0527. For more than eight years, Pitt and Carnegie Mellon worked together under the terms of the Guidelines, managing issues as they arose on Pitt's commercialization of the patents.

In April 2007, Pitt, as the assignee and owner of the legal title to the two patents in issue, filed this lawsuit alleging that Varian was infringing the claims of the patents. A0104-A0106.

Varian has responded by arguing that under the agreement between the two universities, Carnegie Mellon is in fact a joint owner of the patents. In a motion for summary judgment, Varian argues that (1) Pitt and Carnegie Mellon had agreed to jointly own any jointly developed IP; (2) the patents are jointly developed IP; (3) therefore, Carnegie Mellon is a joint owner of the patents; (4) as a joint owner, Carnegie Mellon should have been joined as a plaintiff; (5) because Pitt did not join Carnegie Mellon, Pitt's claims should be dismissed; and (6) the two universities should be barred from obtaining relief under the patents; and in a separate motion for sanctions Varian argues that (7) Pitt and its lawyers should be

sanctioned for contending that they did not need to join Carnegie Mellon.  A0163-A0184, A0656-A0679.

By orders dated April 30, 2008, the district court declined to award sanctions, but held that Carnegie Mellon is a co-owner of the patents, should have been joined at the beginning of the suit, and, therefore, Pitt's claims should be dismissed.  A0042, A0064-A0065.  The court then dismissed the claims with prejudice.  A0068.

Varian convinced the district court that because Pitt and Carnegie Mellon had agreed to joint ownership of the venture's IP, they must necessarily have agreed to be joint owners of the patents on jointly developed inventions.  And starting with that assumption, the court concluded that Carnegie Mellon was and continued to be a co-owner of the patents, as Pitt had failed to offer evidence that Carnegie Mellon ever relinquished the rights it would hold as a co-owner, including the right to sue for infringement, the right to license, and the right to use the patented inventions.

The error in this analysis is in failing to look at what it is that Carnegie Mellon and Pitt agreed to.  They did agree to own jointly the jointly developed IP.  But they also agreed that Pitt would take sole title to the patents.

Are these two elements of the agreement compatible? Yes.  The evidence shows Pitt and Carnegie Mellon agreed that Pitt would take sole title to

5

the patents and hold title subject to the duties it owed Carnegie Mellon under the universities' agreement.

Carnegie Mellon and Pitt had agreed on a reasonable and appropriate structure for their joint venture. Rather than create a new entity to take title to and manage their joint IP, they agreed that for their venture they would select one of the universities to do that. And just as a newly created entity would take title to any joint property and manage it subject to the rights and duties of the universities, so, too, under the Guidelines agreed to by Pitt and Carnegie Mellon, the designated university would take title to the joint property and manage that property pursuant to the rights and duties as agreed to by the universities.

Pitt and Carnegie Mellon planned their venture in the context of a legal framework that says the patentee is the legal title holder of the patent and is the entity that has standing to sue for infringement. It was in that context that the parties agreed Pitt would be the patentee. Carnegie Mellon never held title to the patents. It never held the right to sue others for infringement and never held the right to license others. Under these circumstances, it is hardly surprising that there is no evidence of Carnegie Mellon giving up the rights of a patentee. Carnegie Mellon never was the patentee, and it never held any patentee rights that it could have given up. What Carnegie Mellon did hold were rights under its agreement to have Pitt manage the patents subject to duties owed to Carnegie Mellon.

With the court's decision on standing, Varian avoided a hearing on the merits of the universities' claims and gutted a thoughtful and practical agreement on a joint venture between the two universities, not because of some failure of the agreement or some disagreement between the two parties to the agreement on how to manage their affairs, but as a cynical litigation tactic.

The evidence in the record establishes that, consistent with the universities' agreement, Pitt owns legal title to the patents. That legal title establishes its standing to sue. Accordingly, this Court should reverse the dismissal and remand the case for further proceedings on the merits of the claims for relief.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in concluding that the University of Pittsburgh lacked standing to sue based on its ownership of the patents-in-suit.

2. Whether the district court erred in dismissing the University of Pittsburgh's patent infringement claims *with* prejudice.

## STATEMENT OF THE CASE

This is a patent case that proceeded at a fast pace in the district court.

On April 13, 2007, Pitt filed suit against Varian, alleging infringement of claims of the patents-in-suit. A0104-A0106.

On May 14, 2007, Varian answered Pitt's complaint and counterclaimed for declaratory relief that the patents-in-suit are invalid and/or not infringed. A0148-A0153.

Two days later, the district court held a case management conference. On June 4, 2007, the court issued a case management order providing that the deadline for motions to amend the pleadings or to add new parties would be just 11 days later, on June 15, 2007. A0157. On June 6, 2007, Pitt answered Varian's counterclaims. A0160-A0162.

On November 21, 2007, Varian moved for summary judgment that Pitt lacked standing to bring this action. A0163-A0164. The court referred the motion to a Special Master. On December 5, 2007, Pitt moved pursuant to Rule 19 of the Federal Rules of Civil Procedure ("FRCP") to join Carnegie Mellon as a plaintiff in the lawsuit. A0605-A0610. The court denied that motion on December 14, 2007. A0051.

On March 8, 2008, the Special Master issued a report on Varian's motion for summary judgment. A0052-A0062. He concluded that Carnegie

9

Mellon is a joint owner of the patents-in-suit and had retained substantial rights in the patents, including the rights to license and exclude others. A0061. The Special Master also recommended that the district court grant Varian's motion for summary judgment without prejudice and either allow Pitt to file within 30 days an amended complaint that added Carnegie Mellon as a plaintiff or dismiss Pitt's action without prejudice. A0061-A0062.

On March 20, 2008, Varian moved under FRCP Rule 11 and 35 U.S.C. § 285 for sanctions against Pitt and its counsel, Morgan, Lewis & Bockius LLP. A0656-A0679. On April 30, 2008, the district court denied Varian's motion for sanctions. A0042. Separately, it entered an order adopting the Special Master's Report and Recommendation in part, ruling that Carnegie Mellon is a co-owner of the patents-in-suit and that it was a necessary party to the suit. A0063-A0068. The district court ruled that Pitt should have joined Carnegie Mellon at the beginning of the case, and dismissed the case with prejudice.

Pitt now appeals the dismissal of its case with prejudice, and Varian cross-appeals the denial of its motion for sanctions.

## STATEMENT OF FACTS

1.   **Pitt and Carnegie Mellon Scientists Agree to Collaborate to Develop Respiratory Gating and Image Matching Technologies to Assist in the Radiation Treatment of Lung Cancer Patients**

In January 1994, Dr. Joel Greenberger, Chairman of the Department of Oncology at Pitt, wrote to Dr. Takeo Kanade, Director of the Robotics Institute at Carnegie Mellon, asking for help with the development of an apparatus for use in radiation therapy of lung cancer patients. A0309-A0310. The apparatus was designed to more accurately aim a radiation beam at a tumor within a patient's body during cancer treatment. Dr. Greenberger suggested that he and Dr. Kanade work together on the project, and Dr. Kanade agreed. The two ultimately joined with other researchers at their respective universities—Dr. Andre Kalend, a medical physicist at Pitt, Dr. Karun Shimoga, a scientist at Carnegie Mellon, and Charalambos N. Athanassiou, a student at Carnegie Mellon. A0204, A0222, A0246-A0247, A0300-A0301.

2.   **Pitt and Carnegie Mellon's Guidelines for Collaborative Projects**

In September 1994, Pitt and Carnegie Mellon adopted "Policy Guidelines" that pertained to IP rights and technology transfer procedures in collaborative projects between the two universities. A0447-A0451. According to the Guidelines, the universities' objectives included 1) encouraging collaboration; 2) providing clear guidelines regarding the IP in collaborative projects; and

11

3) facilitating commercialization of the IP. A0447. The universities renewed the Guidelines in 1997. A0452-A0456.

The Guidelines provide at Paragraph D that IP developed solely by one university's Participants "will be owned entirely" by that university, "including title, interest, and IP rights." A0448. IP developed jointly "shall be owned jointly by Pitt and CMU and shall be administered in accordance with these Guidelines." A0448.

The Guidelines establish a procedure for determining the Relative Contributions of the Participants and allocating the proceeds and expenses from the commercialization of the IP based on those Relative Contributions. A0448-A0449. They provide that the Participants can designate one of the universities' Technology Transfer Offices to handle the commercialization of the IP, and they provide that no new organizational structure will be created to do so. A0447, A0449-A0450. Where the universities' Participants are not able to agree on which Technology Transfer Office to designate as responsible for the commercialization of the IP, the university whose participants made more than a 50% Relative Contribution will be automatically designated. A0449. The Guidelines provide:

> The **Designated TT Office will have the sole responsibility for the commercialization of the IP** disclosures resulting from CP's [(Collaborative Projects)]. The **normal policies and practices used by the Designated TT Office will apply, including** the decision process of **whether** or not the university wishes-

> (a) *to pursue the commercialization* of a particular Disclosure,
>     *and in what manner*, or
> (b) to turn it back to the inventors.

A0450 (emphasis added).

The universities' Participants selected Pitt's Technology Transfer Office as the designated office for the commercialization of the IP for this collaboration. A0364.

### 3.    The Inventors Agree to Pursue Patent Protection and to Assign the Patents to Pitt

By September 1995, the scientists working on the venture had decided to pursue patent protection for their work and submitted invention disclosures to Pitt. In a memorandum dated September 6, 1995, Dr. Kalend, the Director at the Medical Physics Division at the University of Pittsburgh Medical Center ("UPMC"), reported to Dr. Greenberger that Dr. Kanade of Carnegie Mellon had agreed to "three modes [(*e.g.*, Motion Detection Mode (MDM), Patient Alignment (PAM), and Portal Image Matching (PIMM))] being declared as patents through UMPC [*sic*], but with 50/50 UPMC/CMU ownership." A0409. (At the time of this agreement, the Medical Center was a part of the University. In July of 1998, the University established the Medical Center as a separate entity. A0489).

The law firm of Eckert Seamans took on the work of prosecuting the patents. A0204, A0222. In August 1996, each of the inventors signed a declaration for an initial patent application and an agreement assigning to Pitt the

13

rights to the inventions disclosed in that application.  A0407-A0408.  Richard Westerhoff of Eckert Seamans filed that application with the U.S. Patent and Trademark Office ("PTO") on September 19, 1996.  It issued on March 17, 1998 as U.S. Patent No. 5,727,554 ("the '554 patent"), titled "Apparatus Responsive to Movement of a Patient During Treatment/Diagnosis." A0204.

The '554 patent lists as inventors Andre M. Kalend, Joel Greenberger, Karun B. Shimoga, Charalambos N. Athanassiou, and Takeo Kanade.  Pursuant to their assignment, the patent identifies Pitt as the assignee. A0204.

The same five inventors signed a declaration for a second patent application and assignment to Pitt in October 1996.  A0404-A0406.  Mr. Westerhoff filed the application on October 29, 1996, and it issued on July 21, 1998, as U.S. Patent No. 5,784,431 ("the '431 patent"), titled "Apparatus for Matching X-Ray Images with Reference Images." A0222.  It, too, lists the same five inventors that were listed on the '554 patent and identifies Pitt as the assignee, according to the inventors' assignment. A0222.

### 4.  Pitt's Efforts to License the Patents as the Responsible Technology Transfer Office

In 1998, Pitt approached Carnegie Mellon with a proposal that they enter into a research agreement with a third party, Elekta Oncology Systems ("Elekta"), that would grant Elekta an option to take an exclusive license to the '554 and '431 patents ("patents-in-suit").  A0504-A0505.  As part of the

discussions relating to that agreement, Robert Wooldridge, then a licensing officer with Carnegie Mellon's Center for Technology Transfer and Enterprise Creation, and now its Director, raised the issue of whether the patents-in-suit should be in Pitt's name. He expressed the view that the assignments had to be corrected and the patents held in joint name. A0371, A0376-A0378. After some discussion, Carnegie Mellon did not press the issue, and Pitt's Technology Transfer Office remained the responsible Technology Transfer Office to handle the commercialization of the patents-in-suit. Title to the patents remained in Pitt's name, and Pitt took the lead role in negotiating a potential agreement with Elekta. A0504-A0505. The universities thereafter signed an agreement with Elekta in November 1998. A0509-A0526. The venture with Elekta was not a success. A0527.

In 2002, Pitt entered into negotiations to license the patents-in-suit to Varian. A0527. In connection with these negotiations, Reed McManigle, a licensing specialist at Pitt, suggested that the inventors listed on the patents confirm their agreement on their respective contributions to the inventions. A0527-A0537. The inventors agreed to split their Relative Contributions equally, so that each individual was allocated 20%. This meant that Carnegie Mellon would receive 60% and Pitt 40% of the net proceeds from the commercialization of the IP. A0531, A0551.

15

In addition, Pitt proposed a new inter-institutional agreement with Carnegie Mellon. A0527-A0536.  In the negotiations of that agreement, Carnegie Mellon insisted that the agreement provide that (1) Carnegie Mellon would approve all licenses before they are executed; (2) the out-of-pocket expenses charged to Carnegie Mellon would be capped at $12,500; and (3) Carnegie Mellon would have no responsibility to pay the costs of the national phase prosecution of patents. A0538-A0548.  Ultimately, Carnegie Mellon decided that it need not approve all licenses before they are executed. A0552.  By September, however, Varian reported that it would no longer pursue the matter.  The universities dismissed the idea of a new inter-institutional agreement for this venture. A0553.

### 5.    Pitt Sues Varian for Infringing the Claims of the '554 and '431 Patents

In a complaint filed in April 2007, Pitt alleges that Varian is infringing the claims of the '554 and '431 patents.  Robert Wooldridge testified that Pitt had consulted with Carnegie Mellon before filing the suit, and Carnegie Mellon reported that "CMU has waived [and] is not going to participate in the lawsuit." A0372.

On November 21, 2007, Varian moved for summary judgment that Pitt lacked standing to bring this action. A0163-A0164.  The district court referred the motion to a Special Master. A0021.  On December 5, 2007, Pitt moved pursuant to Rule 19 of the Federal Rules of Civil Procedure ("FRCP") to join

Carnegie Mellon as a plaintiff in the lawsuit, reporting that Carnegie Mellon was willing to be added as a plaintiff. A0605-A0610.

The Special Master recommended that the district court grant Varian's motion without prejudice to Pitt filing an amended complaint. A0061-A0062. In its objections to that report, Varian pressed the following arguments on the relief the court should enter in granting its motion on standing. First, Varian argued that it was too late to correct the standing problem: "Pitt's lack of diligence and false statements preclude a finding of good cause to add CMU [Carnegie] as a Party." A0640-A0641. Second, Varian cited *Willingham v. Star Cutter Co.*, 555 F.2d 1340 (6th Cir. 1977), for the proposition that all co-owners of a patent must join an infringement suit at its inception, and *Switzer Brothers, Inc. v. Byrne,* 242 F.2d 909 (6th Cir. 1957), for the proposition that where two co-owners were not joined as plaintiffs when the suit is filed, the remedy is dismissal of the complaint. A0640. On those grounds, Varian urged the court to grant its motion for summary judgment, as "[g]ranting Varian's motion should dispose of UPitt's claims once and for all." A0681-A0682.

On December 14, 2007, the district court denied Pitt's motion to join Carnegie Mellon, without specifying the basis for its decision. A0051.

**6.  The District Court Rules that Carnegie Mellon is a Co-Owner of the Patents and that Pitt Lacks Standing to Sue for Infringement, and the Court Dismisses Pitt's Complaint with Prejudice**

On March 8, 2008, the Special Master issued a report on Varian's motion for summary judgment.  A0052-A0062.  He concluded that Carnegie Mellon is a joint owner of the patents-in-suit and had retained substantial rights in the patents, including the rights to license and exclude others. A0061. The Special Master also recommended that the district court grant Varian's motion for summary judgment without prejudice and either allow Pitt to file within 30 days an amended complaint that added Carnegie Mellon as a plaintiff or dismiss Pitt's action without prejudice.  A0061-A0062.

On March 20, 2008, Varian moved under FRCP Rule 11 and 35 U.S.C. § 285 for sanctions against Pitt and its counsel, Morgan, Lewis & Bockius LLP, on two grounds.  First, Varian contended that Pitt's allegation in the complaint that it "is the owner of the entire right title and interest" to the patents was necessary to establish standing, but is "undeniably false" and "frivolous." A0657.  Second, Varian contended that Pitt lacked a reasonable basis to allege infringement in the first place, and asked the district court to order Pitt to pay all of Varian's fees and costs and to dismiss Pitt's claims against Varian with prejudice. A0670, A0676.

On April 30, the district court denied Varian's motion for sanctions. A0042. Separately, it entered an order adopting the Special Master's Report and Recommendation in part, ruling that Carnegie Mellon is a co-owner of the patents-in-suit and that it was a necessary party to the suit. A0064-A0065. The district court decided that the case should be dismissed because Pitt should have joined Carnegie Mellon at the beginning of the case, and it dismissed the case with prejudice. A0065-A0068.

Pitt now appeals the dismissal of its case with prejudice, and Varian cross-appeals the denial of its motion for sanctions.

In June, Carnegie Mellon assigned whatever rights, title, and interest, if any, it had in the patents-in-suit to Pitt, and Pitt filed a second lawsuit against Varian, in the Northern District of California. Varian has moved to dismiss that case, arguing that Pitt falsely claimed in this case that it was the sole owner of the patents, and that the trial court's order dismissing the claims in this case with prejudice is a final judgment on the merits barring any further claims that Varian is infringing the patents-in-suit. A0710-A0711.

## SUMMARY OF THE ARGUMENT

The district court in this patent case made two principal errors. First, it concluded incorrectly that Pitt lacks standing to bring this patent infringement action. The court failed to properly consider that, at all times, Pitt was the sole holder of legal title to the asserted patents. On that basis, the court improperly dismissed Pitt's complaint.

Second, the court compounded its error by declaring that its dismissal of Pitt's action was "with prejudice." The court did not explain what it meant by using the expression "with prejudice" in this context. If and to the extent that the court's use of the phrase was intended to connote some "claim preclusive" effect, then the judgment is improper. Further, to the extent that the court ruled that Carnegie Mellon is a necessary party to this action under Rule 19, it had no discretion but to join Carnegie Mellon as a plaintiff because such joinder was and is feasible. As such, the court should not have dismissed Pitt's complaint. Even assuming that the dismissal is proper, it should not have been with prejudice. The court's decision regarding Pitt's standing is not a ruling on the merits. Nor is the court's decision that Carnegie Mellon is a necessary party to this action under Rule 19. As such, neither of these decisions can preclude an action in which any possible standing or Rule 19 issue has been corrected. Accordingly, the district court erred in dismissing Pitt's complaint with prejudice.

## ARGUMENT

## I.   THE TRIAL COURT ERRED IN RULING THAT PITT LACKED STANDING TO SUE VARIAN

### A.   Standard of Review

Whether a party has standing to sue is a jurisdictional question that this Court reviews de novo. *See Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1376 (Fed. Cir. 2000); *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1551 (Fed. Cir. 1995).

### B.   The Entity that Holds Legal Title to a Patent Has Standing to Sue for Infringement

A patent enlarges common law property rights to an invention by giving the owner of the patent the additional right to exclude others from making, using, or selling that invention. *See Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 35 (1923) (describing as "clearly established principles" that "the right himself to make, use or vend his own invention . . . was a right under the common law" and that "all that the government conferred by the patent was the right to exclude others from making, using or vending his invention").

U.S. patent law provides that the patentee—the entity that holds legal title to the patent—shall have remedy by civil action for patent infringement. That is, the law grants standing to the patentee to enforce rights under the patent. *See* 35 U.S.C. § 281; *see also H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) (ruling that to have standing, the plaintiff in an action for

patent infringement must be a patentee pursuant to 35 U.S.C. §§ 100(d) and 281, or a licensee who holds "all substantial rights" in the patent).

The leading decision confirming these basic principles is Judge Rich's opinion for this Court in *Arachnid, Inc. v. Merit Industries, Inc.*, 939 F.2d 1574 (Fed. Cir. 1991). In that case, Industrial Design Electronic Associates ("IDEA") agreed to provide consulting services for the improvement of a computerized scoring system in Arachnid's dart games. Their agreement provided that "[a]ny inventions conceived by IDEA or its employees . . . in the course of the project covered by this agreement, shall be the property of CLIENT [Arachnid], and all rights thereto will be assigned by IDEA . . . to CLIENT." *Id.* at 1576. On November 17, 1982, IDEA engineers filed a patent application pertaining to a "coin operated electronic dart game" that ultimately issued as U.S. Patent No. 4,516,781 ("the '781 patent"). *Id.*

Arachnid sued IDEA to recover the '781 patent. IDEA filed a Chapter 11 bankruptcy petition, and Kidde Recreation Products, Inc. ("Kidde") purchased IDEA's assets, including the patent. Arachnid sued Kidde. The district court found Arachnid "the lawful owner of all right, title, and interest in and to the invention" of the '781 patent, and ordered Kidde to assign its rights in the patent to Arachnid. *Id.*

In 1985 and 1986, Merit Industries, Inc. ("Merit") manufactured games under a license to the '781 patent that it obtained from IDEA. In March 1986, Arachnid sued Merit for infringing the claims of the '781 patent. The district court granted judgment in favor of Arachnid and against Merit, but this Court reversed, holding that although Arachnid held equitable title to the '781 patent in 1986 and 1987, Arachnid did not obtain legal title to the patent until 1987. In doing so, the Court determined that the consulting agreement between Arachnid and IDEA did not vest Arachnid with actual title, because it merely was an agreement to assign in the future inventions that were not then developed. *Id.* at 1581. Arachnid did not obtain legal title to the '781 patent until the court-ordered assignment from Kidde. Consequently, despite Arachnid's equitable interest in the '781 patent, it lacked standing to sue Merit for infringement at a time when it did not hold legal title to the patent.

It was in that context that this Court observed that "[t]he general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the *legal title* to the patent *during the time of the infringement*," *id.* at 1579, and quoted the Supreme Court's decision in *Crown Die & Tool Co. v. Nye Tool & Machine Works*, 261 U.S. 24, 40 (1923):

> The law as to who should bring a suit at law for damages
> by infringement of a patent is clearly and correctly stated
> in Robinson on Patents, Vol. 3 § 937 [1890], as follows:

"With a single exception [—the assignment of a right of action for past infringement—] the plaintiff in an action at law must be the person or persons in whom the *legal title* to the patent resided *at the time of the infringement.* An infringement is an invasion of the monopoly created by the patent, and the law which defines and authorizes this monopoly confers only upon its *legal owners* the right to institute proceedings for its violation.  These owners are the patentee, his assignee, his grantee, or his personal representatives; and *none but these* are able to maintain an action for infringement in a court of law. . . ."

*Arachnid*, 939 F.2d at 1579.

### C.  Because Pitt Holds Legal Title to the Patents-in-Suit, It Has Standing to Sue Varian

In 1996, all participants in the joint venture signed agreements that assigned and transferred to Pitt their "entire right, title and interest for all countries, in and to any and all inventions and improvements which are disclosed and claimed, and any and all improvements which are disclosed but not claimed" in the applications that led to the '554 and '431 patents.  A0404-A0408.

Thus, Pitt holds legal title to the patents, and it is the only entity with standing to sue Varian to prevent it from making, using, or selling products that infringe the patent.  *See generally Sprint Commc'ns Co. v. APCC Servs., Inc.*, 128 S. Ct. 2531, 2541 (2008) (stating that "where assignment is at issue, courts—both before and after the founding—have always permitted the party with legal title alone to bring suit").

**D.    The Trial Court Erred in Ruling that Carnegie Mellon is a Co-Owner of the Patents**

The Special Master incorrectly interpreted the agreement between Pitt and Carnegie Mellon as an agreement that the parties would jointly own the patents.  Relying on this false premise, the Special Master then analyzed whether Carnegie Mellon as a joint title-owner and patentee had assigned all substantial rights under the patents in question to Pitt, so that the latter could be deemed the effective patentee as a result of such assignment.

The Special Master looked to a series of cases from this Court on transactions between a patent owner and a licensee and noted that those cases stand for the proposition that where the patentee makes an assignment of all substantial rights under the patent, the assignee may be deemed the effective "patentee." *See, e.g., Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128 (Fed. Cir. 1995); *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870 (Fed. Cir. 1991); *Prima Tek II, L.L.C. v. A-ROO Co.*, 222 F.3d 1372 (Fed. Cir. 2000).

The Special Master examined Carnegie Mellon's rights under the collaboration agreement and found no evidence that Carnegie Mellon had given up its right to exclude others from making, using or selling the patented invention, to sue for infringement, to use the invention, or to license the patents.  He wrote:

> [T]he Joint IP Guidelines, as well as the other evidence
> of record, establishes that UPitt assumed a responsibility,
> but the evidence does not establish that Carnegie Mellon

University assigned or transferred all of its substantial rights to the patents. . . .  The record establishes that CMU retained the right to license the patents, and that UPitt did not receive an assignment of the right to exclude others from making, using, and selling the patented invention.

A0060.

Three basic mistakes pulled the Special Master off track and led to the wrong conclusion that Carnegie Mellon is a joint owner of the patents.

## 1. The Guidelines did not vest title in the patents in Carnegie Mellon

The first mistake relates to the legal effect of the agreement in the Guidelines that the parties would jointly own the jointly developed IP.  The Special Master treated this agreement as granting to Carnegie Mellon a right to joint ownership of patents to be obtained on that IP.

The Guidelines are not an assignment of legal title.  When courts have found an assignment of legal title, the agreements at issue have included language such as "hereby grants" or "hereby assigns," meaning that no further act was necessary to transfer title. *See Filmtec Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1570 (Fed. Cir. 1991) ("MRI agrees to grant and does hereby grant"); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1253 (Fed. Cir. 2000) ("All inventions . . . 'shall belong exclusively to [Speedplay] and [Byrne] hereby conveys, transfers and assigns'"); *DDB Techs., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008) ("Paragraph 4 of Barstow's employment agreement with

26

Schlumberger stated that Barstow 'agrees to and does hereby grant and assign' all rights in future inventions falling within the scope of the agreement to Schlumberger. . . . This contractual language was not merely an agreement to assign, but an express assignment of rights in future inventions.").

On the other hand, agreements that require some additional act to convey title are nothing more than an "agreement to agree," as was identified in *Arachnid*, and thus are inadequate to assign legal title. *See Arachnid*, 939 F.3d at 1576 ("[a]ny inventions conceived by IDEA or its employees . . . shall be the property of CLIENT [Arachnid], and all right thereto will be assigned by IDEA . . . to CLIENT."); *IpVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324, 1327 (Fed. Cir. 2007) ("agree to assign"); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 779 (Fed. Cir. 1996) ("Like the situation in *Arachnid*, these minutes, at most, are a memorialization of an agreement to sell all assets of Banstar to Gaia at some time in the future. Such an agreement to assign is not an assignment and thus did not vest legal title in Gaia of the Intellectual Property . . . .").

According to the Guidelines at issue here, "[t]he allocation of ownership of IP among the participants and universities which may result from a CP will normally not be defined at this stage but will be determined later when specific Invention Disclosures are created," and "[a]ll IP developed jointly by CMU Participants and Pitt Participants during collaboration shall be owned jointly

27

by Pitt and CMU." A0448. This language mirrors the language of the agreement at issue in *Arachnid* and most aptly can be described as an agreement to agree, which is not sufficient to convey legal title, but which can create a claim in the nature of an equitable title. *See Arachnid,* 939 F.2d at 1581 ("Although an agreement to assign in the future inventions not yet developed may vest the promisee with *equitable* rights in those inventions once made, such an agreement does not by itself vest *legal* title to patents on the inventions in the promise. . . ."). Indeed, the Guidelines do not even reference a specific technology or patent.

The Guidelines cannot be read as an agreement assigning rights to patents that were contemplated by the parties but that did not exist.

### 2.    There is a difference between jointly owned IP and the patents on portions of that IP

The second mistake the Special Master made is that he failed to recognize the distinction that Carnegie Mellon and Pitt did: there is a difference between the IP the scientists developed and the patents on inventions in that IP. Dr. Kalend and the scientists recognized this when they agreed that the inventions be declared "as individual patents through UMPC [sic], but with 50/50 UPMC/CMU ownership." A0409.

The difference is that the patents establish a new right, a right the parties agreed needed to be managed. As this Court noted in *Arachnid*, the right to exclude does not flow from the common law right to the intellectual property,

28

which in this case was developed jointly by the parties. Rather, that right arises from the granting of the patent to the patentee. And the parties could not allocate those rights by agreement except to the extent that they wished to agree on who would be the title owner of the patent. *Prima Tek*, 222 F.3d at 1381 ("Standing to sue for infringement depends entirely on the putative plaintiff's proprietary interest in the patent, not on any contractual arrangements among parties regarding who may sue and who will be bound by judgments.").

Similarly, Carnegie Mellon and Pitt agreed to structure their venture so that Carnegie Mellon would give up the right to recover damages directly from an infringer. Instead, the parties agreed Pitt would receive that right and account to Carnegie Mellon for its share of any recovery. But the agreement to account to Carnegie Mellon for damages is not a basis to find Carnegie Mellon has standing to sue. *See Crown Die & Tool*, 261 U.S. at 42 ("The profits or damages for infringement cannot be sued for except on the basis of title as patentee...."); *Vaupel Textilmaschinen KG*, 944 F.2d at 875.

**3.    The parties agreed that Pitt should hold title to the patents, and they implemented that agreement by the assignments**

The Special Master's third mistake is that he failed to look at the parties' agreement on how to manage this property. That is, the Special Master failed to look at the entire agreement of the parties and the course of their conduct under that agreement, including the agreements to assign the patents to Pitt. *See*

29

*Nicolson Pavement Co. v. Jenkins*,  81 U.S. (14 Wall.) 452, 456 (1871) ("An assignment of an interest in an invention secured by letters-patent, is a contract, and like all other contracts is to be construed so as to carry out the intentions of the parties to it.").

It is undisputed that each of the inventors assigned title in the patents to Pitt, and only to Pitt.  And it is undisputed that Carnegie Mellon was aware that Pitt was the only title holder.  In fact, Carnegie Mellon could have acted under the agreement to correct the title if it believed it should be a joint owner of the patents. *See* A0449.  It did not.  Rather, the agreement to have the patents in Pitt's name, and Carnegie Mellon's acquiescence in doing so even after licensing officer Robert Wooldridge's objections to such arrangement, is strong evidence that Carnegie Mellon and Pitt had agreed that the patents should be in Pitt's name and need *not* be held jointly.

By its April 30 Order, the district court adopted the Report and Recommendation as to Carnegie Mellon's co-ownership of the patents and Pitt's lack of standing.

The court's ruling that Carnegie Mellon was a co-owner of the patents is not supported by the evidence.  Pitt was and is the sole legal title owner of the patents.  It holds title to the patents pursuant to its agreement with Carnegie Mellon and subject to its duties under those agreements.  As the legal title holder, Pitt had

30

standing to sue Varian. *See Abbott Labs.*, 47 F.3d at 1130. For these reasons, this Court should reverse the order dismissing the case for lack of standing, and remand the case for further proceedings.

## II. THE TRIAL COURT ERRED IN DISMISSING PITT'S COMPLAINT WITH PREJUDICE

### A. Standard of Review

When addressing a procedural issue not unique to patent law, this Court applies the standard of review that would be applied by the pertinent regional circuit. *See Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, 479 F.3d 1330, 1335 (Fed. Cir. 2007). The Third Circuit's review of an involuntary dismissal based on a conclusion of law is plenary. *See E.E.O.C. v. Metal Serv. Co.*, 892 F.2d 341, 346 n.5 (3d Cir. 1990). Related subsidiary findings of fact are reviewed for clear error. *See Henglein v. Informal Plan for Plant Shutdown Benefits for Salaried Employees*, 974 F.2d 391, 397 (3d Cir. 1992). Similarly, the Third Circuit reviews de novo the legal conclusions underlying a district court's determination that an absent party's joinder is necessary under Federal Rule of Civil Procedure 19(a); the Third Circuit reviews any subsidiary findings of fact for clear error. *See Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). The Third Circuit's review of an involuntary dismissal for lack of subject matter jurisdiction is plenary. *See Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

31

**B.**  **While The District Court Identified the Basis For Its Decision to Dismiss the Complaint, It Failed to Identify a Basis For Ordering that the Dismissal Be With Prejudice**

The Special Master had recommended that the district court grant Varian's motion without prejudice to Pitt filing an amended complaint. The district court declined to adopt the Special Master's recommendation. Instead, the court defined the issue as "whether the dismissal should be with or without prejudice." The court then held that the case must be dismissed because Carnegie Mellon should have been joined at the inception of the suit. The court held additionally that the case must be dismissed because Pitt's attempt to add Carnegie Mellon was untimely. Thereafter, and without further discussion on the basis for the decision, the court ordered the motion for summary judgment granted and the action dismissed with prejudice. The words "with prejudice" attached to a dismissal of a claim signify that the dismissal is an adjudication on the merits and bars further litigation on the claims. *See Korvettes, Inc. v. Brous*, 617 F.2d 1021, 1024 (3d Cir. 1980). In this case, it is unclear what the boundaries of that prejudice are. Varian is arguing in the California litigation that "[t]he Pennsylvania Court's entry of judgment dismissing UPitt's claims with prejudice constitutes a final judgment on the merits," and that Pitt and Carnegie Mellon's infringement claims are barred. A0704, A0723-A0745.

1.    **A dismissal for lack of standing should be without prejudice**

This Court has repeatedly held that dismissals for lack of standing ordinarily are without prejudice because the lack of standing does not pertain to the merits of the underlying patent dispute and because it typically is a matter that can be cured. *See Media Techs. Licensing, L.L.C. v. The Upper Deck Co.*, 334 F.3d 1366, 1370 (Fed. Cir. 2003) (finding that because standing is jurisdictional, lack of standing precludes a ruling on the merits); *H.R. Techs.*, 275 F.3d at 1384 ("Because lack of standing is not an issue that goes to the merits of the underlying patent issues, a dismissal of a complaint for lack of standing would not normally be expected to be made with prejudice."); *Fieldturf, Inc. v. Southwest Recreational Indus., Inc.*, 357 F.3d 1266, 1269 (Fed. Cir. 2004) ("Ordinarily, dismissal for lack of standing is without prejudice."); *see also Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1247-48 (D.C. Cir. 1999) (affirming a decision to dismiss for lack of jurisdiction, but modifying the order to state that the dismissal is without prejudice). Dismissal with prejudice may be appropriate only if a plaintiff's lack of standing cannot be cured. *See Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975, 980 (Fed. Cir. 2005); *Textile Prods., Inc. v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998).

In this case, if Pitt is wrong on the law of standing, it can cure the defect. It can file a new action joining Carnegie Mellon as a plaintiff, or it can

reach an additional agreement with Carnegie Mellon on another assignment (which

it has done in an attempt to resolve the standing issue while it seeks to vindicate its

rights in this appeal).

### 2. Under Rule 19, a court cannot dismiss for failure to join a required party, if joinder is feasible

Rule 19 provides that "[a] person who is subject to service of process

and whose joinder will not destroy subject-matter jurisdiction *must* be joined as a

party if . . . that person claims an interest relating to the subject of the action and is

so situated that the disposition of the action in the person's absence may leave an

existing party subject to a substantial risk of incurring double, multiple, or

otherwise inconsistent obligations because of that interest." Fed. R. Civ. P.

19(a)(1)(B)(ii) (emphasis added). Rule 19(a) further provides that if such a

necessary party has not yet been joined, then the court "*must* order that the person

be made a party." Fed. R. Civ. P. 19(a)(2) (emphasis added).

Rule 19(a) is very clear that a court has no discretion to dismiss a

complaint for failure to join a required party, if the party could be joined. *See*

*Janney Montgomery Scott, Inc. v. Shephard Niles, Inc.*, 11 F.3d 399, 404-05 (3d

Cir. 1993) ("Federal Rule of Civil Procedure 19 determines when joinder of a

particular party is compulsory.... [A]ny party whose absence results in any of the

problems identified in either subsections (a)(1) or (a)(2) is a party whose joinder is

compulsory if feasible."); *see also Symes v. Harris*, 472 F.3d 754, 760-61 (10th

Cir. 2006) ("FRCP 19(b) forbids dismissal if the necessary party could be made a party.").

In this case, the district court concluded that Carnegie Mellon was a necessary party under Rule 19, yet dismissed Pitt's complaint without considering whether joinder of Carnegie Mellon was feasible. A0064-A0065. In doing so, the district court erred. *See Symes*, 472 F.3d at 761 ("A court may dismiss a lawsuit under Fed. R. Civ. P. 19(b) only if the necessary party 'cannot be made a party.'"). It is undisputed that Carnegie Mellon could have been made a party to the suit—Carnegie Mellon was and is subject to the district court's jurisdiction (as the Special Master had pointed out in his report) and joinder of Carnegie Mellon would not destroy subject matter jurisdiction. As such, the district court had no discretion but to order that Carnegie Mellon be joined. *See Gen. Tire & Rubber Co. v. Watkins*, 326 F.2d 926, 929 (4th Cir. 1964) ("Had the court found the United States to be a necessary party in order to accord complete relief to those already parties then, of course, *no* discretion is left in the court but to join under the terms of the statute.") (emphasis added).

For at least this reason, the district court's dismissal should be reversed. *See Macklin v. Butler*, 553 F.2d 525, 531 (7th Cir. 1977) ("Where parties ought to be joined under Rule 19(a), that rule expressly contemplates that the district court will order the adverse parties to join them. This, of course, was not

done here. Even if some of the non-parties named by the district court ought to have been joined, the opportunity to do so should have been offered."); *Three Rivers Cablevision, Inc. v. City of Pittsburgh*, 502 F. Supp. 1118, 1137 (W.D. Pa. 1980) ("The rule [Fed. R. Civ. P. 19] imposes no burden on the plaintiff in the first instance to take the initiative to join such a party, in fact it provides that the court shall order the joinder when it determines that this is indicated under the rule. And dismissal is, in effect, a last resort measure to be taken *only* when for reasons of jurisdiction or venue such person cannot be brought into the action.") (emphasis added).

### 3. Even assuming that dismissal under Rule 19 for failure to join a required party was proper, it should have been without prejudice

A failure to join a required party under Rule 19 is a defect that does not go to the merits of the underlying dispute; it is a defect that generally can be cured. *See Gen. Refractories*, 500 F.3d at 319 ("[A] finding of indispensability under Rule 19(b) necessitates dismissal for lack of subject matter jurisdiction."); *see also Dredge Corp. v. Penny*, 338 F.2d 456, 463 (9th Cir. 1964) ("The charge that an indispensable party has not been joined . . . does not go to the merits of the lawsuit, nor does it bar an action on the subject matter, but only operates to abate that particular action."). Accordingly, a dismissal for failure to join a necessary party must be *without* prejudice. *See Dredge*, 338 F.2d at 464 ("The failure to join

an indispensable party possibly may be overcome by joining that party. If this cannot be, or is not done, the action is subject to dismissal, *but not with prejudice* since this defense operates only to abate the particular action.") (emphasis added). As such, even assuming that the district court properly dismissed Pitt's complaint, it should have been without prejudice.

The folly of the district court's approach in this case is punctuated by considering the practical consequences of applying that approach more generally. Any litigant, such as Pitt here, that believed another party need not be joined would proceed in litigation at its peril, especially where, as here, the court-imposed deadline for joining additional parties occurred months before the court determined whether any additional party was required. Under the district court's approach, any litigant in Pitt's position would have no choice but to add any party that its opponent says is required or that its opponent might say is required, for fear that if the party is not added, the case will be permanently lost before it is ever decided on the merits. The district court's ruling, in other words, does not permit a party first to proceed with litigating its position on the merits and then to amend its pleadings if that proves necessary following a ruling by the court.

### 4. A dismissal with prejudice as a sanction must be supported by the record

It is not clear from the opinion why the district court dismissed the case with prejudice. The court did not tie its "with prejudice" ruling to its denial of

Pitt's motion to add Carnegie Mellon as a plaintiff. (Varian had opposed that motion on the ground that the motion allegedly came too late. In addition, Varian had argued that Rule 19 does not apply to motions to join a co-owner of a patent. A0623-A0625.)

In the briefing on the motion for summary judgment, Varian had sought a judgment in its favor that Pitt lacked standing. It did not seek a dismissal as a sanction. (Varian had pending a motion for sanctions under Rule 11 and 35 U.S.C. § 285 contending, among other things, that Pitt's claims to standing were false and frivolous. In that motion, Varian had sought a dismissal with prejudice as a sanction. The court denied that motion without opinion on the same day it issued its opinion on the summary judgment motion. Varian has filed a cross appeal from that order.)

Nowhere in its April 28 decision does the district court mention the word sanctions, much less cite any authority for the proposition that it can impose a dismissal with prejudice as a sanction. Although the court does describe Pitt's motion to add Carnegie Mellon as "untimely and unfair," that was in the context of the court's explanation of its refusal to vacate the December 2007 order denying Pitt's motion to join Carnegie Mellon pursuant to Rule 19.

The district court's opinion lacks the essential findings necessary to support a decision to impose a dismissal with prejudice as a sanction, including

findings on those factors identified by the Third Circuit. *See Donnelly v. Johns-Manville Sales Corp.*, 677 F.2d 339, 342 (3d Cir. 1982) (finding that dismissal is a drastic sanction and should be reserved for those cases when there is a clear record of delay or contumacious conduct and that it is necessary for the district court to consider whether lesser sanctions would better serve the interests of justice). Doubt should be resolved in favor of reaching a decision on the merits. *See Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984).

The dismissal with prejudice cannot be supported as a sanction.

## CONCLUSION

Our patent laws grant to the patentee the right to sue to enforce a patent. The holder of legal title to a patent has standing to sue. The University of Pittsburgh is the patentee of the two patents-in-suit, having unilaterally received title to the patents by assignments from the inventors. Those assignments were made pursuant to an agreement among the inventors, the University of Pittsburgh and Carnegie Mellon University.

The district court erred in holding that Carnegie Mellon was a co-owner of the patents and erred in dismissing Pitt's claims. This Court should reverse that order and remand this matter so that it can proceed to a resolution on the merits or, in the alternative, vacate that order and remand for a dismissal *without* prejudice.

39

Dated:  August 29, 2008

Respectfully submitted,

*[signature]*
_____

Roderick R. McKelvie
Richard J. Johnson, Jr.
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 662-6000

Daniel Johnson, Jr.
MORGAN, LEWIS & BOCKIUS LLP
Spear Street Tower
1 Market Street
San Francisco, CA 94105
(415) 442-1000

Peter Buscemi
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., NW
Washington, D.C. 20004-2541
(202) 739-3000

Deanna L. Kwong
COVINGTON & BURLING LLP
One Front Street, Floor 35
San Francisco, CA 94111
(415) 591-6000

*Attorneys for Plaintiff-Appellant,*
*University of Pittsburgh*